UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 JUN -1  A 11: 30
U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| AVX CORPORATION and AVX LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> CABOT CORPORATION, <br><br> Defendant. | Civil Action No 04-10467 (RWZ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT CABOT CORPORATION'S MOTION TO DISMISS

Defendant Cabot Corporation, through its Performance Materials Division ("Cabot"), submits this Memorandum in Support of its Motion to Dismiss the Complaint of plaintiffs AVX Corporation and AVX Limited (collectively "AVX"). AVX's claim in this case is barred by the doctrine of *res judicata*. AVX could have, but did not, assert the antitrust claim that it makes in this action in a prior related case entitled, *AVX Corporation and AVX Ltd. v. Cabot Corporation*, Civil Action No. 02-11524 (RGS) (the "Prior Federal Action"). In the Prior Federal Action, AVX alleged that Cabot had violated the Robinson-Patman Act, 15 U.S.C. § 13. In the case at bar, AVX alleges that the same course of conduct with respect to the same contract that was at issue in the Prior Federal Action violates the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 14.

*Res judicata* precludes a plaintiff from "splitting" claims that arise from the "same set of operative facts" into separate, sequential federal court actions. *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1166 (1st Cir. 1991). AVX "had an obligation to cluster [its] theories

of recovery" in the Prior Federal Action "or forever hold [its] peace." *Id.* The instant case should be dismissed for failure to state a claim upon which relief may be granted.

## FACTUAL BACKGROUND

This Court has seen this case before. Cabot manufactures and sells tantalum powder and wire. AVX manufactures passive electronic components, including capacitors that contain tantalum. Prior Federal Action Complaint[1] at ¶¶ 5-8, Schwab Aff., Exhibit A; Present Complaint, ¶ 7-10, Schwab Aff., Exhibit B. Cabot sells tantalum to AVX for use in the manufacture of capacitors. *Id.* at ¶ 10, Schwab Aff., Exhibit A; *Id.* at ¶ 12, Schwab Aff., Exhibit B. AVX and Cabot have a long-standing business relationship. *Id.* at ¶ 16, Schwab Aff., Exhibit A; *Id.*, ¶ 18, Schwab Aff., Exhibit B.

In early 2000, AVX and Cabot signed a two-page "Letter of Intent" (the "2000 Letter of Intent"), in which AVX expressed its "intention to purchase" certain tantalum products from Cabot over a two-year period. *Id.* at ¶ 20, Schwab Aff., Exhibit A; *Id.* at ¶ 20, Schwab Aff., Exhibit B. Later in 2000, a tantalum shortage became evident. *Id.* at ¶ 23, Schwab Aff., Exhibit A; *Id.* at ¶ 23, Schwab Aff., Exhibit B. AVX and Cabot then entered into a binding, five-year "Supply Agreement" for tantalum products, which was effective as of January 1, 2001 (the "2001 Supply Agreement"). *Id.* at ¶ 34, Schwab Aff., Exhibit A at Tab G; *Id.* at ¶ 29, Schwab Aff., Exhibit B at Tab C. The 2001 Supply Agreement (which, by its terms, is governed by Massachusetts law) provides that AVX "shall purchase," and Cabot "shall sell," specified quantities of tantalum products at specified prices. *Id.*, Schwab Aff., Exhibit A, at Tab G, Sections 2 and 9; *Id.*, Schwab Aff., Exhibit B, at Tab C, Sections 2 and 9. Since entering into the

---

[1] The Complaint in the Prior Federal Action is appended to the Affidavit of Terrence M. Schwab (hereinafter "Schwab Aff., Exhibit __"), filed herewith, as Exhibit A. This Court properly may take judicial notice of papers filed in prior, related court proceedings between the parties when deciding Cabot's Motion to Dismiss. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000).

2001 Supply Agreement, AVX has purchased, and continues to purchase, substantial quantities of tantalum products from Cabot in accordance with the terms of that Agreement. Prior Federal Action Complaint at ¶¶ 18, 44, 57, Schwab Aff., Exhibit A; Present Complaint at ¶ 18, 32, 40, Schwab Aff., Exhibit B.

