UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10467-RGS

AVX CORPORATION and AVX LIMITED

v.

CABOT CORPORATION

MEMORANDUM AND ORDER ON DEFENDANT
CABOT CORPORATION'S MOTION TO DISMISS

November 17, 2004

STEARNS, D.J.

BACKGROUND

The facts alleged in the Complaint filed in 2002 were fairly straightforward. For a number of years AVX, a manufacturer of passive electronic components, purchased tantalum, a corrosion resistant metallic element, from Cabot. In early 2000, AVX and Cabot signed a Letter of Intent to enter into a two-year tantalum purchase agreement. The world supply of tantalum tightened significantly in late 2000. Cabot used the specter of a tantalum shortage to coerce AVX into signing a five-year contract (the 2001 Supply Agreement) obligating AVX to purchase lesser quantities of tantalum at substantially higher prices than those contemplated by the Letter of Intent.

On July 26, 2002, AVX Corporation filed a declaratory judgment suit against Cabot and its affiliate, Cabot Performance Materials, Inc. The Complaint alleged violations of G.L. c. 93A, the Robinson-Patman Act, 15 U.S.C. § 13, breach of contract, and other derivative contract claims. See AVX Corporation and AVX Ltd. v. Cabot Corporation, Civil Action No. 02-11524-RGS (the prior federal action). AVX argued with respect to the

Robinson-Patman Act claim that the 2001 Supply Agreement "discriminated in price between AVX and other [tantalum] purchasers" and resulted in the "possibility of a substantial lessening of competition in [sic] the injury destruction or prevention of competition with Cabot."  See Complaint at ¶¶ 58-59.  AVX did not allege any other violation of the antitrust laws.

On September 17, 2002, Cabot filed a motion to dismiss the prior federal action. On February 5, 2003, this court heard oral argument.  At the conclusion of the hearing, the court dismissed the Robinson-Patman Act count (the only federal claim), and the state law tortious interference claim.  With respect to the Robinson-Patman Act claim, the court orally observed that

> as pled the count confuses primary line and secondary line violations.  If you read the count carefully, Paragraphs 59 and 60 are inherently contradictory.  The weakness of the count is that if it means to allege a primary line violation, AVX is not contending that it is a competitor, which would be a necessary prerequisite of a primary line claim.  Whether it is a primary line or secondary line claim, the count does not allege injury to competition.  It only alleges a possibility of injury to competition.  If it is a secondary line claim, it fails to plead a pair of interstate sales which is the necessary predicate of a prima facie case of a secondary line injury under Robinson-Patman.

Feb. 25, 2003 Hearing Tr., at 27-28.  The court ordered AVX, within thirty days, to amend its Complaint to add AVX Limited as a necessary party (AVX Limited was a signatory to the 2001 Supply Agreement).  The court also invited AVX, in amending its Complaint, to address the shortcomings it had identified in the pleading of the Robinson-Patman Act claim.

On February 20, 2003, AVX filed an Amended Complaint omitting any federal claim.

Cabot then moved to dismiss for lack of federal subject matter jurisdiction.[1]  On March 28, 2003, AVX stipulated to the dismissal of the Amended Complaint without prejudice.  See Schwab Aff., Ex. E.

On March 18, 2003, Cabot commenced a declaratory judgment action against AVX in the Massachusetts Superior Court.  AVX counterclaimed asserting the same state law claims that had figured in the prior federal action.  On January 13, 2004, AVX sought leave to amend its counterclaim to add claims under federal and state antitrust laws.  On March 4, 2004, the Superior Court (Van Gestel, J.) denied AVX's motion to amend, stating that "[t]his court has no jurisdiction over Federal antitrust claims and nothing in the proposed amendment demonstrates compliance with G.L. c. 93, sec. 3 [which sets out the jurisdictional prerequisites of the Massachusetts Antitrust Act]."  See Schwab Aff., Ex. H.

