C -10467

# United States Court of Appeals
## For the First Circuit

_____

No. 04-2656

AVX CORPORATION and AVX LIMITED,

Plaintiffs, Appellants,

v.

CABOT CORPORATION,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

_____

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Siler,˙ Senior Circuit Judge.

_____

Evan Slavitt with whom Bodoff & Slavitt LLP was on brief f
appellants.
Robert S. Frank, Jr. with whom Brian A. Davis, Terrence ]
Schwab and Choate, Hall & Stewart LLP were on brief for appelle

_____

September 13, 2005

_____

_____

˙Of the Sixth Circuit, sitting by designation.

**BOUDIN, Chief Judge**. This appeal, raising an interest  g
res judicata issue, grows out of two law suits between essentia  y
the same parties: AVX Corporation and AVX Limited (collective  ,
"AVX"), and Cabot Corporation ("Cabot").[1]  AVX makes electro  c
components and other products in which the metallic elem  t
tantalum is sometimes employed. Cabot purchases tantalum, conve  ʒ
it into powder or wire, and sells these products to manufactur  ʒ
such as AVX.

Because the present case was resolved on a motion  ›
dismiss, we accept as true the allegations in AVX's complair
Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In early 200
AVX and Cabot, who had done business for some time, signed a lett
of intent to enter into a two-year tantalum purchase agreemer
Later in the year, as the market for tantalum tightened, t
parties signed a final five-year agreement (effective January
2001) with quantity and price terms less favorable to AVX th
those contemplated by the letter of intent.

In July 2002, AVX Corporation sued Cabot and a Cab
affiliate in the federal district court in Massachusetts, chargir
them with unlawful price discrimination under the Robinson-Patma
Price Discrimination Act, 15 U.S.C. § 13 (2000), and assertir
claims under Massachusetts law; one aim of the suit was t

---

[1]Cabot affiliate Cabot Performance Materials, Inc. was also
defendant in the first law suit, but not in the second.

invalidate the five-year agreement and to have the 2000 letter f

intent treated as a binding contract. Although the compla t

asserted diversity jurisdiction, AVX Corporation and Ca t

Corporation are both Delaware corporations, precluding diversi .

Nevertheless, the Robinson-Patman count is within the distr t

court's original jurisdiction, 28 U.S.C. § 1337 (2000), and ∋

state claims were potentially within the court's pend ꞉

jurisdiction, id. § 1367.

On February 5, 2003, the court held a hearing on a mot: ꞌ

by Cabot to dismiss the action, during which the district jue ꞌ

agreed with Cabot that the Robinson-Patman claim (and one of t ꞉

six state counts) had to be dismissed for failure to state a clai

Specifically, the court found that the complaint's allegations c .

not include all necessary elements of a Robinson-Patman clai

although it said that AVX could try to repair the pleadi

deficiency. The court also found that AVX Limited was a necessa

party and instructed AVX that it must amend the complaint

include AVX Limited if it wished to move forward, giving AVX thir

days to file any desired amendment.

Within thirty days AVX filed an amended complain

joining AVX Limited as a plaintiff and setting forth its state l.

claims but no federal counts. Cabot responded by moving to dismi:

for lack of federal subject-matter jurisdiction, and short!

thereafter Cabot filed a declaratory judgment action against AVX :

Massachusetts Superior Court seeking to have the state co t

declare the five-year agreement valid. Then, before the distr t

court took any further action, AVX and Cabot filed a jc t

stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)( )

dismissing "this action . . . without prejudice . . . ."

Back in state court, AVX subsequently asserted, s

counterclaims, the state law claims asserted in its origi l

federal court complaint. After a nine-month delay, AVX then sou :

to add to its counterclaims an additional count alleging violati s

of the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 14, as well :

state antitrust laws. This claim asserted that Cabot used : :

monopoly power over certain tantalum products to force AVX '

purchase other tantalum products that it did not need--in antitru

parlance, a classic tying violation. Once again, AVX targeted t

five-year purchase agreement signed in late 2000.

