UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 04-10467-RGS |
| v. | ) ) | |
| CABOT CORPORATION, | ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CABOT CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR A STAY

Defendant Cabot Corporation ("Cabot") respectfully submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings, or, in the Alternative, for a Stay, filed pursuant to Fed. R. Civ. P. 12(c). Cabot is entitled to the entry of judgment in its favor as a matter of law on plaintiffs AVX Corporation and AVX Limited's (collectively "AVX") one-and-only claim -- which alleges that Cabot forced AVX into signing an agreement containing an unlawful "tying" arrangement in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 14 -- because the Final Judgment that recently was entered in the parties' related Massachusetts Superior Court action, conclusively establishes that AVX cannot prove an essential element of that claim; i.e., that AVX was "coerced" into accepting the purportedly unlawful tying arrangement alleged in this case. To the contrary, the Final Judgment entered by the Superior

Court (per the Hon. Allan van Gestel) explicitly finds that the parties' agreement "was not induced by economic duress, but rather *was voluntarily entered into* by [AVX] and [Cabot]" (emphasis added). Accordingly, AVX is collaterally estopped from re-litigating the Superior Court's findings -- which are subject to judicial notice by this Court -- in this proceeding. *See, e.g.*, Alba v. Raytheon Co., 441 Mass. 836, 841 (2004) ("The judicial doctrine of collateral estoppel provides that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim").

Alternatively, Cabot respectfully requests that the Court exercise its discretion to stay this action, for reasons of judicial economy and efficiency, until AVX's appeal from the Superior Court's Final Judgment is resolved.

### Factual Background

This action represents just one of a series of legal disputes between AVX and Cabot arising from a multi-year, written Supply Agreement for tantalum products that AVX and Cabot entered into effective January 1, 2001 (the "2001 Supply Agreement"). Complaint and Jury Demand ("Complaint"), ¶ 29. Cabot produces various tantalum products, and AVX uses tantalum products that it purchases from Cabot (and other suppliers) to manufacture passive electronic components. *Id.*, ¶¶ 7-9. The 2001 Supply Agreement -- which was signed by the parties at a time of particularly short supply and high demand for tantalum products -- calls for AVX to purchase certain minimum quantities of tantalum products from Cabot at fixed prices over a five year period. *Id.*, ¶¶ 16, 23, Exhibit C. The Complaint in the present case alleges that Cabot exerted economic pressure on AVX such that AVX "had no choice but to execute

-2-

the 2001 Supply Agreement" and thereby contractually bind itself to purchase substantial quantities of "flake" tantalum powder (which AVX admittedly wanted), as well as substantial quantities of "non-flake" tantalum powder (which AVX purportedly did not want), over multiple years at inflated prices. *Id.*, ¶¶ 23-30, 37-38. More specifically, AVX alleges, *inter alia*, that,

- at the time the 2001 Supply Agreement was negotiated, "a tantalum shortage [was] evident" (Complaint, ¶ 23);

- when Cabot invited AVX to enter into negotiations for the 2001 Supply Agreement, AVX "believed that no choice other than to bargain with Cabot" (*Id.*, ¶ 27);

- during negotiations, Cabot insisted that AVX sign "a long term contract for lesser quantities of tantalum at higher prices," and threatened to "cease delivery of tantalum" to AVX if its demands were not met (*Id.*, ¶ 28);

- "because AVX needed to be able to assure its customers that it would have sufficient tantalum to meet their demands, AVX had no choice but to execute the 2001 Supply Agreement" (*Id.*, ¶ 29); and

- "AVX was not the only company subjected to Cabot's coercive strategies." (*Id.*, ¶ 30).

AVX further alleges that "[f]lake powders and non-flake powders are separate products," and that Cabot committed an unlawful "tying" violation under the Sherman Antitrust Act, 15 U.S.C. §§ 1, 14, by "condition[ing] AVX's purchase of flake powders on its purchase of non-flake powders." *Id.*, ¶¶ 37-38, 41.

