UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 04-10467-RGS |
| v. | ) ) ) | |
| CABOT CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT CABOT CORPORATION'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR A STAY

This memorandum is filed by defendant Cabot Corporation ("Cabot") in reply to plaintiffs AVX Corporation and AVX Limited's (collectively "AVX") Opposition to Cabot's Motion for Judgment On The Pleadings Or, In The Alternative, For a Stay.

The parties' 2001 Supply Agreement obligates Cabot to sell, and AVX to purchase, defined quantities of particular Tantalum Products, including both flake powder and nodular powder. AVX argued in the prior State Court Action that Cabot forced AVX to enter into the 2001 Supply Agreement. AVX alleges in the present case that Cabot forced AVX to enter into the same Supply Agreement, which, AVX alleges, requires it to purchase both flake and nodular powder. The state court found that AVX's decision to enter the 2001 Supply Agreement was voluntary. The state court's finding is binding on AVX. It precludes AVX from proving a necessary element of its tying claim in this case. Therefore, this action should be dismissed.

I.     **THE PRIOR STATE COURT ACTION.**

An examination of the arguments made, and facts cited, by AVX in this case and in the prior State Court Action establish that the state court's findings are binding in this case.

AVX asserted in both cases that Cabot sells Tantalum Products to AVX. Among those Products are tantalum powder and wire. Certain tantalum powders are called "flake"; others are called "nodular." These facts are undisputed.

In the State Court Action, AVX alleged that a signed document, entitled "Letter of Intent," was actually a binding contract between the parties for the sale of Tantalum Products. AVX asserted (a) that, during a period of short supply, Cabot refused to honor the Letter of Intent, (b) that AVX needed to purchase tantalum products (and, in particular, needed to purchase Cabot's "flake" powder), and (c) that Cabot thereby forced AVX to enter the parties' 2001 Supply Agreement -- in which (d) AVX agreed, *inter alia*, to purchase both flake and nodular powders.

After the close of discovery in the State Court Action, Cabot moved for partial summary judgment seeking a declaration that the 2001 Supply Agreement was a binding contract. AVX opposed. It argued that the 2001 Supply Agreement was voidable because it was induced by economic duress. When describing the alleged duress, AVX asserted, *inter alia*, that Cabot had market power with respect to flake powder. AVX said:

> There are two types of powder relevant to this case. Nodular powder is the basic powder and is made by all the suppliers. Flake powder, which can operate at higher voltages, is only made by Cabot because Cabot holds a patent on the process. No one else in the world produces products that compete with Cabot's C255 or C275, the designation used for flake powder. AVX uses both types and is dependent on flake for certain products, including pacemakers and certain military technology.

-2-

*See* AVX's Opposition to Partial Motion for Summary Judgment ("State Court Opposition") at

3-4, attached hereto as Exhibit A (citations to the state court record omitted). AVX then argued

that Cabot used its market power with respect to flake powder to force AVX to enter the 2001

Supply Agreement. In particular, AVX contended that Cabot threatened to withhold flake

powder unless AVX agreed to enter the 2001 Supply Agreement. It said:

> Mr. Tyler [of Cabot] also reported that Mr. Odle [of Cabot] had
> informed Mr. Chilton [of AVX] that Cabot did not have any flake left.
> Cabot repeated this threat on more than one occasion.

State Court Opposition at 10 (citations to state court record omitted).

This threat, AVX asserted, placed AVX under great pressure. It said:

> AVX was desperate for the flake powders that were sole sourced to
> Cabot. He [Cabot's Hugh Tyler] pointed out that this was "really a big stick
> in our negotiations with Chilton [of AVX]" and emphasized AVX's
> shortage problems.

State Court Opposition at 13-14.

AVX argued that it was thereby forced to enter the 2001 Supply Agreement:[1]

---

[1] In its Opposition in this case, AVX makes the same argument. It contends that:

"AVX and Cabot had a contract [the Letter of Intent] for the supply of tantalum. Despite that
agreement, when the market for tantalum went from relatively stable to extremely volatile, Cabot,
one of the largest companies in the market, took advantage of its patents on some forms of
tantalum essential to AVX's business to force AVX into executing a new, highly unfavorable set
of terms [in the 2001 Supply Agreement] for the supply of tantalum that Cabot had already
contracted [in the Letter of Intent] to supply. Specifically, knowing that AVX made certain
products that could only be manufactured with the flake form of tantalum exclusively made by
Cabot, it conditioned AVX's purchase of flake powders on the purchase of non-flake powders."

