# Exhibit B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                              SUPERIOR COURT

| | |
|---|---|
| CABOT CORPORATION, ) | |
| Plaintiff, ) | |
| v. ) | No. 03-1235-BLS |
| AVX CORPORATION and ) | |
| AVX LIMITED, ) | |
| Defendants. ) | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT

## INTRODUCTION

During the course of discovery, it has become clear that Cabot's conduct was more than merely coercive. It turns out that Cabot also committed violations of the federal and state antitrust laws. The defendants now move to amend their complaint in counterclaim to encompass those laws as well.

The Court should grant this motion. Not only does the relevant rule mandate that leave to amend should be freely granted, but no delays or prejudice will result. All that the amendment would do would be to add a legal theory to the case. NO FURTHER DISCOVERY WILL BE REQUIRED. The parties have yet to designate their experts; indeed, they have file a joint motion to extend the time to do so because of the pending motion for partial summary judgment. Even if the motion is granted, this case will still require a trial.

## RELEVANT FACTS

*Background*

Although AVX[1] could simply rely on the facts pleaded in the proposed amendment, it does not need to do so. There is already a detailed factual record before this Court that sets forth, in deposition testimony, affidavits and documents, a story of a company that used its market power to breach one contract and force the execution of another. For the purposes of this motion, unless the allegations are without a scintilla of support, the Court must take them as true.

Without rehearsing the entire story, the essentials are as follows. During the relevant period, Cabot had two different kinds of market power. As a general matter, it controlled a substantial supply of the raw material through its own mine or other mines with which it contracted. Nor was this power thrust upon it. The record reflects that it was an intentional, carefully thought-out plan to gain market power. As a result, when the tantalum market spiked, AVX had no alternative -- that is, not merely no commercially reasonable alternative, but no alternative at all --to replace the powder that Cabot threatened to withhold.

Second, more specifically, one of the essential powders that AVX used for certain products is called "flake" which has the designation at Cabot of C255 and C275. AVX uses this powder for certain high voltage products, including pacemakers. Cabot has a

---

[1] For the purposes of this memorandum, "AVX" includes both defendants.

patent on the flake form of powder. There is no equivalent available. As a result, Cabot not only has market power in this portion of the tantalum market, it has a total monopoly.

*Negotiations*

As set forth in the other material before this Court, the record demonstrates that in the summer of 2000, Cabot began a strategy that was intended to force AVX into signing what has become known as the Long Term Supply Contract. Elsewhere is discussed in detail the history of threats and intimidation coming from Cabot. For these purposes, it can be summarized by simply stating that Cabot continually threatened to breach the existing contract and deny AVX any supply, thereby crippling or killing its business, if it did not sign the Long Term Supply Agreement.

What has become pellucid during discovery is that Cabot knew and intended to use its substantial market power – and in particular, its monopoly power in the supply of flake powder – to make AVX sign an agreement that required it to buy not only the flake powders, but also enormous quantities of the non-flake powders for which Cabot could face competition. As a result, for the life of the Long Term Supply Contract, AVX was fundamentally precluded from buying from any other supplier. Put another way, the other suppliers were foreclosed from selling to AVX.

This conduct constitutes classic tying in violation of 15 U.S.C. §§ 1, 14 and G. L. 93, § 4. Cabot tied the purchase of flake to the purchase of non-flake tantalum powders. It did so using its market power and in a way that harmed competition.

3

## DISCUSSION

*The Standard Permits Free Amendment*

The relevant provision is found in Rule 15(a): "a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*" Mass. R. Civ. P. Rule 15 (emphasis added). The Reporter's Notes confirm that the rule was intended to set a low threshold. "The second part of Rule 15(a) deals with amendments by leave of court or by written consent of the adverse party. Rule 15(a) specifically provides that "leave shall be freely given when justice so requires.". Reporter's Notes, Mass. R. Civ. P. Rule 15.

The United States Supreme Court has spoken on the parallel provision of the federal rules, upon which this rule was based.

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. *See generally,* 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Judicial Court has adopted the reasoning of the Supreme Court. *Castellucci v. United States Fidelity & Guaranty Co.*, 372 Mass. 288, 290 (1977). Reading that interpretation, the Appeals Court made clear that amendments even at the start of trial were to be granted freely. "Allowance of the amendment at the beginning of trial on June 2, 1975 (see Mass. R. Civ. P. 15[a], 365 Mass. 761 [1974]), was well within the judge's discretion and consistent with the

4

requirement of rule 15(a) that leave to amend should be given freely." *Wolfe v. Ford Motor Co.*, 6 Mass. App. Ct. 346, 353 (1978). *See, Leavitt v. Horsley*, 2002 Mass. Super. LEXIS 391 (Mass. Super. 2002) ("The plain language of the rule indicates that motions to amend should be looked upon with favor and liberally granted.").

Focusing more specifically on the instant case, the courts have held that amendments which simply add an additional cause of action based on the same set of facts are proper. "The Probate Court allowed the plaintiff to amend his petition to incorporate this transferred case by reference. Such an amendment, which states an additional cause of action arising from the same underlying facts, is proper." *Guardianship of Hurley*, 394 Mass. 554, 560 (1985). The Federal courts long ago made clear that it is the conduct that is at issue, not the way that particular causes of action are set out.

