UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10467-RGS

AVX CORPORATION and AVX LIMITED

v.

CABOT CORPORATION

MEMORANDUM AND ORDER ON DEFENDANT
CABOT CORPORATION'S MOTION FOR JUDGMENT
ON THE PLEADINGS OR FOR A STAY

July 21, 2006

STEARNS, D.J.

In this unfolding chapter of a familiar case, defendant Cabot Corporation moves for judgment on the pleadings or, alternatively, for a stay pending the resolution of an appeal taken by plaintiff AVX Corporation in a related state proceeding. Both forms of relief are predicated on Superior Court Judge Allan van Gestel's decision affirming the validity of a January of 2001 contract (Supply Agreement) for the purchase of tantalum.[1] In the state court action, AVX maintained that it had signed the Supply Agreement under duress for fear that it might otherwise be shut off from supplies of a critical manufacturing product. In granting summary judgment to Cabot, Judge van Gestel observed that a degree of economic duress is a commonplace in the formation of many contracts. Noting the market sophistication, experience, and relatively equal bargaining power of the parties, Judge van Gestel concluded that despite AVX's efforts to portray itself as a victim of extortion, "[t]his

---

[1] Tantalum is a rare metal element valued for its corrosion-resistant properties. Cabot produces nearly half of the world supply of processed tantalum. AVX is one of the world's largest manufacturers of tantalum capacitors and a major customer of Cabot.

is "not one of those 'extreme and extraordinary cases'" in which a party dissatisfied with its end of the bargain (AVX) should be able to walk away from its contractual obligations. Cabot Corporation v. AVX Corporation, 2004 WL 1588116 at *5-6 (Mass. Sup. Ct., June 18, 2004). Judge van Gestel specifically ruled that AVX had voluntarily entered into the Supply Agreement, and that the Agreement was therefore valid and enforceable.

Seizing on Judge van Gestel's ruling, Cabot asserts that AVX is now collaterally estopped from relitigating "the issue of coercion" in the context of a federal antitrust tying claim. AVX opposes the motion, asserting that Cabot has waived issue preclusion as a defense. More substantively, AVX contends that collateral estoppel does not apply because the elements of its state and federal claims differ and because state court pronouncements impacting on federal antitrust laws (should) carry no weight in federal antitrust litigation.

## DISCUSSION

The full faith and credit statute, 28 U.S.C. § 1738, directs a federal court to apply the preclusion law of the state in which the judgment was rendered. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379-380 (1985). In Massachusetts, "res judicata" embraces two distinct doctrines – "claim preclusion" and "issue preclusion" (also known as "collateral estoppel."). The relevant doctrine here is issue preclusion. This doctrine "prevents the relitigation of an issue determined in an earlier action when that issue subsequently arises in another action based on a different claim between the same parties or their privies." Jarosz v. Palmer, 436 Mass. 526, 531 n.3 (2002). A party seeking to assert issue preclusion defensively must establish that: (1)

"there was a final judgment on the merits in the prior adjudication"; (2) "the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication"; (3) "the issue in the prior adjudication was identical to the issue in the current adjudication"; (4) the issue was "actually litigated in the prior action"; and (5) "the issue decided in the prior adjudication must have been essential to the earlier judgment." Kobrin v. Board of Registration in Medicine, 444 Mass. 837, 843-844 (2005). See also Commonwealth v. Bunting, 401 Mass. 687, 691 (1988).

AVX's first thrust is on a procedural point. AVX argues that Cabot waived collateral estoppel by failing to assert it as a defense. It is true that res judicata is ordinarily deemed waived unless raised as a defense in the Answer to the Complaint. See Gilbert v. Ferry, 413 F.3d 578, 579 (6th Cir. 2005); Curry v. City of Syracuse, 316 F.3d 324, 330-331 (2d Cir. 2003). See also Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003). Cabot's Answer, however, sets out as an eighteenth affirmative defense that

> AVX's claims against Cabot, if any, are barred as a result of the collateral effect of prior judicial findings and determinations involving the parties.

In light of the plain language of the Answer, AVX's procedural jab misses widely, if not wildly, its mark.

The court, however, agrees with AVX's substantive point that Judge van Gestel's contractual ruling – that no unlawful acts or threats by Cabot rendered AVX's execution of the 2001 Supply Agreement involuntary – is not identical to the issue of "forced choice" raised by AVX's federal antitrust tying claim.[2] See Grella v. Salem Five Cents Savings

---

[2]"A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees

3

Bank, 42 F.3d 26, 30 (1st Cir. 1994) (for collateral estoppel to apply, the issue sought to be precluded must be the same as that involved in the prior action); Restatement (Second) of Judgments § 27 (1982) (same).  To extricate itself from the Supply Agreement on contractual grounds, AVX was required to show acts on the part of Cabot sufficiently unconscionable to render the Agreement a nullity.  Cf. Bull HN Information Sys., Inc. v. Hutson, 229 F.3d 321, 331 (1st Cir. 2000) ("[E]ven a contract of adhesion is enforced unless unconscionable or unfair.").  To prove its tying claim, AVX is required to show that Cabot exploits market power over the supply of tantalum powder by conditioning the sale of flake tantalum on the purchase of (allegedly less desirable) nodular tantalum.  In this regard, Cabot's behavior might run afoul of legislative judgments about the impact of tying arrangements on competition and market efficiency, but there is nothing inherently unethical or unconscionable about the practice of tying products.

    It is true, as Cabot observes, that the Supreme Court has characterized tying arrangements as introducing an element of "force" in the seller-buyer relationship that serves "no legitimate business purpose."  See Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984); Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 503 (1969).  The Supreme Court's view of tying arrangements, however, has evolved in response to questions raised about the presumption that tying arrangements automatically degrade competition.  "Over the years . . .  this Court's strong disapproval of tying

---

that he will not purchase that product from any other supplier.' . . . Such an arrangement violates § 1 of the Sherman Act if the seller has 'appreciable economic power' in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market."  Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 461-462 (1992).

4

arrangements has substantially diminished." <u>Illinois Tool Works, Inc. v. Independent Ink, Inc.</u>, __U.S. __, 126 S.Ct. 1281, 1286 (2006).  "Many tying arrangements, even those involving patents and requirement ties, are fully consistent with a free, competitive market." <u>Id.</u> at 1292.  While some tying arrangements "are still unlawful," the focus in a tying case is not on the "voluntariness" of the buyer's purchasing decision, but on abuses by the seller of the power conferred by a "true monopoly."  <u>Id.</u> at 1291.  While evidence of "involuntariness" may figure in the ultimate determination of whether Cabot's tying of sales of flake and nodular tantalum falls within the prohibited class of tying arrangements, it is not a necessary element of any such finding.  A "victim" of an illegal tying arrangement might well be a perfectly voluntary participant in the transaction, either because it prizes the tying product highly, or because it has a concomitant desire to acquire the tied product. It is the harm to competition that the antitrust laws seek to avert – not harms to individual market participants.  <u>Cf.</u> <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 767 n.14 (1984).

<u>ORDER</u>

Because there is no necessary identity between a finding of extreme economic duress sufficient to invalidate a contract and a finding of a tying abuse based on market power, Cabot's Motion for Judgment on the Pleadings or for a Stay Pending Appeal is <u>DENIED</u>.

SO ORDERED.

s/ Richard G. Stearns

_____

5

UNITED STATES DISTRICT JUDGE