# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AVX CORPORATION
and AVX LIMITED,                          )
                                          )
                Plaintiffs,               )
                                          )
v.                                        )    CIVIL ACTION NO. 04-10467-RGS
                                          )
CABOT CORPORATION,                        )
                                          )
                Defendant.                )

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, plaintiffs AVX Corporation and AVX Limited (collectively "AVX") hereby serve the following interrogatories on Cabot Corporation to be answered by it, under oath.

## DEFINITIONS

1.      For purposes of this request for production, AVX adopts the "Uniform Definitions in Discovery Requests" contained in Local Rule 26.5 of the United States District Court for the District of Massachusetts.   The following additional terms shall have the meanings set forth below:

2.      "AVX" shall mean plaintiffs AVX Corporation and AVX Limited, their various corporate parents, subsidiaries, affiliates, subdivisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents,

attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

3.      "You," "your" and "Cabot" shall mean defendant Cabot Corporation, its various subsidiaries, affiliates, divisions and departments, (including, without limitation, its Performance Materials Division), and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

4.      The "Complaint" shall mean the "Complaint and Jury Demand" that AVX filed in this action.

5.      "Any" shall be construed also to mean "all," and "all" shall be construed also to mean "any."

6.      The word "agreement" shall mean any contract, letter of intent, undertaking, promise, agreement, arrangement or understanding, written or oral, including all amendments, supplements, additions and changes thereto.

7.      "Tantalum" or "Tantalum Products" shall mean refined or unrefined tantalum (chemical symbol "Ta," atomic number 73) in any form, including, but not limited to, tantalum wire, tantalum powder, tantalum ore and KTaF.

8.      The "Supply Agreement" shall mean the written Supply Agreement between and among AVX and Cabot, dated as of January 1, 2001.


## INSTRUCTIONS

1.      Unless otherwise specified, these interrogatories seek information during the period from January 1, 1996, to the present.

2.      In construing each interrogatory, the singular form of a word shall be interpreted as plural and the plural as singular as necessary to bring within the scope of the request any information or documents that might otherwise be construed to be outside its scope.

3.      Each interrogatory shall be construed independently and not with reference to any other interrogatory.

4.      These interrogatories shall be deemed continuing so as to require prompt supplemental responses in accordance with Fed. R. Civ. P. 26(e) if, between the date hereof and time of hearing or trial, any information responsive to this request come into Cabot's possession, custody or control or the possession, custody or control of Cabot's agents or representatives, including but not limited to any attorneys, accountants and advisors.

## INTERROGATORIES

1.      Identify all email systems in use. including but not limited to the following:

(a.)      List all email software and versions presently and previously used by you and the dates of use;

(b)      Identify all hardware that has been used or is currently in use as a server for the email system including its name;

(c)      Identify the specific type of hardware that was used as terminals into the email system (including home PCs, laptops, desktops, cell phones. personal digital assistants ["PDAs"], etc.);

3

(d)     State how many users there have been on each email system
        (delineate between past and current users);

(e)     State whether email is encrypted in any way;

(f)     Identify all users known to you who have generated email
        concerning any document responsive to Plaintiff's First Request
        for Production of Documents and, for each, list all email addresses
        used.


2.      As to each computer network, identify the following:

(a)     Brand and version number of the network operating system
        currently or previously in use (include dates of all upgrades):

(b)     Quantity and configuration of all network servers and
        workstations:

(c)     Person(s) (past and present including dates) responsible for the
        ongoing operations. maintenance, expansion, archiving and upkeep
        of the network;

(d)     Brand name and version number of all applications and other
        software residing on each network in use, including but not limited
        to electronic mail and applications.


3.      As to data backups performed on all computer systems currently or
previously in use, identify the following:

(a)  All procedures and devices used to back up the software and the
data. including but not limited to name(s) of backup software used.
the frequency of the backup process. and type of backup drives,
including name and version number. type of media  and state the
capacity (bytes) and total amount of information (gigabytes) stored
on each backup medium;

(b)  Describe the tape or backup rotation and explain how backup data
is maintained and state whether the backups are full or
incremental;

(c)  State whether backup storage media is kept off-site or on-site and
state the location of such backup and a description of the process
for archiving and retrieving on-site media;

(d)  The identity of all individual(s) who conducts the backup and the
individual who supervises this process;

(e)  Provide a detailed list of all backup sets. regardless of the media on
which they reside, showing current location, custodian, date of
backup, a description of backup content and a full inventory of all
archives.


