# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION and AVX LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 04-10467-RGS<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT CABOT CORPORATION'S
## OBJECTIONS AND RESPONSES TO PLAINTIFFS'
## FIRST SET OF INTERROGATORIES

Defendant Cabot Corporation ("Cabot") hereby responds, pursuant to Fed. R. Civ. P. 26 and 33, to plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") First Set Of Interrogatories to Cabot Corporation (each an "Interrogatory" and, collectively, the "AVX Interrogatories").

### General Objections

1.    Cabot generally objects to the AVX Interrogatories to the extent that they seek the disclosure of any information and/or materials that are protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege, protection or immunity. Cabot relies upon and hereby expressly asserts and insists on any such privilege, protection or immunity. To the extent that the AVX Interrogatories seek such information and/or materials, they are excluded from Cabot's responses.

2.    Cabot generally objects to the AVX Interrogatories to the extent that they are overly broad, unduly burdensome, vague and/or ambiguous.

3.    Cabot generally objects to the AVX Interrogatories to the extent that they seek confidential or proprietary information and/or materials. In particular, but without limitation, Cabot objects to the unprotected disclosure of confidential and/or proprietary information concerning Cabot's business dealings with AVX's competitors. Cabot will provide such confidential or proprietary information, to the extent that its disclosure would not unduly harm Cabot's business interests or the interests of Cabot's other customers, pursuant to the Stipulated Protective Order entered in this action.

4.    Cabot generally objects to the scope of the AVX Interrogatories to the extent that they do not incorporate reasonable date restrictions.

5.    Cabot generally objects to the "Definitions" set forth in the AVX Interrogatories to the extent that those "Definitions" are overly broad, unduly burdensome, vague or ambiguous. Cabot will give the terms used in the AVX Interrogatories their usual and normal meanings.

6.    Cabot generally objects to the AVX Interrogatories to the extent that they seek to impose obligations on Cabot different from, or beyond those imposed by, the Federal Rules of Civil Procedure. Cabot will, and herein does, comply with its obligations under the Federal Rules of Civil Procedure and/or any other applicable rule, regulation and/or law.

7.    Cabot generally objects to the AVX Interrogatories to the extent that they seek information that is unreasonably cumulative and/or duplicative.

8.    Cabot generally objects to the AVX Interrogatories, including all discrete subparts, to the extent that they exceed the maximum number of interrogatories permitted under Fed. R. Civ. P. 33(a).

9.    By providing information in response to the AVX Interrogatories, Cabot does not waive, and hereby expressly reserves, all objections as to the relevancy, materiality or admissibility of the information disclosed and the subject matter thereof.

10.    Cabot hereby asserts that the provision of a specific response to any Interrogatory does not waive any General Objection made herein.

11.    Cabot states that its objections and responses to the AVX Interrogatories are based upon information and documentation presently available and specifically known to Cabot. Cabot expressly reserves the right to amend, supplement or otherwise modify its objections and responses to the AVX Interrogatories as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

## Specific Responses And Objections

Subject to the foregoing General Objections, each of which is hereby incorporated by reference into each of the following responses, Cabot responds to the specific AVX Interrogatories as follows:

Interrogatory No. 1:

Identify all email systems in use, including but not limited to the following:

a)    List all email software and versions presently and previously used by you and the dates of use;

-2-

      b)      Identify all hardware that has been used or is currently in use as a server for the email system including its name;

      c)      Identify the specific type of hardware that was used as terminals into the email system (including home PCs, laptops, desktops, cell phones, personal digital assistants ["PDAs"], etc.);

      d)      State how many users there have been on each email system (delineate between past and current users);

      e)      State whether email is encrypted in any way;

      f)      Identify all users known to you who have generated email concerning any document responsive to Plaintiff's First Request for Production of Documents and, for each, list all email addresses used.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that its facilities have utilized a wide variety of e-mail systems, including both software and hardware, since January 1, 1996. Cabot's main office in Boston, Massachusetts currently uses Lotus Notes as its primary e-mail software, running on a Hewlett-Packard server. Separate servers running Lotus Notes are used to support various other Cabot facilities. Cabot's e-mail system traditionally has been accessible to Cabot employees through PC terminals located in Cabot facilities and remotely from home computers and laptop computers, but not encrypted as a default. The number of daily users of Cabot's e-mail systems have varied over time. Cabot's e-mail system currently is used by approximately 4,400 employees (including about 200 in Boston) each day.

