UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>        Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>        Defendant. | CIVIL ACTION NO. 04-10467-RGS |

### DEFENDANT CABOT CORPORATION'S OPPOSITION
### TO PLAINTIFFS' RULE 37 MOTION TO COMPEL DISCOVERY

Defendant Cabot Corporation ("Cabot") hereby opposes plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") Motion to Compel Discovery Under Rule 37 (the "Motion to Compel"). AVX seeks more than *11 years* worth of discovery that goes well beyond the reasonable limits or merits of its sole claim in this action, which is limited to whether Cabot forced AVX in January 2001 to sign a supply agreement for tantalum products (the "2001 Supply Agreement") containing an unlawful "tying" arrangement whereby Cabot "conditioned AVX's purchase of flake [tantalum] powders on its purchase of non-flake [tantalum] powders." AVX allegedly "had no choice" but to purchase Cabot's non-flake powders because Cabot's flake tantalum powders are "unique in the industry," and AVX purportedly "could not fulfill its customers' needs without Cabot's 'flake' form of tantalum...." AVX makes this claim notwithstanding the fact that the top AVX executives who negotiated the 2001 Supply Agreement already have admitted under oath that AVX could have replaced Cabot's flake

Case 1:04-cv-10467-RGS   Document 54   Filed 03/28/2007   Page 2 of 18

tantalum powders in its manufacturing process in *"three to six months"* if AVX had wished to do so, and that AVX actually wanted to buy *more* non-flake tantalum powder from Cabot than it ultimately committed to purchase in the 2001 Supply Agreement.[1]

---

[1] Mr. John S. Gilbertson, AVX's President and Chief Executive Officer, and Mr. Ernest E. Chilton, then the Vice President in charge of all of AVX's tantalum operations, were the principal negotiators of the terms of the 2001 Supply Agreement on behalf of AVX. Mr. Chilton was deposed in related state court litigation between Cabot and AVX in September 2006. His testimony regarding AVX's ability to replace Cabot's flake powder includes the following:

> Q. You're familiar with the differences between nodular and flake products; is that right?
>
> A. Yes.
>
> Q. Was it possible for AVX in 2000 or 2001 -- was it possible for AVX over time to have replaced Cabot's products?
>
> A. Oh, yes, yes.
>
> Q. How would AVX have gone about doing that?
>
> A. By reviewing materials from all of the suppliers and working primarily in paying to review them, develop them, and getting back to [AVX's manufacturing facility located in] Biddeford [Maine].
>
> Q. So it would have been possible over time for AVX to qualify different products with its customers?
>
> A. Yes, yes.
>
> Q. Is that true for nodular products?
>
> A. Yes.
>
> Q. Is that true for flake products?
>
> A. Flake was proving more difficult.
>
> Q. Was it impossible for AVX to replace flake?
>
> [AVX COUNSEL]: Objection. You may answer.
>
> A. No.
>
> ********
>
> Q. Do you recall a discussion within AVX at that time --
>
> A. Constantly.

-3-

> Q. -- about how AVX could go about replacing Cabot products?
>
> A. Yes.
>
> Q. And it's your recollection that from that discussion that it was possible for AVX to replace Cabot's flake powders over time?
>
> A. Yes, yes.
>
> [AVX COUNSEL]: Objection.
>
> THE WITNESS: Sorry.
>
> A. Yes.
>
> Q. How much time do you recall AVX would have needed for that purpose?
>
> A. Depending on priorities, three to six months.

Deposition of Ernest E. Chilton, dated September 11, 2006, in the related action captioned <u>AVX Corp. and AVX Ltd. v. Cabot Corporation</u>, Massachusetts Superior Court for Suffolk County, Civil Action No. 05-03816-BLS-1 (the "Second State Court Action"), at 12-13, 52-54. True, relevant excerpts of Mr. Chilton's deposition transcript are append to this Opposition at Tab 1.

