# TAB 2

Case 1:04-cv-10467-RGS    Document 54-3    Filed 03/28/2007    Page 1 of 7

CONFIDENTIAL

Page 1

1        COMMONWEALTH OF MASSACHUSETTS

2    SUFFOLK, SS                        SUPERIOR COURT

3         CIVIL ACTION NO. 05-03816-BLS

4

5   AVX CORPORATION and AVX LIMITED,    )

6           Plaintiffs And Defendants   )

7           in Counterclaim,            )

8      vs.                              )

9   CABOT CORPORATION,                  )

10          Defendant and Plaintiff     )

11          In Counterclaim.            )

12                                                CONFIDENTIAL

13

14              **CONFIDENTIAL**         ORIGINAL

15

16        The deposition of JOHN STERLING

17   GILBERTSON, called for examination, taken before

18   ANNETTE M. MONTALVO, a Notary Public within and

19   for the Commonwealth of Massachusetts, and a

20   Registered Merit Reporter of said state, at Suite

21   3400, Two International Place, Boston,

22   Massachusetts, on the 22nd day of August, A.D.

23   2006, at 9:30 a.m.

24

CONFIDENTIAL

Page 5

```
1        MR. FRANK:  Same stipulations?
2        MR. SLAVITT:  Yes.
3              (WHEREUPON, the witness was duly
4        sworn.)
5              JOHN GILBERTSON,
6   called as a witness herein, having been first
7   satisfactorily identified and duly sworn, was
8   examined and testified as follows:
9                    EXAMINATION
10  BY MR. FRANK:
11       Q.    Good morning, Mr. Gilbertson.  Will you
12  state your name, please.
13       A.    John Gilbertson.
14       Q.    Where do you live, Mr. Gilbertson?
15       A.    I live in 517 North 13th Avenue, Surf
16  Side Beach, South Carolina, 29575.
17       Q.    Are you presently employed?
18       A.    Yes, I am employed.
19       Q.    By whom are you employed?
20       A.    AVX Corporation.
21       Q.    And what is your position with AVX
22  Corporation?
23       A.    I am the president of the company.
24       Q.    And the chief executive officer?
```

CONFIDENTIAL

Page 6

1   A.   And chief executive officer.

2   Q.   Would you take a minute, sir, and tell
3   us your educational background.

4   A.   I received a bachelors of engineering
5   in general engineering from Oklahoma State
6   University in Stillwater, Oklahoma. I received a
7   masters in industrial management at the same
8   university.

9   Q.   When did you get your bachelors degree?

10  A.   I believe it was 1969.

11  Q.   And your masters degree?

12  A.   One year later.

13  Q.   When you finished school, when were you
14  first employed?

15  A.   When I finished the university, I went
16  into the military.

17  Q.   How long were you in the military?

18  A.   I was in the military for about
19  approximately 4 and one-half years.

20  Q.   And when you came out, what was your
21  first job?

22  A.   I worked for a company called Corning
23  Glass Works.

24  Q.   When did you start at Corning?

CONFIDENTIAL

Page 164

1  yes.
2      Q.    Now, going to the second "Tom," you say
3  alongside that portion of the e-mail that you
4  have to have a level playing field.  Do you see
5  that?
6      A.    Yes.
7      Q.    And is it correct that the level
8  playing field was your way of describing your
9  objective with respect to the most favored
10 customer provision?
11     A.    They were objecting to --
12     Q.    Please answer my question.
13     A.    Ask me the question again.
14             (WHEREUPON, the record was read by
15              the reporter as requested.)
16 BY THE WITNESS:
17     A.    No.
18 BY MR. FRANK:
19     Q.    Down below in the chart, in the bottom
20 portion of the first page of Exhibit 2, I note
21 that the chart in your e-mail now includes 25,000
22 pounds of nodular powder in 2001 and 30,000
23 pounds of nodular powder for Biddeford in 2002
24 through 2005, do you see that?

CONFIDENTIAL

Page 165

1    A.    Yes, I do.

2    Q.    And then you say in the text above the
3    chart: "I lowered the commitment to 25,000 pounds
4    in Biddeford. How about a statement that you
5    will try to add 5,000 pounds"?

6    A.    Yes.

7    Q.    Do you see that?

8    A.    Yes.

9    Q.    Is it fair to say that your objective
10   was, if you could, to purchase additional nodular
11   powder?

12   A.    Yes.

13   Q.    Okay. And is it -- directing your
14   attention to the continuation of the chart, the
15   second page, the very top of that chart there's a
16   listing of 10,000 pounds of nodular powder under
17   the heading Europe in the years 2002 through
18   2005, do you see that?

19   A.    I see that, yes. This was basically
20   Tom's chart, you know.

21   Q.    Okay. Now if you will look just above
22   the chart, and you will see it says, "change the
23   nodular to 10,000 pounds, which our side is very
24   uncomfortable with as a good faith from our

CONFIDENTIAL

Page 166

1  side." Do you see that? Just above the chart.
2  A. I see that, yes.
3  Q. Is it correct that you were
4  uncomfortable with the reduction from 60,000
5  pounds of nodular powder as shown on Mr. Odle's
6  e-mail, Exhibit 181, to the 10,000 pounds as
7  shown on Exhibit 2?
8  A. Yes.
9  Q. Because you wanted more if you could
10 get it?
11 A. Right.
12 Q. I'm sorry?
13 A. Yes, correct.
14 Q. Directing your attention Exhibit 2 to
15 the first full paragraph under the second "Tom,"
16 it says, "the most favored nation/customer in
17 some term in year 3 to 5 of the agreement is the
18 only way we have of ensuring that level playing
19 field."
20        Did you communicate to Mr. Odle that
21 the most favored customer provision that you were
22 suggesting was designed to create a level playing
23 field among AVX's -- between AVX and Cabot's
24 otherwise most favored customer?