UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>       Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 04-10467-RGS<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT CABOT CORPORATION'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY

Defendant Cabot Corporation ("Cabot") submits this memorandum is support of its

motion for an order compelling plaintiffs AVX Corporation and AVX Limited (collectively,

"AVX") to respond fully and substantively to certain interrogatories and document requests

served in this action. AVX's Complaint alleges that Cabot wrongfully forced AVX to sign a

supply agreement for tantalum products in January 2001 (the "2001 Supply Agreement")

containing an unlawful "tying" arrangement, whereby Cabot "conditioned AVX's purchase of

flake [tantalum] powders on its purchase of non-flake [tantalum] powders." Complaint and

Jury Demand ("Complaint"), Docket No. 1, ¶ 1. AVX claims that it "had no choice" but to

commit to purchase Cabot's non-flake powders because Cabot "was the only source of the

'flake' high voltage tantalum powders that AVX used," and AVX purportedly "could not fulfill

its customers' needs without Cabot's 'flake' form of tantalum...." Id., ¶¶ 24, 28. AVX

further alleges that "Cabot has sufficient market power in the market for flake powder ... to

restrain free competition in the market for non-flake powder," and that the "effect of Cabot's

actions was to substantially lessen competition" in that market in violation of the Sherman Antitrust Act. *Id.*, ¶ 39.

Notwithstanding these allegations, AVX refuses to provide Cabot with substantive responses to various discovery requests seeking the basis and support for its tying claim. For example, AVX refuses to identify what it contends is the "relevant market" for purposes of its tying claim; refuses to identify products that it understands can be substituted for Cabot's purportedly "unique" flake tantalum powders; refuses to disclose the products or volume of products that it actually wished to purchase from Cabot at the time that it entered into the 2001 Supply Agreement; and refuses to produce documents concerning its efforts to replace or develop substitutes for Cabot's flake tantalum powders, including *any* e-mail or other internal or external communications whatsoever.

The numerous glaring deficiencies in AVX's discovery responses were highlighted during a Local Rule 37.1(A) conference between counsel on March 22, 2007.    After previously representing to Cabot and, later, this Court, that AVX would "get back to Cabot's counsel" regarding those deficiencies "in all events by Friday March 30th", AVX has gone completely silent and done nothing to address Cabot's concerns. *See* Plaintiff's Response to Defendant's Motion for Extension of Time, dated March 23, 2007 (Docket No. 53) at 3. AVX cannot simply run and hide from its discovery obligations.  Cabot is entitled to know the basis for AVX's claim in this action, and to extract from AVX any relevant information in AVX's possession, custody or control that helps to illuminate or demonstrate the falsity of that claim.  For these reasons and others, which are addressed more fully below, Cabot requests an order compelling AVX to provide full, substantive responses to Cabot Interrogatory Nos. 1-2, 7-13, 15-18 and 20, and Request for Production Nos. 1, 2, and 6-21.

**Factual Background**

This action represents just one of a series of legal disputes between AVX and Cabot arising from a multi-year, written Supply Agreement for tantalum products that AVX and Cabot entered into effective January 1, 2001 (the "2001 Supply Agreement"). Complaint, Docket No. 1, ¶ 29. Cabot produces various tantalum products, and AVX uses tantalum products that it purchases from Cabot (and other suppliers) to manufacture passive electronic components. *Id.*, ¶¶ 7-9. The 2001 Supply Agreement -- which was signed by the parties at a time of particularly short supply and high demand for tantalum products -- calls for AVX to purchase certain minimum quantities of tantalum products from Cabot at fixed prices over a five year period. *Id.*, ¶¶ 16, 23, and Exhibit C.

AVX first attempted to escape the 2001 Supply Agreement approximately eighteen months after it was signed by arguing that it only entered into that Agreement under "economic duress." *See* AVX's Answer, Counterclaim and Jury Demand in the related action titled Cabot Corp. v. AVX Corp. and AVX Ltd., Massachusetts Superior Court for Suffolk County, Civil Action No. 03-01235 (a true copy of which is appended to Cabot's Opposition to AVX's Motion to Compel Documents ("Cabot's Opposition"), Docket No. 54, Tab 3).[1] AVX's economic duress claims eventually were rejected by the Superior Court as a matter of law after the close of discovery in a Memorandum and Order issued on June 18, 2004. *See* Cabot Corp. v. AVX Corp., 18 Mass.L.Rptr. 36, 2004 WL 1588116, at *7 (Mass. Super. June 18, 2004). That decision was affirmed in its entirety by the Supreme Judicial Court in a decision issued just last month. *See* Cabot Corp. v. AVX Corp., Case No. SJC-09857 (March 28, 2007).

