# TAB 3

```
                                                              Page 1
 1            COMMONWEALTH OF MASSACHUSETTS

 2     SUFFOLK, SS                    SUPERIOR COURT

 3          CIVIL ACTION NO. 05-03816-BLS

 4

 5   AVX CORPORATION and AVX LIMITED,      )

 6           Plaintiffs And Defendants     )

 7           in Counterclaim,              )

 8      vs.                                )

 9   CABOT CORPORATION,                    )

10           Defendant and Plaintiff       )

11           In Counterclaim.              )

12                                    CONFIDENTIAL

13

14              **CONFIDENTIAL**    ORIGINAL

15

16         The deposition of JOHN STERLING

17   GILBERTSON, called for examination, taken before

18   ANNETTE M. MONTALVO, a Notary Public within and

19   for the Commonwealth of Massachusetts, and a

20   Registered Merit Reporter of said state, at Suite

21   3400, Two International Place, Boston,

22   Massachusetts, on the 22nd day of August, A.D.

23   2006, at 9:30 a.m.

24
```

CONFIDENTIAL

Page 2

```
 1   PRESENT:
 2
 3        BODOFF & SLAVITT, LLP,
 4        (225 Friend Street, 7th Floor,
 5        Boston, Massachusetts  02114,
 6        617-742-7300), by:
 7        MR. EVAN SLAVITT,
 8             appeared on behalf of the Plaintiffs
 9             and Defendants in Counterclaim;
10
11        CHOATE, HALL & STEWART,
12        (Two International Place,
13        Boston, Massachusetts  02110,
14        617-248-5000), by:
15        MR. ROBERT S. FRANK, JR.,
16             appeared on behalf of the Defendant
17             and Plaintiff In Counterclaim.
18
19
20
21
22   REPORTED BY:  ANNETTE M. MONTALVO, CSR, RMR,
23                 RMR CERTIFICATE NO. 833506.
24
```

CONFIDENTIAL

Page 5

```
1         MR. FRANK:  Same stipulations?
2         MR. SLAVITT:  Yes.
3              (WHEREUPON, the witness was duly
4         sworn.)
5              JOHN GILBERTSON,
6   called as a witness herein, having been first
7   satisfactorily identified and duly sworn, was
8   examined and testified as follows:
9                   EXAMINATION
10  BY MR. FRANK:
11       Q.   Good morning, Mr. Gilbertson.  Will you
12  state your name, please.
13       A.   John Gilbertson.
14       Q.   Where do you live, Mr. Gilbertson?
15       A.   I live in 517 North 13th Avenue, Surf
16  Side Beach, South Carolina, 29575.
17       Q.   Are you presently employed?
18       A.   Yes, I am employed.
19       Q.   By whom are you employed?
20       A.   AVX Corporation.
21       Q.   And what is your position with AVX
22  Corporation?
23       A.   I am the president of the company.
24       Q.   And the chief executive officer?
```

CONFIDENTIAL

Page 6

```
 1        A.     And chief executive officer.
 2        Q.     Would you take a minute, sir, and tell
 3   us your educational background.
 4        A.     I received a bachelors of engineering
 5   in general engineering from Oklahoma State
 6   University in Stillwater, Oklahoma.  I received a
 7   masters in industrial management at the same
 8   university.
 9        Q.     When did you get your bachelors degree?
10        A.     I believe it was 1969.
11        Q.     And your masters degree?
12        A.     One year later.
13        Q.     When you finished school, when were you
14   first employed?
15        A.     When I finished the university, I went
16   into the military.
17        Q.     How long were you in the military?
18        A.     I was in the military for about
19   approximately 4 and one-half years.
20        Q.     And when you came out, what was your
21   first job?
22        A.     I worked for a company called Corning
23   Glass Works.
24        Q.     When did you start at Corning?
```

CONFIDENTIAL

Page 7

```
1     A.    Immediately after getting out of the
2  Air Force.
3     Q.    So that would be about 1974?
4     A.    It would be close.  It would be about
5  that time, yes.
6     Q.    How long were you at Corning?
7     A.    I was at Corning approximately nine
8  years.
9     Q.    And can you tell us what positions you
10 held at Corning and the order in which you held
11 them?
12    A.    I started out as an engineer in a glass
13 plant, then I was in charge of new product
14 development in regards to glass.  Then I was a
15 department manager of a glass melting operation.
16 Then I was the production foreman, general
17 foreman of a glass build up process.  Then I was
18 the production superintendent of an electronics
19 process company in that same firm.
20    Q.    When did you leave Corning?
21    A.    Approximately 1981.
22    Q.    Is it correct in 1981 you joined AVX?
23    A.    That's correct.
24    Q.    What was your first position at AVX?
```

CONFIDENTIAL

1  yes.

