# EXHIBIT

# B

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>           Plaintiffs,<br>v.<br><br>CABOT CORPORATION,<br><br>           Defendant. | CIVIL ACTION NO. 04-10467-RGS |

**DEFENDANT CABOT CORPORATION'S
OBJECTIONS AND RESPONSES TO
<u>PLAINTIFFS' SECOND SET OF INTERROGATORIES</u>**

      Defendant Cabot Corporation ("Cabot") hereby responds, pursuant to Fed. R. Civ. P. 26 and 33, to plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") Second Set of Interrogatories (each an "Interrogatory" and, collectively, the "AVX Interrogatories").

<u>General Objections</u>

      1.    Cabot generally objects to the AVX Interrogatories to the extent that they seek the disclosure of any information and/or materials that are protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege, protection or immunity. Cabot relies upon, and hereby expressly asserts, each such privilege, protection or immunity as appropriate. To the extent that the AVX Interrogatories seek such information and/or materials, they are excluded from Cabot's responses.

      2.    Cabot generally objects to the AVX Interrogatories to the extent that they are overly broad, unduly burdensome, vague and/or ambiguous.

      3.    Cabot generally objects to the AVX Interrogatories to the extent that they seek confidential or proprietary information and/or materials. In particular, but without limitation, Cabot objects to the unprotected disclosure of confidential and/or proprietary information concerning Cabot's business dealings with AVX's competitors. Cabot will provide such confidential or proprietary information, to the extent that its disclosure would not unduly harm Cabot's business interests or the interests of Cabot's other customers, pursuant to the Stipulated Protective Order entered in this action.

4. Cabot generally objects to the scope of the AVX Interrogatories to the extent that they do not incorporate reasonable date restrictions, including to the extent that they define the "Relevant Period" as the more than twelve-year period from January 1, 1996, to the present.

5. Cabot generally objects to the "Definitions" set forth in the AVX Interrogatories to the extent that those "Definitions" are overly broad, unduly burdensome, vague or ambiguous. Cabot will give the terms used in the AVX Interrogatories their usual and normal meanings.

6. Cabot generally objects to the definition of "you," "your" and "Cabot" set forth in the AVX Interrogatories to the extent that it includes operations or divisions of Cabot that did not exist, or were not under Cabot's control, as of the time when the allegedly wrongful conduct described in AVX's Amended Complaint purportedly took place. To the extent that the AVX Interrogatories seek information concerning such operations or divisions of Cabot, it is excluded from Cabot's responses.

7. Cabot generally objects to the AVX Interrogatories to the extent that they seek to impose obligations upon Cabot that are different from, or beyond those imposed by, the Federal Rules of Civil Procedure. Cabot will, and herein does, comply with its obligations under the Federal Rules of Civil Procedure and/or any other applicable rule, regulation and/or law.

8. Cabot generally objects to the AVX Interrogatories to the extent that they seek information that is unreasonably cumulative and/or duplicative.

9. Cabot generally objects to the AVX Interrogatories, including all discrete subparts, to the extent that they exceed the maximum number of interrogatories permitted under Fed. R. Civ. P. 33(a).

10. By providing information in response to the AVX Interrogatories, Cabot does not waive, and hereby expressly reserves, all objections as to the relevancy, materiality or admissibility of the information disclosed and the subject matter thereof.

11. Cabot hereby asserts that the provision of a specific response to any Interrogatory does not waive any General Objection made herein.

12. Cabot states that its objections and responses to the AVX Interrogatories are based upon information and documentation presently available and specifically known to Cabot. Cabot expressly reserves the right to amend, supplement or otherwise modify its objections and responses to the AVX Interrogatories as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

### Specific Responses And Objections

Subject to the foregoing General Objections, each of which is hereby incorporated by reference into each of the following responses, Cabot responds to the specific AVX Interrogatories as follows:

Interrogatory No. 16:

For each and every year of the Relevant Period (broken down quarterly or monthly if and to the extent Cabot's records are so broken down) identify the amount of, and describe, each and every direct and indirect cost incurred by Cabot or affiliate [*sic*] as may be applicable in producing each and every flake tantalum product and each and every nodular tantalum product offered and/or sold by Cabot or affiliate [*sic*] as may be applicable during any part or all of the Relevant Period; and identify all persons with knowledge concerning such direct and/or indirect costs of producing each and every such flake tantalum product and each and every such nodular tantalum product including therein a description and identification of the direct and/or indirect cost of production of which each such individual has knowledge.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. It is not reasonable to expect Cabot to prepare and provide a list identifying and quantifying "each and every direct and indirect cost" that Cabot has incurred in producing the millions of pounds of various tantalum products that it has manufactured at any time during the more than twelve-year period from January 1, 1996 to the present. Cabot further states that such information, even if it were reasonably accessible and could be provided to AVX, would serve no useful purpose in resolving the only issue in this action, in which is whether Cabot forced AVX, in early 2001, into signing an agreement containing an unlawful "tying" arrangement in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 14.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that persons at Cabot who have reasonable knowledge of the various types of direct and indirect costs that Cabot typically incurs in producing tantalum products include Eduardo E. Cordiero, Vice President and General Manager of Cabot's Supermetals Division, and James A. Realbuto, the Controller of Cabot's Boyertown, Pennsylvania production facility.

