UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVX CORPORATION<br>and AVX LIMITED, | )<br>)<br>)<br>) |  |
| Plaintiffs, | )<br>) |  |
| v. | ) | Civil Action No. 04-10467-RGS |
| CABOT CORPORATION, | )<br>)<br>) |  |
| Defendant. | )<br>) |  |

**MOTION FOR SANCTIONS FOR REFUSAL TO DESIGNATE
<u>ONE OR MORE WITNESSES UNDER RULE 30(b)(6)</u>**

AVX Corporation and AVX Limited (hereinafter "AVX") move pursuant to Fed. R. Civ. P. 30(d)(3) for the Court to impose sanctions upon the Defendant Cabot Corporation (hereinafter "Cabot") for failure to designate one or more witnesses to testify on issues central to this case. More specifically, as set forth in more detail hereafter, Cabot refused to allow AVX to take its deposition on Cabot's denial that it had engaged in any tying activity. It also refused to designate witnesses on the issues of Cabot's efforts to dominate the market for the supply of tantalum ore, which is a relevant inquiry in determining the economic impact of Cabot's illegal anticompetitive activities.

For Cabot's arbitrary refusal to designate a witness for the tying issue, AVX moves *in limine* to preclude Cabot from introducing evidence that it did not condition the purchase of flake tantalum on the entering into of a long-term supply agreement to purchase non-flake products and to explain the rationale behind such tying. For Cabot's arbitrary refusal to produce a witness to testify on the other topics, AVX seeks an order

compelling the attendance of witnesses and the award of counsel fees. In support thereof, AVX states:

1. This is an action in which AVX alleges that Cabot unlawfully conditioned AVX's purchase of flake tantalum powder on the purchase of non-flake tantalum products in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 14. AVX's complaint is that it needed Cabot's patented flake and Cabot would not sell AVX flake for its needs in 2001 unless AVX committed to buying both flake and non-flake tantalum products for five years at fixed prices. It is undisputed that the five-year Supply Agreement in question required AVX to purchase both flake and non-flake tantalum products at fixed prices. Relevant areas of discovery include:

- Cabot's alleged market power in flake and its economic power over the market for non-flake tantalum products;
- the general market conditions for non-flake tantalum products; and
- Cabot's power or ability to influence the supply of raw tantalum ore and/or the semi-refined KTaF tantalum to other sellers of non-flake tantalum products and hence impact that market.

AVX has been denied the opportunity to inquire into these areas as a result of Cabot's failure to comply with AVX's Deposition Notice, much to AVX's prejudice.

2. On October 12, 2007, AVX issued and served Cabot with the Deposition Notice, which specified a list of 18 topics upon which Cabot's testimony would be sought. The list is attached as Exhibit A. Cabot designated three witnesses – William Young, Cabot's present Strategic Business Manager (a sales function) of its tantalum business; Eduardo Cordeiro, since 2005 the general manager of Cabot's tantalum

business; and Marlin Spotts, the accounting manager of Cabot. Cabot agreed to make these witnesses available on November 28[th][1] and 29th.

      3.      On November 2nd, Cabot wrote to AVX that it would not designate anyone to testify on topics 2, 12 and 18. As to topic 2 – whether and for what reason Cabot conditioned the purchase of flake tantalum on the purchase of other products – Cabot stated that "since we disagree any conditioning occurred, we cannot provide a witness on this topic." This is so even though the topic included the basis for Cabot disputing a claim that the products were tied together. As to topics 12 and 18 – dealing with Cabot's control over the raw tantalum supply and the manufacturing of tantalum products – Cabot stated those two topics "relate to" document discovery "which [Magistrate] Judge Bowler ruled need not be produced."

      4.      On November 7th, AVX informed Cabot that it did not recognize Cabot's objections as valid, that Magistrate Bowler's ruling that mining contracts were not probative did not mean AVX could not elicit testimony on deposition as to Cabot's ability to affect competition in the non-flake tantalum market by exerting control or influence over the supply of tantalum ore and the semi-refined KTaF, and that it intended to inquire on these three topics. Despite this warning and in disregard of the clear and unambiguous law of this Court, Cabot did not move for a protective order seeking to limit the permissible scope of deposition examination.

---

[1] Mr. Young's deposition was continued to December 10th.

