# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION and AVX LIMITED, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 04-10467-RGS |
| CABOT CORPORATION, ) ) | |
| Defendant. ) ) | |

## AVX'S MOTION TO COMPEL DISCOVERY OF SELECTED DOCUMENTS FROM CABOT'S PRIVILEGE LOG

Plaintiffs AVX Corporation and AVX Limited (collectively "AVX") hereby respectfully move, pursuant to Fed. R. Civ. P. 37 and L.R. 37.1, to compel the defendant Cabot Corporation ("Cabot") to produce certain documents withheld on the basis of attorney client privilege.[1]  As to each of these questioned documents Cabot's privilege log fails to make the required *prima facie* showing of privilege because it does not adequately describe both the questioned documents and the basis for the claimed privilege.  Stated differently, the bases upon which Cabot has asserted the attorney-client privilege are either insufficient or do not withstand scrutiny.  Cabot's failure to meet its burden constitutes a waiver of any claim to privilege.[2]  In support of its motion AVX states:

---

[1] Four of the documents questioned by AVX were claimed as both work product and attorney client privileged.

[2] In order to get to get to the substance of Cabot's concerns without violating its confidentiality in the process, AVX's counsel suggested that the parties employ a private discovery master, a suggestion which Cabot flatly rejected.  The position that Cabot has taken is that it is sufficient for its counsel to state that the documents are privileged without either submitting a sufficient basis by way of privilege log, by one or more affidavits or by having a neutral third party examine the documents.

## I.    <u>BACKGROUND</u>

In response to AVX's document requests, Cabot withheld numerous documents claiming attorney-client privilege.  A copy of its privilege log is attached as Exhibit A hereto.  On November 15, 2007, AVX wrote to Cabot and identified each of the questioned documents which are comprised (with some overlap) in five categories:

    (i)      communications between Cabot employees copied to one or more in-house lawyers;

    (ii)     communications between solely Cabot non-lawyer employees;

    (iii)    a single document prepared by an employee who some months after he authored the document first became licensed to practice law in Massachusetts;

    (iv)    documents that do not purport to be communications; and,

    (v)     attachments to other documents.

A copy of AVX's November 15th letter is attached as Exhibit B hereto.

In its November 15th letter, AVX informed Cabot that AVX's counsel was unable to discern the applicability of the claimed privilege from the privilege log.  In the subsequent LR 7.1 conference, Cabot's counsel still did not shed any light on why the documents were privileged other than their conclusory assertions that they were.

As discussed hereafter, for documents to be protected, (1) they need to be communications between a client and its lawyer, (2) especially where in-house counsel is concerned, it must be demonstrated that the communications were in the nature of rendering legal advice and (3) the communication must not have been waived by sharing

the document with parties outside of the scope of the protection.[3]  All that AVX has

sought from the privilege log and all that it sought in the LR 7.1 conference is a

demonstration that these three requirements were met.  As explained hereafter, there are

significant reasons why the documents in question are not privileged.  The failure of

Cabot to carry its burden to demonstrate a basis  the privilege means that the documents

must be produced. Among other things, there was no suggestion in the log and no

affidavit proffered by Cabot that each of the in-house lawyers had been acting as an

attorney providing legal advice and not as an employee trained in the law who was

providing business advice or strategy.

## II.     THE DISPUTED DOCUMENTS.

### A.     *Communications between Cabot employees copied to one or more in-house lawyers*

The first category does not include a single communication directly from or to a

Cabot employee and one or more in-house lawyers.  In this category Cabot simply

claimed that a number of emails between Cabot employees which had been copied to an

in-house lawyer were privileged.  As with the entire privilege log, Cabot's almost

uniform, rote bases for the assertion of privilege were: "reflects request for legal advice

concerning contract negotiations with AVX;" "reflects legal advice concerning contract

negotiations;" "forwarding an email containing legal advice concerning contract

negotiations;" or "string of emails reflecting request for legal advice and legal advice

concerning MFN[4] issues."  But for each of the more than 50 documents in this category

there was no trail evident or that could be deduced from the log supporting a claim of

