UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION and AVX LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) )<br><br>CIVIL ACTION NO. 04-10467-RGS |

## DEFENDANT CABOT CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS FOR REFUSAL TO DESIGNATE ONE OR MORE WITNESSES UNDER RULE 30(b)(6)

Defendant Cabot Corporation ("Cabot") hereby opposes plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") Motion for Sanctions for Refusal to Designate One or More Witnesses Under Rule 30(b)(6) ("Motion for Sanctions") (Document No. 82). AVX's Motion for Sanctions is contrary to the facts and relevant case law. AVX seeks to sanction Cabot for Cabot's proper and timely objections under Fed. R. Civ. P. 30(d)(1) to AVX's unconcealed attempt to circumvent discovery limitations previously imposed in this action by Magistrate Judge Bowler, and for allegedly failing to permit discovery that Cabot in fact permitted. No sanctions are warranted. AVX's actual goal in filing this Motion for Sanctions is to further delay the resolution of this case, which AVX's own witnesses now openly acknowledge has nothing to do with the allegations of AVX's Complaint. For these

reasons and others, which are discussed more fully below, AVX's Motion for Sanctions should be denied.

## Factual Background

This action represents just one of a series of court actions between AVX and Cabot arising from a multi-year, written Supply Agreement for tantalum products that AVX and Cabot entered into effective January 1, 2001 (the "2001 Supply Agreement"). Complaint and Jury Demand ("Complaint"), ¶ 29. Cabot produces various tantalum products, including "flake" and "non-flake" tantalum powders, which AVX purchases from Cabot to manufacture passive electronic components. *Id.*, ¶¶ 1, 7-9. The 2001 Supply Agreement -- which was signed by the parties at a time of particularly short supply and high demand for tantalum products -- calls for AVX to purchase, *inter alia*, certain minimum quantities of flake and non-flake (also known as "nodular") powders from Cabot at fixed prices over a five year period. *Id.*, ¶¶ 16, 23. The Complaint in the present case alleges that, as of 2000, Cabot had "sufficient market power in the market for flake powder" (which AVX admittedly wanted) such that Cabot was able to improperly "condition" or tie AVX's purchases of flake powders "on its purchase of non-flake powders" (which AVX purportedly *did not* want) in violation of Section 1 of the Sherman Antitrust Act. *Id.*, ¶¶ 1, 23-30, 37-41.

More recently, AVX personnel have admitted in discovery that AVX's actual grievance against Cabot has nothing to do with Cabot's alleged "conditioning" or tying of non-flake tantalum powders to flake tantalum powders in the 2001 Supply Agreement. Although AVX framed the dispute as an antitrust claim in its Complaint, AVX's Fed. R. Civ. P. 30(b)(6) witnesses now acknowledge that AVX's grievance in this case is that Cabot purportedly used a temporary shortage of tantalum in 2000 to coerce AVX into signing a binding, long-term

contract that obligated AVX to purchase *any* tantalum products -- be they flake or non-flake -- in years beyond 2001.[1]   *See, e.g.,* Transcript of Deposition of Peter W. Collis, dated December 5, 2007 (the "Collis Depo.," relevant excerpts of which are attached hereto as Exhibit A), at 10-15; *see also* Transcript of Deposition of Kurt Cummings, dated December 12, 2007 (the "Cummings Depo.," relevant excerpts of which are attached as Exhibit B), at 47-49.   AVX knows full well that it ultimately cannot prevail on that coercion claim in this case, however, because AVX previously litigated and lost *the same exact claim* in the

---

[1] For example, Mr. Collis is Vice President of AVX's worldwide tantalum operations.   He was designated by AVX, pursuant to Rule 30(b)(6), to testify on AVX's behalf with respect to, *inter alia*, topic no. 11 of Cabot's Notice of Deposition to AVX concerning the specific "products or terms that AVX alleges it was forced to accept on account of 'Cabot's coercive strategies' as referenced in Paragraph 30 of the Complaint" in this action.   *See* Collis Depo. at 8-9.   When questioned on this topic at his recent deposition, Mr. Collis testified, in part, as follows:

