UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 04-10467-RGS |
| v. | ) ) | |
| CABOT CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT CABOT CORPORATION'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY OF
VARIOUS DOCUMENTS DESCRIBED ON CABOT'S PRIVILEGE LOG**

Defendant Cabot Corporation ("Cabot") hereby opposes plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") Motion To Compel Discovery of Selected Documents from Cabot's Privilege Log (the "Motion to Compel") (Docket No. 83).  This is the *fifth* discovery motion that AVX has filed since the official close of discovery in this case (which deadline also was extended multiple times at AVX's request).  In it, AVX seeks to compel the production of various privileged documents that are identified and fully described in a comprehensive, forty-seven page privilege log that Cabot delivered to AVX *more than one year ago*.  AVX offers no explanation in its Motion to Compel why it waited for over a year to voice any of its purported concerns regarding entries in Cabot's privilege log.  AVX's inordinate and unexplained delay is a sufficient basis, in and of itself, to deny its Motion to Compel.  *See, e.g.,* Gail v. New England Gas Company, Inc., 243 F.R.D. 28, 34 (D.R.I. 2007).

AVX's also offers no valid reason, other than its own unsupported suspicions and conclusions, to question Cabot's privilege log, which adequately describes the documents being withheld and expressly confirms that they contain or reflect legal advice, requests for legal advice, or attorney work product. In all respects, Cabot's privilege log is entirely unremarkable and unobjectionable. *See, e.g.,* In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 223-224 (S.D.N.Y. 2001) (affirming adequacy of privilege log that listed the date, type of document, author, addressees, a short description of each document, and the privilege or immunity asserted with respect to each).

For these reasons and others, which are discussed more fully below, AVX's Motion to Compel should be denied.

**Factual Background**

This action represents just one of a seemingly endless series of court actions commenced by AVX arising from a multi-year, written Supply Agreement for tantalum products that AVX and Cabot entered into effective January 1, 2001 (the "2001 Supply Agreement"). Complaint and Jury Demand ("Complaint"), ¶ 29. Cabot produces various tantalum products, including "flake" and "non-flake" tantalum powders, which AVX purchases from Cabot to manufacture passive electronic components. *Id.*, ¶¶ 1, 7-9. The 2001 Supply Agreement -- which was signed by the parties at a time of particularly short supply and high demand for tantalum products -- calls for AVX to purchase, *inter alia*, certain minimum quantities of flake and non-flake (also known as "nodular") powders from Cabot at fixed prices over a five year period. *Id.*, ¶¶ 16, 23. The Complaint in this case alleges that, as of 2000, Cabot had "sufficient market power in the market for flake powder" (which AVX admittedly wanted) such that Cabot was able to improperly "condition[]" or tie AVX's "purchases of flake powders on its purchase of non-flake

-3-

powders" (which AVX purportedly did not want) in violation of Section 1 of the Sherman Antitrust Act. *Id.*, ¶¶ 1, 23-30, 37-41.

AVX first sued Cabot with respect to the 2001 Supply Agreement -- alleging that it had been "forced" to sign that Agreement under "economic duress" -- in July 2002. That claim ultimately was rejected by the Massachusetts courts. *See* Cabot Corp. v. AVX Corp., 448 Mass. 629 (2007). AVX filed this case on March 8, 2004, and later filed yet another state court action alleging violations of the 2001 Supply Agreement against Cabot in 2005 (the "Second State Court Action"). Cabot delivered the privilege log currently at issue to AVX on August 1, 2006 in response to AVX's discovery requests in the Second State Court Action. Because much of the discovery relating to both state court cases and the current case has been intertwined, both parties incorporated their prior document productions by reference in this case.

Over the ensuing fifteen months, AVX never challenged or questioned any of the entries in Cabot's privilege log either in this case or in the Second State Court Action. AVX first questioned certain entries in that log on November 15, 2007; *i.e.*, approximately two weeks after the official close of discovery in this action. *See* Motion to Compel, Exhibit B. Cabot's efforts to address AVX's purported concerns all were rejected by AVX. AVX followed with this Motion to Compel approximately one month later.

