UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>       Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>       Defendant. | CIVIL ACTION NO.: 04-10467-RGS<br><br>Pursuant to Leave Granted January __, 2008 |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS**

Plaintiffs AVX Corporation and AVX Limited (collectively "AVX") make two points in reply in support of their December 17, 2007 Motion for Sanctions. First, because the defendant Cabot Corporation ("Cabot") failed to designate any witness there is no testimony binding on Cabot on topics 2, 12 and 18. Second, Cabot continues to block discovery of its efforts to foreclose or limit competition by other sellers of non-flake tantalum products, including Showa Cabot, nominally a 50-50 joint venture competitor, to AVX and others.[1]

    **I.    There is no Testimony by Cabot on Topics 2, 12 and 18.**

The lack of testimony by any witness binding Cabot on areas 2, 12 and 18 is the wrong addressed by AVX's motion. *See Foster-Miller, Inc. v Babcock & Wilcox Can.*, 210 F. 3d 1, 17 (1st Cir. 2000) affirming this Court's sanctioning of the plaintiff for its refusal to designate a witness on 5 of 14 topics where the defendant had previously

---

[1] Cabot persists in arguing its contemplated summary judgment motion. *See* Cabot's Opposition to Plaintiffs' Motion for Sanctions ("Cabot's Opp.") at 1- 4, 11 – 12. We do not take that bait.

"deposed the employees [the plaintiff] regarded as most knowledgeable on those topics." That there is testimony in the record about portions of these topics is beside the point. *Id.*

Cabot informed AVX that absent a Court order it would not designate a witness to testify on areas 2, 12 and 18. And, on the deposition record Cabot stated that none of its three witnesses were designated, and none would provide testimony, on topics 2, 12 and 18. *See* Exhibits A and B hereto.

## II. Deposition topics 2, 12 and 18 are Probative.

Contrary to Cabot's argument,[2] a demonstration that there was a market for the tied non-flake tantalum and that AVX indeed wanted to purchase the allegedly tied non-flake tantalum products in part from other sellers, such as Showa Cabot or Starck, and in all instances on different, less onerous terms, is probative. *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 815 (1st Cir.1988). Indeed it is essential AVX "make some minimal showing of real or potential foreclosed commerce [in the market for the non-flake tantalum] caused by the tie." *Id.* n. 11.[3]

Subject areas 12 and 18 also explore the extent of Cabot's control of, or influence over, both the worldwide tantalum ore supply and the semi-refined KTaf in the period 1996 to 2006. AVX "should be given 'ample opportunity for discovery' to establish the factual predicates of the interstate commerce element." *Wells Real Estate,* 850 F.2d at 812. Evidence that Cabot limited the ability of other suppliers, Starck, Ningxia and Showa Cabot, to acquire either tantalum ore or the semi-refined KTaf is probative of whether Cabot restricted competition in the non-flake market. *Id.* at 814-15.

---

[2] *See* Cabot's Opp. at 2-4, 11-12.

[3] "To affect a not insubstantial volume of commerce in the [non-flake] tied product market, a tying practice must foreclose the defendant's competitors from competing for sales of the tied [non-flake] product[s]." *Bafus/Dudley v. Aspen Realty, Inc.,* 2007 U.S. Dist. LEXIS 88228, *10 (D. Idaho November 30, 2007).

2

AVX Corporation and AVX Limited respectfully request that the Court grant their December 17, 2007 Motion for Sanctions.

        AVX CORPORATION
        and AVX LIMITED ,

        By their attorneys,


        /s/_____
        Joseph S.U. Bodoff  (BBO No. 549116)
        Richard A. Goren (BBO No. 203700)
        Ryan D. Sullivan (BBO No. 660696)
        Bodoff & Associates P.C.
        225 Friend Street
        Boston, MA 02114
        617/742-7300

Dated: January , 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on January , 2008.

