# Exhibit A

Volume _____

Pages _____1_____166_____

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
AVX CORPORATION                          \*
and AVX LIMITED                          \*
\*
\*
                         Plaintiffs,      \*
\*
 - vs. -                                 \* C. A.# 04-10467-RGS
\*
CABOT CORPORATION                        \*
\*
\*
                         Defendant.       \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


        DEPOSITION of AVX CORPORATION and AVX LIMITED,

(Peter William Collis), a witness called by and on behalf

of the Defendant, pursuant to the provisions of Rule

30(b)(6) of the Federal Rules of Civil Procedure, before

Charles E. Janey, Jr., CVR, a Notary Public in and for the

Commonwealth of Massachusetts, at the offices of Choate,

Hall & Stewart, Two International Place, Boston, MA 02110,

on Wednesday, December 5, 2007, commencing at 12:15 p.m.

1          have seen it before?

2                  (Pause.)

3   A.          Yes.

4   Q.          This is a copy of a Notice of Deposition that

5          was served in this case, Mr. Collis.  A nearly

6          identical one was served on AVX Limited.  And again,

7          it's my understanding that you're appearing here

8          today to testify to certain categories in this

9          Notice of Deposition.  Is that your understanding?

10  A.          Yes.

11                  MR. DAVIS:  Richard, I understand that

12         he's being designated with respect to both AVX

13         Corporation and AVX Limited.  Is that correct?

14                  MR. GOREN:  Correct.

15                  MR. DAVIS:  With respect to the same

16         categories for both?

17                  MR. GOREN:  Yes.

18             BY MR. DAVIS:

19  Q.          And the specific categories for which you've

20         designated are -- and just confirm this that is

21         consistent with your understanding please Mr.

22         Collis.  Categories No. 7,8,9,11,13,15 and 17.  I

23         can go through again if you'd like.

24  A.          11 and 13.

9

1  Q.        Also 7,8 and 9?

2  A.        Sorry.  7,8,9,11 and 13.

3  Q.        And how about 15 and 17?

4  A.        Yes.

5            MR. DAVIS:  Let's mark this as the next

6  exhibit.  Exhibit No. 2

7            (The document above-referred to

8            was marked Deposition Exhibit No.

9            2 for identification.)

10           BY MR. DAVIS:

11  Q.        Mr. Collis, I'll hand you a copy of a document

12  that's been marked as Exhibit 2.  I think you've

13  seen this one before?

14  A.        I believe so.

15  Q.        This is a copy of the 2001 Supply Agreement

16  between Cabot and AVX Corporation and AVX Limited.

17  Do you agree with that?

18  A.        Yes.

19  Q.        And if I refer to AVX Corporation and AVX

20  Limited jointly as AVX, is that acceptable to you?

21  A.        Yes.

22  Q.        Mr. Collis, this Supply Agreement between

23  Cabot and AVX has attached to it as Appendix A, a

24  list of products that AVX agreed to purchase from

JANEY ASSOCIATES

1        Cabot pursuant to this contract.  Do you see that?

2   A.        I do.

3   Q.        Which of the products that are listed here Mr.

4        Collis, are the products that AVX claims in this

5        litigation it did not wish to purchase from Cabot,

6        but was forced to do so?

7                MR. GOREN:  Objection.  You may answer.

8                THE WITNESS:  The -- the basic premise

9        was we were coerced into a five year agreement which

10       we didn't want to get into.

11               MR. DAVIS:  Let's mark as the next

12       exhibit this document please?  Thank you.

13                       (The document above-referred to

14                       was marked Deposition Exhibit No.

15                       3 for identification.)

16       BY MR. DAVIS:

17  Q.        Mr. Collis you have what's been marked as

18       Exhibit 3 which I'll represent is a copy of the

19       Complaint and Jury Demand in this case.  Have you

20       seen this document before?

21  A.        I'm not sure.

22  Q.        On the very first page of this document,

23       Paragraph 1, would you actually read all of

24       Paragraph 1 to yourself for a moment, Mr. Collis

                        JANEY ASSOCIATES

1          please and tell me when you're done?

2                (Pause.)

3    Q.          Have you done that?

4    A.          I have.

5    Q.          You'll see in Paragraph 1 of the Complaint and

6          Jury Demand, Mr. Collis, that among the things that

7          AVX alleges is that:  Specifically, knowing that

8          plaintiff -- that's AVX -- made certain products

9          that could only be manufactured with the quote

10         unquote flake form of tantalum made by defendant --

11         that's Cabot -- designated as C275 and C255,

12         defendant conditioned plaintiff's purchase of flake

13         powders on its purchase of non-flake powders.