AVX commenced the Prior Federal Action in the United States District Court for the District of Massachusetts on July 26, 2002. It asserted a variety of claims against Cabot relating to the negotiation, execution and implementation of the 2001 Supply Agreement, including, *inter alia*, a claim that Cabot had coerced AVX into signing the 2001 Supply Agreement, and that the 2001 Supply Agreement "discriminated in price between AVX and other purchasers" of tantalum products and resulted in the "possibility of a substantial lessening of competition in [*sic*] the injury destruction or prevention of competition with Cabot", in violation of the Robinson-Patman Act. Prior Federal Action Complaint at ¶¶ 57-59, Schwab Aff., Exhibit A. AVX did not allege any other violation of the antitrust laws.

On September 17, 2002, Cabot filed a motion to dismiss the Prior Federal Action. On February 5, 2003, the Court (Stearns, J.) heard oral argument on Cabot's motion. At the conclusion of the argument, the Court dismissed AVX's Robinson-Patman Act claim and one of its state law claims. It also observed that AVX could seek leave to amend its Complaint to address the deficiencies that had brought about the Court's decision if AVX wished to do so. *See* Transcript of February 5, 2003 Hearing on Cabot's Motion to Dismiss, pp. 31-34. Schwab Aff., Exhibit C.

On February 20, 2003, AVX filed an Amended Complaint that alleged no federal claim of any kind. Schwab Aff., Exhibit D. The Amended Complaint did allege (for the first time) that both AVX Corporation and Cabot were Delaware corporations. *Id.* at ¶¶ 1-2. Because it

was apparent from the face of the Amended Complaint that federal subject matter jurisdiction was lacking, Cabot again moved to dismiss. On March 28, 2003, AVX stipulated to the dismissal of the Prior Federal Action, without prejudice. Schwab Aff., Exhibit E.

Litigation of the parties' disputes under the 2001 Supply Agreement thereupon moved to State Court. On March 18, 2003, Cabot commenced a declaratory judgment action against AVX in Massachusetts Superior Court for Suffolk County (the "State Court Action"). AVX responded by filing a Counterclaim in the State Court Action alleging the facts and the common law claims that had previously been alleged in the Prior Federal Action. Schwab Aff., Exhibit F. On January 13, 2004, AVX sought leave to amend its Counterclaim in the State Court Action to assert that the course of conduct that it had alleged in the Prior Federal Action and was then alleging in the State Court Action also violated state and federal antitrust laws. Schwab Aff., Exhibit G. On March 4, 2004, the Superior Court (van Gestel, J.) denied AVX's Motion to Amend Complaint. Schwab Aff., Exhibit H.

On March 8, 2004, AVX commenced this action. The Complaint alleges the same conduct that formed the basis of AVX's claims in the Prior Federal Action and AVX's Counterclaim in the State Court Action. However, in this case, AVX asserts that Cabot's conduct violates "Section 1 of the Sherman Act."[2] Indeed, many of AVX's factual allegations in this case are *verbatim* copies of allegations made in AVX's Complaint and its Amended Complaint in the Prior Federal Action. *Compare, e.g.,* Present Complaint, ¶¶ 4, 7-8, 10-12, 14-15, 17-18, 23, 29, 31, *with* Prior Federal Action Complaint at ¶¶ 4-6, 8-10, 12-13, 15-16, 25, 34, 41 *and* Prior Federal Action Amended Complaint, ¶¶ 4-6, 8-10, 12-13, 15-16, 22, 30, 34. The only substantial difference between the Prior Federal Action Complaint and the Present

---

[2] AVX alleges that "the actions of Cabot violate Section 1 of the Sherman Act, 15 U.S.C. § 1, 14." Complaint, ¶ 41. 15 U.S.C. § 14 is Section 3 of the Clayton Act.

Complaint is that, in the Prior Federal Action, AVX alleged that the parties' 2001 Supply Agreement contained discriminatory price terms, while in the present case, AVX alleges that the 2001 Supply Agreement compelled AVX to purchase product that it did not want in order to obtain access to products that it did wish to purchase.

Cabot now has moved to dismiss AVX's Complaint in this case on the ground that AVX's claim is barred by the doctrine of *res judicata*.

## ARGUMENT

### AVX'S COMPLAINT IN THIS CASE SHOULD BE DISMISSED BECAUSE THE ANTITRUST CLAIM THAT AVX NOW SEEKS TO ASSERT AGAINST CABOT COULD HAVE BEEN RAISED WHEN AVX LAST WAS BEFORE THIS COURT IN THE PRIOR FEDERAL ACTION, AND THUS IS BARRED BY THE DOCTRINE OF *RES JUDICATA*.