On March 8, 2004, AVX commenced this action in the federal district court (the present federal action).  The Complaint alleges the identical conduct surrounding the formation of the 2001 Supply Agreement, that is, that Cabot exploited the market shortage of tantalum to "force plaintiffs into executing a new, highly unfavorable set of terms for the supply of tantalum that [Cabot] had already contracted to supply."  However, instead of a Robinson-Patman Act claim, the new Complaint alleges that Cabot's conduct violated Section 1 of the Sherman Act.[2]  In short, while the former federal action alleged Robinson-Patman Act price discrimination, the present federal action alleges that AVX was coerced

---

[1] AVX and Cabot are Delaware corporations, thus diversity of citizenship jurisdiction is not at play.

[2] AVX alleges that "the actions of Cabot violate Section 1 of the Sherman Act, 15 U.S.C. § 1, 14."  Complaint, ¶ 41.  15 U.S.C. § 14 codifies Section 3 of the Clayton Act.

into purchasing products that it did not want to obtain the tantalum that it needed (illegal "tying" in antitrust parlance).

On June 1, 2004, Cabot moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the present federal action, arguing that the case is barred by the doctrine of *res judicata* as AVX could have, but did not assert a Sherman Act antitrust claim in its 2002 Complaint. AVX argues that Cabot's motion is "in direct derogation of a stipulation that Cabot signed and filed with this Court, [and that the motion] fails to recognize that two of the three requirements for the application of *res judicata* are not present." Opposition Memorandum, at 1.

## DISCUSSION

Where, as here, both the potentially precluding suit and the potentially precluded suit were litigated in federal court pursuant to federal question jurisdiction, federal law governs the *res judicata* (claim preclusion) effects of a federal court judgment as "applied to a later case that again presents a federal question to a federal court." Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir.1994). Cf. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506-508 (2001) (mandating reference to the law of the forum state in diversity cases). Claim preclusion applies when a three-part test is satisfied. There must be: "(1) a final judgment on the merits in an earlier suit; (2) sufficient identicality between the causes of action asserted in the earlier and later suits; and (3) sufficient identicality between the parties in the two suits." In re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001), quoting Mass. School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998).

AVX argues that there is no "final judgment on the merits" as the parties stipulated to a dismissal of the prior federal action without prejudice. As supportive of its argument, AVX cites cases discussing dismissals without prejudice under Rule 41(a). These cases are inapt. The court's dismissal of the federal claim was entered for a failure to state a claim under Rule 12(b)(6) The court invited AVX to rehabilitate the Robinson-Patman Act claim by amendment "if it could." It did not.[3]

A Rule 12(b)(6) dismissal for failure to state a claim has long been recognized as a "judgment on the merits." See Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981). Since Moitie, as an influential treatise observes, "[a] number of courts have taken [footnote 3] to indicate that a judgment entered after a dismissal under Rule 12(b) (6) permits invoking the principles of res judicata to bar any further attempt to present the claim, especially when the putative amended complaint is substantially identical to the original." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357, pp. 743-744 (2004). Among these courts is the First Circuit Court of Appeals.

> First, we reject [plaintiff] Karvelas's argument that "a ruling on a 12(b)(6) motion is not a ruling on the merits; [but rather] only a non-merits ruling on the propriety of the pleadings." It is well settled in this circuit that dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a final decision on the merits. Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 388 (1st Cir.1994). As we have explained, "the dismissal of the complaint fits comfortably under the Supreme Court's definition of a 'final decision' . . . as one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373-74 (1981)). Moreover, in the absence of a clear

---

[3]AVX willfully confuses what the parties chose to do, that is, stipulate to a dismissal without prejudice, *after* the court had ruled, with the court's entry of a Rule 12(b)(6) dismissal. It is the latter event that controls. When the parties entered their stipulation of dismissal, there was no remaining federal claim in the lawsuit.

5

statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice. See Andrews-Clarke v. Lucent Tech., Inc., 157 F. Supp. 2d 93, 99 (D. Mass. 2001) ("A dismissal for failure to state a claim is a dismissal on the merits. . . . This type of dismissal, presumed to be with prejudice unless the order explicitly states otherwise, has a claim preclusive effect."); cf. Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 628 (1st Cir. 2000) ("In this circuit, the phrase 'without prejudice,' when attached to a dismissal order, is . . . to be read . . . as a signification that the judgment does not preclude a subsequent lawsuit on the same cause of action either in the rendering court or in some other forum."). Thus, in dismissing with prejudice Karvelas's complaint under Rule 12(b)(6), the district court did not depart from established precedent but simply stated explicitly what in any event would have been presumed.