After the Superior Court denied the motion to amend

federal courts have exclusive jurisdiction over federal antitru

claims, 15 U.S.C. §§ 4, 15; see Gen. Inv. Co. v. Lake Shore & Mic

S. Ry. Co., 260 U.S. 261, 286-87 (1922)--AVX filed the present l

suit against Cabot in federal district court, presenting the sa

Sherman and Clayton Act claim it had asserted in its propos

state-court amended counterclaim. The case was transferred to tl

same district judge who had presided over AVX's original 20(

action.    In due course, the district court dismissed the    w
complaint on res judicata grounds.

The district court found that the case met the three-p    t
test for federal claim preclusion set forth in In Re Iannochi    ,
242 F.3d 36, 43 (1st Cir. 2001):   it said that the original R    e
12(b)(6) dismissal of the Robinson-Patman claim was a fi    l
judgment on the merits; that the new Sherman and Clayton Act cl    n
was sufficiently related to the Robinson-Patman claim to invoke    s
judicata; and that the parties to the two federal actions were    e
same.   AVX now appeals to contest this ruling.   Our review is    e
novo.   Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 33 (1st C:
1996).

The rules for res judicata, where a federal court
considering the effect of its own prior disposition of a feder
claim on a newly brought federal claim, are a matter of feder
law.   Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 57
582 (1st Cir. 1995).   The rules have developed through judici
decision, drawing on common law res judicata doctrine as it h
developed over time.   This case does not involve collater
estoppel (or issue preclusion) but rather the branch of r
judicata known as merger and bar (or claim preclusion).

Traditional merger and bar doctrine prevents a party fro
asserting a claim previously decided on the merits by a fina
judgment in another case between the same parties (or the:

-5-

privies): the re-asserted claim is deemed "merged" into the p1   ·r

judgment if the plaintiff had won or "barred" by it if    .e

plaintiff had lost. See Restatement (Second) of Judgments § 1    &

cmt. a (1982) (merger); id. § 19 (bar).  Ordinarily, a dismis    l

for failure to state a claim is treated as a dismissal on    e

merits, and there is abundant case law to this effect.  E.   ,

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F   d

220, 241 (1st Cir.), cert. denied, 125 S. Ct. 59 (2004); Aceve   :

Villalobos v. Hernandez, 22 F.3d 384, 388-89 (1st Cir.), ce   .

denied, 513 U.S. 1015 (1994).

In the common-law vocabulary, a price discriminat:   1

claim under the Robinson-Patman Act would not be the same claim   :

monopolization or tying claims under the Sherman and Clayton Act

because the Robinson-Patman claim has quite different elements th

must be proved to make out the claim.  So one might expect th

claim preclusion would not operate in the present case.  Howeve

as a result of case law development, identity of claims in t

common-law sense is no longer a precondition to federal cla

preclusion.  In most situations involving federal claims, it is n

enough to trigger claim preclusion that the plaintiff's seco

claim grows out of the same transaction or set of relat·

transactions as the previously decided claim.  Aunyx Corp. v. Can·

U.S.A., Inc., 978 F.2d 3, 6-7 (1st Cir. 1992), cert. denied, 5(

U.S. 973 (1993); Kale v. Combined Ins. Co. of Am., 924 F.2d 116:

1166 (1st Cir.), cert. denied, 502 U.S. 816 (1991). The impli  t
rationale is that for the sake of efficiency, all such cla   s
should be brought together, if this is possible. In short, the   s
judicata doctrine functions not only in its traditional role   f
preventing repeat claims, but has become a compulsory join   r
requirement for closely related claims. Compare Fed. R. Civ.   .
13(a).

       In this case, there is a substantial argument that   ɜ
Sherman and Clayton Act claim grows out of the same transaction   ·
set of transactions as the Robinson-Patman claim; the distr:   ·
court so found, although AVX contests the ruling, and bc   .
complaints focus on the same contract.   We bypass the "sa
transaction" issue because we conclude that the district court
February 5, 2003, dismissal of the Robinson-Patman count was not
"final judgment" and that the entire action was ultimately dispos
of by stipulation "without prejudice."