While this federal court action has been pending, AVX and Cabot also have been parties to a separate, but related, action in Massachusetts Superior Court for Suffolk County captioned <u>Cabot Corporation v. AVX Corporation and AVX Limited</u>, Civil Action No. 03-01235 (the "State Court Action"). True copies of Cabot's Complaint and AVX's Answer,

Counterclaim and Jury Demand ("State Court Counterclaim") in the State Court Action are appended to this Memorandum as Exhibits A and B, respectively.[1] In its State Court Counterclaim, AVX alleged that it had executed the 2001 Supply Agreement under "economic duress" and, therefore, that AVX was not bound by the terms of that Agreement. Exhibit B, ¶¶ 1, 30. More specifically, AVX alleged, *inter alia*, that,

- at the time the 2001 Supply Agreement was negotiated, "a tantalum shortage [was] evident" (State Court Counterclaim, ¶ 22);

- when Cabot invited AVX to enter into negotiations for the 2001 Supply Agreement, AVX "believed that [it had] no choice other than to bargain with Cabot" (*Id.*, ¶ 26);

- during negotiations, Cabot insisted that AVX sign "a long term contract for lesser quantities of tantalum at higher prices," and threatened to "cease delivery of tantalum" to AVX if its demands were not met (*Id.*, ¶ 29);

- "because AVX needed to be able to assure its customers that it would have sufficient tantalum to meet their demands, AVX had no choice but to execute the 2001 Supply Agreement" (*Id.*, ¶ 30), and

- "AVX was not the only company subjected to Cabot's coercive strategies." (*Id.*, ¶ 31).

Cabot filed a Motion for Partial Summary Judgment in the State Court Action after the close of discovery. On June 18, 2004, the Superior Court issued a Memorandum and Order granting Cabot's Motion for Partial Summary Judgment in its entirety. *See* Cabot Corp. v. AVX Corp. and AVX Ltd., 18 Mass.L.Rptr. 36, 2004 WL 1588116, at *7 (Mass. Super.

---

[1] This Court properly may take judicial notice of matters of public records -- including pleadings and judicial opinions from a related state court proceeding between the same parties -- when deciding a motion for judgment on the pleadings. *See, e.g.,* Jarosz v. Palmer, 436 Mass. 526, 530 (2002) ("A judge may consider on a motion for judgment on the pleadings those facts of which judicial notice can be taken."); Boateng v. InterAmerican University, Inc., 210 F.3d 56, 60-61 (1st Cir. 2000) (court properly may look to matters of public record, including documents from prior state court adjudications, in deciding a motion under Fed. R. Civ. P. 12(b)(6)).

June 18, 2004), a true copy of which is appended to this Memorandum as <u>Exhibit C</u>. One year later, the parties stipulated to the dismissal without prejudice of AVX's last remaining counterclaim. A true copy of the parties' Stipulation of Dismissal of Unresolved Claims Without Prejudice and Request for Entry of Final Judgment, dated June 27, 2005, is appended to this Memorandum as <u>Exhibit D</u>.

On October 6, 2005, the Superior Court entered Final Judgment in the State Court Action favor of Cabot and against AVX. A true copy of that Final Judgment is appended to this Memorandum as <u>Exhibit E</u>.[2] The Final Judgment includes a series of judicial declarations, one of which expressly states that "the 2001 Supply Agreement was not induced by undue economic duress, but rather *was voluntarily entered into by [Cabot] and [AVX].*" Final Judgment at 2 (emphasis added).

On October 18, 2005, AVX appealed from the Superior Court's Final Judgment in the State Court Action. A true copy of AVX's Notice of Appeal is appended to this Memorandum as <u>Exhibit F</u>. AVX's appeal still is pending.[3]

---

[2] The Superior Court's October 6, 2005 Final Judgment is titled "Corrected Final Judgment (Summary Pursuant to Mass. R. Civ. P. 56)" because it rectified certain typographical errors contained in the Court's original Final Judgment, issued on July 28, 2005.

[3] Cabot could not have raised in its prior Motion to Dismiss this case, dated May 7, 2004, an argument based on the collateral estoppel effect of the Superior Court's summary judgment decision in the State Court Action. Massachusetts law, which governs the question of whether collateral estoppel applies (*see* <u>Allen v. McCurry</u>, 449 U.S. 90, 96 (1980) ("In ascertaining whether issue preclusion flows as a consequence of previous state court litigation, a federal court must look to state law")), requires entry of a "valid and final judgment" before collateral estoppel can be applied. <u>Alba v. Raytheon Co.</u>, 441 Mass. 836, 841 (2004). Final Judgment in the State Court Action was not entered until October 18, 2005, almost 18 months after Cabot filed its prior Motion to Dismiss, and almost 11 months after this Court had ruled on that Motion.