Opposition at 2 (internal citations omitted).

> Facing the termination of the supply of critical manufacturing product which could not be replaced, AVX faced no commercial choice. It was obliged to concede even in the face of an existing contract [*i.e.*, the Letter of Intent].[2]

State Court Opposition at 11.

While Cabot's Motion for Partial Summary Judgment was pending, AVX sought leave to amend its Counterclaim to add federal and state antitrust claims. In the proposed amendment, AVX alleged that Cabot tied the sale of flake powder to nodular powder. *See* AVX's Memorandum In Support of Motion to Amend Complaint ("State Court Motion to Amend), attached hereto as Exhibit B. AVX represented in its motion papers that the facts that would support its antitrust claim were the same facts that supported its state law economic duress claim. As it had argued in support of its duress claim, AVX asserted that Cabot exploited AVX's need for flake powder to force AVX to enter the 2001 Supply Agreement -- which required the purchase of both flake and nodular powder. AVX stated that its proposed amendment should be allowed because the amendment would simply apply a further legal theory to facts that were already before the Court. It said:

> All that the amendment [advancing a tying claim] would do would be to add a legal theory to the case. NO FURTHER DISCOVERY WOULD BE REQUIRED.
>
> There is already a detailed factual record before this Court that sets forth, in deposition testimony, affidavits and documents, a story of a company that used its market power to breach one contract and force the execution of another.

---

[2] AVX also claimed that the overall shortage of Tantalum Products, including shortages of both flake and nodular powders, placed AVX in a position where it had no choice except to enter into the 2001 Supply Agreement. This argument -- that at the relevant time Cabot had market power with respect to *both* flake and nodular powder -- also defeats AVX's tying claim. By definition, tying involves the requirement that a purchaser accept one product over which the seller does not have market power in order to obtain access to a product over which the seller does have market power. If AVX needed nodular powder and could only buy it from Cabot, then Cabot did not use its alleged market power over flake powder to force AVX to purchase nodular powder, and there was no tie.

-4-

*See* State Court Motion to Amend at 1-2, attached hereto as <u>Exhibit B</u> (emphasis in original).

AVX then described those (alleged) facts:

> During the relevant period, Cabot had two different kinds of market power. As a general matter, it controlled a substantial supply of the raw material . . . As a result, when the tantalum market spiked, AVX had no alternative -- that is, not merely no commercially reasonable alternative, but no alternative at all -- to replace the powder that Cabot threatened to withhold.
>
> Second, *more specifically*, one of the essential powders that AVX used for certain products is called "flake" . . . Cabot has a patent on the flake form of powder. There is no equivalent available. As a result, Cabot not only has market power in this portion of the tantalum market, it has a total monopoly. . .
>
> What has become pellucid during discovery is that Cabot knew and intended to use its substantial market power -- and in particular, its monopoly power on the supply of flake powder -- to make AVX sign an agreement that required it to buy not only the flake powders, but also enormous quantities of the non-flake powders for which Cabot could face competition.

State Court Motion to Amend at 2-3, attached hereto as <u>Exhibit B</u> (emphasis supplied).

The state court (van Gestel, J.) denied AVX's Motion to Amend on the ground that the Court did not have subject matter jurisdiction over AVX's antitrust claims. The Court then granted summary judgment in favor of Cabot. In its Judgment, the State Court expressly found that the Letter of Intent was not a binding contract, that AVX entered into the 2001 Supply Agreement "voluntarily," and that the 2001 Supply Agreement is "valid and binding." *See* <u>Exhibit E</u> to Cabot's Motion For Judgment On The Pleading Or, In The Alternative, For A Stay (Docket No. 33).

The case at bar is based upon exactly the same facts as were advanced in the State Court Action. As in the prior action, AVX alleges that Cabot used its market power with respect to flake powder to force AVX to enter into the parties' 2001 Supply Agreement -- which, in turn,

-5-

requires AVX to purchase both flake and nodular powder. The State Court found that AVX was not forced to enter the Supply Agreement -- that AVX's decision to enter into that contract was voluntary. Under the doctrine of issue preclusion, that finding is binding on AVX, and is dispositive of the antitrust claim that is asserted in this case.

## ARGUMENT

### I.    CABOT TIMELY RAISED THE AFFIRMATIVE DEFENSE OF COLLATERAL ESTOPPEL.

AVX leads with the argument that Cabot failed to plead the defense of collateral estoppel in its Answer in this case, and thereby waived that defense. AVX is in error. Cabot pled specifically that:

> AVX's claims against Cabot, if any, are barred as a result of the collateral effect of prior judicial findings and determinations involving the parties.