> A change of the legal theory of the action cannot be accepted as the test of the propriety of a proposed amendment. *Heay v. Phillips*, 9 Cir., 1952, 201 F.2d 220, 222; *International Ladies' Garment W. U. v. Donnelly G. Co.*, 8 Cir., 1941, 121 F.2d 561, 563; *Bowles v. Tankar Gas*, D.C.D.Minn.1946, 5 F.R.D. 230, 235. Nor should a technical rule be applied in determining whether the cause of action stated in the original and in the amended pleading is identical, since, in the strict sense, almost any amendment may be said to change the original cause of action. *Porter v. Theo. J. Ely Mfg. Co.*, D.C.W.D.Pa.1946, 5 F.R.D. 317, 321. The specified conduct of the defendant upon which the plaintiff tries to enforce his claim is to be examined, rather than the theory of law upon which the action is brought. Moore's Federal Practice, Vol. 3, § 15.15, pp. 851-853; *White v. Holland Furnace Co.*, D.C.S.D.Ohio, E.D.1939, 31 F. Supp. 32, 34.

*Green v. Walsh*, 21 F.R.D. 15, 19-20 (E. D. Wis. 1957). To the same effect another Federal court stated:

> While as the Court pointed out in *Huggins v. Winn-Dixie Greenville, Inc.* (1967), 249 S. C. 206, 209, 153 S. E. 2d 693, the actions do involve

5

> different elements, the inclusion of a cause of action for abuse of process with one for malicious prosecution--especially where they arise out of the same transaction--is clearly permissible under federal procedure. *Carrier Corp. v. Sims Motor Transport Lines* (D.C. Ill. 1953) 15 F.R.D. 142, 144. In a leading case on abuse of process in this Circuit, where the plaintiff had filed two separate actions for abuse of process and malicious prosecution arising out of the same transaction, the Court observed that, "* * * we feel that we should say, also, that so far as this case is concerned, the actions for abuse of process and malicious prosecution are alleged to arise from the same facts and to have resulted in the same sort of damage. They are not separate and independent causes of action, but relate to the same subject matter and should be tried together. The District Judge should accordingly consolidate * * * and submit the consolidated action to one jury just as though both causes of action were alleged in two counts of one complaint; * * *". *George v. Leonard* (C.C.A. S.C. 1948) 169 F.2d 177, 178, *cert. den.* 339 U.S. 965, 94 L. Ed. 1374, 70 S. Ct. 1000.

*Farrell v. Hollingsworth*, 43 F.R.D. 362, 363 (D.S.C. 1968).

Cabot cannot assert that the amendment should not be allowed because of delay. First, it was filed shortly after the discovery closed, and before any expert designations have even been made. This is far earlier than cases in which an amendment has been allowed on the eve of trial or after the allowance of complete summary judgment. *See, e.g., Boehm v. Commerce Ins. Co.*, 2003 Mass. App. Div. 39, 40 (Mass. App. Div., 2003). Second, Cabot filed a substantial motion for partial summary judgment that occupied the parties' attention for some time. Finally, the law is clear that "delay alone is an insufficient reason to deny amendments unless the delay causes undue prejudice to the opposing party. *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). *Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976). 'It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Goulet v. Whitin Mach. Works*, 399 Mass. 547, 550 (1987). The *Goulet* Court further explained its view:

6

> While "undue delay" may justify a denial, this court has usually required some factor other than delay, such as the imminence of trial or the plaintiff's attempting to introduce a totally new theory of liability. *See Libby v. Commissioner of Correction*, 385 Mass. 421, 428 (1982) (trial imminent); *Castellucci v. United States Fidelity & Guar. Co., supra* at 290-292 (trial imminent and attempt to substitute "markedly" new theory). *See also Genesco, Inc. v. Koufman*, 11 Mass. App. Ct. 986, 990 (1981) (delay of eight years between filing suit and attempt to add substantially different claim). These decisions are consistent with the Federal cases which state that delay alone is not enough to justify denial of a motion for leave to amend. *See Cornell & Co., supra* at 823; *Mercantile Trust Co. Nat'l Ass'n, supra* at 1012.

*Goulet v. Whitin Mach. Works*, 399 *supra* at 552. "The decision whether to grant a motion to amend is within the discretion of the judge, but leave should be granted unless there are good reasons for denying the motion." *Mathis v. Massachusetts Electric Co.*, 409 Mass. 256, 264 (1991). *See, All Seasons Servs. v. Commissioner of Health & Hosps.*, 416 Mass. 269, 272 (1993); *Hubert v. Melrose-Wakefield Hosp. Ass'n*, 40 Mass. App. Ct. 172, 175 (1996).

For the same reasons Cabot cannot claim any meaningful prejudice. It has more than enough time to prepare to meet the substance of this count. In light of the fact that no further fact discovery is necessary, there is no burden placed on Cabot in any fashion.

None of the other indicia that would preclude amendment are present. This is not a case with a long history of amended pleadings. There is not evidence of improper purpose or bad faith. The amendment is not futile; if proved, the conduct would present a classic case of tying.

7

## CONCLUSION

For the foregoing reasons, the Motion to Amend should be allowed.

Respectfully submitted,

AVX CORPORATION
AVX LIMITED

By their attorneys,

*[signature]*
Evan Slavitt (466510)
Richard P. O'Neil (645214)
Bodoff & Slavitt LLP
77 North Washington Street
Boston, MA 02114-1908
617/742-7300

Dated: January 13, 2004

## CERTIFICATE OF SERVICE

I hereby certify that I have, on the foregoing date, caused this document to be delivered by first class mail, by courier, or by hand.

*[signature]*

6537
**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 03-01-04
*[signature] Christine Yancovitz*