4.    Identify any data that has been deleted. physically destroyed, discarded,
damaged (physically or logically), or overwritten, whether pursuant to a document
retention policy or otherwise, since the commencement of this litigation.  Specifically

identify those documents that relate to or reference the subject matter of the above referenced litigation.

5.    Identify all versions of document/data retention policies used by Cabot and identify documents or classes of documents that were subject to scheduled destruction. Also state:

(a)    The date, if any. of the suspension of this policy *in toto* or any aspect of said policy in response to this litigation;

(b)    A description by topic. creation date, user or bytes of any and all data that has been deleted or in any way destroyed after the commencement of this litigation and state whether the deletion or destruction of any data pursuant to said data retention policy occurred through automation or by user action;

(c)    Whether any company-wide instruction regarding the suspension of said data retention/destruction policy occurred after or related to the commencement of this litigation and if so. idcntify the individual responsible for enforcing said suspension.

6.    Identify all purchasers of flake tantalum and, for each, state:

(a)    The quantities purchased by each such purchaser both in total and by year;

(b)    Whether such purchases were pursuant to contract or were "spot" purchases;

(c)     The names of the persons dealing or negotiating with Cabot with respect to such purchases;

(d)     The names of the persons at Cabot dealing or negotiating with such purchaser with respect to such purchases;

(e)     Whether such purchaser also purchased nodular tantalum.


7.     Identify all purchasers of nodular tantalum.

(a)     The quantities purchased by each such purchaser both in total and by year;

(b)     Whether such purchases were pursuant to contract or were "spot" purchases;

(c)     The names of the persons dealing or negotiating with Cabot with respect to such purchases;

(d)     The names of the persons at Cabot dealing or negotiating with such purchaser with respect to such purchases;

(e)     Whether such purchaser also purchased flake tantalum.


8.     Identify the technical characteristics of each form of nodular or flake powder produced by Cabot (including but not limited to primary particle size, aggregate size, rated voltage, capacitance, surface area, raw Scott, raw flow, raw crust strength, sintering time and temperature, oxygen minimum and maximum, nitrogen maximum, wet DCL, BDV) and, for each, identify all known actual uses to which such powder is put.

9.   For each form of powder identified in response to interrogatory 8 above, identify all other substitutes for such powder, and, if such substitute is not identical in performance or price, identify all differences between such powder and each such substitute.

10.   Identify and describe all factors Cabot takes into account in setting or negotiating prices for each type of powder it sells or has sold and explain the mechanism by which such prices are initially established or modified.

11.   If Cabot contends that the market for flake and nodular powders is other that global, for each powder for which it is contended that the market is less than global, state:

(a)   The geographic locations to which such powder is shipped;

(b)   The geographic market that Cabot contends is appropriate for such powder;

(c)   The identity of all documents concerning each such geographic market;

(d)   The basis for the delineation of such geographic market;

(e)   The identity of all persons with knowledge concerning such geographic market or the delineation of such market.

12.   If Cabot contends that flake powder and nodular powder are not separate products for the purposes of § 1 of the Sherman Act, state:

    (a)      The identity of all documents concerning contention;

    (b)      The basis for such contention;

    (c)      The identity of all persons with knowledge concerning (i) the differences or similarities of flake and nodular powder or (ii) the basis for such contention.

13.     If Cabot contends that it does not have market power in the market for flake powder, state:

    (a)      The identity of all documents concerning contention;

    (b)      The basis for such contention;

    (c)      The identity of all persons with knowledge concerning (i) the differences or similarities of flake and nodular powder or (ii) the basis for such contention.

14.     Prepare a chart or list that contains the information called for in Exhibit A attached hereto in Excel or Excel readable format.