Interrogatory No. 2:

As to each computer network, identify the following:

      a)      Brand and version number of the network operating system currently or previously in use (include dates of all upgrades);

      b)      Quantity and configuration of all network servers and workstations;

      c)      Person(s) (past and present including dates) responsible for the ongoing operations, maintenance, expansion, archiving and upkeep of the network;

      d)      Brand name and version number of all applications and other software residing on each network in use, including but not limited to electronic mail and applications.

Response:

      Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

      Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that its facilities have utilized a variety of networked computer systems utilizing a broad range of hardware, operating systems and applications since January 1, 1996. Those computer systems have been operated, maintained and expanded by a large number of IT professionals over the same time frame. The current head of Cabot's IT Department is Randall Carter.

Interrogatory No. 3:

      As to data backups performed on all computer systems currently or previously in use, identify the following:

      a)      All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of backup drives, including name and version number, type of media and state the capacity (bytes) and total amount of information (gigabytes) stored on each backup medium;

      b)      Describe the tape or backup rotation and explain how backup data is maintained and state whether the backups are full or incremental;

      c)      State whether backup storage media is kept off-site or on-site and state the location of such backup and a description of the process for archiving and retrieving on-site media;

      d)      The identity of all individual(s) who conducts the backup and the individual who supervises this process;

      e)      Provide a detailed list of all backup sets, regardless of the media on which they reside, showing current location, custodian, date of backup, a description of backup content and a fully inventory of all archives.

Response:

      Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the

grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that its facilities have utilized a variety of backup media, methods, technologies and procedures for Cabot's computer systems utilizing a broad range of hardware, operating systems and applications since January 1, 1996. Those backup operations have been conducted by a variety of IT professionals over the same time frame. The current head of Cabot's IT Department is Randall Carter.

Interrogatory No. 4:

Identify any data that has been deleted, physically destroyed, discarded, damaged (physically or logically), or overwritten, whether pursuant to a document retention policy or otherwise, since the commencement of this litigation. Specifically identify those documents that relate to or reference the subject matter of the above referenced litigation.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that a variety of data is deleted, destroyed, discarded, damaged (physically or logically), or overwritten on its computer systems in the normal course of Cabot's operations on a daily basis. To the best of Cabot's present knowledge, information, and belief, however, no data that is reasonably relevant to the claims asserted in this action has been intentionally destroyed or deleted by Cabot since the commencement of this litigation.

Interrogatory No. 5:

Identify all versions of document/data retention policies used by Cabot and identify documents or classes of documents that were subject to scheduled destruction. Also state:

a)    The date, if any, of the suspension of this policy *in toto* or any aspect of said policy in response to this litigation;

b)    A description by topic, creation date, user or bytes of any and all data that has been deleted or in any way destroyed after the commencement of this litigation and state whether the deletion or destruction of any data pursuant to said data retention policy occurred through automation or buy user action;

c)   Whether any company-wide instruction regarding the suspension of said data retention/destruction policy occurred after or related to the commencement of this litigation and if so, identify the individual responsible for enforcing said suspension.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that copies of its document retention policies, to the extent that the same exist, will be produced in response to AVX's First Request for Production of Documents in this action. Cabot further states that a variety of data is deleted, destroyed, discarded, damaged (physically or logically), or overwritten on its computer systems in the normal course of Cabot's operations on a daily basis. To the best of Cabot's present knowledge, information, and belief, however, no data that is reasonably relevant to the claims asserted in this action has been intentionally destroyed or deleted by Cabot since the commencement of this litigation.

Interrogatory No. 6:

Identify all purchasers of flake tantalum and, for each, state:

a)   The quantities purchased by each such purchaser both in total and by year;

b)   Whether such purchases were pursuant to contract or were "spot" purchases;

c)   The names of the persons dealing or negotiating with Cabot with respect to such purchases;

d)   The names of the persons at Cabot dealing or negotiating with such purchaser with respect to such purchases;

e)   Whether such purchaser also purchased nodular tantalum.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that it has produced or will produce in response to AVX's First Request for Production of Documents in this action non-privileged documents concerning AVX's purchases of flake powder from which the information requested reasonably can be derived or ascertained pursuant to Fed. R. Civ. P. 33(d).

Interrogatory No. 7:

Identify all purchasers of nodular tantalum.

a)    The quantities purchased by each such purchaser both in total and by year;

b)    Whether such purchases were pursuant to contract or were "spot" purchases;

c)    The names of the persons dealing or negotiating with Cabot with respect to such purchases;

d)    The names of the persons at Cabot dealing or negotiating with such purchaser with respect to such purchases;

e)    Whether such purchaser also purchased flake tantalum.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that it has produced or will produce in response to AVX's First Request for Production of Documents in this action non-privileged documents concerning AVX's purchases of nodular powder from which the information requested reasonably can be derived or ascertained pursuant to Fed. R. Civ. P. 33(d).