    Similarly, Mr. John S. Gilbertson was deposed in Second State Court Action between Cabot and AVX in August 2006. His testimony concerning the negotiation of the 2001 Supply Agreement includes the following:

> Q. Down below in the chart, in the bottom portion of the first page of Exhibit 2, I note that the chart in your e-mail now includes 25,000 pounds of nodular powder in 2001 and 30,000 pounds of nodular powder for Biddeford in 2002 through 2005, do you see that?
>
> A. Yes, I do.
>
> Q. And then you say in the text above the chart: "I lowered the commitment to 25,000 pounds in Biddeford. How about a statement that you will try to add 5,000 pounds"?
>
> A. Yes.
>
> Q. Do you see that?
>
> A. Yes.
>
> Q. Is it fair to say that your objective was, if you could, to purchase additional nodular powder?
>
> A. Yes.
>
> Q. Okay. And is it -- directing your attention to the continuation of the chart, the second page, the very top of that chart there's a listing of

Based upon its single, spurious tying claim, AVX now seeks an order compelling Cabot to produce an enormous quantity of largely irrelevant information including, *inter alia*:

(1) detailed information concerning every e-mail system, and virtually every person who has used an e-mail system, at any of Cabot's "offices, plants and facilities worldwide and those of Cabot's subsidiaries and affiliates" during the more than eleven year period from January 1, 1996 to the present, including the more than six year period *after* the 2001 Supply Agreement was signed (Interrogatory No. 1);

(2) detailed information concerning any and all "data" that has been deleted, discarded or overwritten in any Cabot file or on any Cabot computer system in the normal course of Cabot's business over the same eleven-plus year period (Interrogatory No. 4);

(3) detailed information concerning every single purchaser of either Cabot's flake or nodular tantalum powder over the same eleven-plus year period (Interrogatory Nos. 6, 7);

---

> 10,000 pounds of nodular powder under the heading Europe in the years 2002 through 2005, do you see that?
>
> A. I see that, yes. This was basically [Cabot's] chart, you know.
>
> Q. Okay. Now if you will look just above the chart, and you will see it says, "change the nodular to 10,000 pounds, which our side is very uncomfortable with as a good faith from our side." Do you see that? Just above the chart.
>
> A. I see that, yes.
>
> Q. Is it correct that you were uncomfortable with the reduction from 60,000 pounds of nodular powder as shown on [Cabot's] e-mail, Exhibit 181, to the 10,000 pounds as shown on Exhibit 2?
>
> A. Yes.
>
> Q. Because you wanted more if you could get it?
>
> A. Right.
>
> Q. I'm sorry?
>
> A. Yes, correct.

Deposition of John S. Gilbertson, dated August 22, 2006, in the Second State Court Action, at 5-6, 164-166. True, relevant excerpts of Mr. Gilbertson's deposition transcript are append to this Opposition at Tab 2.

-4-

(4)  detailed information concerning every single purchase of either Cabot's flake or nodular tantalum powder over the same eleven-plus year period (Interrogatory No. 14); and

(5)  "all documents" that in any way concern the contention that Cabot's flake and nodular tantalum powders are not "separate products" for purposes of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* (Interrogatory Nos. 12, 13).

As discussed more fully below, the vast majority of the information that AVX seeks from Cabot is not relevant to, and not likely to lead to the discovery of information relevant to, AVX's claim that it was forced by Cabot to enter into an illegal tying arrangement back in January 2001. To the extent that any of the information requested by AVX is potentially relevant to that claim, Cabot already has produced it, or agreed to produce it, in its written discovery responses. Even if AVX's discovery requests sought relevant information, however, they are wildly over-broad and oppressive in both timing and scope and, therefore, properly objectionable on that basis.