---

[1] The claims asserted by AVX in the First State Court Action originally were filed in United States District Court for the District of Massachusetts, but later were voluntarily dismissed and refiled in state court after AVX's only federal claim in that proceeding was dismissed by this Court.

More recently, AVX commenced yet another state court action against Cabot under the 2001 Supply Agreement claiming that Cabot failed to provide AVX with certain "Most Favored Nation" or "Most Favored Customer" benefits that AVX allegedly was due under that Agreement. *See* AVX's Complaint and Jury Demand in the Second State Court Action (Cabot's Opposition, Docket No. 54, Tab 4). The Second State Court Action still is being litigated by the parties, with cross-motions for partial summary judgment currently pending.

AVX commenced this federal court action against Cabot on March 8, 2004, alleging that, in negotiating the 2001 Supply Agreement, Cabot forced AVX into buying Cabot's non-flake tantalum powders in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 14. Specifically, AVX alleges that "[f]lake powders and non-flake powders are separate products," and that Cabot committed an unlawful tying violation by "condition[ing] AVX's purchase of flake powders on its purchase of non-flake powders." Complaint, ¶¶ 37, 38, 41. Cabot denies AVX's allegations of tying (among others). All discovery in this action was stayed by agreement while the parties litigated and/or appealed from Cabot's subsequent Motions to Dismiss and for Judgment on the Pleadings. *See* Joint Motion To Amend Scheduling Order (Docket No. 43). In the fall of 2006, AVX's lead counsel was temporarily suspended from the practice of law, which necessitated a further delay in discovery. *Id.*

The parties now have exchanged written discovery requests and responses. Cabot's initial discovery responses were served on AVX on December 20, 2006. After multiple extensions from Cabot's counsel, AVX's initial responses to Cabot's discovery requests finally were served on March 2, 2007. (A full copy of AVX's Responses are attached to Cabot's Opposition, Docket No. 54, Tab 5). As discussed below, AVX's responses are, more often than not, woefully inadequate. On March 22, 2007, counsel for Cabot and AVX met and

conferred by telephone to address the numerous deficiencies in AVX's responses. In many instances, AVX's counsel could not explain or justify those deficiencies. Instead, counsel for AVX represented that it would "get back to Cabot's counsel" concerning various deficiencies "in all events by Friday March 30th". *See* Plaintiff's Response to Defendant's Motion for Extension of Time, dated March 23, 2007 (Docket No. 53) at 3. Three weeks later, Cabot still is waiting, but it can wait no longer. Accordingly, Cabot now moves for an order compelling AVX to provide full, substantive responses to Cabot Interrogatory Nos. 1-2, 7-13, 15-18 and 20, and Request for Production Nos. 1, 2, and 6-21.

## Argument

Fed. R. Civ. P. 26 entitles a party to discovery regarding any "any matter, not privileged, that is relevant to the claim or defense of any party . . . . ." Fed. R. Civ. P. 26(b)(1). Though not without limitation, the word "relevant" encompasses "any matter that bears on, or reasonably could bear on, any issue that is or may be in the case . . . ." Klonoski v. Mahlab, 156 F.3d 255, 267 (1st Cir. 1998) (*quoting* Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340 (1978)). One of the primary purposes of discovery is to narrow the issues in the case. Sheek v. Asia Badger, Inc., 235 F.3d 687, 693-94 (1st Cir. 2000); *see also* Fed. R. Civ. P. 26, 1983 committee notes ("The spirit of the rules is ... to expose the facts and illuminate the issues...") Cabot has narrowly tailored its interrogatories and document requests to seek information that will assist the parties and this Court in understanding the precise scope of AVX's tying claim, as well as the defenses available to Cabot. The majority of AVX's objections to Cabot's requests are improper and its responses are patently insufficient. AVX should be compelled to fully respond to each of the contested discovery requests as explained in greater detail below.

I.    AVX SHOULD BE COMPELLED TO RESPOND FULLY AND SUBSTANTIVELY
      TO CABOT'S CONTENTION INTERROGATORIES AND RELATED REQUESTS
      FOR PRODUCTION BECAUSE AVX'S LEGAL AND FACTUAL CONTENTIONS
      DO NOT CONSTITUTE PRIVILEGED INFORMATION OR ATTORNEY WORK
      PRODUCT (INTERROGATORY NOS. 1 and 2; DOCUMENT REQUEST NOS. 1
      and 2).