2     Q.   Now, going to the second "Tom," you say
3  alongside that portion of the e-mail that you
4  have to have a level playing field.  Do you see
5  that?

6     A.   Yes.

7     Q.   And is it correct that the level
8  playing field was your way of describing your
9  objective with respect to the most favored
10 customer provision?

11    A.   They were objecting to --

12    Q.   Please answer my question.

13    A.   Ask me the question again.

14              (WHEREUPON, the record was read by
15               the reporter as requested.)

16 BY THE WITNESS:

17    A.   No.

18 BY MR. FRANK:

19    Q.   Down below in the chart, in the bottom
20 portion of the first page of Exhibit 2, I note
21 that the chart in your e-mail now includes 25,000
22 pounds of nodular powder in 2001 and 30,000
23 pounds of nodular powder for Biddeford in 2002
24 through 2005, do you see that?

CONFIDENTIAL

Page 165

```
1    A.    Yes, I do.
2    Q.    And then you say in the text above the
3    chart: "I lowered the commitment to 25,000 pounds
4    in Biddeford.  How about a statement that you
5    will try to add 5,000 pounds"?
6    A.    Yes.
7    Q.    Do you see that?
8    A.    Yes.
9    Q.    Is it fair to say that your objective
10   was, if you could, to purchase additional nodular
11   powder?
12   A.    Yes.
13   Q.    Okay.  And is it -- directing your
14   attention to the continuation of the chart, the
15   second page, the very top of that chart there's a
16   listing of 10,000 pounds of nodular powder under
17   the heading Europe in the years 2002 through
18   2005, do you see that?
19   A.    I see that, yes.  This was basically
20   Tom's chart, you know.
21   Q.    Okay.  Now if you will look just above
22   the chart, and you will see it says, "change the
23   nodular to 10,000 pounds, which our side is very
24   uncomfortable with as a good faith from our
```

```
 1   side."  Do you see that?  Just above the chart.
 2        A.    I see that, yes.
 3        Q.    Is it correct that you were
 4   uncomfortable with the reduction from 60,000
 5   pounds of nodular powder as shown on Mr. Odle's
 6   e-mail, Exhibit 181, to the 10,000 pounds as
 7   shown on Exhibit 2?
 8        A.    Yes.
 9        Q.    Because you wanted more if you could
10   get it?
11        A.    Right.
12        Q.    I'm sorry?
13        A.    Yes, correct.
14        Q.    Directing your attention Exhibit 2 to
15   the first full paragraph under the second "Tom,"
16   it says, "the most favored nation/customer in
17   some term in year 3 to 5 of the agreement is the
18   only way we have of ensuring that level playing
19   field."
20              Did you communicate to Mr. Odle that
21   the most favored customer provision that you were
22   suggesting was designed to create a level playing
23   field among AVX's -- between AVX and Cabot's
24   otherwise most favored customer?
```

Page 167

1      MR. SLAVITT: Objection. You can answer.
2  BY THE WITNESS:
3      A.   The answer is, no, the way you phrased
4  that.
5  BY MR. FRANK:
6      Q.   Okay. Did you ask Mr. Odle to tilt the
7  playing field in AVX's favor?
8      A.   No.
9      Q.   And is it fair to say you understood at
10 that time that the level playing field that you
11 were asking for could not be absolutely level
12 because there was a prior Vishay contract at
13 lower prices?
14     A.   I realized that Vishay had a contract
15 at a lower price prior to our discussion.
16     Q.   And that was a pothole in the playing
17 field with which you had to live; is that fair?
18     MR. SLAVITT: Objection. You can answer.
19 BY THE WITNESS:
20     A.   I think that was one of our discussion
21 points as we went through the contract.
22 BY MR. FRANK:
23     Q.   Okay. Whether or not you would accept
24 that pothole in the playing field?