Interrogatory No. 17:

For each and every year of the Relevant Period identify all documents discussing or referencing Cabot's actual or estimated market share of worldwide nodular tantalum market; and, identify all persons with knowledge of both such documents and estimates or studies of the worldwide tantalum market.

Response:

Cabot objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. It is not reasonable to expect Cabot to prepare and provide a list identifying each and every document created at any time during the more than twelve-year period from January 1,

-3-

1996 to the present, which discusses total worldwide sales of tantalum products, or Cabot's actual or estimated share of such sales. Cabot further objects to this Interrogatory on the ground that it is impermissibly vague as to the intended meaning of the phrase "worldwide nodular tantalum market," which term is not defined anywhere in AVX's Complaint and Jury Demand or in the AVX Interrogatories.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot states that there are numerous industry documents that purport to discuss or reference total worldwide sales of tantalum products during some or all of the period from January 1, 1996 to the present, and/or Cabot's actual or estimated share of such sales, including, for example, reports and studies by various independent organizations and research firms such as the Tantalum-Niobium International Study Center ("Minor Metals 2004 - Developments in the Tantalum Market"); Roskill Information Services, Ltd. ("The Economics of Tantalum, 9th Edition 2005"); and Paumanok Publications ("Tantalum Capacitors: World Markets, Technologies & Opportunities: 2005-2010 Technical Economic Analysis"). In addition, there are numerous government publications that discuss worldwide sales of tantalum products, including publications issued by the Ministry of Energy, Mines and Petroleum Resources of the Province of British Columbia, Canada ("Tantalum Market and Resources: An Overview: Paper 2002-1-22"); and the Department of Minerals and Energy of the Republic of South Africa ("The Tantalum Market - (A micro-economic analysis)"). Documents that Cabot already has produced to AVX which discuss total worldwide sales of tantalum products during some or all of the period from January 1, 1996 to the present, and/or Cabot's actual or estimated share of such sales, include, but are not limited to, those bearing Bates nos. C(A) 005127-5132; C(A) 005234-5247; C(A) 005296-5300; C(A)006400-6633; and C(A) 008314-8765.

Subject to the foregoing specific and general objections, and without waiving or in any way compromising the same, Cabot further states that persons at Cabot who have reasonable knowledge of total worldwide sales of tantalum products during some or all of the period from January 1, 1996 to the present, and/or Cabot's actual or estimated share of such sales, include Eduardo E. Cordiero, Vice President and General Manager of Cabot's Supermetals Division, and William J. Young, Strategic Business Manager of Cabot's Supermetals Division.

As to objections,

_____
Robert S. Frank, Jr. (BBO No. 177240)
Brian A. Davis (BBO No. 546462)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000

Date:   March 16, 2007

4178574.1

## VERIFICATION

I, Eduardo E. Cordeiro, state under the penalties of perjury that: I am Vice President and General Manager of defendant Cabot Corporation's Supermetals Division; I have read the foregoing responses to the AVX Interrogatories and know the contents thereof; that said responses were prepared with the assistance and advice of counsel; the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, collected and thus far discovered in the course of preparing these responses; that I reserve the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; that, subject to the limitations set forth herein, these responses are true to the best of my knowledge, information and belief.

Signed under the penalties of perjury on this 13 day of March, 2007.

Eduardo E. Cordeiro

## CERTIFICATE OF SERVICE

I, Julie C. Rising, hereby certify that on this 16th day of March, 2007, I caused to be served a true and correct copy of the foregoing Cabot Corporation's Objections and Responses to Plaintiffs' Second Set of Interrogatories on the counsel of record for AVX Corporation and AVX Limited at the address and in the manner indicated below:

Joseph S.U. Bodoff, Esq.       [x] U.S. Mail
Richard A. Goren, Esq.       [x] Facsimile
BODOFF & ASSOCIATES LLP       [ ] Overnight Delivery
225 Friend Street, 7th Floor       [ ] Hand Delivery
Boston, MA 02114-1812

_____
Julie C. Rising