**Cabot's Wrongful Refusal to Provide Testimony on Tying**

5. Topic 2 deals with Cabot's position on whether it required AVX to condition the purchase of flake tantalum on a five-year commitment to purchase non-flake products, including the economic rationale for such conditioning. Specifically, Topic 2 is stated as follows:

> The economic rationale(s) for conditioning AVX's purchase of flake on AVX's commitment to purchase nodular for five years at the prices specified in the Supply Agreement ***including without limitation whether Cabot disputes the existence of such conditioning, and if so the basis or bases for denying such condition***, and if acknowledging such conditioning, the reasons Cabot asserts justify such conditioning as commercially reasonable.

Emphasis added. In its emails and on the record at Mr. Young's deposition Cabot objected to Topic 2 on the basis that "there was no such condition on Cabot's part and so that really is not possible for Cabot to produce a witness on that point." As is clear from the wording of Topic 2, if Cabot denies such conditioning of purchases, it still must produce a witness with sufficient knowledge to give testimony on facts regarding that denial.

The issue of conditioning is the *sine qua non* of a tying claim and is central to what the parties are disputing. ***There is simply no justification for Cabot to refuse to testify on this point***. Even so, if and to the extent Cabot ***in good faith*** believed any part of Topic 2 was improper, it should have immediately moved for a protective order.[2] *See,*

---

[2] This is not a procedure that is unknown to Cabot's counsel. Interestingly, in Cabot's Rule 30(b)(6) notice of AVX witnesses, Cabot had designated a topic that is relevant only in litigation involving the same supply agreement pending in Suffolk Superior Court. Discovery is closed in that case, so Cabot took the opportunity to get around that barrier by designating a topic from that case in its Rule 30(b)(6) notice in this case. When this issue was brought up in the deposition, Cabot's counsel warned AVX's counsel that the time to object to the topic designation had already passed and that AVX was precluded from objecting at the deposition. The witness answered the questions on that topic. Apparently, Cabot is not of the view that what is good for the goose is good for the gander.

*e.g., Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727, 731 (D. Mass. 1985). "Only the Court, not counsel [for Cabot], can order that a deposition be limited or that certain questions not be answered." *Id. Cf. American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 174 (D. Mass. 1985) ("it is the duty of the attorney instructing the witness not to answer to immediately seek a protective order").

Cabot's brazen, unilateral refusal to provide testimony on this key predicate Sherman Act issue warrants a severe sanction. To prevent unfairness and prejudice, AVX asks the Court to enter an order *in limine* precluding Cabot from adducing any evidence of the reasons for denying such conditioning and/or the business reasons purportedly justifying that conduct.

## Cabot's Wrongful Refusal to Provide Testimony on Its Control of Raw Tantalum Markets

6.      The focus of Topic 12 is to probe Cabot's power to affect the market for non-flake tantalum products by any ability to control or influence the available supply of raw material to Cabot's competitors. It inquires about raw tantalum ore from which the tantalum powders are manufactured, including Cabot's percentage share or control of this rare, raw material and the implications to Cabot's competitors, spot market ore pricing, scrap tantalum's impact on raw material supply and constraints on capacity of the raw material. Expert affidavits filed by AVX in early and mid 2007 aver that the disputed discovery sought by AVX is appropriate for an antitrust assessment. Cabot has never filed any expert affidavit disputing the probative value of this information.

Both before and during the first deposition on November 28th, Cabot objected that requests "having to do with mining" had been rejected by Magistrate Bowler. That is incorrect. All that Magistrate Bowler had before her was AVX's request for Cabot to

5

produce copies of "mining agreements and documents concerning [Cabot's] ability to restrict or impact the supply of raw materials."[3] There was and can be no ruling in this case that AVX cannot examine Cabot on deposition about its alleged power in the alleged tied market of non-flake tantalum products including its ability to affect or influence the supply of raw material and the semi-refined KTaF to other sellers of tantalum products.

In all events Cabot cannot unilaterally determine or limit the scope of a deposition. *Paparelli*, 108 F.R.D. at 731. It had more than a month after service of the Deposition Notice to seek a protective order but did not.[4] Therefore, Cabot should have designated and prepared a witness to testify on Topic 12.

AVX asks the Court to award its costs and attorneys fees and to order Cabot to designate and properly prepare a witness to appear on deposition in January for Topic 12.