---

[3] *See, e.g.,* discussion concerning document 2 on page 4 and discussion at pages 9 and 10.
[4] MFN is a reference to the most favored nation provisions of the supply agreement between Cabot  and
AVX  pursuant to which Cabot agreed, within certain parameters, to provide AVX with the lowest prices
that it was charging any of its customers for equivalent products.

privilege by reference to a particular communication between legal counsel and a Cabot employee elsewhere in the log.  Nor did the log specify who of the in-house lawyers or outside counsel had rendered the purported legal advice.  The privilege log also does not inform the reader whether any of the questioned documents was intended to be kept confidential and whether the particular document was so maintained.  For example document number 2, an October 26, 2000 email from the general manager of Cabot's tantalum business to Cabot's president, was copied to 12 employees, which included one in-house lawyer.

### B.      *Communications between solely Cabot non-lawyer employees*

The second category of questioned documents does not include a single communication between a lawyer and a Cabot employee.  Instead, with the same infirmities as category one, the log recites these documents are privileged because each "reflects request for legal advice concerning contract negotiations with AVX," "reflects legal advice concerning contract negotiations," "forward[s] an email containing legal advice concerning contract negotiations," "[constitutes a] string of emails reflecting request for legal advice and legal advice concerning MFN issues," and (a new basis) "forward[s] request for legal advice concerning MFN issues."  A request for legal advice, if not made to an attorney, is not a privileged attorney-client communication.

### C.      *A single document prepared by an employee who some months after he authored the document first became licensed to practice law in Massachusetts*

Then, there is document number 175, a January 16, 2002 memo from a Philip Szabla.  Cabot claims this memo, which is ***not*** addressed to any Cabot employee or lawyer, is both an attorney-client privileged communication and also a work product

privileged document. The log's stated basis for withholding is that it "reflects legal advice about tantalum contracts." While perhaps not conclusive on this issue, according to the Board of Bar Overseers, Mr. Szabla first became a member of the Massachusetts bar on April 2, 2002. Standing alone without explanation[5] the memo cannot be a privileged attorney-client communication because among other reasons: (i) the document had not been purportedly transmitted as legal advice to any client; (ii) there is no demonstration it contained confidential information; and (iii) Mr. Szabla was not a duly licensed by the Commonwealth in January 2002 to practice law at Cabot's Boston headquarters.

### D. Documents that do not purport to be communications

Another questioned category was a series of documents that are not communications at all. This category of about 20 documents relies on the same infirm bases noted above, again leaving AVX's counsel unable to assess the claim of privilege. For example, number 141 is comprised of undated spreadsheets that the log asserts "reflects legal advice concerning MFN issues." Spreadsheets projecting certain outcomes based on legal advice are business documents, not communications in any imaginable sense. Number 166 is a February 14, 2005 document comprised of handwritten notes with an attachment that purports to be privileged because it reflects a request for legal advice concerning MFN issues. There is no indication of either the author or to whom this alleged communication, if it was one, was addressed. The log tells the reader nothing about the attachment (see category below). In this category are more spreadsheets (some

---

[5] When the document was questioned Cabot could have come forward, if justifiable, with disclosure of the identity of the lawyer who rendered the advice, when it was rendered and to whom, and Mr. Szabla's role and function within the law department when he prepared this document. But Cabot did nothing to explain or justify the asserted privilege.

undated), charts (some undated), undated notes by Mr. Szabla—who prior to April 2002 was not licensed to practice in Massachusetts-- that purportedly reflect legal advice, nine draft agreements (some undated) with "handwritten notes" of an unidentified attorney. Yet, there is no suggestion in the log of any confidential information supplied by the client to the draftsperson and thereafter maintained in confidence and hence conceivably privileged; and the reader is not informed if an attorney prepared the draft.