> Q.   Which of the products that are listed [in the Supply Agreement] Mr. Collis, are the products that AVX claims in this litigation it did not wish to purchase from Cabot, but was forced to do so?
>
> MR. GOREN: Objection. You may answer.
>
> THE WITNESS: The – the basic premise was we were coerced into a five year agreement which we didn't want to get into.
>
> **********
>
> Q.   I can try to short circuit some of this Mr. Collis to see if I understand AVX's position.   Is it fair to say that it's AVX's position that its complaint in this case is that it was forced by Cabot to sign a contract for years beyond 2001?
>
> MR. GOREN: Objection. You may answer.
>
> THE WITNESS: Yes.
>
> BY MR. DAVIS:
>
> Q.   Is there more to AVX's complaint in this action other than it was forced by Cabot, allegedly, to sign a contract or a binding contract for delivery of products beyond the calendar year 2001?
>
> A.   No.

Collis Depo. at 10, 14-15; *see also* Cummings Depo. at 47-49.

Massachusetts state courts. *See* Cabot Corp. v. AVX Corp., 448 Mass. 629, 636, 646 (2007) (attached hereto as Exhibit C) (discussing and rejecting AVX's claim that Cabot wrongfully "took advantage of its market position in the face of a tantalum shortage which it knew was only temporary to coerce AVX into executing" a binding, long-term supply contract for tantalum products (internal quotations omitted)). Cabot is preparing and will file a motion for summary judgment on this basis, among others, in accordance with the Court's current Scheduling Order.

In the meantime, AVX has pursued broad discovery on a variety of subject areas having little or no relevance even to AVX's supposed tying claim, including Cabot's pre- and post-contract "dealings" with Showa Cabot Supermetals KK ("Showa Cabot," a 50-50 Japanese joint venture that did not become a wholly-owned subsidiary of Cabot until after the 2001 Supply Agreement was signed), and Cabot's agreements and arrangements for the mining of raw tantalum ore. Cabot's relevance objections to AVX's prior attempts at discovery on these topics were sustained by the Court, per Magistrate Judge Bowler, at a hearing on September 21, 2007. *See* Transcript of September 21, 2007 Hearing, at 13:10-14:8, 17:5-24, 19:13-17 (Document No. 75-2).

After the September 21 hearing, AVX attempted to conduct deposition discovery of Cabot with respect to the very same issues as to which it already had been denied document discovery. *See* AVX Notice of Deposition, dated October 12, 2007 (attached hereto as Exhibit D), topic nos. 12 and 18. Cabot once again asserted timely objections to AVX's obvious effort to circumvent the discovery limitations imposed by Magistrate Judge Bowler. *See, e.g.,* E-mail correspondence from Julie Rising, Esq. to Richard Goren, Esq., dated November 2, 2007 (attached hereto as Exhibit E). Cabot simultaneously notified AVX that it

would not produce a designated witness to testify concerning the "economic rationale(s) for conditioning AVX's commitment to purchase nodular for five years at prices specified in the Supply Agreement" as requested in topic no. 2 of AVX's Notice of Deposition because, *inter alia*, Cabot disagrees with AVX's underlying assumption that any such conditioning occurred. *Id.* In an effort (albeit unsuccessful) to head off further unnecessary motion practice, however, Cabot nonetheless permitted AVX to extensively question Cabot's designated deposition witnesses about *all* of the subject areas identified in AVX's Notice of Deposition. *See, e.g.,* Transcript of Deposition of William Young, dated November 28, 2007 and December 10, 2007 (the "Young Depo.," relevant excerpts of which are attached hereto as Exhibit F), at 13, 18-28; 30-64; 103-105; 153-57; 162-173; 180-81; 251; Transcript of Deposition of Eduardo E. Cordeiro, dated November 19, 2007 (the "Cordeiro Depo.," relevant excerpts of which are attached hereto as Exhibit G), at 20-48; 51-52; 59-60; 62-65; 68-76; Transcript of Deposition of Marlin Spotts, dated November 29, 2007 (the "Spotts Depo.," relevant excerpts of which are attached hereto as Exhibit H), at 9-16; 26-29; 43; 55; 95-100.