**Argument**

I.    AVX'S MOTION TO COMPEL SHOULD BE DENIED AS UNTIMELY.

While there is no federal or local rule in this jurisdiction governing the timeliness of motions to compel or objections to privilege logs, at least one court in the First Circuit has held that "[i]f the party seeking discovery does not promptly challenge a claim of privilege, 'the process ends with the claim of privilege *de facto* upheld.'" Gail v. New England Gas Company, Inc., 243 F.R.D. 28, 34 (D.R.I. 2007) (*quoting* PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership, 187 F.3d 988, 992 (8th Cir. 1999)). Some federal courts require that motions to compel under Rule 37 be filed within thirty (30) days of the receipt of the discovery triggering the motion. *See* Mounger v. The Goodyear Tire & Rubber Co., 2000 WL 33712198, at *1, case no. 99-2230 (D. Kan. Sept. 22, 2000); Ayers v. Continental Casualty Co., 240 F.R.D. 216, 223-24 (N.D. W. Va. 2007). Such a limitation is consistent with the overall purpose of the Federal Rules of Civil Procedure, which are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Such a limitation also is consistent with various First Circuit decisions denying, as untimely, motions to compel filed after the close of discovery. *See, e.g.,* Modern Continental/Obayashi v. Occupational Safety and Health Review Commission, 196 F.3d 274, 281 (1st Cir. 1999) (upholding denial of motion to compel filed 13 days after close of discovery); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92-94 (1st Cir. 1996) (upholding denial of motion to compel filed 30 days after close of discovery).

In this instance, Cabot provided AVX with its comprehensive privilege log back on August 1, 2006. AVX raised no objection whatsoever to any of the entries in that privilege log, in this action or any other, until November 15, 2007; *i.e.*, more than *15 months* after AVX first

-4-

received Cabot's privilege log, and more than *two weeks* after the official close of discovery in this case. AVX then waited another *full month* before filing its present Motion to Compel.

AVX has delayed too long. If AVX truly believes that Cabot's privilege log entries are insufficient or otherwise objectionable, AVX could have and should have voiced its concerns "promptly." Gail, 243 F.R.D. at 34. It did not. Under no circumstances can AVX's unexplained failure to raise any objection for more than a full year reasonably be described as prompt. AVX's long delay is, instead, strongly indicative of a lack of genuine concern on AVX's part, as well as a lack of any need for remedial action on the Court's part.[1] On this ground alone, AVX's Motion to Compel should be denied.

II. AVX'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE CABOT'S PRIVILEGE LOG IS ENTIRELY ADEQUATE, AND AVX HAS OFFERED NO LEGITIMATE BASIS ON WHICH TO INVALIDATE CABOT'S PRIVILEGE DESIGNATIONS.

AVX's long-delayed Motion to Compel also fails on the merits. The forty-seven page privilege log provided by Cabot in August 2006 contains 324 separate document entries listing the date, author, recipients, copied recipients, document type, subject matter, and privilege and/or protection asserted with respect to each entry.[2] *See, e.g.,* Motion to Compel, Exhibit A, entry no. 6 (e-mail from Cabot employee Thomas Odle to Cabot employee William Young, dated November 1, 2000, and copied, *inter alia*, to Cabot in-house attorney Susan Alexander, Esq., "[f]orwarding e-mail containing legal advice concerning contract negotiations with AVX"); entry

---

[1] Further evidence of AVX's lack of genuine concern regarding Cabot's privileged documents is that, of the 324 entries on Cabot's privilege log, *only 14* are dated prior to the execution of the 2001 Supply Agreement, which is when Cabot's alleged "tying" would have occurred. 200 of the entries are dated after March 8, 2004, the date of the filing of this action. Thus, the vast majority of the documents on Cabot's privilege log (which initially was prepared for the Second State Court Action) actually have little or no relevance to AVX's antitrust claim in this case.

[2] For the few privilege log entries that have no clear author, the actual contents of the documents -- all of which were obtained from Cabot's internal files -- demonstrate their privileged status.

no. 43 (e-mail from Cabot employee James Gierschick to Cabot employee Charles Lumis, dated October 13, 2004, and copied, *inter alia*, to Cabot in-house attorney Philip Szabla, Esq., containing a "[s]tring of e-mails reflecting request for legal advice concerning MFN issues"); entry no. 283 (e-mail with attachment from Cabot in-house attorney Brian Berube, Esq. to various Cabot employees and outside counsel, dated May 24, 2002, "[r]eflect[ing] legal advice concerning other tantalum contracts").

Although it is not entirely clear from AVX's Motion to Compel precisely which privilege log entries AVX currently is challenging as insufficient,[3] all of the document descriptions provided by Cabot are more than adequate to permit AVX to understand the basis for Cabot's assertion of privilege in each instance. *See* In re Copper Market Antitrust Litigation, 200 F.R.D. at 223-224; *see also* In re Sulfuric Acid Antitrust Litigation, 235 F.R.D. 407, 432-433 (N.D. Ill. 2006) (privilege log adequately described withheld documents "as either relating to legal advice regarding customer transactions and reflecting communications or conversations between attorney and client"); Vaughan v. Celanese Americas Corp., 2006 WL 3592538, at *3-4, case no. 3:06CV104-W (W.D.N.C. Dec. 11, 2006) (privilege log entries that described withheld documents as, *inter alia*, "[e]mail string containing confidential communications with in house counsel regarding analysis of severance issues in PBI transaction"). Because Cabot's log sufficiently describes all of Cabot's privileged documents and the basis on which they have been withheld, AVX has no reason to complain or grounds to compel the production of any of the listed documents.