        /s/

**EXHIBIT A EXCERPTS FROM EDUARDO CORDEIRO DEPOSITION**
**November 29, 2007**

Are you here designated by the defendant, Cabot Corporation, to provide testimony concerning the subject matter one on deposition Exhibit 1?
    A.  **Yes.**
    **MR. DAVIS: Richard, I will chime in here that again, since we're going to make the designations, Mr. Cordeiro has been designated with respect to category number one and only category number one.**

Tr 3:24, 4:1-8

Q. In the period 1998, 1999 and 2000, did you have any dealings with anybody from Showa Cabot?
    A. No.
    MR. DAVIS: Objection. Pause just for a moment before you respond.
    Richard, **revisiting a topic that we discussed yesterday, you have categories of the notice of deposition, I think it's specifically category number eighteen that discusses understandings, agreements, transactions between Cabot and affiliates, including Showa Denko and Showa Cabot joint venture. Mr. Cordeiro is not being produced by Cabot to speak to that subject area.** And as you know, AVX has attempted to take discovery on this topic before, and the Court has refused to allow AVX to take discovery beyond establishing that it was in fact a fifty-fifty joint venture, so I am trying to work with you here, but I don't think that Mr. Cordeiro is the appropriate witness to address questions about the Showa Cabot, to the extent that AVX is permitted at this point in time to ask those questions.
    MR. GOREN: I will not repeat here our disagreement. I am focusing on the reasons of Cabot in the 1999, 2000 period for considering and then requesting AVX to enter into a long-term supply agreement.
    MR. DAVIS: Well, I think you can ask him whether those reasons had anything to do with the Showa Cabot, and it might be able to save you a lot of

4

questions on that topic.

Tr 10:7-24, 11:1-12

Q**. It's also true that in the year 2000, Cabot had a contract with Showa Cabot to provide Showa with all of the raw materials and KTaF that it required, correct**?
      MR. DAVIS**: Objection.** You are asking for a legal opinion from him. I caution you not to speculate. If you know, answer the question. Give your understanding. **He has not been designated on this topic.**

Tr. 19:2-10.

Q**. Isn't it true that in the year 2000, Showa Cabot sold nodular products that were comparable to Cabot's Boyertown products at a lower price?**
   A. **I do not know**.
Tr. 21:1-3

Q**. Showa Cabot was entitled, was it not, access to the flake technology under its agreements with Cabot, correct?**
      MR. DAVIS:  Objection. It calls for a legal opinion.
      MR. GOREN:  It calls for his understanding.
      MR. DAVIS**: But he's not here to testify and he hasn't been produced to testify on Cabot's behalf with respect to any agreements between Cabot and Showa Denko.**

Tr. 36:1-11

Q. **Did Cabot's cost of ore go up in the year 2000 over prior years**?
   A.  Yes, it did.
   Q.  By how much approximately?
      **MR. DAVIS:  Objection. I really object to this line of questioning because this is another subject area in which AVX sought discovery and was denied discovery by the Court, so Richard, I will let you go a little further but I do** --
      MR. GOREN:  I --

5

      MR. DAVIS**: Please let me finish.  This is outside the scope of the subject area for which Mr. Cordeiro has been designated, and I believe it's outside the scope of permissible scope of discovery in this case based on Magistrate Judge Bowler's order**.

      MR. GOREN:  One of the reasons that I heard out of Mr. Cordeiro's mouth that I heard was the shortage of supply underlying the request that AVX enter into this long-term agreement.

    Q.  I did hear that correctly, didn't I?

      MR. DAVIS:  Objection.  You can respond.

    A.  Yes.

    Q.  So I am probing about that reason, the shortage, so answer my question, please, how much, I think it **was how much approximately percentage-wise did the price of ore go up in 2000 over 1999?**

      MR. DAVIS:  Objection.  I don't understand how the pricing of the ore has to do with the availability of the ore.  If you want to talk to him about whether ore was available, I think you already questioned him on that topic, that is one thing, but you are now getting into specifics about the contracts between Cabot and its ore providers, and I don't see how the specifics of those contracts go to the availability of ore.

    Q.  I would like an answer, Mr. Cordeiro?

      MR. DAVIS:  Objection.  I will let you answer this one.

    A**.  I don't know the specific percentage.**

    Q.  **Approximately?**

    A.  **I don't know the approximate percentage**.

Tr. 55:22-27, 56, 57:1-14

**EXHIBIT B EXCERPTS FROM DEPOSITION OF WILLIAM YOUNG November 28, and December 10, 2007**

Do you appear as the designee of Cabot Corporation pursuant to this deposition notice, sir?

    A.  Yes.

    MR. DAVIS:  Actually, Richard, I can probably deal with this myself since I represent Cabot, and we have designated Mr. Young for some but not all of these categories.  If you would like, I can walk you through the ones -- I think we told you in advance of the deposition, but I am happy to tell you here on the record what categories we're designating him for.

    MR. GOREN:  Please do so.