14               Do you see that?

15   A.          I do.

16   Q.          Okay.  What are the non-flake powders that

17         Cabot conditioned AVX's purchase of flake powders

18         upon?

19               MR. GOREN:  Objection.  I think the

20         witness can testify as to his understanding of what

21         the plaintiff was compelled to purchase rather than

22         using the word "condition".

23               MR. DAVIS:  Again, my understanding

24         is --

1            MR. GOREN:  I think that gets you what

2       you want.

3            MR. DAVIS:  Well, I'm not quite sure

4       what the distinction that you're attempting to draw.

5       Again, we've asked for a witness to discuss all

6       products or terms that AVX alleges it was forced to

7       accept on account of Cabot's coercive strategies, as

8       referenced in Paragraph 30 of the Complaint.

9            MR. GOREN:  And Mr. Collis is prepared

10      to answer that.

11          BY MR. DAVIS:

12  Q.       Okay.  Going back to Plaintiff and Jury Demand

13      at Paragraph 1 Mr. Collis, what are the non-flake

14      powders that AVX claims that Cabot conditioned AVX's

15      purchase of flake powders upon?

16  A.       Actually the nodular powders and the fact that

17      we had to take a five year contract for these

18      materials.

19  Q.       Looking back please at Exhibit 2 which is the

20      contract and Appendix A for Exhibit 2, which are the

21      nodular powders that AVX did not wish to purchase

22      from Cabot as of the time that this contract was

23      executed?

24          MR. GOREN:  Objection.

13

1          MR. DAVIS:  You can respond.

2          THE WITNESS:  There is the nodular on

3   Biddeford, the nodular under Europe.  There's wire

4   under Biddeford, wire under Europe and KTAF for the

5   extent of the five year contract.

6          BY MR. DAVIS:

7   Q.     So I want to understand this correctly.  Are

8   you saying that AVX did not wish to purchase, as of

9   the time that it entered into this supply agreement

10  with Cabot, it did not wish to purchase any nodular

11  powder from Cabot?

12  A.     We didn't wish to purchase -- enter into an

13  agreement to purchase materials for five years.

14  Q.     Putting that to one side, the five year

15  agreement.  Were there any nodular powders that are

16  listed on this exhibit that AVX actually wished to

17  purchase from Cabot as of the time that Exhibit 2

18  was signed?

19  A.     Sorry.  Could you repeat the question?

20  Q.     Certainly.

21         Putting aside the five year length of the

22  contract, were there any nodular products that are

23  listed on Appendix A to your Exhibit No. 2, the

24  Supply Agreement, that AVX actually wished to

1       purchase from Cabot as of the time that this supply

2       agreement was actually signed?

3                       MR. GOREN:   Independent of the other

4       terms of the contract?

5               BY MR. DAVIS:

6   Q.          Independent of the five year length of the

7       contract.

8   A.          Yes.  Yes.

9   Q.          Which ones did AVX actually wish to purchase?

10  A.          We wished to purchase the ones that we had in

11      the Letter of Intent at the time that we had the

12      original agreement.

13              And we also entered in the KTAF Agreement to

14      protect our supply chain from Showa Cabot -- because

15      of the situation we were being told where Showa was

16      going to be short of material.

17  Q.          I can try to short circuit some of this Mr.

18      Collis to see if I understand AVX's position.  Is it

19      fair to say that it's AVX's position that its

20      complaint in this case is that it was forced by

21      Cabot to sign a contract for years beyond 2001?

22                      MR. GOREN:  Objection.  You may answer.

23                      THE WITNESS:  Yes.

24              BY MR. DAVIS:

1  Q.        Is there more to AVX's complaint in this

2        action other than it was forced by Cabot, allegedly,

3        to sign a contract or a binding contract for

4        delivery of products beyond the calendar year 2001?

5  A.        No.

6  Q.        Is it fair to say that the products that are

7        listed on Appendix A to the 2001 Supply Agreement

8        under calendar year 2001 -- do you see that?

9  A.        Yes.

10 Q.        Was AVX willing, as of the time this agreement

11       was signed, to purchase those products from Cabot?

12 A.        We did not want to enter into an agreement to

13       purchase those materials.

14 Q.        We're going to sort through this again.  Is it

15       fair to say that as of 2001, AVX did not wish to

16       enter into any binding agreement with Cabot to

17       purchase any products be they nodular, flake, KTAF,

18       anything else, from Cabot?

19                 MR. GOREN:  Objection.

20                 THE WITNESS:  No.  We'd already entered

21       into a short term contract which we knew as the

22       Letter of Intent.  So we were willing to enter into

23       a short term contract.

24                 BY MR. DAVIS:

                    JANEY ASSOCIATES