The doctrine of *res judicata* precludes a party from asserting against the same party claims that arise from a "single transaction or series of related transactions" in separate, sequential actions. *See Mass. School of Law, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998). Under the doctrine, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action." *Havercombe v. Dept. of Edu. of the Comm. of P. R.*, 250 F.3d 1, 3 (1st Cir. 2001) (*quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980)) (emphasis added). "The policy rationale behind *res judicata* is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Bay State HMO Mgmt, Inc. v. Tingley Sys., Inc.*, 181 F.3d 174, 181 (1st Cir. 1999).

The doctrine applies when a three-part test is satisfied. There must be: "(1) a final judgment on the merits in an earlier suit; (2) sufficient identicality between the causes of action asserted in the earlier and later suits; and (3) and sufficient identicality between the parties in the

two suits." *Iannochino v. Rodalakis*, 242 F.3d 36, 43 (1st Cir. 2001) (quoting *Mass. School of Law*, 142 F.3d 37); *see also Havercombe*, 250 F.3d at 3 (quoting *Kale*, 924 F.2d at 1166). "Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions." *Mass. School of Law, Inc.*, 142 F.3d at 38 (citation omitted). In effect, application of the "transactional" approach to *res judicata* "boils down to whether the causes of action arise out of a common nucleus of operative facts." *Id.*

The First Circuit's decision in *Kale v. Combined Ins. Co. of America*, *supra*, is particularly instructive in the context of the present case. The plaintiff in *Kale* filed multiple court actions against his former employer asserting various causes of action arising from the termination of his employment. 924 F.2d at 1163-1164. The plaintiff brought his first such action in federal court alleging violations of the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, as well as certain common law claims ("*Kale I*"). *Id.* at 1163. The plaintiff's ADEA claim was subsequently held to be time-barred. The District Court then dismissed the plaintiff's pendent state law claims *without prejudice* in the mistaken belief that diversity jurisdiction did not exist. *Id.*

The plaintiff did not correct the District Court's misconception. *Id.* at 1163-1164. Instead, he filed another action in Massachusetts State Court alleging his state law claims. The defendant removed the new case ("*Kale II*") to federal court (which, in fact, had diversity jurisdiction), and then moved to dismiss the plaintiff's claims, citing the *res judicata* effect of the District Court's prior decision in *Kale I*. 924 F.2d at 1164. The Court allowed the motion and dismissed *Kale II*. The Court of Appeals affirmed. *Id.* It stated that "[a] single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law . . . [A]s long as the new complaint grows out of the same

transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical for *res judicata* purposes." *Id.* at 1166. The Court further stated that, "[u]nless *res judicata* is to be robbed of its doctrinal significance, [plaintiff] had the obligation to cluster his theories of recovery in *Kale I*, by whatever necessary jurisdictional means, or else forever hold his peace." *Id.* The plaintiff's failure to do so was fatal to all of his "theories of recovery" in *Kale II*. *Id.*; *see also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1368 (7th Cir. 1988), *cert. denied*, 488 U.S. 856 (1988) (dismissing related state law claims that plaintiff could have pursued in previously dismissed federal action on *res judicata* grounds); *Hart v. Verizon Communication, Inc.*, Civ. A. No. 03-11811-RWZ, 2004 WL 438786, at *2 (D. Mass. March 9, 2004) ("[F]ederal law stipulates that all claims that are 'part of the same cause of action' are extinguished, whether or not actually asserted in the original action.") (*quoting Kale*, 924 F.2d at 1166).

The facts of this case are closely analogous to those presented in *Kale*. Moreover, the three-part test stated in *Iannochino*, 242 F.3d at 43, is satisfied. First, the parties in the Prior Federal Action and in the case at bar, are the same. AVX Corporation and AVX Limited were/are the plaintiffs, and Cabot Corporation was/is the defendant, in both cases.

Second, even a cursory examination of the Complaint and Amended Complaint in the Prior Federal Action and AVX's Complaint in this case, establishes that both actions arise from the same "transaction or series of related transactions"; *i.e.*, the negotiation, execution and implementation of the 2001 Supply Agreement between Cabot and AVX. For example, all Complaints begin with allegations that,

> Plaintiffs and defendant had a contract [*i.e.*, the 2000 Letter of Intent] for the supply of tantalum. Despite that agreement, when the market for tantalum went from relatively stable to extremely volatile, defendant, one of the largest companies in the market ...