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 241 (1st Cir. 2004).[4]

AVX alternatively argues that the court's dismissal was not a final judgment on the merits for to hold otherwise

> mis-perceives the difference between a decision "on the merits" of the Robinson-Patman claim itself, and a decision on the merits of the dispute taken as a whole. . . . The Court only passed on one federal claim – the Robinson-Patman claim. It did not pass on the dispute as a whole. Thus, the most that could be precluded even under [Cabot's] analysis would be a renewed Robinson-Patman claim, a situation not before the Court. There is no case that asserts that the dismissal of one count of a larger dispute precludes all other counts in an ongoing litigation.

Opposition, at 10-11. "The policy rationale behind *res judicata* is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Bay State HMO Mgmt, Inc. v. Tingley Sys., Inc., 181 F.3d 174, 181 (1st Cir. 1999), quoting Allen v. McCurry, 449 U.S.

---

[4] In Karvelas, the Court found preclusion even though the district court, contrary to the case here, dismissed Karvelas's case with prejudice without affording him the opportunity to amend the defective complaint.

6

90, 94 (1980). To this end, the policy discourages "claims-splitting" by precluding the subsequent prosecution of a claim that for all practical purposes proves identical to a claim previously pressed.

The essence of AVX's "identicality" argument is that its dismissed prior federal claim was about Cabot's "pricing policies," while its current federal claim concerns "Cabot's accession and misuse of market power." Id. at 13. As AVX's counsel insisted at oral argument, "claims under Robinson-Patman and the Sherman/Clayton Acts are as different as night and day." Whatever the truth of these assertions, the issue is not whether the antecedent and present claims are "different" in a legal sense, but whether the subsequent claim arose from the same transaction or series of related transactions that underlay the original claim and therefore could (and should) have been raised in the first lawsuit. Mass. School of Law, 142 F.3d at 38. See Havercombe v. Dept. of Edu. of the Comm. of P.R., 250 F.3d 1, 3 (1st Cir. 2001), quoting Allen, 449 U.S. at 94 ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.") (emphasis added); Wolf v. Gruntal & Co., Inc., 45 F.3d 524, 527-528 (1st Cir. 1995) (same).

What is meant by identicality of causes of action is discussed at length by the First Circuit in Kale v. Combined Ins. Co. of Am., 924 F.2d 1161 (1st Cir. 1991), a case strikingly similar to this one in its procedural posture.

> [C]oncededly, the phrase "identity of cause of action" is more easily stated than defined. See Harper Plastics, Inc. v. Amoco Chemicals Corp., 657 F.2d 939, 944 (7th Cir.1981). A single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law. See Athlone, 746 F.2d at 983. Yet, such

7

> heterogeneity alone does not work an exception to the rule of preclusion. So long as different theories of recovery, howsoever prolific, derive from the same cause of action, the requisite identity is achieved if, and to the extent that, all such theories concern "the same operative nucleus of fact." Lovely, 498 F.2d at 1263. In other words, as long as the "new complaint grows out of the same 'transaction or series of connected transactions' as the old complaint," Isaac, 706 F.2d at 17 (quoting Restatement (Second) of Judgments § 24), the causes of action are considered to be identical for *res judicata* purposes. Thus, if the claims asserted in Kale I and Kale II, respectively, were sufficiently related, that is, if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, the two suits advanced the same cause of action notwithstanding any differences in remedies sought or theories of recovery pleaded. *A fortiori*, our focus must not be the theoretical raiment in which the claims are robed, but "whether the underlying facts of both transactions were the same or substantially similar." Manego v. Orleans Bd. of Trade, 773 F.2d 1, 6 (1st Cir.1985), cert. denied, 475 U.S. 1084 (1986).