       The first requirement for claim preclusion--the rules m
be somewhat different for issue preclusion, see Restateme:
(Second) of Judgments § 13 & cmt. g--is that there be a fin;
judgment in the prior case. Id. §§ 13, 18-19. In this instance
the district judge in the original federal action announced fro
the bench his decision to dismiss the Robinson-Patman count (ar
one state count); but a number of state claims were left pendinç
quite apart from the leave given to amend the Robinson-Patman clai

within thirty days.  At no point did the court enter a fi  1
judgment as to all of the claims, Fed. R. Civ. P. 58, or a part  1
final judgment as to the Robinson-Patman claim, Fed. R. Civ.  .
54(b).

The order from the bench patently did not constitut  a
final judgment for purposes of the statutes and rules governing  ə
timing of appeals from final judgments. Ordinarily, a judgment  ;
not final unless it disposes of all claims against all parti‹
although it is possible to have a partial final judgment as to s‹  :
claims or some parties under Fed. R. Civ. P. 54(b).  In a 1  /
instances, the statutes or doctrine also permit interlocut‹  ·
appeals (e.g., preliminary injunctions and certified controlli
questions of law, 28 U.S.C. § 1292), but no such exception
applicable here.

In each of the cases cited by the district court and
Cabot for the proposition that Rule 12(b)(6) dismissals ha
claim-preclusive effect, the dismissal disposed of an enti
complaint, not just some subset of the plaintiff's claims.  S‹
Karvelas, 360 F.3d at 223, 241; Acevedo-Villalobos, 22 F.3d at 38‹
Isaac v. Schwartz, 706 F.2d 15, 16-17 (1st Cir. 1983) (decide
under Massachusetts law); Andrews-Clarke v. Lucent Techs., Inc.
157 F. Supp. 2d 93, 97 (D. Mass. 2001); Connaughton v. New Englar
Tel. & Tel., No. 87-2369-MA, 1988 WL 34321, at *1 (D. Mass. Mar

-8-

18, 1988).[2] As such, the dismissal in fact "end[ed] the litigat n
on the merits and le[ft] nothing for the court to do but exec e
the judgment," Acevedo-Villalobos, 22 F.3d at 388 (quot g
Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373 4
(1981)), and thus is properly considered a "final judgment" r
federal claim preclusion purposes.

A final judgment embodying the dismissal would eventua /
have been entered if the state claims had been later resolved /
the court. Instead, before any further action by the court, ; <
and Cabot jointly dismissed the entire action without prejudi<
Even without the parties' use of the phrase, the entire action v :
automatically dismissed without prejudice by virtue of Rule 41
terms because the parties did not specify a dismissal wi
prejudice. See Fed. R. Civ. P. 41(a)(1).

Thus, if the conventional finality tests f
appealability purposes are applied to determine the finality of
judgment for claim preclusion purposes, there was never a fin
judgment on the Robinson-Patman claim. There was only t
announcement of a dismissal, which would have matured into a fin
judgment if the court had ever resolved the remaining claim

---

[2]The Rule 12(b)(6) dismissal that was the source of th
Supreme Court's oft-cited footnote in Federated Dep't Stores, In<
v. Moitie, 452 U.S. 394 (1981), stating that "[t]he dismissal f<
failure to state a claim under Federal Rule of Civil Procedur
12(b)(6) is a 'judgment on the merits,'" id. at 399 n.3, wa
likewise a dismissal of "all of the actions 'in their entirety,'
id. at 396.

Courts generally assume that the finality requirements in the ˙o
spheres are interchangeable, 18A Wright, Miller & Cooper, Fede l
Practice and Procedure: Jurisdiction 2d § 4432 & n.3, at 53, § 4 4
& n.28, at 128 (2002) (collecting cases), and this appro h
enhances predictability and avoids confusion.

The Restatement does contemplate a possible softening f
the traditional final judgment requirement in certain ca ɜ
involving issue preclusion. Restatement (Second) of Judgments § 3
cmts. b, g. There is some case law support for this view. S<
e.g., Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, ɪ
(2d Cir. 1961) (Friendly, J.), cert. denied, 368 U.S. 986 (1962
However, while its language on the matter is not crystal clear, t
Restatement appears to adhere to the conventional finality test f
merger and bar. See Restatement (Second) of Judgments § 13 & cm
b. While Wright, Miller and Cooper recognize that this may produ
some incongruities in some circumstances, they too appear general
to support this approach. See 18A Wright, Miller & Cooper, Feder
Practice and Procedure: Jurisdiction 2d § 4434 & nn. 28-30, at 12
30.

There might be cases that would tempt a court to apply
more flexible approach to defining finality for federal cla:
preclusion purposes. Imagine, for example, that shortly before tl
present case, another district court had completed a lengthy tria
of AVX's Robinson-Patman claim and entry of a final judgment wa

-10-

awaiting only the disposition of other claims; at that point   e

argument for giving the other court's ruling claim-preclus   e

effect might appear to be a strong one.   Indeed, one cc   d

construct an entirely separate jurisprudence of finality for   s

judicata responsive to its purposes rather than to conce   s

governing immediate appealability vel non.

But every such deviation from the finality test used   c

appealability purposes has a cost, namely, the uncertainty crea   i

by having two different finality tests; it is not clear that mi   1

would be gained; and there are some policy reasons for a sinc   ?

test.   In particular, an interim order that is not accompanied   '

an express entry of final judgment "is subject to revision at a   '

time before the entry of judgment adjudicating all the claims a

the rights and liabilities of all the parties."   Fed. R. Civ.

54(b); see also, e.g., United States v. Arkansas, 791 F.2d 157

1576 (8th Cir. 1986).   In all events, nothing in the present fac

suggests that this is a case for an innovating departure from t

prevailing final judgment requirement for federal claim preclusio

Cabot's position in this case is further weakened by t

dismissal of the entire original federal action without prejudi

by stipulation of the parties.   The district court took the vi-

that at the point that this occurred, "there was no remaini1

federal claim in the lawsuit."   But this assumes the premise; tl

Robinson-Patman claim was in some sense still in the law suit (tl

-11-

dismissal could have been reconsidered or eventually appealed)   d

in some sense out (absent reconsideration by the judge, it cc   d

not have been pursued at trial without an amendment to   e

complaint--and the original time set for amending had expired)

What was dismissed without prejudice was "the action"   1

which a Robinson-Patman claim had been asserted.   If   ɘ

stipulation is taken at face value, it is easy enough to read it   ɟ

encompassing all claims asserted in the law suit at any sta‹

Cabot would certainly have been aggrieved if, as soon as 1 ɟ

stipulation were signed, AVX had sought entry of a final judgmɛ

on the Robinson-Patman claim and then attempted to appeal tɧ

dismissal.   In one earlier case we said as to a volunʇa

dismissal:

> Absent explicit conditions to the contrary,
> the prior proceedings became a nullity.   We
> agree with the [In re] Piper [Aircraft
> Distrib. Sys. Antitrust Litig., 551 F.2d 213
> (8th Cir. 1977)] and [Cabrera v. Municipality
> of Bayamon, 622 F.2d 4 (1st Cir. 1980)] panels
> that, once an action has been voluntarily
> discontinued, all markings are erased and the
> page is once again pristine.

Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990); sɘ

also Piper, 551 F.2d at 219 (voluntary dismissal without prejudiɕ

under Fed. R. Civ. P. 41(a)(1)(i) "carries down with it previoι

proceedings and orders in the action, and all pleadings, both ɕ

plaintiff and defendant, and all issues, with respect t

plaintiff's claim" (internal quotation mark omitted)).   Whether ɕ

not there are qualifications to this generalization, Cabot does   t
explain how it is to be reconciled with the district court decis   n
in this case.

Admittedly, the parties almost surely did not expect t   t
the Robinson-Patman claim was ever going to be resurrected in t.   ɜ
law suit or any other. If Cabot had insisted, AVX might well h;   ɜ
agreed that the stipulation be drafted to say that the dismis:   .
was without prejudice except that the Robinson-Patman claim ʋ   ;
dismissed with prejudice. But Cabot did not so insist.  Howeʋ
the stipulation is read, it certainly does not itself constitute
dismissal of the Robinson-Patman claim with prejudice; at best,
leaves Cabot free to argue that the original dismissal was a fin
judgment--a position we have rejected.

Of course, AVX has not sought to resurrect the Robinso
Patman claim; what Cabot is losing is the arguable ability
foreclose other antitrust claims (under the Sherman and Claytᴏ
Acts) on which the district court never pronounced. It is hard ʈ
shed too many tears for Cabot because it now has to defend agains
claims not previously resolved on the merits at all.  In tʰ
unlikely event that AVX sought to assert the Robinson-Patman clai
now--which it has not attempted--the district judge would likel
make short work of the effort.

Rather, the real loser in this instance is the interes
in judicial efficiency that lies behind the replacement of th

-13-

common law rule defining claims narrowly with the pres t
transactional test. See Apparel Art Int'l, 48 F.3d at 583 (quot  g
Allen v. McCurry, 449 U.S. 90, 94 (1980)); see also Bay State  2
Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 181-82 (1st C  .
1999), cert. denied, 528 U.S. 1187 (2000).   Rule 41(a)(1)(  )
evidently permits parties to circumvent this interest for reas  3
of their own by dismissing without prejudice and without  1  :
district court's consent.   There is no limit on when such  .
stipulation can be filed, and it could easily occur after the cou
had done considerable work on an action.

But one side usually has an interest in resisting such
unqualified dismissal without prejudice as to any claim on which
effectively  prevailed  (albeit short of final judgment), sin
otherwise the case can later be resurrected.   Further, there
some interest in letting the parties agree to halt litigation, a:
even if there is a net loss in efficiency in a particular case, :
was up to those who framed and approved Rule 41 to balanc
efficiency for the court against party autonomy.

There is relatively little circuit case law on th
problem posed in this case.  A Seventh Circuit case uses the sam
approach we have adopted and so supports our position.  See Gilber
v. Braniff Int'l Corp., 579 F.2d 411 (7th Cir. 1978) (involvin
dismissal with leave to amend).  But the decision was analyzing th
effect of an earlier decision in a state court where th

-14-

formalities of finality were somewhat different than those i  a

federal court; and it is worth noting that in the Seventh Circ  t

case a dissenting judge thought that res judicata should apply  ɔ

bar the second action.  Id. at 414 (Pell, J., dissenting).

Contrary to Cabot's contention, this case is   :

controlled by our prior decision in Kale.  There, Kale brough!  ɪ

federal age discrimination suit in the district court together w:  ɪ

associated state claims; when the district court found the fedeɪ

claim barred by the statute of limitations, it dismissed t

pendent state claims without prejudice--Kale having not troubled

press them based on diversity jurisdiction which unquestionab

existed.  Kale, 924 F.2d at 1163-64.  When Kale then brought n

state claims in state court, the employer removed the new action

federal court where the judge then invoked res judicata to dismi

the state claims and we affirmed.  Id. at 1164, 1169.

In Kale, there was a final judgment adjudicating tl

federal claim and thus a traditional basis for the operation of rɛ

judicata.  Kale, 924 F.2d at 1165.  The district court j

dismissing related state claims had said that this was withoᴜ

prejudice, but this court said that because the state claims coul

have been pursued in the first law suit based on diversit

jurisdiction, ordinary res judicata rules applied to bar the ne

law suit on the same claims.  Id. at 1166-67.  In this case, ther

-15-

is no final judgment on the Robinson-Patman claim so res judic  a
cannot operate.

The judgment of the district court is <u>vacated</u> and   e
matter <u>remanded</u> for further proceedings consistent with t  s
decision. Costs are taxed in favor of the Appellants.

<u>It is so ordered</u>.