## Argument

I. **CABOT'S MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE ALLOWED BECAUSE AVX IS ESTOPPED FROM RE-LITIGATING THE MASSACHUSETTS SUPERIOR COURT'S FINAL JUDGMENT THAT AVX VOLUNTARILY EXECUTED THE 2001 SUPPLY AGREEMENT, WHICH DETERMINATION IS NECESSARILY FATAL TO AVX'S TYING CLAIM IN THIS ACTION.**

The basis for Cabot's Motion for Judgment on the Pleadings is simple and straightforward. In order to prevail on its tying claim in this action, AVX must prove that Cabot forced AVX to enter into the 2001 Supply Agreement, which constitutes the allegedly unlawful tying arrangement, against AVX's will. *See* Data General Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1180 (1st Cir. 1994) ("Proof of a tying arrangement generally requires evidence that the supplier's sale of the tying product is conditioned upon the *unwilling* purchase of the tied product from the supplier or an *unwilling* promise not to purchase the tied product from any other supplier") (emphasis added); Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 17 (1st Cir. 1996) ("the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to *force* the buyer into the purchase of a tied product") (emphasis added). Proof of actual coercion is "an essential element of any tying arrangement." Cia. Petrolera Caribe, Inc. v. Avis Rental Car Corp., 576 F. Supp. 1011, 1016 (D.P.R. 1983), *aff'd*, 735 F.2d 636 (1st Cir. 1984).

AVX cannot prove that Cabot forced AVX to enter into the 2001 Supply Agreement, however, because the Massachusetts Superior Court already determined in its Final Judgment, after a full hearing on the merits, that AVX "voluntarily entered into" the 2001 Supply Agreement. *See* Exhibit E (Final Judgment) at 2. As discussed more fully below, *see* pp. 10-

11, AVX is estopped from re-litigating the same issue in this proceeding notwithstanding the fact that the Superior Court's Final Judgment currently is on appeal. Accordingly, Cabot's Motion for Judgment on the Pleadings should be allowed.

1. *Coercion Is An Essential Element Of A Tying Claim.*

"Section 1 of the Sherman Act prohibits a seller from 'tying' the sale of one product to the purchase of a second product if the seller thereby avoids competition on the merits of the 'tied' product." Data General, 36 F.3d at 1178; Borschow Hospital, 96 F.3d at 17. In order to prove the existence of an unlawful tying arrangement, the buyer must establish that the arrangement was "coerced" or entered into "unwillingly." Data General Corp., 36 F.3d at 1180-1181 (there must be actual proof that the defendant "coerced customers to accept" the tying arrangement); *see also* Borschow Hospital, 96 F.3d at 17 (seller must "force the buyer into the purchase of a tied product"); Lee v. The Life Ins. Co. of North America, 23 F.3d 14, 16 (1st Cir. 1994) (an invalid tying arrangement involves a seller using its market power "to coerce a buyer already intent of purchasing the tying product ... into buying a second tied product") (internal quotations omitted); Cia. Petrolera, 576 F. Supp. at 1016 (D.P.R. 1983) ("Coercion is an essential element of any tying arrangement, *i.e.*, forcing the purchaser ... to take the unwanted tied product along with the tying product").

Thus, as the foregoing precedent makes clear, AVX must establish that it executed the 2001 Supply Agreement unwillingly as a result of Cabot's coercion in order to prevail on its tying claim in this case. This AVX cannot do. The Final Judgment entered in the State Court Action definitively establishes that AVX "voluntarily entered into" the 2001 Supply Agreement and, for the reasons discussed below, AVX is bound by that determination in this action. Accordingly, Cabot is entitled to the entry of judgment in its favor on AVX's tying claim. *See*

Lee, 23 F.3d at 16 (affirming district court's dismissal of tying action where plaintiff failed to state a colorable tying claim under the Sherman Act, 15 U.S.C. § 1).

    **2.    *AVX Is Bound By The Superior Court's Final Judgment That AVX "Voluntarily Entered Into" The 2001 Supply Agreement.***

Before applying the doctrine of collateral estoppel, Massachusetts law requires a court to affirmatively answer four questions, which are:

> (1) was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication?

Alba, 441 Mass. at 842 (citations omitted). If each of these questions is answered in the affirmative, then collateral estoppel applies regardless of whether the claims asserted in the prior adjudication and the current action were the same or different. *See* Johnson v. Mahoney, 424 F.3d 83, 94 (1st Cir. 2005) ("Massachusetts courts have repeatedly applied the doctrine of collateral estoppel even though the second action involved a different type of claim from the first," *citing* Alba); *see also* Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 372 (1985) (prior judicial determination of an issue "is conclusive in a subsequent action between the parties, whether on the same or a different claim").

In the present case, the correct answer to each of the four questions posed in Alba is a decided "yes." It is beyond dispute that a Final Judgment entered in the State Court Action, and that the parties to that case and this case are the same. *See* Exhibit D. It also is beyond dispute that the issue of whether AVX "voluntarily entered into" the 2001 Supply Agreement with Cabot as decided by the Superior Court in the State Court Action is identical to the issue

of whether AVX was "coerced" or "forced" to enter into the 2001 Supply Agreement for purposes of AVX's tying claim in this action. Both cases arise from the exact same events, the exact same negotiations, and the exact same agreement, as demonstrated by the largely identical allegations made by AVX in its Counterclaim in the State Court Action as compared to its Complaint in this case. *Compare, e.g.,* State Court Counterclaim, ¶¶ 23, 27-30, *with* Complaint, ¶¶ 22, 26, 29-31. Moreover, both cases involve the same fundamental gravamen; *i.e.*, that Cabot's "coercive strategies" in negotiating the 2001 Supply Agreement ultimately left AVX with "no choice but to execute" that Agreement on what AVX allegedly regarded as undesirable terms. State Court Counterclaim, ¶¶ 29-30; Complaint, ¶¶ 30-31. AVX cannot reasonably contend otherwise.

Lastly, the question of whether AVX "voluntarily entered into" the 2001 Supply was undeniably essential to the Final Judgment entered in the State Court Action. Alba, 441 Mass. at 842. AVX argued in the State Court Action case that it was free to ignore its purchase obligations under the 2001 Supply Agreement because it had been forced to execute that Agreement under economic duress. *See, e.g.,* State Court Counterclaim, ¶ 30. Massachusetts law holds that a claim of economic duress, like a claim of unlawful tying, requires proof that the defendant's "unlawful act or threat ... deprive[d] the victim of his unfettered will." Int'l Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 8 Mass. App. Ct. 340, 342 (1979); *see also* Ismert and Assoc., Inc. v. New England Mutual Life Ins. Co., 801 F.2d 536, 544 (1st Cir. 1986) (*quoting* Int'l Underwater Contractors)). In considering AVX's economic duress argument on summary judgment, the Superior Court expressly found, *inter alia*, that,

- "AVX is a multi-billion dollar business corporation, majority-owned by a Japanese conglomerate." (Exhibit C at 9);

Case 1:04-cv-10467-RGS   Document 33   Filed 03/27/2006   Page 10 of 14

- "The 2001 Supply Agreement was negotiated and executed by senior executives, with the advice of counsel, over a nearly six-month period." (*Id.* at 9-10);

- AVX "signaled its acceptance of the fairness of the 2001 Supply Agreement as early as November 7, 2000, when Gilbertson, AVX's President, said in his e-mail to [Thomas] Odle, Vice President and General Manager of [Cabot], "TOM ... I think we have a fair agreement for both parties ... hope you agree." (*Id.* at 10);

- "AVX ended up with a long-term contract for the purchase of tantalum, at a given price, with a 'most favored nation' clause regarding sales to its competition, along with a number of additional contractual benefits to it. There is no showing that the quantity of product to be purchased was not what AVX desired or that the prices were out of line in the marketplace for tantalum at the time." (*Id.*); and

- "Nor is there any evidence -- aside from Gilbertson's claim to that effect, which is not proof of anything -- that AVX had no other alternative. AVX presumably could have made purchases of tantalum from [Cabot's] competitors if [Cabot] was being untruthful when it said there was a shortage of product. And AVX certainly could have gone immediately to some appropriate court and sought preliminary injunctive relief, followed by declaratory relief on the merits." (*Id.* at 10-11).

On the basis of these findings (and others), the Superior Court ultimately concluded that "[t]he 2001 Supply Agreement is not voidable for economic duress." Exhibit C at 12. It thereafter entered a Final Judgment declaring, among other things, that "the 2001 Supply Agreement was not induced by undue economic duress, but rather was voluntarily entered into by [Cabot] and [AVX]." Exhibit D at 2. Given the required elements of a claim of economic duress, AVX's allegations, and the evidence presented by the parties, the Superior Court's determination that the 2001 Supply Agreement was "voluntarily entered into" by AVX

-10-

undoubtedly was "essential" to the Superior Court's Final Judgment in favor of Cabot, and its existence precludes AVX from re-litigating the issue of whether it was "coerced" into executing the 2001 Supply Agreement in this proceeding. Alba, 441 Mass. at 842; Fireside Motors, 395 Mass. at 372.

### 3. AVX Is Bound By The Superior Court's Final Judgment Notwithstanding The Fact That The Final Judgment Is On Appeal.

AVX has appealed from the Final Judgment entered in the State Court Action. The pendency of that appeal, however, does not suspend the collateral effect of the Superior Court's Final Judgment. "[A] trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal." O'Brien v. Hanover Ins. Co., 427 Mass. 194, 201 (1998); see also Campos v. Van Houtum, 45 Mass. App. Ct. 918, 919 (1998) (same). "Finality, for the purposes of issue preclusion, does not require a final judgment in the strict sense." Jarosz v. Palmer, 436 Mass. 526, 533 (2002). "A determination is considered final 'when the parties were fully heard, the judge's decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed.'" Id. at 533-534 (quoting Tausevich v. Bd. Of Appeals of Stoughton, 402 Mass. 146, 148 (1988)). Accordingly, this Court can and should promptly enter judgment in Cabot's favor on AVX's tying claim irrespective of the fact that AVX's appeal has not been resolved.

It should be noted that there is no unfairness to AVX in this result. AVX had a full and fair opportunity to litigate the question of whether it was "coerced" into signing the 2001 Supply Agreement in the State Court Action. The Superior Court's Final Judgment addressing that issue is well supported by both the facts and the law. In the unlikely event that AVX eventually prevails on its appeal from all or relevant sections of that Final Judgment, AVX

may seek relief from any intervening judgment entered in this action under Fed. R. Civ. P. 60(b)(5). *See* In re Kane, 254 F.3d 325, 328-329 (1st Cir. 2001) (discussing collateral estoppel and the effect of a vacated prior judgment). In the interim, however, entry of judgment in Cabot's favor is appropriate.

II. **ALTERNATIVELY, THIS ACTION SHOULD BE STAYED FOR PURPOSES OF JUDICIAL ECONOMY AND EFFICIENCY PENDING THE OUTCOME OF AVX'S APPEAL FROM THE MASSACHUSETTS SUPERIOR COURT'S FINAL JUDGMENT.**

In the alternative, this Court should exercise its inherent power to stay this action, in the interests of judicial economy and efficiency, pending the outcome of AVX's appeal from the Final Judgment entered in the State Court Action. *See* Cannavo v. Enterprise Messaging Servs., Inc., 982 F. Supp. 54, 59 (D. Mass. 1997) ("Even without the explicit statutory authority to do so, a court, in its sound discretion, may stay any case pending before it as an exercise of its inherent power to control its own docket," *citing* Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983), and Landis v. North American Co., 299 U.S. 248, 254-255 (1936)). A stay is justified to ensure that the parties do not waste time, money or limited judicial resources "litigating suits deriving from the same transaction in two separate fora." *See* Chedester v. Town of Whately, 279 F. Supp.2d 53, 58 (D. Mass. 2003). In particular, a stay is justified where, as here, the outcome of the parties' parallel State Court Action is or will be dispositive of the issues or claims raised in this case. *Id.* ("Once the state action is resolved, the court can determine whether or not there are any remaining viable issues"); *see also* Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995) (affirming, on an abuse of discretion standard, district court's decision to stay federal action

where "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court").

The Final Judgment rendered in the State Court Action is dispositive of AVX's tying claim in this action. That decision is not likely to be reversed on appeal. If the Court nonetheless wishes to await the outcome of AVX's appeal before ruling on Cabot's present Motion for Judgment on the Pleadings, Cabot respectfully requests that the Court exercise its discretion to stay this action so that Cabot (and this Court) are not required to re-litigate, yet again, the question of whether AVX was "coerced" into executing the 2001 Supply Agreement, in the interim.

## Conclusion

Cabot is entitled to the entry of judgment in its favor as a matter of law on AVX's tying claim under the Sherman Antitrust Act because the Final Judgment entered in the State Court Action conclusively establishes that AVX cannot prove an essential element of that claim; *i.e.*, that AVX was "coerced" into accepting the purportedly unlawful tying arrangement alleged in this case. AVX is collaterally estopped from re-litigating the Superior Court's findings -- which are subject to judicial notice by this Court -- in this proceeding.

Alternatively, Cabot respectfully requests that the Court exercise its discretion to stay this action, for reasons of judicial economy and efficiency, until AVX's appeal from the Superior Court's Final Judgment is resolved.

CABOT CORPORATION

By its attorneys,

/s/ Brian A. Davis
_____
Robert S. Frank, Jr. (BBO No. 130950)
Brian A. Davis (BBO No. 546462)
Terrence M. Schwab (BBO No. 650793)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:  March 27, 2006

4054548.1

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), I hereby certify that counsel for defendant Cabot Corporation has conferred with counsel for plaintiffs, AVX Corporation and AVX Limited, in a good-faith effort to resolve or narrow the issues presented by the Motion to Dismiss of Cabot Corporation.

/s/ Terrence M. Schwab
_____
Terrence M. Schwab

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to any non-registered participants on March 27, 2006.

/s/ Terrence M. Schwab
_____
Terrence M. Schwab