Answer (Docket No. 24) at 10. AVX's Opposition makes no mention of this defense in Cabot's Answer. The pleading placed AVX on notice that Cabot reserved the right to assert that AVX's claim in this case was barred by the findings in State Court Action. There was no waiver.

Further, even if Cabot had not alleged collateral estoppel as a defense in its Answer, it could add that defense by amendment now. This case is at a very early stage. No document production has occurred; there has been no oral discovery; and there is no trial date. Apart from the filing of the Complaint and Answer and the parties' appearance at a brief Rule 16 conference, there has been no activity in the case. Motions to Amend are freely allowed. There is no conceivable prejudice to AVX. *See* Fed. R. Civ. P. 15 (leave to amend "shall be freely given").

Moreover, AVX was expressly warned months ago of Cabot's intention to assert an issue preclusion defense. In January, 2006, Cabot's counsel met with AVX's counsel and disclosed Cabot's plan to move for judgment based upon its issue preclusion defense. Cabot's counsel

-6-

explained the reason for Cabot's position and urged AVX to agree to the relief requested by this motion. AVX declined to agree. *See* Affidavit of Brian A. Davis at ¶¶ 2-4, filed herewith. In the circumstances, AVX cannot complain that the instant motion was delayed or comes as a surprise.

## II.     AVX'S TYING CLAIM IS BARRED BY THE DOCTRINE OF ISSUE PRECLUSION (COLLATERAL ESTOPPEL).

### A. *AVX Is Required To Prove In This Case That It Entered The 2001 Supply Agreement Involuntarily.*

It is not a violation of the antitrust laws for a seller to offer to sell, or for a buyer to purchase, two separate products in one transaction.[3]  Similarly, a contract that requires the purchase of two separate products is not, without more, an antitrust violation. A tying violation occurs only if the seller has significant market power in one product (the "tying" product) and uses that power to cause the buyer to make an *involuntary* purchase of a separate product (the "tied" product) over which the seller does not have market power. The agreement implementing the involuntary purchase might be written or oral. Whether written or oral, it is the *involuntary* character of such an agreement that is the essence of a tying violation. *See, e.g.,* Illinois Tool Works, Inc. v. Independent Ink, Inc., ___ U.S. ___, 2006 WL 468729 at *4 (March 1, 2006) ("[o]ur cases have concluded that the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms"); Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 17 (1st Cir. 1996) ("the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer

---

[3]  For the purposes of this motion only, it is assumed that, as alleged, flake tantalum powder is a separate product from nodular tantalum powder.

into the purchase of a tied product . . . when such 'forcing' is present, competition on the merits in the market for the tied item is restrained") (quoting Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984)); Data General Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1180 (1st Cir. 1994) ("Proof of a tying arrangement generally requires evidence that the supplier's sale of the tying product is conditioned upon the unwilling purchase of the tied product from the supplier or an unwilling promise not to purchase the tied product from any other supplier"); Lee v. The Life Ins. Co. of North America, 23 F.3d 14, 16 (1st Cir. 1994) (an invalid tying arrangement involves a seller using its market power "to coerce a buyer already intent on purchasing the tying product . . . into buying a second tied product") (internal quotations omitted); Cia. Petrolera Caribe, Inc. v. Avis Rental Car Corp., 576 F. Supp. 1011, 1016 (D.P.R. 1983), aff'd, 735 F.2d 636 (1st Cir. 1984) (proof of actual coercion is "an essential element of any tying arrangement").

AVX concedes that, "in the federal context, the term ["coercion"] simply means . . . the complaining party asserts that it would not have bought the tied good but for the condition that it do so to get the tying good *as opposed to making the totally free and unconstrained choice to do so*." Opposition at 9 (emphasis added).

Therefore, it is a necessary element of AVX's tying claim that AVX's decision to enter the 2001 Supply Agreement -- the contract that allegedly implements the tie -- was involuntary.

### B. *The Issue Decided In The State Court Action Is Dispositive of This Case.*

In the State Court Action, AVX argued, in support of its duress claim, that Cabot used its control over flake powder to force AVX to enter the 2001 Supply Agreement. The state court found that Cabot did *not* force AVX to enter the 2001 Supply Agreement, but, rather, that AVX entered that Agreement "voluntarily." Under the doctrine of issue preclusion, the state court's

-8-

finding is binding in this case. It prevents AVX from proving a necessary element of its case, and, thus, requires that judgment be entered for Cabot.

In an effort to escape the preclusive effect of the state court finding, AVX asserts that the facts that underlie its tying claim in this case were "irrelevant" to its state law contentions. Opposition at 16. AVX states, *"where the witnesses or proof needed in the second action overlap substantially with those in the first action, the second action should ordinarily be precluded* . . . [W]hen the proof does not overlap substantially, the second action should not be precluded." *Id.* (emphasis supplied). The "proof" in the two cases does "overlap substantially." Indeed, AVX itself argued in the State Court Action that the evidence supporting its tying claim and the evidence supporting AVX's State Court duress defense were *identical. See* pp. 4-5, *supra.* And, as demonstrated, *supra*, the arguments made by AVX in this case mirror those which AVX made in the State Court Action. *See* pp. 2-3 and n. 1, *supra.*

AVX concedes that one of the elements of a duress defense in the State Court Action was that one side "involuntarily accepted the [contract] terms of another." Opposition at 15. It is an element of an antitrust tying claim that one party involuntarily agreed to a contract that required the purchase of two separate products. In the State Court Action, AVX contended (as it contends here) that Cabot used access to flake powder -- and AVX's need for flake powders -- to force AVX to enter the Supply Agreement, which required the purchase of flake and nodular powder. To be sure, AVX made additional arguments in the State Court Action. Judge van Gestel rejected that argument, among others, when he found that AVX's decision to enter that Agreement was voluntary.

Under Massachusetts law, when an issue of fact (1) was actually litigated, and (2) determined by final judgment, and (3) the determination was essential to the judgment, the

-9-

determination is conclusive in a subsequent action between the parties "whether on the same or a different claim." *See* Alba v. Raytheon Co., 441 Mass. 836, 841 (2004). It follows that this case should be dismissed. An essential element of AVX's tying claim is the *involuntary* purchase of the tied product to obtain the tying product. The alleged tie exists in the 2001 Supply Agreement. AVX argued in support of its duress claim in state court that it was forced by Cabot to enter the 2001 Supply Agreement. The State Court found that AVX entered into the 2001 Supply Agreement *"voluntarily."* AVX may not now relitigate that issue. The State Court's finding of fact is binding in, and dispositive of, this case.

### C. *The Findings In The State Court Action Were Made By A Court of "Competent Jurisdiction."*

It is undisputed that the voluntary nature of AVX's decision to enter into the 2001 Supply Agreement was actually litigated and determined by final judgment in the State Court Action. However, AVX asserts that findings made in the State Court Action have no preclusive effect in this action because the state court's "final Judgment is not from a court of competent jurisdiction." *See* Opposition at 17. AVX's argument confuses the doctrines of claim preclusion and issue preclusion.

Where, as here, a state court does not have jurisdiction to grant relief under the federal antitrust laws, its decision cannot have *claim* preclusive effect in a subsequent federal court case alleging a violation of the federal antitrust laws. However, findings of fact made by a state court can have *issue* preclusive effect in a later federal court action involving a claim over which the

-10-

federal court has exclusive jurisdiction.[4]  Indeed, the Full Faith and Credit Statute, 28 U.S.C.

§ 1738, requires that result.[5]

In Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379-380

(1985), the Supreme Court addressed this precise question.  It said:

> The issue presented by this case is whether a state court judgment may have preclusive effect on a federal antitrust claim that could not have been raised in the state proceeding.
>
> * * *
>
> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'  28 U.S.C. § 1738.  This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.
>
> * * *
>
> The fact that petitioners' antitrust claim is within the exclusive jurisdiction of the federal courts does not necessarily make § 1738 inapplicable to this case . . . [S]tate law determines at least the issue preclusive effect of a prior state judgment in a subsequent action involving a claim within the exclusive jurisdiction of the federal courts.

See also United States Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623, 629 (7th Cir. 2003)

(state administrative agency decision can have issue preclusive effect in subsequent federal

antitrust action).

AVX's Argument that the state court judgment cannot have issue preclusion effect is

simply wrong.  The question whether AVX was forced to enter the 2001 Supply Agreement was

actually litigated and determined by final judgment in the Prior State Court Action.  And, as will

---

[4]  AVX's reliance on Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 207 (1st Cir. 2005) is misplaced.  The analysis in the Gener-Villar decision relates to claim preclusion, not issue preclusion.

[5]  28 U.S.C. § 1738 provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."

-11-

be demonstrated, the state court's determinations satisfied the "essential to the judgment" test. Therefore, it is issue preclusive.

### D. *The State Court's Finding Met The "Essential To The Judgment Test."*

AVX's final argument is that issue preclusion does not apply because the state court's determination that AVX entered the 2001 Supply Agreement voluntarily was not "essential to the state court's decision." Opposition at 18. AVX observes that the state court concluded that AVX entered the 2001 Supply Agreement voluntarily <u>and</u> also ruled that AVX ratified that contract by performing under it for over a year and one-half without complaint.

In the State Court Action, AVX asserted duress as a defense. AVX had the burden of proving each of the elements of that defense and thus had the burden of proving that AVX entered into the 2001 Supply Agreement involuntarily. The case was decided on a motion for summary judgment. In that context, AVX was required -- and was motivated -- to establish that there was (at least) a genuine issue of material fact with respect to its claim that it entered into the 2001 Supply Agreement involuntarily. The state court found that AVX failed to point to evidence that supported that element of its duress defense. The fact that the court held, as a supplemental ground of decision, that AVX also ratified the Supply Agreement -- more precisely, that AVX failed to offer evidence that AVX did not ratify the Agreement -- does not relieve AVX of the issue preclusive effect of the state court's primary finding.

As long ago as <u>Home Owners Federal Savings & Loan Ass'n v. Northwestern Fire & Marine Ins. Co.</u>, 354 Mass. 448, 455 (1968), the Massachusetts Supreme Judicial Court held that a finding in a prior case is deemed "essential" if, as here, it was the product of full litigation and careful decision, *viz.*:

> In addition, our holding expands the applicability of the [issue preclusion] doctrine to encompass certain findings not strictly essential to

-12-

> the final judgment in the prior action. Such findings may be relied upon if
> it is clear that the issues underlying them were treated as essential to the
> prior case by the court and the party to be bound. Stated another way, it is
> necessary that such findings be the product of full litigation and careful
> decision.

The Supreme Judicial Court then held that the plaintiff was precluded from relitigating an issue

decided in prior litigation, even though (as the dissent observed, 354 Mass. at 457-459) that issue

was not actually "essential" to the judgment in the prior case. The principle established in <u>Home</u>

<u>Owners Federal Savings & Loan</u> has repeatedly been applied in subsequent cases. *E.g.,* <u>Alba v.</u>

<u>Raytheon Company,</u> 441 Mass. 836, 843-844 (2004) (finding had preclusive effect even though

it was "not strictly essential" to a prior decision because it was the "product of full litigation and

careful decision"); <u>Comm'r of Dept. of Employment and Training v. Dugan,</u> 428 Mass. 138, 144

(1998) (same); <u>Green v. Town of Brookline,</u> 53 Mass. App. Ct. 120, 126-27 (2001) (same).

     The finding in the prior State Court Action that AVX entered the 2001 Supply Agreement

voluntarily was the "product of full litigation and careful decision." AVX does not, and could

not, assert otherwise. Therefore, it is issue preclusive.

-13-

## Conclusion

For the reasons stated above, and in Cabot's initial memorandum of law, Cabot's Motion

For Judgment On The Pleadings Or, In The Alternative, For A Stay should be granted.[6]

CABOT CORPORATION

By its attorneys,

/s/ Brian A. Davis

Robert S. Frank, Jr. (BBO No. 130950)
Brian A. Davis (BBO No. 546462)
Terrence M. Schwab (BBO No. 650793)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:   May 23, 2006

---

[6] In its Motion, Cabot requested dismissal of this action, or, in the alternative, a stay of this case pending a decision by the Massachusetts Appeals Court on AVX's appeal from the state court decision. AVX has not asked for a stay in lieu of dismissal. Accordingly, if the Court concludes that Cabot's motion should be granted, this case should be dismissed.

-14-

4069349v2

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), I hereby certify that counsel for defendant Cabot Corporation attempted to confer with counsel for plaintiffs, AVX Corporation and AVX Limited, in a good-faith effort to resolve or narrow the issues presented by the Cabot Corporation's Reply to AVX's Opposition to Cabot's Motion For Judgment On The Pleadings Or, In The Alternative, For A Stay. On May 23, 2006, the undersigned called Evan Slavitt, counsel for plaintiffs AVX Corporation and AVX Limited, and left a voicemail indicating Cabot Corporation's intention to file this Reply Memorandum. At the time this Motion was filed, I had not yet received a reply from Mr. Slavitt regarding this Motion.

/s/ Terrence M. Schwab
Terrence M. Schwab

-15-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on May 23, 2006.

/s/ Terrence M. Schwab
Terrence M. Schwab

-16-

4069349v2