15.     Identify each expert Cabot expects to call at trial, and for each such expert, state:

    (a)      Such expert's qualifications;

    (b)      All information called for by Fed. R. Civ. P. 26(a)(2)(B).

Respectfully submitted,

AVX CORPORATION

AVX LIMITED

By their attorneys,

Evan Slavitt (466510)
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114
617/742-7300

January 10. 2006

## CERTIFICATE OF SERVICE

I hereby certify that I have, on the foregoing date, caused this document to be delivered by first class mail, by courier, or by hand.

Evan Slavitt

## EXHIBIT A

| PURCHASER | DATE | POWDER TYPE | QUANTITY | PRICE |
|-----------|------|-------------|----------|-------|
|           |      |             |          |       |
|           |      |             |          |       |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10467-RGS |
| CABOT CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, plaintiffs AVX Corporation and AVX Limited (collectively "AVX") hereby serve the following requests for production of documents on Cabot Corporation. All documents are to be produced at the offices of Bodoff & Slavitt LLP, 225 Friend Street, Boston, Massachusetts 02114 within thirty (30) days of service of this request, or at such other place and time as may be mutually agreed upon by the parties in advance.

## DEFINITIONS

1.     For purposes of this request for production, AVX adopts the "Uniform Definitions in Discovery Requests" contained in Local Rule 26.5 of the United States District Court for the District of Massachusetts. The following additional terms shall have the meanings set forth below:

{00015561.1}

2.     "AVX" shall mean plaintiffs AVX Corporation and AVX Limited, their various corporate parents, subsidiaries, affiliates, subdivisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

3.     "You," "your" and "Cabot" shall mean defendant Cabot Corporation, its various subsidiaries, affiliates, divisions and departments, (including, without limitation, its Performance Materials Division), and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

4.     The "Complaint" shall mean the "Complaint and Jury Demand" that AVX filed in this action.

5.     "Any" shall be construed also to mean "all," and "all" shall be construed also to mean "any."

6.     The word "agreement" shall mean any contract, letter of intent, undertaking, promise, agreement, arrangement or understanding, written or oral, including all amendments, supplements, additions and changes thereto.

7.     "Tantalum" or "Tantalum Products" shall mean refined or unrefined tantalum (chemical symbol "Ta," atomic number 73) in any form, including, but not limited to, tantalum wire, tantalum powder, tantalum ore and KTaF.

8.     The "Supply Agreement" shall mean the written Supply Agreement between and among AVX and Cabot, dated as of January 1, 2001.

## INSTRUCTIONS

1.      Unless otherwise specified, these document requests seek documents created or received at any time from January 1, 1996, to the present.

2.      In construing each document request, the singular form of a word shall be interpreted as plural and the plural as singular as necessary to bring within the scope of the request any information or documents that might otherwise be construed to be outside its scope.

3.      Each document request shall be construed independently and not with reference to any other request.

4.      With respect to any document that is responsive to these requests for which Cabot claims a privilege or which Cabot otherwise claims is not subject to production, Cabot shall provide a log or list describing each withheld document, and stating separately with
respect to each such document:

    a) the type of document (e.g., letter, memorandum, computer diskette, etc.);

    b) the date of the document;

    c) the title of the document;

    d) the author(s) of the document;

    e) the intended and actual recipients of the document;

    f) the general subject matter of the document; and

    g) the factual and/or legal basis(es) for your claim of privilege or ground(s) for non-production asserted with respect to the document.

5.      Cabot shall produce the responsive documents and things either as they are kept in the usual course of business, or organized and labeled to correspond to the categories in these requests.   If Cabot possesses no documents or things responsive to a particular request, Cabot shall so state in its response.

6.      Each request calls for production of each document and thing in its entirety, without abbreviation, redaction, expurgation, or modification.

7.      Each request seeks production of all documents and things described, along with any addenda, attachments, drafts, and non-identical copies, as found or located in either Cabot's business or personal files, together with a copy of the descriptive file folder or database category in its entirety.

8.      If Cabot objects to any request made herein as unduly broad, Cabot shall identify the categories of documents within the scope of the request that it believes are properly discoverable, shall produce all such documents, and shall state, with particularity, its reason for asserting that the remainder of the request seeks documents that are beyond the scope of permissible discovery.

9.      This request for documents shall be deemed continuing so as to require prompt supplemental responses in accordance with Fed. R. Civ. P. 26(e) if, between the date hereof and time of hearing or trial, any additional documents responsive to this request come into Cabot's possession, custody or control or the possession, custody or control of Cabot's agents or representatives, including but not limited to any attorneys, accountants and advisors.  Cabot is requested to produce any such additional documents within five (5) days of their coming into Cabot's possession, custody or control or the possession, custody or control of Cabot's agents or representatives.   If any such

additional documents or any portion thereof are withheld from production upon a claim
of privilege or for any other reason, Cabot promptly shall serve upon AVX a written
identification of each such document or portion of a document, setting forth the
information described in Instruction No. 4, supra.

## REQUESTS

Produce all documents in the following categories:

1.      All documents concerning written policies, procedures and guidelines
concerning Cabot's computers, computer systems, electronic data and electronic media,
paper media and paper files, including but not limited to the following:

a)      Backup tape rotation schedules;

b)      Electronic and non-electronic data retention, preservation and
destruction schedules and policies including all document retention
policies;

c)      Employee use policies of company computers, data, and other
technology;

d)      File naming conventions and standards, and paper file systems;

e)      Diskette, CD, DVD, flash memory devices, and other removable
media standards;

g)      Email storage conventions such as limitations on mailbox sizes,
storage locations, schedule and logs for storage; and

h)      Organization charts for all Information Technology or Information
Service Departments.

2.     All documents concerning the market for flake tantalum.

3.     All documents concerning potential or actual substitutes for flake tantalum.

4.     All documents concerning market surveys, market analysis, market definition, or marketing plans for or concerning the market for flake tantalum.

5.     All patents for or concerning flake tantalum and all documents concerning such patents.

6.     All documents concerning any other company, entity, or source for flake tantalum.

7.     All documents concerning any other company, entity, or source for any product that is or could be a substitute for flake tantalum.

8.     All documents concerning the actual or potential uses for flake tantalum.

9.     All competitive or antitrust analyses of:

a)     Flake tantalum;

b)     The market for flake tantalum;

c)     Actual or potential substitutes for flake tantalum;

d)     Actual or potential suppliers for flake tantalum;

e)     The relationship between flake and nodular tantalum;

f)     Cabot sales techniques for flake and nodular tantalum; or

g)     Any linkage or relationship between Cabot's sales or efforts to sell flake and nodular tantalum

10.     All documents concerning the market for nodular tantalum.

11.    All documents concerning potential or actual substitutes for nodular tantalum.

12.    All documents concerning market surveys, market analysis, market definition, or marketing plans for or concerning the market for nodular tantalum.

13.    All patents for or concerning nodular tantalum.

14.    All documents concerning any other company, entity, or source for nodular tantalum.

15.    All documents concerning any other company, entity, or source for any product that is or could be a substitute for nodular tantalum.

16.    All documents concerning the actual or potential uses for nodular tantalum.

17.    All competitive or antitrust analyses of:

a)    Nodular tantalum;

b)    The market for nodular tantalum;

c)    Actual or potential substitutes for nodular tantalum; or

d)    Actual or potential suppliers for nodular tantalum.

18.    All documents concerning negotiations with any company or entity that purchased both flake tantalum and nodular tantalum from Cabot.

19.    All documents concerning

a)    The factors Cabot takes into account in setting or negotiating prices for each type of powder it sells or has sold;

b)    The mechanism by which such prices are initially established or modified;

c)      The pricing of or each type of powder Cabot sells or has sold (note: this

request does not call for all documents related to the prices actually

charged, but rather the mechanism by which prices are established).

20.     Document destruction inventories/logs/schedules used by Cabot and

identify documents or classes of documents that were subject to scheduled destruction

and all disaster recovery plans.


Respectfully submitted,

AVX CORPORATION

AVX LIMITED

By their attorneys,


_____
Evan Slavitt (466510)
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114
617/742-7300

January 10, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I have, on the foregoing date, caused this document to be delivered by first class mail, by courier, or by hand.

_____

Evan Slavitt