Interrogatory No. 8:

Identify the technical characteristics of each form of nodular or flake powder produced by Cabot (including but not limited to primary particle size, aggregate size, rated voltage, capacitance, surface area, raw Scott, raw flow, raw crust strength, sintering time and temperature, oxygen minimum and maximum, nitrogen maximum, wet DCL, BDV) and, for each, identify all known actual uses to which such powder is put.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that, since January 1, 1996, it has produced a variety of nodular and flake tantalum powder products having a wide range of technical characteristics, including but not limited to primary particle size, aggregate size, rated voltage, capacitance, surface area, raw Scott, raw flow, raw crust strength, sintering time and temperature, oxygen minimum and maximum, nitrogen maximum, wet DCL, BDV. There are many potential uses for tantalum powder. More than 60 percent of the world's tantalum is used in electronics products. The largest application is electronic capacitors, where tantalum's ability to form stable oxide films creates highly efficient, highly reliable and environmentally versatile components. In semiconductors, tantalum has emerged as an ideal barrier solution, since copper is replacing aluminum as the material of choice for interconnects.

Interrogatory No. 9:

For each form of powder identified in response to interrogatory 8 above, identify all other substitutes for such powder, and, if such substitute is not identical in performance or price, identify all differences between such powder and each such substitute.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that most, if not all, forms of tantalum powder have substitutes which can vary depending upon the desired characteristics of the final product.

Interrogatory No. 10:

Identify and describe all factors Cabot takes into account in setting or negotiating prices for each type of powder it sells or has sold and explain the mechanism by which such prices are initially established or modified.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that factors that it has taken into account in setting or negotiating prices for the tantalum powders that it sells or has sold since January 1, 1996, included, but are not limited to, raw material costs, manufacturing costs, transportation costs, administrative overhead costs, customer purchase volumes, and competitor pricing.

Interrogatory No. 11:

If Cabot contends that the market for flake and nodular powders is other than global, for each powder for which it is contended that the market is less than global, state:

a)    The geographic locations to which such powder is shipped;

b)    The geographic market that Cabot contends is appropriate for such powder;

c)    The identity of all documents concerning each such geographic market;

d)    The basis for the delineation of such geographic market;

e)    The identity of all persons with knowledge concerning such geographic market or the delineation of such market.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states it has competitors selling a range of tantalum powders in various locations around the world, including Europe, Asia and the Far East.

Interrogatory No. 12:

If Cabot contends that flake powder and nodular powder are not separate products for the purposes of § 1 of the Sherman Act, state:

a)    The identity of all documents concerning contention;

b)    The basis for such contention;

c)    The identify of all persons with knowledge concerning (i) the differences or similarities of flake and nodular powder or (ii) the basis for such contention.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and calls for a legal conclusion. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that many tantalum powders, including flake and nodular, are interchangeable depending upon the desired characteristics of the final product. Accordingly, Cabot believes that flake powder and nodular powders are not properly regarded as "separate products" for the purposes of Section 1 of the Sherman Act.

Interrogatory No. 13:

If Cabot contends that it does not have market power in the market for flake powder, state:

a)    The identity of all documents concerning contention;

b)    The basis for such contention;

c)    The identify of all persons with knowledge concerning (i) the differences or similarities of flake and nodular powder or (ii) the basis for such contention.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and calls for a legal conclusion. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that many tantalum powders, including flake and nodular, are interchangeable depending upon the desired characteristics of the final product. Accordingly, Cabot believes that it does not have "market power" with respect to tantalum powder, including flake powder.

Interrogatory No. 14:

Prepare a chart or list that contains the information called for in Exhibit A attached hereto in Excel or Excel readable format.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Cabot further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory No. 15:

Identify each expert Cabot expects to call at trial, and for each such expert, state:

a)    Such expert's qualifications;

b)    All information called for by Fed. R. Civ. P. 26(a)(2)(B).

Response:

Cabot has not yet determined which, if any, experts it intends to call at trial of this action. If Cabot forms the intention to call one or more expert witnesses at trial of this action, Cabot will supplement its response to this interrogatory seasonably prior to trial.

As to objections,

_____
Robert S. Frank, Jr. (BBO No. 177240)
Brian A. Davis (BBO No. 546462)
Terrence M. Schwab (BBO No. 650793)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000

Date:    December 20, 2006

4157164.1

## VERIFICATION

I, Eduardo E. Cordeiro, state under the penalties of perjury that: I am Vice President and General Manager of the Cabot Supermetals division of defendant Cabot Corporation; I have read the foregoing responses to the AVX Interrogatories and know the contents thereof; that said responses were prepared with the assistance and advice of counsel; the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, collected and thus far discovered in the course of preparation of these responses; that I reserve the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; that, subject to the limitations set forth herein, these responses are true to the best of my knowledge, information and belief.

Signed under the penalties of perjury on this 20th day of December, 2006.

                                                 _____

                                               Eduardo E. Cordeiro

## CERTIFICATE OF SERVICE

I, Terrence M. Schwab, hereby certify that on this 20th day of December, 2006, I caused to be served a true and correct copy of the foregoing Cabot Corporation's Objections And Responses To Plaintiffs' First Set Of Interrogatories on the counsel of record for AVX Corporation and AVX Limited at the address and in the manner indicated below:

Joseph S.U. Bodoff, Esq.                    [x] U.S. Mail
BODOFF & ASSOCIATES                         [x] Facsimile
225 Friend Street, 7th Floor                [ ] Overnight Delivery
Boston, MA  02114-1812                       [ ] Hand Delivery

_____
Terrence M. Schwab

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION and AVX LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO. 04-10467-RGS<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT CABOT CORPORATION'S
## OBJECTIONS AND RESPONSES TO PLAINTIFFS'
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Cabot Corporation ("Cabot"), by and through its counsel, hereby responds to Plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") Third Request for Production of Documents (each a "Request," and, collectively, the "AVX Requests") pursuant to Fed. R. Civ. P. 26 and 34.

### General Objections

1.     Cabot generally objects to the AVX Requests to the extent that they seek the disclosure of any documents or materials that are protected from disclosure by the attorney-client privilege, the joint defense privilege, the work product doctrine, or any other applicable privilege, protection or immunity. Cabot relies upon and hereby expressly asserts and insists on any such privilege, protection or immunity. To the extent that the AVX Requests seek such documents or materials, they are excluded from Cabot's responses.

2.     Cabot generally objects to the scope of the AVX Requests to the extent that they do not contain reasonable date restrictions.

3.     Cabot generally objects to the AVX Requests to the extent that they seek the production of documents or materials containing confidential or proprietary information. In particular, but without limitation, Cabot objects to the production of documents or materials containing confidential or proprietary information concerning Cabot's business dealings with AVX's competitors. Cabot will produce documents or materials containing confidential or proprietary information, to the extent that their disclosure would not unduly harm Cabot's business interests or the interests of Cabot's other customers, pursuant to the Stipulated

Protective Order entered in this action.

4.    Cabot generally objects to the "Definitions" set forth in the Requests to the extent that those "Definitions" are overly broad, unduly burdensome, vague or ambiguous, and will give the terms used in the Requests their usual and normal meanings.

5.    Cabot generally objects to the Requests to the extent that they seek to impose obligations on Cabot different from, or beyond those imposed by, the Federal Rules of Civil Procedure.  Cabot will, and herein does, comply with its obligations under the Federal Rules of Civil Procedure and/or any other applicable rule, regulation and/or law.

6.    Cabot objects to the AVX Requests to the extent they seek documents that are not within the possession, custody or control of Cabot, and that are unreasonably cumulative and/or duplicative.  Cabot also objects to the AVX Requests to the extent they seek documents that already are within the possession of AVX or its counsel or other representatives.

7.    Cabot objects to the AVX Requests to the extent they impose or purport to impose upon Cabot the duties, liabilities or obligations of third parties for which Cabot is not legally or otherwise responsible.

8.    Cabot expressly reserves the right to redact material from any document or thing produced in response to the AVX Requests that is beyond the scope of permissible discovery in this matter.  Documents that have been redacted by Cabot will be stamped with the word "Redacted."

9.    By producing documents in response to the AVX Requests, Cabot does not waive, and hereby expressly reserves, all objections as to the relevancy, materiality or admissibility of the documents produced and the subject matter thereof.

10.    Cabot hereby asserts that the provision of a specific response to any Request does not waive any General Objection made herein.

11.    Any statement herein that Cabot will produce documents in response to the AVX Requests does not constitute a representation by Cabot that any such documents in fact exist or are within Cabot's possession, custody or control.

12.    Cabot states that its objections and responses to the AVX Requests are based upon information and documentation presently available and specifically known to Cabot.  Cabot therefore expressly reserves the right to amend, supplement or otherwise modify its objections and responses to the AVX Requests as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

## Specific Responses And Objections

Subject to the foregoing General Objections, each of which is hereby incorporated by reference into each of the following responses, Cabot responds to the specific AVX Requests as follows:

Request No. 1:

All documents concerning written policies, procedures and guidelines concerning Cabot's computers, computer systems, electronic data and electronic media, paper media and paper files, including but not limited to the following:

a)   Backup tape rotation schedules;

b)   Electronic and non-electronic data retention, preservation and destruction schedules and policies including all document retention policies;

c)   Employee use policies of company computers, data, and other technology;

d)   File naming conventions and standards, and paper file systems;

e)   Diskette, CD, DVD, flash memory devices, and other removable media standards;

g)   Email storage conventions such as limitations on mailbox sizes, storage locations, schedule and logs for storage; and

h)   Organization of charts for all Information Technology or Information Service Departments.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents and things sought are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that are reasonably responsive to this Request.

Request No. 2:

All documents concerning the market for flake tantalum.

Response:

      Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague.  Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 3:

      All documents concerning potential or actual substitutes for flake tantalum.

Response:

      Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague.  Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 4:

      All documents concerning market surveys, market analysis, market definition, or marketing plans for or concerning the market for flake tantalum.

Response:

      Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague.  Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 5:

      All patents for or concerning flake tantalum and all documents concerning such patents.

Response:

      Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague.  Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-

privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 6:

All documents concerning any other company, entity, or source for flake tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 7:

All documents concerning any other company, entity, or source for any product that is or could be a substitute for flake tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 8:

All documents concerning the actual or potential uses for flake tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 9:

All competitive or antitrust analyses of:

a)      Flake tantalum;

b)      The market for flake tantalum;

c)      Actual or potential substitutes for flake tantalum;

d)      Actual or potential suppliers for flake tantalum;

e)      The relationship between flake and nodular tantalum;

f)      Cabot sales techniques for flake and nodular tantalum; or

g)      Any linkage or relationship between Cabot's sales or efforts to sell flake and nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 10:

All documents concerning the market for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 11:

All documents concerning potential or actual substitutes for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 12:

All documents concerning market surveys, market analysis, market definition, or marketing plans for or concerning the market for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 13:

All patents for or concerning nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 14:

All documents concerning any other company, entity, or source for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, and impermissibly vague. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 15:

All documents concerning any other company, entity, or source for any product that is or could be a substitute for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 16:

All documents concerning the actual or potential uses for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 17:

All competitive or antitrust analyses of:

a)      Nodular tantalum;

b)      The market for nodular tantalum;

c)      Actual or potential substitutes for nodular tantalum; or

d)      Actual or potential suppliers for nodular tantalum.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 18:

All documents concerning negotiations with any company or entity that purchased both flake tantalum and nodular tantalum from Cabot.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control concerning AVX's purchases of flake powder and nodular powder from Cabot that it deems reasonably responsive to this request.

Request No. 19:

All documents concerning:

a)    The factors Cabot takes into account in setting or negotiating prices for each type of powder it sells or has sold;

b)    The mechanism by which such prices are initially established or modified;

c)    The pricing of or each type of powder Cabot sells or has sold (note: this request does not call for all documents related to the prices actually charged, but rather the mechanism by which prices are established).

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has

produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

Request No. 20:

Document destruction inventories/logs/schedules used by Cabot and identify documents or classes of documents that were subject to schedule destruction and all disaster recovery plans.

Response:

Cabot objects to this Request on the grounds that it is overly broad, unduly burdensome, impermissibly vague, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot has produced or will produce non-privileged documents in its possession, custody or control that it deems reasonably responsive to this Request.

CABOT CORPORATION

By its attorneys,

Robert S. Frank, Jr. (BBO No. 177240)
Brian A. Davis (BBO No. 546462)
Terrence M. Schwab (BBO No. 650793)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000

Date:   December 20, 2006

4157708.1

-10-

## CERTIFICATE OF SERVICE

I, Terrence M. Schwab, hereby certify that on this 20th day of December, 2006, I caused to be served a true and correct copy of the foregoing Cabot Corporation's Objections And Responses To Plaintiffs' First Request For Production Of Documents on the counsel of record for AVX Corporation and AVX Limited at the address and in the manner indicated below:

Joseph S.U. Bodoff, Esq.               [x] U.S. Mail
BODOFF & ASSOCIATES            [x] Facsimile
225 Friend Street, 7th Floor         [ ] Overnight Delivery
Boston, MA  02114-1812           [ ] Hand Delivery

Terrence M. Schwab