## Factual Background

This action represents just one of a series of legal disputes between AVX and Cabot arising from a multi-year, written Supply Agreement for tantalum products that AVX and Cabot entered into effective January 1, 2001 (the "2001 Supply Agreement"). Complaint and Jury Demand ("Complaint"), ¶ 29. Cabot produces various tantalum products, and AVX uses tantalum products that it purchases from Cabot (and other suppliers) to manufacture passive electronic components. *Id.*, ¶¶ 7-9. The 2001 Supply Agreement -- which was signed by the parties at a time of particularly short supply and high demand for tantalum products -- calls for AVX to purchase certain minimum quantities of tantalum products from Cabot at fixed prices over a five year period. *Id.*, ¶¶ 16, 23, Exhibit C.

AVX first attempted to escape the 2001 Supply Agreement approximately eighteen months after it was signed by arguing that it only entered into that Agreement under "economic

duress." *See* AVX's Answer, Counterclaim and Jury Demand in the related action titled <u>Cabot Corp. v. AVX Corp. and AVX Ltd.</u>, Massachusetts Superior Court for Suffolk County Civil Action No. 03-01235 (the "First State Court Action") (a true copy of which is appended to this Opposition at Tab 3).[2] AVX's economic duress claims eventually were rejected by the Superior Court as a matter of law after the close of discovery in a Memorandum and Order issued on June 18, 2004. *See* <u>Cabot Corp. v. AVX Corp. and AVX Ltd.</u>, 18 Mass.L.Rptr. 36, 2004 WL 1588116, at *7 (Mass. Super. June 18, 2004). That decision was affirmed by the Massachusetts Supreme Judicial Court on March 28, 2007. *See* <u>Cabot Corp. v. AVX Corp. and AVX Ltd.</u>, Case No. SJC-09857 (March 28, 2007).

More recently, AVX commenced yet another state court action against Cabot under the 2001 Supply Agreement claiming that Cabot failed to provide AVX with certain "Most Favored Nation" or "Most Favored Customer" benefits that AVX allegedly was due under that Agreement. *See* AVX's Complaint and Jury Demand in the Second State Court Action (a true copy of which is appended to this Opposition at Tab 4). The Second State Court Action still is being litigated by the parties, with cross-motions for partial summary judgment currently pending.

AVX commenced this federal court action against Cabot on March 8, 2004, alleging that Cabot had forced AVX into signing the 2001 Supply Agreement in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 14. More specifically, AVX alleges that "[f]lake powders and non-flake powders are separate products," and that Cabot committed an unlawful tying violation by "condition[ing] AVX's purchase of flake powders on its purchase of non-flake powders."

---

[2] The claims asserted by AVX in the First State Court Action originally were filed in United States District Court for the District of Massachusetts, but later were voluntarily dismissed and refiled in state court after AVX's only federal claim in that proceeding was dismissed by this Court.

Complaint, ¶¶ 37-38, 41. Cabot denies AVX's allegations of tying (among others). All discovery in this action was stayed by agreement of the parties while the parties litigated and/or appealed from Cabot's subsequent Motions to Dismiss and for Judgment on the Pleadings. *See* Joint Motion To Amend The Scheduling Order, dated October 5, 2006 (Docket No. 43). In the fall of 2006, AVX's lead counsel was suspended from the practice of law, which necessitated a further delay in discovery. *Id.* The parties now have exchanged written discovery requests and responses. Cabot's initial discovery responses were served on AVX on December 20, 2006. AVX challenges certain of those discovery responses in its current Motion to Compel. After multiple extensions from Cabot's counsel, AVX's initial responses to Cabot's written discovery requests finally were served on March 2, 2007. (True copies of AVX's responses are appended to this Opposition at Tab 5.) As discussed below, many of the positions that AVX espouses in its Motion to Compel are diametrically opposed to positions that AVX has taken in its responses to Cabot's discovery requests in this action.

### Argument

I. AVX'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE DISCOVERY REQUESTS AT ISSUE SEEK INFORMATION THAT IS EITHER TOTALLY IRRELEVANT OR HAS MINIMAL RELEVANCE THAT DOES NOT OUTWEIGH THE SUBSTANTIAL BURDEN THAT ITS PRODUCTION WOULD PLACE UPON CABOT (DOCUMENT REQUEST NO. 18; INTERROGATORY NOS. 1, 4, 6, 7, 8, 9 AND 14).

Now and for all time, discovery under the Federal Rules is not a "fishing expedition." Milazzo v. Sentry Ins., 856 F.2d 321, 322 (1st Cir. 1988). A party may not cast its net in a grossly over-broad manner simply in the hope of catching something of interest but must be drafted with "reasonable particularity." *See* Shlafly v. Caro-Kann Corp., 155 F.3d 565, 566 (Fed. Cir. 1998), *citing* Fed.R. Civ. P. 34(b) (burden is on requesting party to craft discovery requests with "reasonable particularity"). Rather, discovery "should be tailored to the issues

involved in the particular case." Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D. D.C. 1983). A party seeking to compel discovery over an opponent's objection has the burden of showing its relevance. *See* Caouette v. Officemax, Inc., 352 F.Supp.2d 134, 136 (D. N.H. 2005) (*citing* Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995)). Mere assurances by the moving party that the information sought is relevant or potentially relevant are insufficient to sustain this burden. *See* Caouette, 352 F.Supp.2d at 136 (holding a mere charge that the interrogatory responses sought by plaintiff "would provide the needed evidence or proof of wrongdoing" was insufficient basis to compel responses).

The voluminous information that AVX now seeks to compel in this case includes, among other things, detailed information concerning *all* of Cabot's sales of flake and non-flake tantalum powders for the *five years* preceding the 2001 Supply Agreement as well as the *six-plus years* following the execution of that Agreement (including prices, quantities, sales dates, and end uses for the powders) (Interrogatory Nos. 6, 7, 14); detailed information concerning *all* of Cabot's customers for flake and non-flake tantalum powders over the same eleven-plus year period (Interrogatory Nos. 6, 7); documents concerning *any and all* negotiations between Cabot and its flake and nodular powder customers over the same eleven-plus year period (Request No. 18); detailed information concerning *each and every* flake or non-flake powder that Cabot ever produced over the same eleven-plus year period, regardless of whether it ever was sold commercially by Cabot or purchased by AVX (Interrogatory No. 8); and detailed information concerning *each and every* actual or potential "substitute" for each flake or non-flake powder that Cabot ever produced over the same *eleven-plus year* period (Interrogatory No. 9).[3] As

---

[3] At various points in its Motion to Compel, AVX makes the argument that Cabot "waive[d]" any objection to AVX's various requests seeking discovery over the period from January 1, 1996 to the present because Cabot allegedly failed to "explicitly object" to that time period in its responses. *See* AVX Memo. at 17, 19-20. AVX is wrong. Cabot expressly objected to the AVX requests which incorporate that more than eleven-year period

-8-

though these requests were not enough, AVX also seeks to compel detailed information concerning *each and every* e-mail system used at any Cabot facility around the world over the same eleven-plus year period (including a description of *each and every* piece of related computer hardware and software) (Interrogatory No. 1), and detailed information concerning *each and every* item of data that was deleted, discarded or over-written from any Cabot files or on any Cabot computer system over the same eleven-plus year period (Interrogatory No. 4).

AVX cannot begin to explain why it requires the foregoing information in order to demonstrate that Cabot allegedly "conditioned AVX's purchase of flake [tantalum] powders on its purchase of non-flake [tantalum] powders" in January 2001. Complaint, ¶ 38. For example, AVX offers no coherent explanation as to how or why all of Cabot's "email and other electronic records going back to 1996" from all of its "offices, plants and facilities worldwide and those of Cabot's subsidiaries and affiliates," regardless of their subject matter, are relevant to its claim or likely to lead to the discovery of admissible evidence.[4] *See* Plaintiffs' Memorandum In Support

---

as "overly broad" and seeking "information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence." *See, e.g.,* Defendant Cabot Corporation's Objections and Responses to Plaintiffs' First Set of Interrogatories, dated December 20, 2006 ("Cabot Responses," a copy of which is attached to AVX's Motion to Compel as Exhibit B), Interrogatory Nos. 1, 4, 6, 7, 8, 9, 14. These objections are more than sufficient to preserve Cabot's rights. *See, e.g.,* Motton v. Owens, 128 F.R.D. 72, 73 (M.D. Pa. 1989) (denying motion to compel production of documents covering unspecified time frame based on objection that requests were "overly broad, unduly burdensome, and not relevant"); Food Lion, Inc. v. Capital Cities/ABC, Inc., 1996 WL 575946 *1-2 (M.D. N.C. 1996) (quashing subpoenas seeking all documents covering an eighteen month period as "fatally overbroad"). The one and only case that AVX cites in support of its contention to the contrary (Hobley v. Burge, 226 F.R.D. 312 (N.D. Ill. 2005)) simply is not on point because that case involves the assertion of the work product doctrine, not an over-breadth objection, and because the responding party in that case raised *no* timely objection to the opposing party's discovery requests. *Id.* at 319-323.

[4] Although AVX devotes considerable attention in its Memorandum in Support to Showa Cabot Supermetals KK ("Showa Cabot"), a Japanese joint venture that subsequently was acquired by Cabot, AVX never bothers to explain why the operations of Showa Cabot are relevant, or even potentially relevant, to the tying claim asserted in this case. *See* AVX Memo. at 7-11. It is undisputed that Cabot did not purchase a majority interest in Showa Cabot until more than one year after the 2001 Supply Agreement, which contains the alleged tying arrangement, was signed. *See* AVX Memo. at 9. It also is undisputed that the terms of the 2001 Supply Agreement encompass only tantalum products from Cabot's Boyertown, Pennsylvania facility. *See, e.g.,* 2001 Supply Agreement, § 3 ("[A]ll ... sales shall be FCA Boyertown, PA."). The mere fact that documents held by a foreign subsidiary may be considered, under certain circumstances, to be within Cabot's "control" for discovery purposes

Of Rule 37 Motion To Compel Discovery, dated March 1, 2007 ("AVX Memo.") at 16-18. The most that AVX can say is that its "experts need records and materials going back to 1996." *Id.* at 17. This unadorned declarative statement by AVX provides no useful information.

Similarly, the only justification that AVX can offer as to why it needs *all* of Cabot's flake and non-flake sales data for more than an eleven year period is the opaque and unsupported statement that the "information is needed for AVX's experts to assess and analyze the separate and market share issues as well as one of AVX's damage claims," and the only justification that AVX can offer as to why it needs detailed technical specifications for *each and every* flake or non-flake powder ever produced by Cabot over the same eleven-year period, regardless of whether it ever was commercially marketed by Cabot or purchased by AVX, is the one-line statement that the "information is crucial to a proper adjudication of the issues of separate product, the definition of markets, Cabot's market power, and the impact on commerce." *Id.* at 23, 28. These abbreviated and conclusory explanations are woefully insufficient to sustain AVX's burden of demonstrating the relevance of the discovery that it seeks. *See* Caouette, 352 F.Supp.2d at 136; *see also* Expert Worldwide, Ltd. v. Knight, 2006 WL 3091322 *3-4 (W.D. Tex. 2006) (denying plaintiff's motion to compel further responses to interrogatories, in part, because the motion left it "unclear what relevance [the information] would have to the plaintiff's case").

The shotgun-style discovery that AVX seeks to compel is all the more objectionable due to the oppressive burden and expense that it would place on Cabot. Fed. R. Civ. P. 26(b)(2) specifically provides that a court may limit discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account ... the importance of the

---

(*see* United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989)), does not make them discoverable when, as here, there simply is no reason to believe that the documents are relevant.

proposed discovery in resolving the issues." *See also* City of Waltham v. U.S. Postal Service, 11 F.3d 235, 243 (1st Cir. 1993) (when making decisions regarding discovery, court "can weigh discovery burdens against the likelihood of finding relevant material.") That balance weighs decidedly against AVX in this case. For example, just responding to AVX Interrogatory No. 4, which demands that Cabot identify and catalog "any data" that has been deleted, discarded or over-written in any of Cabot's computer systems or files around the world at any time from January 1, 1996 to the present, even if possible, would be a *massively* time-consuming and expensive undertaking that is *exceedingly* unlikely to uncover any relevant information. Similarly, responding to AVX Interrogatory Nos. 6, 7 and 14, which demand that Cabot retrieve and itemize *each and every* purchase, and *each and every* purchaser, of Cabot's flake and non-flake tantalum powders over the same eleven-plus year period, would place an unnecessarily heavy burden on Cabot that cannot be justified in light of Cabot's eminently reasonable offer to provide annual, aggregate sales data for those powders, and AVX's corresponding failure to explain why such aggregate data is not sufficient for its needs.[5] *See* AVX Memo. at 20.

Accordingly, AVX's Motion to Compel the broad information sought in its Document Request No. 18, and its Interrogatory Nos. 1, 4, 6, 7, 8, 9 and 14, should be denied because such

---

[5] The Affidavit of Lauren Stiroh, AVX's alleged anti-trust expert, that AVX has submitted in support of its Motion to Compel, provides little additional useful information concerning AVX's purported need for the broad discovery that it seeks to compel. Although Ms. Stiroh asserts that "[e]xamining individual customer contacts and individual transactions over a 10-year or longer period will allow us to assess possible price discrimination between and/or among customers, and whether ... there were different product pricing trends moving in different directions," she never explains why the issues of "price discrimination" or "product pricing trends" are even relevant to the *only claim* asserted in this case, which is whether Cabot "conditioned AVX's purchase of flake [tantalum] powders on its purchase of non-flake [tantalum] powders" in January 2001. Affidavit of Lauren Stiroh in Support of Plaintiffs' Motion to Compel Discovery, dated February 20, 2007, ¶ 6; Complaint, ¶ 38.

To the contrary, it appears that Ms. Stiroh is planning to offer analysis and testimony in support of AVX's Robinson-Patman Act price discrimination claim, which previously was dismissed by this Court back in February 2003. *See* Transcript of Hearing on February 25, 2003, AVX Corp. and AVX Ltd. v. Cabot Corp., Civil Action No. 02-11524 (RGS). AVX obviously is not entitled to take discovery on claims that were dismissed on the merits long ago.

information is either irrelevant to AVX's sole claim in this action, or has minimal relevance that does not outweigh the substantial burden that its production would place upon Cabot.

II. AVX'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE CABOT RESPONDED APPROPRIATELY TO AVX'S CONTENTION INTERROGATORIES AND HAS NO OBLIGATION TO PROVIDE A CATALOG OF ALL POTENTIALLY SUPPORTIVE EVIDENCE (INTERROGATORY NOS. 9, 12 AND 13).

AVX Interrogatory Nos. 9, 12 and 13 seek Cabot's contentions regarding what other products constitute "substitutes" for each and every flake and non-flake powder that Cabot has produced from January 1, 1996 to the present, regardless of whether the powder ever was commercially marketed by Cabot or purchased by AVX (Interrogatory No. 9); whether flake and non-flake tantalum powder constitute "separate products" for purposes of Section 1 of the Sherman Antitrust Act (Interrogatory No. 12); and whether Cabot has "market power" in the "market for flake powder" (Interrogatory No. 13). Unlike AVX -- which responded to Cabot's contention interrogatories in this action with the blanket objection that "the interrogatory seeks to obtain the mental impressions of counsel and attorney work product" or by objecting to the word "substitute" as "vague" (*see, e.g.,* AVX's Responses to Cabot Corporation's First Set of Interrogatories, dated February 28, 2007 (Tab 5), Interrogatory Nos. 1, 2, 3, 10, 12) -- Cabot responded to AVX's contention interrogatories, in each instance, by setting forth its contentions in reasonable detail.

More specifically, in response to AVX's request that Cabot identify the other products that can act as "substitutes" for Cabot flake and non-flake powders, Cabot stated that "most, if not all, forms of tantalum powder have substitutes which can vary depending upon the desired characteristics of the final product," which were not identified by AVX. *See* Cabot Responses, Interrogatory No. 9. In response to AVX's request that Cabot state whether it contends that flake

powder and non-flake powder are "separate products" for purposes of Section 1 of the Sherman Antitrust Act, Cabot stated that,

> many tantalum powders, including flake and nodular, are interchangeable depending upon the desired characteristics of the final product. Accordingly, Cabot believes that flake powder and nodular powders are not properly regarded as "separate products" for the purposes of Section 1 of the Sherman Act.

*Id.*, Interrogatory No. 12. And in response to AVX's request that Cabot state whether it possesses "market power in the market for flake powder," Cabot stated that,

> many tantalum powders, including flake and nodular, are interchangeable depending upon the desired characteristics of the final product. Accordingly, Cabot believes that it does not have "market power" with respect to tantalum powder, including flake powder.

*Id.*, Interrogatory No. 13.

AVX has no reason to complain regarding Cabot's responses to these interrogatories. Cabot's contentions with respect to each of the issues identified by AVX, and the bases for those contentions, are plainly stated. Nothing more is required. To the extent that AVX further expects Cabot to "identify all documents concerning [its] contentions" and "all person with knowledge" concerning its contentions, however, AVX oversteps its authority. AVX has no right to demand, and Cabot has no obligation to provide, a comprehensive description of *each and every* fact, document and witness that could be cited as support for Cabot's contentions. *See, e.g.,* IBP, Inc. v. Mercantile Bank of Topeka, 179 F.R.D. 316, 321 (D.C. Kan. 1998) (denying request to compel answers to contention interrogatories that "ask for every fact and every application of law to fact which supports the identified allegations" as "overly broad and unduly burdensome"); *see also* U.S. v. Maryland & Virginia Milk Producers Assoc., Inc., 22 F.R.D. 300, 302 (D.D.C. 1958) (denying a motion to compel answer to contention interrogatory

on the ground that "[t]o answer it would be, in effect, to submit a skeletonized brief on the facts and the law. It is not the purpose of discovery to ascertain what arguments the opposing party intends to use in support of his contentions.") None of the cases cited by AVX in its Motion to Compel hold to the contrary.

Accordingly, AVX's Motion to Compel further responses to Interrogatory Nos. 9, 12 and 13 should be denied because Cabot responded appropriately to AVX's contention interrogatories and has no obligation to provide a catalog of all potentially supportive evidence.

III. AVX'S MOTION TO COMPEL THE PRODUCTION OF ANY PRIVILEGED DOCUMENTS BASED ON CABOT'S PROPER INVOCATION OF RULE 33(d) SHOULD BE DENIED AS BASELESS (INTERROGATORY NOS. 6 AND 7).

AVX makes the further argument that Cabot "may not withhold otherwise privileged documents" because Cabot expressly agreed to produce certain "non-privileged" business records in partial response to AVX Interrogatory Nos. 6 and 7, as permitted under Fed. R. Civ. P. 33(d). AVX Memo. at 19-21. This argument is silly. Nothing in Rule 33(d) provides that a party "waives any claim of privilege" by exercising its option to produce *non-privileged* business records in response to an interrogatory. *Id.* at 21. Moreover, the two cases that AVX cites in support of this remarkable proposition (Blake Assoc. v. Omni Spectra, Inc., 118 F.R.D. 283 (D. Mass. 1988), and Laaman v. Powell, 1995 U.S. Dist. LEXIS 5415 (D. N.H. 1995)) are not, in fact, supportive. Blake involved a party who attempted to respond to interrogatories under Rule 33(d) by incorporating the contents of certain *privileged* documents that its simultaneously refused to disclose. *See* 118 F.R.D. at 290. Laaman, on the other hand, involved the issuance of a court order permitting the defendants to remove privileged documents from their business records before they were inspected by plaintiffs' counsel. 1995 U.S. Dist. LEXIS 5415 at *6-8. Neither case bears any resemblance whatsoever to the facts of this matter. There has been no waiver of any privilege by Cabot.

Accordingly, AVX's Motion to Compel the production of any privileged documents based on Cabot's proper invocation of Rule 33(d) should be denied as baseless.

IV. AVX'S MOTION TO COMPEL CABOT TO CATEGORIZE THE RESPONSIVE DOCUMENTS THAT ALREADY ARE IN AVX'S POSSESSION SHOULD BE DENIED AS UNNECESSARY UNDER RULE 34 (DOCUMENT REQUEST NO. 18; INTERROGATORY NOS. 6, 7, 12 AND 13).

Lastly, AVX seeks an order compelling Cabot to "specify the Bates-stamp range for documents previously produced that is/are responsive to each request in this case and [to] 'organize and label' the documents to be newly produced to correspond with each request." AVX Memo. at 13. Cabot has no duty to review documents already in AVX's possession that are responsive to its discovery requests, and AVX has pointed to no authority that supports this position. To the contrary, Cabot previously produced copies of the documents requested by AVX as they are kept in the usual course of Cabot's business pursuant to Rule 34(b)(i), and Cabot intends to do the same with its current production of documents.[6] By doing so, Cabot will fully comply with its obligations under Rule 34. Fed. R. Civ. P. 34(b)(i) ("a party who produces documents for inspection shall produce them as they are kept in the usual course of business *or* shall organize and label them to correspond with the categories in the request") (emphasis added); *see also* Hagemeyer North America, Inc. v. Gateway Data Sciences Corp., 222 F.R.D. 594, 598 (E.D. Wis. 2004) ("a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business").

AVX's demands in this regard, once again, also are at odds with its own responses to Cabot's discovery requests. For example, AVX responded to various categories contained in

---

[6] AVX's argument that Cabot did not previously produce documents as they are kept in the usual course of Cabot's business because they "constituted … a number of boxes filled with Bates-stamped copies of documents" is wrong. AVX Memo. at 12. Cabot produced the specific documents requested by AVX as they appear in Cabot's files. The fact that the Cabot's production also was Bates-stamped and boxed for convenience purposes, as is customary, does not render Cabot's production in violation of Rule 33(d).

Cabot's First Request for Production of Documents in this case by announcing, without further elaboration or direction, that "[d]ocuments responsive to this Request were produced in the matter of *Cabot Corporation v. AVX Corporation, et al.* pending in Suffolk Superior Court, per docket no. 03-1235-BLS." *See* AVX's Response to Cabot Corporation's First Request for Production of Documents and Things, dated February 28, 2007 (Tab 5), Request Nos. 22-25. From these responses, it is clear that AVX is not, itself, prepared to provide the specific Bates-stamp information that AVX argues Cabot "must be ordered" to supply in its Motion to Compel. AVX Memo. at 22. AVX's repeated failure to live by its own alleged rules offers yet another persuasive reason why that Motion should be denied.

## Conclusion

For the foregoing reasons, Cabot respectfully requests that the Court deny AVX's Motion to Compel in its entirety.

CABOT CORPORATION

By its attorneys,

*/s/ Brian A. Davis*
Robert S. Frank, Jr. (BBO No. 130950)
Brian A. Davis (BBO No. 546462)
Julie C. Rising (BBO No. 666950)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:   March 28, 2007

4189238.1

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on March 28, 2007.

/s/ Julie C. Rising