    In responding to various Cabot's interrogatories and document requests seeking AVX's

contentions in this litigation, AVX objected that Cabot's requests call for "mental impressions

of counsel and attorney work-product" and/or deferred its answer.   In accordance with Local

Rule 37.1, the specific discovery requests and responses at issue are as follows:

    Interrogatory No. 1: Please describe in as much detail as reasonably possible
    what AVX contends is the relevant market for flake tantalum powder for
    purposes of Count I of the Complaint.

    AVX Response: Plaintiffs object because the interrogatory seeks to obtain the
    mental impressions of counsel and attorney work product.   Notwithstanding,
    Plaintiffs state that the response to this Interrogatory will be contained in or
    more reports of their experts.

    Interrogatory No. 2: Please describe in as much detail as reasonably possible
    what AVX contends is the relevant market for nodular tantalum powder for
    purposes of Count I of the Complaint.

    AVX Response: Plaintiffs object because the interrogatory seeks to obtain the
    mental impressions of counsel and attorney work product.   Notwithstanding,
    Plaintiffs state that the response to this Interrogatory will be contained in or
    more reports of their experts.

    Document Request No. 1: Documents sufficient to identify what AVX contends
    is the relevant market for flake tantalum powder for purposes of Count I of the
    Complaint.

    AVX Response: Plaintiffs object to this Request on the ground that it calls for
    the mental impressions of counsel and attorney work-product.   Notwithstanding,
    Plaintiffs will produce such documents identified by Plaintiffs' experts at such
    time as the expert produces its report.

    Document Request No. 2: Documents sufficient to identify what AVX contends
    is the relevant market for nodular tantalum powder for purposes of Count I of
    the Complaint.

AVX Response: Plaintiffs object to this Request on the ground that it calls for the mental impressions of counsel and attorney work-product. Notwithstanding, Plaintiffs will produce such documents identified by Plaintiffs' experts at such time as the expert produces its report.

Cabot is entitled to know the contentions that underlie the allegations that AVX has made against Cabot in this action, including, without limitation, AVX's allegations that "[f]lake powders and non-flake powders are separate products," and that "Cabot has sufficient market power in the market for flake powder ... to restrain free competition in the market for non-flake powder." Complaint, ¶¶ 1, 37, 39. Fed. R. Civ. P. 33(c) expressly provides that "[a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact...." Moreover, the courts long ago rejected the argument that a party may refuse to respond to discovery seeking its legal and factual contentions based on the attorney work product doctrine. See, e.g., Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163 (E.D. Pa. 1962) (rejecting product objection to interrogatory seeking facts upon which claim was founded because "a statement of the facts upon which the conclusion is based can hardly be forbidden as the expression of conclusions."); see also In re San Juan DuPont Plaza Fire Litigation, 859 F.2d 1007, 1016 (1st Cir. 1988) (in discussion of scope of work product protection, confirming discovery rules permit interrogatories which require answering party to provide opinion and/or contentions of mixed law and fact). "[T]he work product doctrine furnishes no shield against discovery by interrogatories or by depositions of the facts that the adverse party has learned or the persons from whom such facts were learned." Eoppolo v. Nat. R.R. Passenger Corp., 108 F.R.D. 292, 294 (E.D. Pa. 1985) (citing Phoenix Nat. Corp. v. Bowater United Kingdom Paper, 98 F.R.D. 669, 671 (N.D. Ga. 1983)).

Thus, AVX has a current duty under Rule 33(c) to provide full, substantive responses to Cabot contention interrogatories and requests. To the extent that AVX's expert later may wish to opine further on those contentions in her report, she may do so. That fact, however, does not relieve AVX of its obligation to provide Cabot with its current contentions based upon the information that already is known to AVX. *See* Hockley v. Zent, 89 F.R.D. 26, 31 (M.D. Pa. 1980) ("A respondent, moreover, cannot object merely because an explanation of its case requires consultation with one or more experts.") Accordingly, Cabot's Motion to Compel further responses by AVX with respect to Interrogatory Nos. 1 and 2, and Document Request Nos. 1 and 2, should be allowed.

II.    AVX SHOULD BE COMPELLED TO RESPOND FULLY AND SUBSTANTIVELY TO CABOT'S INTERROGATORIES AND RELATED REQUESTS FOR PRODUCTION CONCERNING POTENTIAL OR KNOWN SUBSTITUTES FOR CABOT'S TANTALUM FLAKE POWDERS BECAUSE THE AVAILABILITY OF SUCH SUBSTITUTES IS DIRECTLY RELEVANT TO AVX'S TYING CLAIM (INTERROGATORY NOS. 7-13; DOCUMENT REQUEST NOS. 7 and 9).

Cabot served AVX with a series of interrogatories and requests for the production of documents concerning AVX's knowledge of actual or potential substitutes for Cabot's flake tantalum powders, including any non-flake or "nodular" products, and any niobium-based products.[2] AVX either objected to the word "substitute" as "vague," or completely refused to

---

[2] Cabot has reason to believe that, notwithstanding AVX's assertion that it had "no choice" but to sign the 2001 Supply Agreement because it "could not fulfill its customers' needs without Cabot's 'flake' form of tantalum," AVX was well aware of, and had access to, various substitutes for Cabot's flake tantalum powders. Complaint, ¶¶ 28-29. For example, Mr. Ernest E. Chilton, who served as Vice President in charge of all of AVX's tantalum operations in 2001, has testified in related state court litigation between Cabot and AVX that, "[d]epending on priorities," it would have been possible for AVX to replace all of Cabot's flake powders in "three to six months." Deposition of Ernest E. Chilton, dated September 11, 2006, in the related action captioned AVX Corp. and AVX Ltd. v. Cabot Corporation, Massachusetts Superior Court for Suffolk County, Civil Action No. 05-03816-BLS-1 (the "Second State Court Action"), at 12-13, 52-54. True, relevant excerpts of Mr. Chilton's deposition transcript are append to this Memorandum at Tab 1.

Further evidence of available substitutes can be found in AVX's own publications. Niobium (chemical symbol "Nb") is an elemental metal that also is used by AVX in the production of electronic capacitors. According to a technical information bulletin produced by AVX and available on AVX's web site,

respond on the ground that such requests are "irrelevant." The specific discovery requests and

responses at issue are as follows:

> Interrogatory No. 7: Please identify all Passive Electronic Component products manufactured by persons other than AVX that AVX understands compete with, or have competed with, AVX's Flake-Based Products, including in your answer, but not limiting your answer to, the manufacturer, complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such competing product.

> AVX Response: Plaintiffs object to this Interrogatory on the ground that the Interrogatory is unduly burdensome and the information requested is irrelevant and unlikely to lead to admissible evidence.

> Interrogatory No. 8: Does AVX contend that nodular tantalum powder never can be used as a substitute for flake tantalum powder in the production of Passive Electronic Components?

> AVX Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that only certain products, identified in response to Interrogatory No. 4, can be made with flake.

> Interrogatory No. 9: If your answer to Interrogatory No. 8, *supra*, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances under which nodular tantalum powder can be used as a substitute for flake tantalum powder in the production of Passive Electronic Components.

> AVX Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that one cannot use nodular where the unique characteristics of flake tantalum powder set forth in response to Interrogatory No. 3 are required.

---

> [n]iobium based technology -- utilizing both niobium and niobium oxide capacitors -- is now entering the high CV capacitor marketplace. These devices have a similar capacitance/voltage (CV) range to current tantalum chip technology and demonstrate ESR [*i.e.*, electrical resistance] characteristics comparable to conventional tantalum ratings.

"Tantalum And Niobium Technology Roadmap," AVX Technical Information Bulletin (undated) at 6, a true copy of which is appended to this memorandum at Tab 2.

Interrogatory No. 10: Does AVX contend that Passive Electronic Components manufactured from nodular tantalum powder never can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder?

AVX Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that the components it makes with nodular cannot be substituted for the components it makes with flake.

Interrogatory No. 11: If your answer to Interrogatory No. 10, *supra*, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances in which Passive Electronic Components manufactured from nodular tantalum powder can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder.

AVX Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that the nodular tantalum powder cannot be used as a substitute for flake tantalum powder whenever any of the unique characteristics of flake tantalum powder set forth in response to Interrogatory No. 3 are required.

Interrogatory No. 12: Does AVX contend that Passive Electronic Component manufactured from materials other than tantalum powder, including but not limited to niobium or niobium oxide, never can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder ?

AVX Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence.

Interrogatory No. 13: If your answer to Interrogatory No. 12, supra, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances in which Passive Electronic Components manufactured from materials other than tantalum powder, including but not limited to niobium or niobium oxide, can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder.

AVX Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence.

Document Request No. 7: All documents concerning the performance of, or potential uses for, any of AVX's Niobium-Based Products, including, but not limited to, all specifications, technical articles, marketing plans, marketing studies, product brochures, sales proposals and sales presentations.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence.

Document Request No. 9: All documents concerning the marketing of AVX's Niobium-Based Products, including, but not limited to, all market descriptions, marketing plans, marketing studies, market analyses, competitive analyses, product brochures, sales proposals and sales presentations.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence.

In responding to these discovery requests, AVX hides the ball.  Cabot is entitled to know whether AVX had actual or potential substitutes for Cabot's flake tantalum powders because that information is directly relevant to the question of whether AVX truly had "no choice" but to sign the 2001 Supply Agreement because it "could not fulfill its customers' needs without Cabot's 'flake' form of tantalum."  Complaint, ¶¶ 28-29.  The United States Supreme Court has held that, for antitrust analysis purposes, the "relevant market" for a particular product must include "all reasonable substitutes for the product."  Jefferson Parish Hospital Dist. No. 2 v. Hyde, 466 U.S. 2, 14 (1984) (O'Connor, J., concurring).  Cabot's discovery is specifically and narrowly directed to the relevant question of what "reasonable substitutes" exist for Cabot's flake tantalum powders.[3]  AVX has an obligation to respond fully and substantively to those discovery requests.  Accordingly, Cabot's Motion to Compel further

---

[3] The good faith basis for AVX's repeated objection in this context to the term "substitute" as being "vague" is difficult to comprehend.  AVX used that term extensively in its own discovery requests to Cabot, to which Cabot responded appropriately.  See Cabot's Responses to AVX's Discovery, attached to AVX's Motion to Compel, Docket No. 49, Exhibit B.  AVX has not explained why it cannot (or will not) apply the same meaning in responding to Cabot's discovery requests.

responses by AVX with respect to Interrogatory Nos. 7-13 and Document Request Nos. 7

and 9 should be allowed.

III.    AVX SHOULD BE COMPELLED TO RESPOND FULLY AND SUBSTANTIVELY
        TO CABOT'S INTERROGATORIES AND RELATED REQUESTS CONCERNING
        THE TANTALUM PRODUCTS THAT AVX ACTUALLY WISHED TO
        PURCHASE FROM CABOT FOR 2001-2005, AS WELL AS THE USES TO WHICH
        AVX PUT THE SEMI-REFINED TANTALUM ORE THAT AVX
        SIMULTANEOUSLY BOUGHT FROM CABOT, BECAUSE THAT
        INFORMATION MAY DEMONSTRATE THE FALSITY OF AVX'S CLAIM THAT
        IT WAS FORCED TO PURCHASE NON-FLAKE POWDERS FROM CABOT
        (INTERROGATORY NOS. 15-18; DOCUMENT REQUEST NOS. 20-21).

        Cabot served AVX with a series of interrogatories and requests for the production of

documents seeking information concerning the tantalum products that AVX actually wished to

purchase from Cabot for the years 2001-2005 (as opposed to the products that AVX claims that

it was forced to purchase for those years), as well as the uses to which AVX put the hundreds

of thousands of pounds of semi-refined tantalum ore (also known as "K2TaF7") that it

voluntarily purchased from Cabot at the same time.[4]    AVX either completely refused to

respond to these requests on the ground that they are "irrelevant," or gave only partially

complete answers.  The specific discovery requests and responses at issue are as follows:

>    Interrogatory No. 15: If your answer to Interrogatory No. 14, *supra*, is
>    anything other than an unqualified affirmative, please identify the specific
>    nodular tantalum powder products that AVX desired to purchase from Cabot

_____

[4] Cabot has reason to believe that, notwithstanding AVX's assertion that it was forced to purchase
unwanted non-flake powder from Cabot in the 2001 Supply Agreement, AVX actually wanted to purchase *more* --
not less -- non-flake powder from Cabot when it signed that Agreement.  For example, Mr. John S. Gilbertson,
AVX's President and Chief Executive Officer, has admitted under oath in the related Second State Court Action
that AVX "wanted more" non-flake powder from Cabot than Cabot would agree to sell "if [AVX] could get it."
Deposition of John S. Gilbertson, dated August 22, 2006, in the Second State Court Action, at 5-6, 164-166.
True, relevant excerpts of Mr. Gilbertson's deposition transcript are append to this Memorandum at Tab 3.

        Similarly, Mr. Peter Collis, the Vice President who took charge of all of AVX's tantalum operations
when Mr. Chilton retired, has testified under oath that some or all of the K2TaF7 that AVX purchased from
Cabot under the 2001 Supply Agreement was converted by other manufacturers, at AVX's instruction, into
purportedly unwanted non-flake or "nodular" powders.  Deposition of Peter Collis, dated August 8, 2006, in the
Second State Court Action, at 5-7, 22-24.  True, relevant excerpts of Mr. Collis' deposition transcript are append
to this Memorandum at Tab 4.

during the period from January 1, 2001 through December 31, 2005 at the time that AVX entered into the Agreement, including in your answer, but not limiting your answer to, the quantity(ies) of each type of nodular tantalum powder that AVX desired to purchase from Cabot during the period.

AVX Response: Plaintiffs object to this Interrogatory on the ground that there is no point of reference as to when the Plaintiffs desired the specified products during the period specified. Notwithstanding, Plaintiffs respond that the amount they desired for 2001 is reflected in the short-term supply agreement for that year.

Interrogatory No. 16: Did AVX intend, as of the time it entered into the Agreement, to have some or all of the K2TaF7 that it agreed to purchase in the Agreement tolled or converted into Tantalum Products?

AVX Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence.

Interrogatory No. 17: If your answer to Interrogatory No. 16, *supra*, is anything other than an unqualified negative, please identify the specific Tantalum Products (*e.g.*, tantalum powder, tantalum wire, etc.) and types of Tantalum Products (*e.g.*, flake tantalum powder, nodular tantalum powder, etc.) into which AVX intended to have the K2TaF7 that it agreed to purchase in the Agreement tolled or converted.

AVX Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence.

Interrogatory No. 18: Please identify the specific Tantalum Products (*e.g.*, tantalum powder, tantalum wire, etc.), types of Tantalum Products (*e.g.*, flake tantalum powder , nodular tantalum powder, etc.), and grades of Tantalum Products (by product number or designation) into which AVX actually had the K2TaF7 that it agreed to purchase in the Agreement tolled or converted, including in your answer, but not limiting your answer to, the quantity(ies) of each type of Tantalum Product produced as a result.

AVX Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence.

Document Request No. 20: All documents concerning the conversion or tolling of any K2TaF7 that AVX purchased from Cabot under the Agreement into any Tantalum Product, including, but not limited to, all correspondence, proposals, feasibility studies, agreements, specifications, test protocols, test results, invoices, shipping records, inventory records, and records of payment.

AVX Response: Plaintiffs object to this Request on the ground that the requested documents are irrelevant and unlikely to lead to admissible evidence.

Document Request No. 21: All documents concerning the specific types of Tantalum Products into which any K2TaF7 that AVX purchased from Cabot under the Agreement has been converted or tolled, including, but not limited to, all correspondence, agreements, specifications, test protocols, test results, invoices, shipping records, inventory records, and records of payment.

AVX Response: Plaintiffs object to this Request on the ground that the requested documents are irrelevant and unlikely to lead to admissible evidence.

AVX alleges in its Complaint that, when it entered into the 2001 Supply Agreement, it was unlawfully forced by Cabot to purchase non-flake or "nodular" tantalum powders against its will. *See, e.g.,* Complaint, ¶ 38. Cabot is entitled to test the veracity of that allegation. One way to test the veracity of that allegation is to discover the products that AVX actually desired to purchase from Cabot during the period 2001-2005 when AVX entered into the 2001 Supply Agreement. Another way to test the veracity of that allegation is to discover the products into which AVX had the K2TaF7 (that it voluntarily purchased from Cabot at the same time) converted. If AVX actually *wanted* as much or more non-flake tantalum powder from Cabot when it signed the 2001 Supply Agreement, then AVX's tying claim must fail. *See* Wells Real Estate, Inc. v. Greater Lowell Board of Realtors, 850 F.2d 803, 814 (1st Cir. 1988) (coercion proved by demonstrating that the pricing structure "force[s] the buyer into the purchase of tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.") AVX cannot stand in the way of Cabot's efforts to learn the truth about this issue by ignoring its discovery obligations. Accordingly, Cabot's Motion to Compel further responses by AVX with respect to Interrogatory Nos. 15-18 and Document Request Nos. 20-21 should be allowed.

IV.   AVX SHOULD BE COMPELLED TO RESPOND FULLY AND SUBSTANTIVELY
      TO CABOT'S INTERROGATORY CONCERNING AVX'S ALLEGED DAMAGES
      BECAUSE THE EXISTENCE AND EXTENT OF SUCH DAMAGES, IF ANY, IS
      DIRECTLY RELEVANT TO AVX'S TYING CLAIM (INTERROGATORY NO. 20).

In its Complaint, AVX seeks unspecified and unquantified damages from Cabot. *See*

Complaint, Prayer 1 (requesting only that the Court "[e]nter judgment in favor of AVX in an

amount to be proven at trial"). Cabot's Interrogatory No. 20 seeks information concerning the

nature and extent of the damages that AVX claims to have suffered on account of Cabot's

alleged conduct. AVX's response is to punt. The specific discovery request and response at

issue is as follows:

> Interrogatory No. 20:  Please state all of the damages that AVX claims to have
> sustained as a result of the "actions of Cabot" referenced in Paragraph 41 of the
> Complaint, including in your answer, but not limiting your answer to, the types
> or elements of damages sustained by AVX, the amount of damages sustained by
> AVX, and the precise method by which AVX calculates its damages.

> AVX Response:  AVX has not yet calculated its damages.

AVX must have *some* basis for claiming damages in this action. Without proof of

damages, AVX's tying claim necessarily fails. *See, e.g.,* Valley Products Co., Inc. v.

Landmark, 128 F.3d 398, 402 (6th Cir. 1997) ("[I]t is not enough for the plaintiff to claim

economic injury: '[p]laintiffs must prove *antitrust* injury...that flows from that which makes

the defendants' acts unlawful.'") (*quoting* Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429

U.S. 477, 489 (1977)). Cabot, as the defendant, is entitled to know the nature and extent of

AVX's purported damages. If AVX has sustained no damages, Cabot is entitled to know that

as well. Accordingly, Cabot's Motion to Compel a further response with respect to

Interrogatory No. 20 should be allowed.

V.    AVX SHOULD BE COMPELLED TO PRODUCE ALL RESPONSIVE DOCUMENTS, INCLUDING ANY ELECTRONIC DOCUMENTS (DOCUMENT REQUEST NOS. 6, 8, and 10-19).

Cabot served AVX with a series of requests for the production seeking documents and information concerning, *inter alia*, the tantalum capacitors and other products that AVX claims it only can produce using Cabot's flake tantalum powders; AVX's efforts, on its own or with others, to replace or develop substitutes for Cabot's flake powders; AVX's marketing of its tantalum capacitors and other products; and any products manufactured by other companies that AVX believes compete with its flake-based tantalum capacitors and other products.   In each instance, AVX responded by objecting that the request was "unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence," but nonetheless agreeing to "produce one or more documents responsive" to the request.   The specific discovery requests and responses at issue are as follows:

Document Request No. 6: All documents concerning the performance of, or potential uses for, any of AVX's Flake-Based Products, including, but not limited to, all specifications, technical articles, marketing plans, marketing studies, product brochures, sales proposals and sales presentations.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence.  Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 8: All documents concerning the marketing of AVX's Flake-Based Products, including, but not limited to, all market descriptions, marketing plans, marketing studies, market analyses, competitive analyses, product brochures, sales proposals and sales presentations.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence.  Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 10: All documents concerning any comparison of any of AVX's Flake-Based Products to any of AVX's Nodular-Based Products,

-16-

including, but not limited to, all specifications, technical articles, products brochures, sales proposals and sales presentations.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 11: All documents concerning any comparison of any of AVX's Flake-Based Products to any of AVX's Niobium-Based Products, including, but not limited to, all specifications, technical articles, product brochures, sales proposals and sales presentations.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 12: Documents sufficient to identify all Passive Electronic Component products manufactured by persons other than AVX that AVX understands compete with, or have competed with, AVX's Flake-Based Products, including, but not limited to, documents sufficient to identify the manufacture, complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such competing product.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 13: All documents concerning any actual or proposed attempt or effort by AVX to substitute or replace flake tantalum powder with nodular tantalum powder in any of AVX's Flake-Based Products, including, but not limited to, all proposals, feasibility studies, specifications, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 14: All documents concerning any actual or proposed attempt or effort by AVX to develop, market or sell any Passive Electronic Component that does not use or incorporate flake tantalum powder as an alternative or substitute for any AVX's Flake-Based Products, including, but not

limited to, all proposals, feasibility studies, technical articles, agreements, specifications, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 15: All documents concerning any communication or agreement between or among AVX and any other person concerning any actual or proposed attempt or effort to develop, market or sell any Passive Electronic Component that does not use or incorporate flake tantalum powder as an alternative or substitute for any of AVX's Flake-Based Products, including, but not limited to, all proposals, feasibility studies, technical articles, agreements, specifications, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 16: All documents concerning any communication or agreement between or among AVX and any other person concerning any actual or proposed attempt or effort to develop, market or sell any Tantalum Product that could be used by AVX as an alternative or substitute for flake tantalum powder in any AVX Passive Electronic Component product, including, but not limited to, all proposals, feasibility studies, technical articles, specifications, agreements, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 17: All documents concerning any communication or agreement between or among AVX and any other person concerning any actual or proposed attempt or effort to develop, market or sell any material other than a Tantalum Product that could be used by AVX as an alternative or substitute for flake tantalum powder in any AVX Passive Electronic Component product, including, but not limited to, all proposals, feasibility studies, technical articles, agreements, specifications, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 18: All documents concerning any communication between or among AVX and any other person concerning any actual or proposed alternatives to, or substitutes for, any of AVX Flake-Based Products, including, but not limited to, all correspondence, proposals, feasibility studies, agreements, specifications, technical articles, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the request is unduly burdensome and the requested documents are irrelevant and unlikely to lead to admissible evidence.  Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

Document Request No. 19: All documents concerning any communication between or among AVX and any other person concerning any actual or proposed alternatives to, or substitutes for, flake tantalum powder in any of AVX Flake-Based Products, including, but not limited to, all correspondence, proposals, feasibility studies, technical articles, agreements, specifications, test protocols, test results or production reports.

AVX Response: Plaintiffs object to this Request on the ground that the requested documents are irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs will produce one or more documents responsive to this Request.

AVX's entire document production in response to these various requests totals all of 445 pages.  AVX's production includes no marketing plans, no documents concerning AVX's efforts to replace or develop substitutes for Cabot's flake powders in any AVX capacitors and other products (although AVX personnel have testified under oath that AVX undertook to do just that), no documents concerning other manufacturers' products that compete with AVX's flake-based tantalum capacitors and other products, and absolutely *no* e-mails or other internal or external AVX communications.[5]  When questioned about the lack of e-mails and other internal or external AVX communications (among other things) in AVX's production during the course of the parties' Local Rule 37.1(A) conference on March 22, 2007, counsel for AVX

---

[5] For example, Mr. Chilton previously testified AVX personnel were "[c]onstantly" engaged in discussions in the 2000 time frame "about how AVX could go about replacing Cabot's products."  Deposition of Ernest E. Chilton, dated September 11, 2006, in the Second State Court Action at 52-54.  True, relevant excerpts of Mr. Chilton's deposition transcript are append to this Memorandum at Tab 1.

admitted to having no knowledge, one way or the other, whether AVX even had attempted to collect such materials in response to Cabot's discovery requests.

The documents that Cabot has requested are reasonably narrow in scope and directly relevant to AVX's allegations, *inter alia*, that Cabot's flake tantalum powders are "unique in the industry," and that AVX had "no choice" but to sign the 2001 Supply Agreement because it "could not fulfill its customers' needs without Cabot's 'flake' form of tantalum." Complaint, ¶¶ 14, 28. AVX must search for and produce *all* documents in its possession, custody or control that are reasonably responsive to Cabot's requests, not just a select handful of documents that AVX believes are benign or potentially helpful to its own cause. *See* Pulsecard, Inc. v. Discover Card Svcs., Inc., 168 F.R.D. 295, 307 (D. Kan. 1996) (statement that party had "produced responsive documents" was insufficient because party was required to "produce *all* documents responsive" to opposing party's discovery requests) (emphasis in original). Moreover, as a multi-billion dollar corporation in its own right and the subsidiary of a multi-national Japanese conglomerate, there can be no doubt that AVX has both the capability and the financial wherewithal to fulfill its production obligations. Accordingly, Cabot's Motion to Compel further responses by AVX with respect to Document Request Nos. 6, 8, and 10-19 should be allowed.

## Conclusion

For the foregoing reasons, Cabot respectfully requests that its Motion to Compel be allowed in its entirety.

CABOT CORPORATION

By its attorneys,

*/s/ Brian A. Davis*
Robert S. Frank, Jr. (BBO No. 130950)
Brian A. Davis (BBO No. 546462)
Julie C. Rising (BBO No. 666950)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:   April 13, 2007

4191917.1

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on April 13, 2007.

*/s/ Julie C. Rising*