## Cabot's Wrongful Refusal to Provide Testimony on the Development, Manufacture and Sale of Tantalum by Its Affiliates and Joint Venturers

7.  Topic 18 seeks discovery of Cabot's alleged ability to impact commerce in the market for nodular powder by affecting access by competitors to raw material, market power over flake and damages and includes but is not limited to Cabot's dealings with the nominal 50-50 joint venture with Showa Cabot (from 1996 to February 2002).

Again both before and during the first deposition on November 28th Cabot objected that Topic 18

---

[3] This segment of the hearing focused on the mining contracts. Tr. 17-19. AVX initially asked the Court to address Cabot's "refusal to produce mining agreements and documents concerning its ability to restrict or impact the supply of raw materials." Cabot argued it "had a contract with Sons of Gwalia that called for the purchase of ore, tantalum ore at varying prices. So how that leads to any information that's relevant to this tying claim that's being made here is is beyond me." To which AVX responded that "any influence that Cabot may have had over the supply of raw materials … would probably be evident in these mining contracts … We ask that you order them to produce the mining contracts [with Sons of Gwalia]."

[4] *See* footnote 2.

> deals with more detailed information regarding Cabot's prior joint venture with Showa Denko [Showa Cabot], and again, those are topics on which AVX previously sought discovery, its requests were denied by the Court, [and], we don't think they're appropriate subjects for a deposition. … [Mr. Young has not been designated on Topic 18 and ] will not testify on … [Topic 18 but you may] question him about his understanding [but not as a Cabot designee]  regarding the extent of Cabot's control over that joint venture, which is a topic on which Magistrate Judge Bowler allowed AVX discovery.

Young Dep. at 8:5-24; 17:10-24; 18:1-2.

This was improper.  Cabot cannot unilaterally limit the scope of examination; and Cabot failed to move for a protective order. [5] Second the Court did order Cabot to produce all documents concerning its dealings with the Showa Cabot joint venture.[6]

Again, Cabot failed to designate and prepare a witness to testify on what – without the benefit of a Court order – Cabot unilaterally determined to be the sole permitted subject, namely the extent to which Cabot controlled the nominal 50-50 joint venture.

> [Cabot's] inadequate Rule 30(b)(6) designation amounts to a refusal or failure to answer a deposition question … [and warrants] requir[ing] … Cabot to redesignate its witnesses and mandate their preparation for re-deposition at … [Cabot's] expense.

*Calzaturficio S.C.A.R.P.A. v. Fabiano*, 201 F.R.D. at 41.

AVX asks the Court to award its costs and attorneys fees and to order Cabot to designate and properly prepare a witness to appear on deposition in January for all areas of Topic 18.

---

[5] *See* footnote 2.

[6] At the hearing: Mr. Goren: "… Cabot says it didn't control the former joint venture and yet it refuses to produce the joint venture agreement and its amendments **and its dealings with the joint venture**. We ask that it be ordered to produce those."; Mr. Davis: "… I think that'll be acceptable but that's the--the very first time that request has ever been made"; The Court: " All right, so-- to be produced." Tr. at 14 (emphasis added).  In late October, Cabot produced the joint venture agreement but no documents evidencing its dealings over the years with Showa Cabot.  Cabot's failure to produce those documents is the subject of another imminent motion to compel.  AVX has also moved for reconsideration of Magistrate Bowler's order concerning sales and costs of the Aizu facility for all years from 1996 through 2006.

WHEREFORE, AVX Corporation and AVX Limited respectfully request that this Court enter Orders for Sanctions, *in limine* and to compel further deposition discovery consistent with the foregoing.

>AVX CORPORATION and
>AVX LIMITED
>
>By their attorneys,
>
>*/s/ Richard A. Goren*
>Richard A. Goren (BBO No. 203700)
>Joseph S.U. Bodoff (BBO No. 549116)
>BODOFF & ASSOCIATES
>225 Friend Street
>Boston, Massachusetts 02114
>Tele: 617-742-7300
>Fax:  617-742-9969

Date:   December 17, 2007

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), I hereby certify that counsel for the plaintiffs, AVX Corporation and AVX Limited conferred with counsel for defendant Cabot Corporation regarding the foregoing Motion.

>*/s/ Richard A. Goren*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on December 17, 2007.

>*/s/ Richard A. Goren*