### E.    *Attachments to other documents*

The last category is comprised of a number of documents with attachments.[6]  The reader of the log has no way of knowing whether it is the referenced document or the attachment as to which privilege is asserted and again on the same infirm bases the log asserts that each document is privileged because it "reflects request for legal advice concerning contract negotiations with AVX," "reflects legal advice concerning contract negotiations," "forward[s] an email containing legal advice concerning contract negotiations," or "[constitutes a] string of emails reflecting request for legal advice and legal advice concerning MFN issues."

### III.    ATTORNEY CLIENT PRIVILEGE PRINCIPLES.

In this federal antitrust case, the question of attorney-client privilege is a matter of federal common law.  *United States v MIT*, 129 F. 3d 681, 684 (1st Cir 1997).  The existence of the privilege and questions of waiver, if properly asserted and not lost or waived, are questions of fact to be determined by the Court.  *See, e.g., United States v. Windsor Capital Corp.,* 2007 U.S. Dist. LEXIS 86434 (D. Mass. 2007).

The attorney-client privilege "extends to all communications made to an attorney or counselor, duly qualified and authorized as such, and applied

---

[6] Some of the documents appearing in this category appear in one of the other categories described herein.

to by the party in that capacity, with a view to obtain his advice and
opinions in matters of law, in relation to his legal rights, duties, and
obligations." … [T]he party asserting the privilege, … bears the burden of
demonstrating its applicability to the documents at issue. … The attorney-
client privilege protects communications between corporate officers and
in-house counsel. … However, the privilege does not apply when in-house
counsel is engaged in "nonlegal work."…. "[A]n in-house lawyer may
wear several other hats (e.g., business advisor, financial consultant) and
because the distinctions are often hard to draw, the invocation of the
attorney-client privilege may be questionable in many instances." …
Courts have held that "nonlegal work" includes the rendering of business
or technical advice unrelated to any legal issues.  A document must have
been intended to be confidential and made for the purpose of giving or
obtaining legal advice to be vested with the attorney-client privilege.

*Id.* at *16 (internal quotations and citations omitted).[7]  *See also Borase v. M/A Com, Inc.,*

171 F.R.D. 10, 14 (D. Mass. 1997).

That one or more of Cabot's in-house lawyers

may have performed certain legal functions as part of … [the in house
legal department] team does not render privileged each communication
made by or copied to him [or her], particularly if the communication could
equally have been made to or by an individual without a law degree. …  A
corporation cannot be permitted to insulate its files from discovery simply
by sending a "cc" to in-house counsel. … [A] document must have been
intended to be confidential and made for the purpose of giving or
obtaining legal advice to be vested with the attorney-client privilege.

---

[7] Some courts have employed the presumption that communications between a corporation and its outside
counsel are privileged.  *See AT&T Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 8710, *9 (N.D. Cal.
2003), *U.S. v. Chevron Texaco Corp.,* 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002).  Communications with
in-house counsel, however, do not enjoy the benefit of such presumption of privilege.

[U]nlike outside counsel, in-house attorneys can serve multiple
functions within the corporation.  In-house counsel may be involved
intimately in the corporation's day to day business activities and
frequently serve as integral players in business decisions or activities.
Accordingly, communications involving in-house counsel might well
pertain to business rather than legal matters.  The privilege does not
protect an attorney's business advice.

*Id.* at 1076.

*City of Springfield v. Rexnord Corp.,* 196 F.R.D. 7, 9 (D. Mass. 2000). Cabot had the

burden to justify the withholding of evidence but when questioned in the parties' LR 7.1

conference proffered no affidavit or other support for the claim of privilege.

The privilege protects communications, not underlying facts. Where business

documents are sent to attorneys to keep them apprised of business developments and not

as a request for legal advice, the documents are not privileged. *See Upjohn Co. v. United

States*, 449 U.S. 383, 395 (1981) (the "privilege … only protects disclosure of

communication; it does not protect disclosure of the underlying facts by those who

communicated with the attorney"). Where corporate employees were instructed by

counsel to analyze certain contracts in anticipation of litigation those analyses were not

privileged because they represented "underlying factual information" as opposed to

confidential communications to the attorney. *In re Six Grand Jury Witnesses,* 979 F. 2d

939, 945 (2d Cir. 1992). Existing documents, such as corporate records, turned over by

the client to its attorney to facilitate legal advice are not privileged. *Fisher v. United

States*, 425 U.S. 391, 396 (1976).

There is no statement or even suggestion in Cabot's log of the presence of a

privileged communication in one or more of the nine draft agreements. Drafts of

agreements cannot constitute privileged attorney-client communications unless the draft

was "prepared with the assistance of an attorney for the purpose of obtaining legal advice

and/or contain [confidential] information … [which Cabot] considered but decided not to

include in the final version." *United States Postal Service v. Phelps Dodge Ref. Corp.,*

852 F. Supp. 156, 163 (E.D. N.Y. 1994).[8] Cabot's log fails its burden to demonstrate

---

[8] This Eastern District of New York case was cited with approval by *City of Springfield v. Rexnord Corp*.,
196 F.R.D. 7, 9 (D. Mass. 2000).

potential entitlement to withholding the nine draft agreements for attorney client

privilege. *Id.*

      To meet its initial burden under Fed. R. Civ. P. 26(b) (5) (A), Cabot's privilege

log should have

> identif[ied] each document and the individuals who are parties to the
> communications, providing sufficient detail to permit a judgment as to whether
> the document is at least potentially protected from disclosure.

*Gail v. New England Gas Company, Inc.,* 243 F.R.D. 28, 33 (D. R.I. 2007).  A self

serving, conclusory statement that the document reflects a request for legal advice does

not suffice.  *Id.  See also In re Grand Jury Subpoena,* 274 F.3d 563, 575-76 (1st Cir.

2001) (citing D.C. (now Federal) Circuit, Second Circuit and Southern District of New

York cases concerning adequacy of privilege logs).  While it need not be "precise to the

point of pendantry" (*id.* at 576) the log should "'provide sufficient detail to demonstrate

fulfillment of all the legal requirements for application of the privilege.'" *Gail v. New*

*England Gas Company, Inc.,* 243 F.R.D. at 33 (*quoting Bowne of New York City Inc. v.*

*AmBase Corp.*, 150 F.R.D. 465, 474 (S.D. N.Y. 1993).  "Merely saying that he [or she]

was so acting" as an attorney providing legal advice "is patently insufficient to meet …

[Cabot's] burden."  *United States v. Windsor Capital Corp.,* 2007 U.S. Dist. LEXIS

86434, *17 (D. Mass. 2007), *quoting Borase, supra*, 171 F.R.D. at 14.

      As a matter of black-letter law, as the proponent of the exclusion it was Cabot's

burden to demonstrate the existence of the privilege, including that (1) each such

communication was received or transmitted by Cabot's employees for the dominant

purpose of facilitating the rendition of legal services by the in-house counsel, (2) the

communication was made in confidence for the purpose of securing either a legal opinion

or other legal services and the lawyer who made or received the transmittal was acting as a member of the bar with respect to each such communication, and (3) the privilege has not been waived. *See Borase,* 171 F.R.D. at 13; *United States v. United Shoe Machinery Corp.,* 89 F. Supp. 357, 358 (D. Mass. 1950) (Wyzanski, J.); *United States Postal Service v. Phelps Dodge Ref. Corp.,* 852 F. Supp. 156, 162-63 (E.D. N.Y. 1994) (where communications were copied to in-house lawyers, for privilege to apply communications must have been intended to be confidential and with a dominant purpose to obtain legal advice).

The insufficiency of Cabot's privilege log to satisfy Cabot's initial burden to demonstrate "grounds for asserting the privilege" constitutes a waiver or loss of the privilege. *Gail v. New England Gas Company, Inc.,* 243 F.R.D. at 33-34 citing *Dorf & Stanton v. Molson Breweries,* 100 F. 3d 919, 923 (D.C. Cir. 1996).

In light of the patent insufficiency of its privilege log as well as its refusal to engage a discovery master, Cabot should not now be able to request an *in camera* review by the Court of the questioned documents. *Id.*

> [An] in camera inspection is unnecessary where the party claiming privilege has failed to make a prima facie showing that the documents in question are privileged by submitting a privilege log that adequately describes the documents and the basis for the claimed privilege. Unless the privilege log contains sufficient information, opposing counsel would be unable to determine whether the claim of privilege is well founded and, therefore, would be forced to object. As a result, limited judicial resources would be expended in reviewing documents with respect to which no genuine dispute may exist and the Court would be required to make a decision without knowing all the relevant facts and without the benefit of informed input from opposing counsel. Accordingly, in camera review is not "a substitute for a party's obligation to justify its withholding of documents" and it "should not replace the effective adversarial testing of the claimed privilege.

*Id.* at 34.

## IV. WORK PRODUCT PRIVILEGE.

Documents numbered 175, 194, 195 and 198 claim a privilege from production both as attorney-client communications as work product under Fed. R. Civ. P. 26 (b) (3). In this Court, "in order to qualify for [work product] protection, [each document] must … fairly be said … [to have been] created because of actual or impending litigation." *In re: Lernout & Hauspie Securities Litigation,* 222 F.R.D. 29, 36 (D. Mass. 2004). The focus is on the nature of the document and the factual situation at the time. *See id.* at 35-36. As the proponent of exclusion, Cabot has the burden to show the documents "were prepared in anticipation of litigation." *Id.* at 36.

The privilege log in general and with respect to Documents 175, 194, 195 and 198 makes no reference or even an illusion to any threat of litigation. There was no litigation pending when Document 175 was prepared and the other three documents are undated. Document 175 is a January 16, 2002 memorandum which according to Cabot's privilege log "reflects legal advice concerning MFN contracts." [9] Documents 194 and 195 are an undated chart with handwritten notes and an undated discussion outline, respectively, each of which, according to Cabot, reflects legal advice concerning MFN issues authored by Mr. Szabla.[10] Document 198 is another undated document, some handwritten notes

---

[9] It is undisputed Cabot entered into three contracts with Vishay, Kemet and AVX that contained MFN provisions and that by mid January 2002 there was no litigation then pending between Cabot and one of these customers.

[10] Nor is there any demonstration that documents 194, 195 and 198 were attorney-client privileged communications. With no date there can be no patent basis for determining whether Mr. Szabla was even a duly licensed attorney at the time. *See* note 5 *supra*. A chart and discussion outline each "reflecting", according to Cabot, "legal advice concerning MFN issues" would seem to be general business advice or perhaps business advice about renegotiating one or more of these MFN contracts that would have been generated by an in-house attorney or equally as well by a non-lawyer in the ordinary course of Cabot's business. There is no suggestion of any confidential communication between a member of the bar and a Cabot employee.

authored by Mr. Szabla, which according to Cabot reflects legal advice concerning AVX audit.

None of the entries for 175, 194, 195 and 198 supports, much less justifies, a basis for withholding as work product. There is no reference to any potential litigation in the log. When challenged, Cabot proffered neither affidavits nor any other evidence to support any claim to work product. The work product claim, therefore, must fail.

## V.CONCLUSION.

WHEREFORE, AVX Corporation and AVX Limited respectfully request the Court to enter an Order that Cabot Corporation produce all the documents identified on Exhibit B to this Motion or in the alternative that Cabot Corporation show cause why it should not be ordered to produce all the documents identified on Exhibit B to this Motion.

AVX CORPORATION and
AVX LIMITED

By their attorneys,


*/s/ Richard A. Goren*
Richard A. Goren (BBO No. 203700)
Joseph S.U. Bodoff (BBO No. 549116)
BODOFF & ASSOCIATES
225 Friend Street
Boston, Massachusetts 02114
Tele: 617-742-7300
Fax:  617-742-9969

Date:   December 21, 2007

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), I hereby certify that counsel for the plaintiffs, AVX Corporation and AVX Limited conferred with counsel for defendant Cabot Corporation regarding the foregoing Motion To Compel Selected Documents from Cabot's Privilege Log.

*/s/ Richard A. Goren*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on December 21 , 2007.

*/s/ Richard A. Goren*