Cabot invited AVX to seek a court order, pursuant to Fed. R. Civ. P. 37(a)(2), compelling Cabot to designate a witness to testify concerning topic nos. 2, 12 and 18 of AVX's Notice of Deposition if AVX actually believed that Cabot was required to do so. *See, e.g.,* E-mail correspondence from Brian Davis, Esq. to Richard Goren, Esq., dated November 26, 2007 (attached hereto as Exhibit I). AVX did not request such an order. Rather, AVX has moved, after the fact, to sanction Cabot for allegedly refusing to "provide testimony" on those topics. Motion for Sanctions at 4-6. AVX's present Motion for Sanctions represents one of *five* motions raising purported discovery issues AVX has filed after the official close of fact

discovery on October 31, 2007. *See* Document Nos. 73, 75, 81, 82, and 83. Cabot opposes

AVX's Motion for Sanctions for the reasons stated below.

**Argument**

I.    AVX'S MOTION FOR SANCTIONS SHOULD BE DENIED BECAUSE CABOT
      MADE TIMELY AND APPROPRIATE OBJECTIONS TO AVX'S IMPROPER
      ATTEMPTS TO OBTAIN DEPOSITION TESTIMONY ON TOPIC NOS. 2, 12
      AND 18.

Under Fed. R. Civ. P. 30(d)(1), a deponent may properly be instructed not to answer a

deposition question "to enforce a limitation directed by the court." This includes the

enforcement of prior orders limiting the scope of discovery. *See* Continental Casualty Co. v.

City of Jacksonville, 2007 WL 678016, at *4 (M.D.Fla. Mar. 5, 2007) (attorney was

authorized by Rule 30(d)(1) to instruct witness not to answer "because counsel was merely

attempting to enforce prior Orders of this Court"); S.E.C. v. Oakford Corp., 141 F.Supp.2d

435, 437 (S.D.N.Y. 2001) (finding instruction not to answer in order to enforce a limitation on

scope previously imposed by the Court "clearly proper"). Moreover, consistent with the

purposes of the discovery rules, Cabot cannot be required to designate and prepare a witness

on topics that have already been ruled upon as outside the scope of discovery relevant to this

lawsuit. *See* Fed. R. Civ. P. 26(b)(2); E.E.O.C. v. Boeing, Inc., 2007 WL 1146446, at *2

(D.Ariz. April 18, 2007) (asserting generally that all discovery must be relevant to a claim or

defense in the lawsuit and denying deposition discovery related to topics denied in earlier

motion to compel documents.)

AVX's Deposition Notice requested a corporate designee for 18 topics, many of which

are patently overbroad and unduly burdensome in violation of Fed. Civ. R. 26(b).[2] *See*

---

[2] For example, topic no. 7 of AVX's Notice of Deposition alone calls upon Cabot to designate one or
more witnesses to testify concerning,

AVX Notice of Deposition.  Cabot properly chose not to designate a witness for topics nos. 12

and 18 light of Magistrate Judge Bowler's explicit rulings at the September 21, 2007 hearing,

and promptly informed AVX of its objections.  *See* Exhibit E hereto.

More specifically, topic no. 12 seeks a witness to answer questions about, *inter alia*,

"the percentage or approximate share of each of the world wide known reserves and the

estimated annual supply of tantalum ore (at the mining level) to which (*sic*) Cabot had a right

to acquire or which in the aggregate Cabot controlled or influenced."  Exhibit D, AVX Notice

of Deposition, Schedule A at 7.  Cabot's relevance objection to AVX's prior attempt to

conduct document discovery on the identical issue of Cabot's tantalum "mining agreements and

documents concerning its ability to restrict or impact the supply of raw materials" was

sustained by Magistrate Judge Bowler at that hearing.  *See* Sept. 21 Hearing Tr. at 17:5-24;

19:13-17 (Document No. 75-2).

---

> [t]he market(s) for flake tantalum and nodular tantalum for use in capacitors for electronic applications, including without limitation the alternatives to each of flake and nodular for each of commodity applications and specialized applications, the technical feasibility and the economic feasibility of using nodular in place of flake, the comparative differences and qualitative distinctions of alternative materials to tantalum for each of commodity applications and specialized applications, the shares of the overall market by each of the different alternative materials to tantalum, the trends in market shares of the various principal materials for electronic capacitors for both commodity applications and specialized applications, the comparative differences and qualitative distinctions of the tantalum and other products of Cabot's principal competitors, the pricing of competitors' products, the history, changes and trends of Cabot's selling and ceasing to sell nodular and/or flake products, the technical and economic factors in choosing between tantalum and alternatives, the technical and economic factors in choosing between flake and nodular, the relative availability of raw materials (*e.g.*, tantalum ore) as a factor in deciding to use certain materials for capacitors, and demand or technical needs for certain small size case limitations coupled with high voltage and low ESR, factors for certain specifications where both flake and nodular might be used, the specifications and technical requirements of Cabot's customers, history of customers switching to Cabot from Cabot's principal competitors because of flake, and Cabot's market share of tantalum powder sales, changes, trends and reasons therefore.

AVX Notice of Deposition, Doc. No. 82-2, Schedule A at 4-5.

Similarly, topic no. 18 of AVX's Notice of Deposition seeks a witness to testify concerning, *inter alia*, "any and all agreements, understandings and transactions between Cabot and [its] affiliates and joint ventures ... including without limitation the history of the relationship with Showa Denko regarding the Showa Cabot joint venture." Exhibit D, AVX Notice of Deposition, Schedule A at 8. AVX's request for document discovery on the same topic was expressly denied by Magistrate Judge Bowler, however, at least twice at the September 21, 2007 hearing.[3] *See* Sept. 21 Hearing Tr. at 13:10-14:8.

---

[3] AVX asserts in its Motion for Sanctions that, at the September 21, 2007 hearing, Magistrate Judge Bowler actually ordered Cabot "to produce all documents concerning its dealings with the Showa Cabot joint venture." Motion for Sanctions at 7. AVX mischaracterizes the Court's rulings. Prior to the September 21 hearing, AVX specifically identified "documents of [Cabot's] wholly-owned subsidiary and of its predecessor, the former Cabot joint venture known as Showa Cabot," including the "contracts, understandings and dealings between Cabot and its affiliates from 1996 to February 2002," as among the documents that AVX was seeking to compel from Cabot. *See* Plaintiffs' Supplemental Filing On Open Discovery Issues, dated September 19, 2007, at 6 (Doc. No. 66). When the subject of those documents came up at the September 21 hearing, Magistrate Judge Bowler ruled that they are "[n]ot to be produced." Sept. 21 Hearing Tr. at 13:10-14:6. The relevant discussion between the Court and counsel was as follows:

> THE COURT:    Which company was this?
>
> MR. DAVIS:    This is a company called Showa Cabot.
>
> THE COURT:    Showa, this is the Japanese ...
>
> MR. DAVIS:    It was a joint venture between Showa Denko and Cabot in Japan. It had independent pricing, all its own independent sales organization at that point in time. And [AVX is] interested in delving into the affairs of Showa Cabot, but we don't think that it's relevant to a contract that prescribes sales only from [Cabot's] Boyertown facility.
>
> THE COURT:    Not to be produced. Next category?
>
> MR. GOREN:    The subsidiary or Showa?
>
> THE COURT:    Both.
>
> MR. GOREN:    May I argue with you?
>
> THE COURT:    No. I've made a ruling.

Sept. 21 Hearing Tr. at 13:10-14:6. When counsel for AVX nonetheless pressed his request for written proof that Cabot "didn't control the former joint venture," Cabot's counsel agreed, voluntarily, to provide AVX with a copy of the underlying "joint venture agreement and its amendments," and nothing more, with the Court's approval.

The record establishes that, in each case, AVX's inclusion of the exact same subject areas in its Notice of Deposition to Cabot constitutes nothing more than a blatant attempt to circumvent the explicit discovery limitations previously imposed by this Court. Cabot made proper and timely objections under Fed. R. Civ. P. 30(d)(1) to AVX's Notice of Deposition, and AVX has no cause to complain, let alone obtain sanctions, simply because its improper gambit was exposed and preempted by Cabot.

AVX's further complaint that Cabot failed to "provide testimony" concerning topic no. 2 of AVX's Notice of Deposition, seeking the "economic rationale(s) for conditioning AVX's commitment to purchase nodular for five years at prices specified in the Supply Agreement," also is unjustified. Topic no. 2 calls upon Cabot to provide a witness to address a hypothetical premise and legal theory and is, therefore, an improper topic for inquiry by means of a Rule 30(b)(6) deposition. *See, e.g.*, Avago Technologies General IP PTE Ltd.. v. Elan Microelectronics Corp., 2007 WL 1449746, at *3 (N.D. Cal. May 15. 2007) (denying motion to compel designation of 30(b)(6) witness to discuss the company's legal theories or legal contentions). Cabot did, however, designate and produce a witness to testify concerning, *inter alia*, "Cabot's reasons in the 1999/2000 period for considering and then requesting AVX ... to enter into long term supply agreements including ... Cabot's understanding/expectations of the [resulting] implications to AVX ..." Exhibit D, AVX Notice of Deposition, Schedule A at 3. Thus, AVX had more than adequate opportunity to explore through deposition discovery of Cabot witnesses the official reasoning behind, and basis for, the Cabot conduct that

---

*Id.* at 14:11-22. That agreement, with amendments, was produced to AVX by Cabot in October of this year. No additional discovery on the topic of Showa Cabot was allowed by the Court.

purportedly forms the basis for AVX's claim in this action.[4]  AVX has no genuine reason for

complaint in this regard.  Accordingly, AVX's Motion for Sanctions should be denied.

II.    AVX'S MOTION FOR SANCTIONS SHOULD BE DENIED BECAUSE CABOT
       ACTUALLY ALLOWED AVX TO TAKE DEPOSITION DISCOVERY ON ALL OF
       THE CATEGORIES OF AVX'S RULE 30(b)(6) NOTICE.

       AVX's Motion for Sanctions should be denied for the further reason that Cabot actually

permitted AVX to take deposition discovery on the various topics as to which AVX now claims

it was foreclosed.    In fact, the available deposition transcripts demonstrate that AVX

questioned Cabot's witnesses *extensively* on topic nos. 2, 12 and 18 of AVX's Notice of

Deposition.    *See, e.g.*, Young Depo. (Exhibit F hereto) at 13, 18-28, 30-64, 103-105, and

153-57 (questioning witness concerning relationship and dealings between Cabot and Showa

Cabot); Cordeiro Depo. (Exhibit G hereto) at 20-23, 34-48 and 69-73 (questioning witness

concerning relationship and dealings between Cabot and Showa Cabot); 23-35, 39-43 and 62-

64 (questioning witness concerning Cabot's position regarding AVX's allegations of coercion);

59-60, 64-65 and 69-73 (questioning witness concerning Cabot's mining operations and

agreements); Spotts Depo. (Exhibit H hereto) at 9-16, 26-29, 43, 55 and 95-100 (questioning

witness concerning relationship and dealings between Cabot and Showa Cabot).

       Cabot permitted AVX to conduct discovery on topic nos. 2, 12 and 18, notwithstanding

its prior objections, in an effort (albeit unsuccessful) to head off further unnecessary motion

practice.    Only when AVX's counsel dwelled excessively and unreasonably on Cabot's

relationship and dealings with Showa Cabot -- topics which this Court previously ruled are

irrelevant to AVX's claim in this proceeding -- did Cabot's counsel instruct one Cabot witness,

---

[4] For example, AVX actually questioned Mr. Cordeiro, the General Manager of Cabot's tantalum operations, at length regarding the purported "strategies" employed by Cabot in persuading AVX to enter into the 2001 Supply Agreement. *See, e.g.,* Exhibit G, Cordeiro Depo. at 23-35, 39-43 and 62-64.

Mr. William Young, not to respond further pursuant to Fed. R. Civ. P. 30(d)(1). *See* Exhibit

F, Young Depo. at 14, 28, 35, 40, 46 and 48. No other Cabot witness was instructed not to

answer a question posed by AVX's counsel, and no witness ever was instructed not to answer

any question concerning Cabot's mining operations and agreements or Cabot's position

regarding AVX's allegations of coercion. Because Cabot actually permitted AVX to take all of

the discovery to which AVX was entitled (and effectively all of the discovery that AVX now

claims it was refused), AVX's Motion for Sanctions should be denied.

III.    AVX'S MOTION TO LIMIT CABOT'S PRESENTATION OF EVIDENCE SHOULD
        BE DENIED AS AN UNWARRANTED AND EXTRAORDINARY ATTEMPT BY
        AVX TO PREVAIL ON A CLAIM THAT AVX CANNOT WIN ON THE MERITS.

        AVX's further request for an "order *in limine*" restricting Cabot's ability to introduce

testimony or documents at trial in opposition to AVX's tying claim is nothing more than a

back-door attempt by AVX to shield that claim from the overwhelming weight of contrary

evidence.    AVX's personnel have admitted under oath in discovery that AVX's actual

grievance against Cabot has nothing to do with Cabot's alleged "conditioning" or tying of non-

flake tantalum powders to flake tantalum powders in the 2001 Supply Agreement. Although

AVX framed the dispute as an antitrust claim in its Complaint (*see, e.g.,* Complaint, ¶ 1) and

in its Motion for Sanctions (*see* Motion for Sanctions at 2), AVX's Rule 30(b)(6) witnesses

now acknowledge that AVX's grievance in this case is that Cabot purportedly used a

temporary shortage of tantalum in 2000 to coerce AVX into signing a binding, long-term

contract that obligated AVX to purchase *any* tantalum products -- be they flake or non-flake --

in years beyond 2001. *See, e.g.,* Collis Depo. at 10-15; Cummings Depo. at 47-49. AVX

already litigated and lost *the same exact claim*, however, in the Massachusetts state courts.

*See* Cabot Corp. v. AVX Corp., 448 Mass. at 636 (Exhibit C hereto).

-11-

AVX hopes that, by restricting Cabot's ability to present contrary evidence at trial, AVX will be able to bootstrap itself into the recovery that it was unable to obtain from Cabot the first time around. AVX's hopes are unwarranted. AVX has presented *no* grounds to justify *any* sanctions against Cabot, let alone the extreme remedy of restricting Cabot's ability to present relevant evidence at trial. *See, e.g.*, Lozano v. City of Hazelton, 241 F.R.D. 252, 255 (M.D.Pa. 2007) (exclusion of critical evidence is an extreme sanction normally imposed only in cases of "willful deception or a flagrant disregard of a court order."(internal citations omitted)); Outley v. City of New York, 837 F.2d 587, 591 (2nd Cir. 1988) (calling exclusion of evidence an "extreme sanction" to be imposed after consideration of "less drastic" remedies). Accordingly, AVX's request for an order *in limine* should be denied.

### Conclusion

For the foregoing reasons, Cabot respectfully requests that the Court deny AVX's Motion for Sanctions in its entirety.

CABOT CORPORATION

By its attorneys,

/s/ Brian A. Davis
Robert S. Frank, Jr. (BBO No. 130950)
Brian A. Davis (BBO No. 546462)
Julie C. Rising (BBO No. 666950)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:  January 2, 2008

4283371.1

-12-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on January 2, 2008.

/s/ *Julie C. Rising*