AVX's litany of additional complaints also should be rejected for the following reasons:

---

[3] AVX's Motion to Compel identifies only a small number of specific entries that AVX currently is challenging. AVX's letter of November 15, 2007 (attached to AVX's Motion to Compel as Exhibit B) lists over 125 entries (including the three cited above) that were "contested" by AVX as of that time. Precisely which, if any, of those additional entries remain in dispute is a mystery that AVX does nothing to clarify.

1. **Privileged Communications Between Cabot Employees Copied To One Or More Cabot In-House Attorneys.**

Various documents on Cabot's privilege log were sent to, or authored by, Cabot in-house attorneys. AVX appears to claim that some documents were improperly designated as privileged because its in-house lawyers may have performed business functions in addition to providing legal advice. Motion to Compel at 6-7. AVX fails to identify which documents it challenges on those grounds, fails to identify which attorneys allegedly were performing functions other than as legal counsel, and fails to identify what other non-legal duties Cabot's attorneys alleging were performing. As set forth in its privilege log, Cabot reviewed and properly withheld all of the documents at issue because they *actually reflect* legal advice, or requests for legal advice, among Cabot legal and non-legal personnel. AVX has offered no information, other than its own suspicions, to support any argument to the contrary. Accordingly, this argument must fail.

2. **Privileged Communications Between Cabot Non-Legal Personnel.**

AVX assumes that any communications between Cabot non-legal personnel cannot be privileged because they were not specifically directly to or from Cabot legal counsel. *See* Motion to Compel, at 3-4. AVX is wrong. The mere fact that an attorney was not a direct recipient or author of a communication does not destroy the privileged nature of the communication if it otherwise contains or reflects legal advice that has been rendered to the company. *See, e.g.,* Broessel v. Triad Guar. Ins. Corp., 238 F.R.D. 215, 218-219 (W.D. Ky. 2006) ("the privilege extends to communications among corporate employees that reflect legal advice rendered by counsel to the corporation," *citing* In re Grand Jury 90-1, 758 F.Supp. 1411, 1413 (D.Colo.1991) (letter from company president to company's Board of Directors reciting legal advice that the company had received from its outside counsel was protected by the attorney-client privilege)).

Once again, all of Cabot's descriptions clearly state that the communications AVX questions transmitted and/or communicated legal advice, or a request for legal advice, between Cabot personnel (as AVX admits in its Motion). Motion to Compel at 4. As such, the communications are privileged. *See* Broessel, 238 F.R.D. at 218-219. And once again, AVX offers no basis to dispute Cabot's clear assertions of privilege beyond its unsupported suspicion that Cabot's designations somehow are wrong. They are not. Accordingly, this argument too must fail.[4]

### 3. Privileged Documents Purportedly Prepared By A Cabot In-House Attorney Before He Became Licensed To Practice In Massachusetts.

AVX asserts that a January 2002 legal memo prepared by Cabot in-house attorney Philip J. Szabla cannot be privileged because Mr. Szabla did not become a member of the Massachusetts bar until April 2, 2002. Motion to Compel at 4-5. AVX overlooks the fact, however, that Mr. Szabla also has been a member of the New York State Bar since 1979 and, therefore, was a licensed, practicing attorney at all relevant times. Mr. Szabla's status as a member of the New York Bar while he was awaiting admission to the Massachusetts Bar (which admission he obtained less than three months later) renders his legal communications with other Cabot personnel privileged. *See, e.g.,* Mass. S.J.C. Rule 3:07, Mass. R. Prof. C. 5.5(d)(1) ("[a] lawyer admitted in another United States jurisdiction … may provide legal services on a temporary basis in this jurisdiction that … are provided to the lawyer's employer or its affiliates and are not services for which the forum requires pro hac vice admission."); *see also* Purduit

---

[4] AVX's related argument that Cabot's privilege log descriptions are insufficient because they do not "inform the reader" whether Cabot "intended" to keep the documents confidential (*see* Motion to Compel at 4) is a complete non-starter. AVX offers absolutely no authority for the proposition that a privilege log must provide proof that the documents listed were "intended" to be kept confidential. *Id.* To the extent that any such proof is necessary, attorney-client communications, work product, or other documents reflecting attorney advice by their very nature are confidential, and Cabot's refusal to disclose those documents to AVX in this litigation is strong evidence that Cabot intends to keep them that way.

Corp. v. Burndy Corp., 172 U.S.P.Q. 46, 47 (N.D. Ill. 1971) ("While it appears that defendant's house counsel is not admitted to practice law in the state of his employment, Connecticut, he is admitted to the bar of New York.  This is sufficient for the purpose of the attorney-client privilege").  AVX cites no authority to the contrary.  Accordingly, this argument too must fail.

  **4.**  **Other Forms Of Privileged Documents.**

AVX asserts that various documents on Cabot's privilege log cannot be privileged because they "are not communications at all."  Motion to Compel at 5.  AVX misses the point.  Cabot is entitled to withhold any documents that reflect and would disclose the substance of legal advice received by the Cabot regardless of whether they constitute "communications."  *See, e.g.,* In re Sulfuric Acid Antitrust Litigation, 235 F.R.D. at 432-433 (documents merely reflecting legal advice were properly withheld as privileged).  All of the non-communications questioned by AVX "[r]eflect[] legal advice concerning MFN issues."  *See, e.g.,* Motion to Compel, Exhibit A, entry no. 141.  Thus, they are privileged.

The same is true of the "nine draft agreements" that AVX asserts do not reveal the "presence of a privileged communication."  Motion to Compel at 8.  AVX obviously has not read Cabot's privilege log carefully.  Each such draft was withheld by Cabot because it contains "handwritten notes of counsel" that reflect legal advice concerning the draft itself.  *See* Motion to Compel, Exhibit A, entry nos. 267, 277, 278, 287, 290, 291, 292, 300, 305.  All such notes are properly regarded as privileged.  Moreover, Cabot plainly identified the challenged documents as "draft [agreements] amending *other tantalum contracts* with handwritten notes of counsel."  *Id.* (emphasis added).  Thus, they have obviously have no relevance to the 2001 Supply Agreement that is at issue in this case.  Accordingly, this argument too must fail.

### 5. Privileged Documents Containing Attachments.

The fact that a privileged communication may include an attachment does not render the communication, or the attachment, discoverable. *See, e.g.*, United States v. KPMG, Inc., 2003 WL 22336072, at *5-6, case no. 02-0295 (D.D.C. Oct. 10, 2003) (e-mails with their attachments properly included as privilege log entries). AVX offers no authority to the contrary. All of the attachments at issue are related to the legal advice described in Cabot's privilege log and were properly withheld as privileged. Accordingly, this argument too must fail.

### 6. Documents Constituting Or Containing Attorney Work Product.

AVX asserts that four documents authored by Cabot in-house counsel that Cabot has withheld based, in part, on attorney work product grounds were improperly designated because "[t]here is no reference to any potential litigation in [Cabot's] log." Motion to Compel at 12. As usual, AVX cites no legal support for the proposition that Cabot is required to identify the specific litigation, or threat of litigation, that existed at the time the documents in question were created. *Id.* AVX well knows, however, that Cabot was engaged in discussions with AVX and other customers in late 2001 and early 2002 concerning their contractual obligations to Cabot, and that Cabot actually commenced litigation against two of its customers (Kemet and Vishay) in the spring of 2002. Documents prepared by Cabot counsel "in anticipation" of that litigation are not discoverable by AVX under the attorney work product doctrine. *See* Fed. R. Civ. P. 26(b)(3). Moreover, all the disputed documents also were withheld by Cabot on attorney-client privilege grounds, so that any challenge to the work product designation is effectively moot. *See* Motion to Compel, Exhibit A, entry nos. 175, 194, 195, and 198.

### **Conclusion**

For the foregoing reasons, Cabot respectfully requests that the Court deny AVX's Motion to Compel Discovery of Various Documents Described on Cabot's Privilege Log in its entirety.

                                                CABOT CORPORATION

                                                By its attorneys,

                                                */s/ Brian A. Davis*
                                                Robert S. Frank, Jr.
                                                (BBO No. 130950/rfrank@choate.com)
                                                Brian A. Davis
                                                (BBO No. 546462/bad@choate.com)
                                                Julie C. Rising
                                                (BBO No. 666950/jrising@choate.com)

                                                CHOATE, HALL & STEWART LLP
                                                Two International Place
                                                Boston, Massachusetts 02110
                                                Tele: 617-248-5000

Date:   January 4, 2008

4286546.1

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on January 4, 2008.

                                                                                 */s/ Julie C. Rising*