    MR. DAVIS:  Mr. Young has been designated to testify with respect to categories three, four, five, six, seven, although a number of these categories we think are overly broad and unduly burdensome, particularly category number seven, but he is certainly here to testify to portions of category number seven, category number eight, portions of category number nine, again, that one is tremendously overbroad we believe, category number ten, category number eleven, and category number sixteen, and category number seventeen.

    MR. GOREN:  And I understand that you have, Cabot has designated Mr. Spotts to testify as to subjects thirteen, fourteen, and fifteen, correct?

    MR. DAVIS:  Correct, and Mr. Cordeiro will testify only with respect to category number one.

    **MR. GOREN:  And you have informed me by e-mail and verbally that you do not intend to have any of your witnesses testify as to subjects two, twelve, and eighteen, correct?**

    **MR. DAVIS:  Yes.  Subject number two, I think we mentioned prior to the deposition calls for testimony about Cabot's conditioning of AVX purchase of flakes or AVX's commitment to purchase nodular powder, and we have stated prior to today's deposition there was no such condition on Cabot's part, and so that really is not possible for Cabot to produce a witness on that point.**

    **With respect to category number twelve and category number eighteen, those are both subject areas on which AVX previously has sought discovery and its**

7

**request for discovery were rejected by the Court, specifically Magistrate Judge Bowler, on both of those topics, having to do with mining, which is category number twelve, and the second having to do with more detailed information regarding Cabot's prior joint venture with the Showa Denko, and again, those are topics on which AVX previously sought discovery, its requests were denied by the Court, we don't think they're appropriate subjects for a deposition.**

MR. GOREN: I intend to examine this witness on all of those subjects, and note that you have not moved for a protective order. I will expect the witness to answer questions, either within his knowledge or within the knowledge of Cabot Corporation. Let us proceed.

MR. DAVIS**: He has not been designated for those categories, and he will not testify on those, and I note that we indicated prior to the deposition that you could seek a court order compelling the testimony on those points if you wish to, and you haven't done so.**

MR. GOREN: I intend to examine, and note again that you have failed to move for a protective order as provided by the rules.

Tr. 5:13-24, 6:1-24, 7:1-24, 8:1-7.

Day two William Young deposition.

MR. GOREN**: Brian, I would like to ask you have you reconsidered your position about your instructions to this witness not to answer areas two, twelve and eighteen?**

MR. DAVIS: My recollection is he was not **designated for those areas**. I will go back and take a look. You are talking about the categories of Schedule A to AVX's notice of deposition, 30(b)(6) notice of deposition in this matter?

MR. GOREN: Yes, deposition Exhibit 1.

MR. DAVIS: **Mr. Young was not designated to testify as to category number two, and what other categories were you referring to?**

MR. GOREN: **Twelve and eighteen.**

MR. DAVIS: **He has not been designated to talk about categories twelve and eighteen.**

MR. GOREN: In day one of our deposition,

8

you specifically instructed Mr. Young not to answer questions in those areas. All I am looking to do is say you continue that instruction so I shorten the record, and won't examine the witness pending us going to court or you producing a designee should I succeed.

MR. DAVIS: I disagree with you in that, although, for example, Mr. Young was not designated to discuss Showa Cabot, and I think the Court has already indicated that AVX is not permitted to conduct discovery regarding the Showa Cabot beyond to confirm it was a fifty-fifty joint venture, I did allow you to ask questions of Mr. Young on that topic in an attempt to try to compromise and avoid unnecessary motion practice, so we have attempted in each instance to allow you some reasonable latitude in your inquiry, but I don't think you are entitled to unrestricted discovery in these areas, particularly in light of Magistrate Bowler's ruling in September.

MR. GOREN: **So may I assume to shorten the strokes today for Mr. Young, I will not complete or include many questions in areas two, twelve and eighteen of deposition Exhibit 1, and my understanding is that the parties have a dispute to be resolved by the Court, is that fair?**

MR. DAVIS: I don't think there was a dispute that needs to be resolved by the Court. I think those are areas that the Court already has addressed, so I think what AVX is attempting to do is take discovery in areas that the Court has indicated are out of bounds, and in addition, **I don't understand why you insist on questioning this witness on those subject areas where he has not been designated by Cabot to testify in those subject areas, so you are free to ask whatever questions you think you need to ask him, but again, Mr. Young is not here and has not been produced to testify with respect to those particular subject areas.**

Tr. 194:22-24, 195-196, 197:1-3

9