> took advantage of its strong position and plaintiff's weakened position to force plaintiff into executing a new, highly unfavorable set of terms for the supply of tantalum that defendant had already contracted to supply....

Prior Federal Action Original Complaint, p. 1, and Prior Federal Action Amended Complaint, p.1; Present Complaint, ¶ 1. AVX alleges in all Complaints that,

> [a] great deal of the tantalum supply is locked up in long term contract[s] and the parties to those contracts can and do exert substantial control over the market. Half of the Sons of Gwalia's world-wide production is committed to long-term contracts with Cabot and Starck, giving those two companies substantial control over tantalum prices and supplies.

Prior Federal Action Original Complaint, ¶ 15 and Prior Federal Action Amended Complaint, ¶ 15; Present Complaint, ¶ 17. And, AVX has alleged in all Complaints that,

> AVX, still at Cabot's mercy, continued [contract] discussions in good faith to attempt to secure the best possible arrangement under the circumstances. Cabot continued to insist on a long term contract for lesser supplies of tantalum at much higher prices. Finally, because AVX needed to be able to assure its customers that it would have sufficient tantalum to meet their demands, AVX had no choice but to execute the 2001 Supply Agreement.

Prior Federal Action Original Complaint, ¶ 34 and Prior Federal Action Amended Complaint, ¶ 30; Present Complaint, ¶ 29. Numerous other similarities sufficient to establish beyond a doubt that both actions "arise out of a common nucleus of operative facts" exist. *See Mass. School of Law*, 142 F.3d at 38 (citation omitted). Indeed, AVX already has admitted as much in other papers filed this case. *See* Joint Motion to Transfer Related Case Pursuant to Local Rule 40.1(I), dated March 16, 2004 (Docket Entry No. 3), ¶ 5 ("Moreover, the previous action and the instant action 'involve the same property, transaction or event.'").

Third, this Court's dismissal of AVX's claims in the Prior Federal Action indisputably was an "adjudication on the merits." AVX's Robinson-Patman Act claim was dismissed for

failure to state a claim. AVX neither sought, nor was granted, leave to remedy the defects inherent in that claim. Moreover, it did not appeal from the Court's order of dismissal. "It is well settled in this circuit that dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a final decision on the merits." *U.S. ex rel. Karvelas v. Melrose-Wakefield Healthcare Corp.*, 360 F.3d 220, 241 (1st Cir. 2004) (*citing Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 388 (1st Cir. 1994)); *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)* is a 'judgment on the merits.'"); *Issac v. Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983) ("under Massachusetts law, as elsewhere, a dismissal for failure to state a claim . . . operates as a dismissal on the merits with *res judicata* effect").

The result does not change because AVX's pendent state law claims in the Prior Federal Action were dismissed without prejudice. As the First Circuit explicitly held in nearly identical circumstances in *Kale*, the District Court's disposition of AVX's single federal claim in the Prior Federal Action "comprise[s] a suitable springboard for the deployment of *res judicata*" regardless of the fact that AVX's related state law claims remained unresolved. 924 F.2d at 1164. The salient point is not that all of AVX's claims *actually were decided* by this Court in the Prior Federal Action, but rather that AVX was required *to raise* all related claims, including, in particular, all claims arising under federal law, when it had the opportunity to do so in that case. *Id.* at 1166 (the law requires that a plaintiff "'assert all his various legal theories and factually related allegations the first time he brings suit.'") (*quoting Rose v. Town of Harwich*, 778 F.2d 77, 79 (1st Cir. 1985)). Having passed on that opportunity in the Prior Federal Action, AVX is barred by the doctrine of *res judicata* from pursuing additional related claims against Cabot in this new action.

## CONCLUSION

For the foregoing reasons, AVX's claim is barred under the doctrine of *res judicata*. Cabot's Motion to Dismiss should be granted.

CABOT CORPORATION

By its attorneys,

_____
Robert S. Frank, Jr. (BBO No. 130950)
Brian A. Davis (BBO No. 546462)
Terrence M. Schwab (BBO No. 650793)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tele: 617-248-5000
Fax: 617-248-4000

Date: May 7, 2004

3695483.2

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON. 5/7/04