Kale, 924 F.2d at 1166. See also Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6-7 (1st Cir. 1992), citing the First Circuit's adoption of the "transactional" definition of *res judicata* set out in Restatement (Second) of Judgments § 24:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

As the Robinson-Patman Act claim and Sherman/Clayton Act claims arise out of the same "operative nucleus of fact," indeed out of the same transaction, the prior dismissal of the Robinson-Patman Act claim is *res judicata* as to AVX's Sherman and Clayton Act

claims. See Mass. School of Law, 142 F.3d at 37-39 (law school's tort claims against an accrediting association and an association of law schools were barred by *res judicata*, because the claims arose from same set of operative facts as the school's earlier antitrust claims against the same defendants and could have been brought in the earlier litigation).

As a fallback position, AVX argues that the court, exercising "its inherent power" should not apply claim preclusion to AVX's reprise of the antitrust laws because to do so would work an "undue hardship." In support of this equitable argument, AVX cites Rose v. Town of Harwich, 778 F.2d 77 (1st Cir. 1985), where a landowner (a roving seaman) challenged the Town's taking of his land, allegedly without adequate notice or fair compensation. Nonetheless, Judge (now Justice) Breyer found that

> if the courts relaxed the principles of claim preclusion every time it appeared that a litigant had a strong claim 'on the equities,' the doctrine would fail to serve its purposes of promoting judicial economy and repose. In some individual instances a fairer result might be achieved, but more often the litigation of stale claims and the resulting uncertainty would mean injustice or hardship. For this reason, the Supreme Court has instructed us not to stray from traditional principles of res judicata by making any "ad hoc determination of the equities in a particular case." Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981).

> If, as the Restatement suggests, there may nonetheless be an occasional exception to prevent unusual hardship, this case does not fall within it. This is not a case in which the plaintiff has "clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. . . ." Restatement (Second) of Judgments § 26(1)(f). Rose filed his original action nearly eighteen months after he received notice of the 'taking,' and roughly nine years after the water tower went up on the property he claims was his. Thus, even if we assume, purely for argument's sake, that the Massachusetts statute of limitations would offend the Constitution if applied literally, Rose himself was not treated with extreme unfairness insofar as that statute was applied to him. Nor is this a case in which the state court's decision was "plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme."

9

>Restatement (Second) of Judgments § 26(1)(d).

Rose, 778 F.2d at 82.  There are simply no extraordinary circumstances here that would cause the court to sidestep the policies underlying the doctrine of *res judicata*.

Finally, AVX makes a passing argument that "even if the Court determined that, as a technical matter, the original dismissal could preclude this action, it should exercise its power under Fed. R. Civ. P. 60 to give AVX relief from the effect of that order."  In the body of its Opposition Memorandum, AVX cites part (b) of Rule 60, but fails to reference any of the bases for relief specified in the Rule's numerical sub-parts.  As a preliminary matter, a trial court is cautioned to approach motions for relief from judgment with "the understanding that relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly."  Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).  Rule 60(b) allows the court to relieve a party from final judgment for

>(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Rather than specifying a ground for relief, AVX simply advises the court that Rule 60(b) permits relief from a final judgment "for any reason justifying relief."  Opposition Memorandum, at 18.  This ecumenical approach to Rule 60(b) fails because, as would be

expected, the burden of proof is on the party seeking relief under the Rule.  See e.g., U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 52 (1st Cir. 2002); Key Bank of Maine v. Tablecloth Textile Co. Corp., 74 F.3d 349, 352 (1st Cir. 1996); Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995).  AVX has not only failed to shoulder its burden of proof, it has abdicated its responsibility to do so.

Moreover, the only foreseeable grounds for AVX's motion (mistake, inadvertence, surprise, excusable neglect, or newly discovered evidence) require the bringing of a motion within one year of the judgment.  The prior federal action was dismissed on April 1, 2003.  AVX's Opposition to Cabot's motion which first raised the Rule 60(b) issue (if treated as a motion) was filed on May 17, 2004.  AVX's "failure to file [its] Rule 60(b) motion within one year of the judgment 'is an absolute bar to relief from the judgment.'" Gonzalez v. Walgreens Co., 918 F.2d 303, 305 (1st Cir. 1990), quoting United States v. Marin, 720 F.2d 229, 231 (1st Cir.1983) (per curiam).

### ORDER

For the foregoing reasons, Cabot's motion to dismiss AVX's Complaint is ALLOWED.

SO ORDERED.

s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE