UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION and AVX LIMITED, </br></br> Plaintiffs, </br></br> v. </br></br> CABOT CORPORATION, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) CIVIL ACTION NO. 04-10467-RGS </br> ) </br> ) </br> ) </br> ) </br> ) |

**DEFENDANT CABOT CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT SUBSTITUTE EXPERT REPORT**

Defendant Cabot Corporation ("Cabot") hereby opposes plaintiffs AVX Corporation and AVX Limited's (collectively, "AVX") Motion for Leave to Submit Substitute Expert Report (the "Motion for Leave"). AVX still refuses to accept the word "no" from this Court. Having tried, and failed, to convince this Court to extend the December 15, 2007 deadline for expert reports in this action, and having tried, and failed, to convince this Court to extend the March 1, 2008 deadline for the completion of all expert discovery, AVX now attempts to circumvent those rulings by seeking leave to submit, shortly before the close of expert discovery, a new "substitute" report from its antitrust expert, Dr. Steven Schwartz, containing *new* expert analysis and *new* opinions.[1] AVX bases its present Motion for Leave on the *same exact grounds* that it

---

[1] When asked about the content of AVX's proposed "substitute" expert report while conferencing its Motion for Leave, AVX's counsel disclosed that Dr. Schwartz's substitute report will address, for the first time, the issue of AVX's alleged damages, which topic is not addressed or even mentioned *anywhere* in Dr. Schwartz's original report submitted on December 17, 2007. This disclosure is confirmed in AVX Motion for Leave at Paragraph 7.

cited in support of its prior, unsuccessful motions to postpone expert discovery, and on AVX's assertion that its current expert report, submitted on December 17, 2007, is "incomplete and may contain errors" due to AVX's acknowledged failure to pay attention to the unambiguous discovery deadlines previously established by this Court.  AVX Motion for Leave, ¶¶ 4-7.  What AVX really seeks, however, is an unwarranted and unfair opportunity to retract and rewrite the report of its expert in light of the numerous criticisms leveled at that report by Cabot's own expert, Professor Joseph P. Kalt, whose report was submitted to AVX on January 15, 2008.

AVX's admitted lack of diligence is no grounds to further extend expert deadlines in this action, which already have been extended multiple times at AVX's request.  AVX's other arguments, including its arguments regarding the relative timing of fact and expert discovery and its purported need for additional fact discovery from Cabot, already have been heard and rejected by this Court on numerous prior occasions.  For these reasons and others, which are addressed more fully below, AVX Motion for Leave should be denied.

## **Argument**

I. AVX'S MOTION FOR LEAVE SHOULD BE DENIED BECAUSE AVX HAD MORE THAN SUFFICIENT TIME TO PREPARE AND SUBMIT ITS EXPERT REPORT, AND IT ACTUALLY DID SO.

　　A. <u>AVX's Acknowledged Lack Of Diligence In Preparing Its Original Expert Report Does Not Provide A Valid Basis To Grant AVX Leave To Submit A New, Substitute Expert Report.</u>

AVX seeks leave to submit a new, "substitute" expert report without providing any legal authority to justify its request.  Instead, AVX relies primarily on its own acknowledged lack of diligence in preparing its original expert report.  More specifically, AVX asserts that, notwithstanding the fact that AVX knew back in August 2007 that its experts were required to submit their reports in this action to Cabot no later than December 15, 2007, "[o]n December 6,

*2007*, counsel for AVX advised its expert witness for the first time that the report would in fact be due on December 15, 2007." Motion for Leave, ¶ 6 (emphasis added).

There is no legitimate excuse for AVX's admitted delay in notifying its experts of the August 2007 Scheduling Order in this case. AVX's argument that it mistakenly assumed that this Court's subsequent electronic order of November 7, 2007 that all "outstanding discovery to be completed by December 15" automatically extended fact and expert discovery for 45 days (*id.*, ¶ 4) previously was raised in AVX's prior "Motion to Amend Scheduling Order to Allow for Expert Discovery Consistent with this Court's Order of Nov. 14, 2007 (*sic*) and to Allow for the Resolution of Outstanding Discovery Disputes" (Docket No. 81), which was denied by this Court on January 17, 2008.[2] Furthermore, despite AVX's admitted lack of diligence, its expert, Dr. Steven Schwartz, actually was able to prepare and submit his expert report by December 17, 2007.[3] That twenty-nine (29) page report, on its face, fully addresses all of the issues on which AVX asked Dr. Schwartz to opine. No "substitute" report by Dr. Schwartz is necessary. Accordingly, AVX's Motion for Leave should be denied.

---

[2] The only case that AVX cites in support of its "mistaken assumption" argument, Janssen Pharmaceutica N.V. v. Mylan Pharmaceuticals, Inc., 2007 WL 925535, at *9 (D.N.J. Mar. 23, 2007), concerns the appropriateness of a charge for an expedited transcript, not the submission of a "substitute" expert report. Accordingly, Janssen is off point.

[3] Because Dr. Schwartz's report has been designated as "Privileged and Highly Confidential" by AVX, Cabot is forced to submit a copy of that report under seal in conjunction with the accompanying "Affidavit of Julie B. Rising," dated February 19, 2008 ("Rising Aff.").

### B. AVX's Submission Of A New, Substitute Expert Report Will Unfairly Prejudice Cabot, Which Already Has Prepared And Submitted Its Own Expert Report.

The admitted motivation for AVX's Motion for Leave to submit a new, substitute report from its expert, Dr. Schwartz, is its desire to correct various "errors" and deficiencies in Dr. Schwartz's original report that were identified by Cabot's expert, Prof. Joseph P. Kalt, in the expert report that Cabot submitted to AVX on January 15, 2008.  AVX's strong desire to retract and rewrite Dr. Schwartz's incorrect analysis and opinions, however, is not a legitimate basis to further extend expert deadlines in this case.  AVX is not entitled to sweep the substance and existence of those errors, which obviously go to Dr. Schwartz's competence and credibility, under the rug by way of a "substitute" expert report.  To do so would provide AVX with an unwarranted and unfair advantage at trial, and correspondingly work to Cabot's severe prejudice.  Dr. Schwartz will have more than adequate opportunity to address any purported errors in his report during his examination at trial.  Accordingly, AVX's Motion for Leave should be denied.

### C. AVX's Submission Of A New, Substitute Expert Report Is Not Justified By Any New Evidence.

AVX's renewed argument that it is entitled to submit a new, substitute expert report based on additional discovery that it hopes to obtain from Cabot also fails.  On February 15, 2008, Magistrate Judge Bowler denied the vast majority of the further discovery that AVX sought in its recent barrage of discovery motions. *See* Memorandum and Order Re: Plaintiff's Motion for Reconsideration (Docket Entry #75); Motion for Sanctions for Refusal to Designate One or More Witnesses Under Rule 30(b)(6) (Docket Entry #82); AVX's Motion to Compel Discovery of Selected Documents from Cabot's Privilege Log (Docket Entry #83), dated February 15, 2008 (Doc. No. 100).  The limited additional information that Cabot was ordered to provide (if available) is sales and cost information and product specifications from Cabot's

former joint venture and current subsidiary in Japan, and related deposition testimony, that will have minimal, if any, impact on the opinions that AVX's expert, Dr. Schwartz, has provided in his original report.  To the contrary, Dr. Schwartz already purports to have concluded that Cabot further limited competition in the market for nodular tantalum powder in 2000-2001 by restricting sales of semi-refined tantalum ore to its former joint venture.  Rising Aff., Exh. 1 at 28.  If AVX believes, in the future, that it has unearthed further supportive information for Dr. Schwartz's opinions from the limited additional discovery that has been allowed, it can supplement Dr. Schwartz's original expert report under Fed. R. Civ. P. 26(e).  No "substitute" report is required or permitted.  Accordingly, AVX's Motion for Leave should be denied.

II.    AVX'S REQUEST TO FURTHER POSTPONE EXPERT DISCOVERY IN THIS ACTION ALREADY HAS BEEN CONSIDERED AND DENIED BY THE COURT.

AVX's Motion for Leave to submit a new, substitute report necessarily would require postponement of the existing expert discovery deadlines in this case, which AVX repeatedly and unsuccessfully has sought to delay before.  AVX's prior Motion to Amend Scheduling Order to Allow for Expert Discovery Consistent with this Court's Order of Nov. 14, 2007 (*sic*) and to Allow for the Resolution of Outstanding Discovery Disputes (the "Motion to Amend") (Docket No. 81), requested that the "Deadline to Complete All Expert Discovery (including any depositions)" be extended until "30 days" after the Court's "resolution of motions filed by December 15, 2007."  AVX Motion to Amend at 5.  That motion was denied by the Court on January 17, 2008.  AVX's subsequent Emergency Motion to Stay Expert Depositions Pending Resolution of Outstanding Discovery Disputes, dated February 8, 2008 (Docket No. 98), requested that this Court "set a deadline for completing expert depositions at a date that [is] 60 days after such time as the pending discovery motions are resolved."  AVX Emergency Motion at 4.  That motion was denied by the Court on February 15, 2008.  Having tried and failed, *ad*

*nauseum*, to change those discovery deadlines in the past, AVX should not be permitted to force effectively the same result by submitting a new, substitute expert report at this late date.

The motive behind AVX's infinitely repeated efforts to extend discovery and delay dispositive motion practice becomes clear if the Court examines the recent deposition testimony of AVX's Fed. R. Civ. P. 30(b)(6) witnesses concerning the purported basis for AVX's tying claim in this case. Although AVX alleges in its Complaint that Cabot violated Section 1 of the Sherman Antitrust Act by unlawfully "condition[ing] plaintiff's purchase of flake powders on its purchase of non-flake powders" back in 2000 (*see, e.g.,* Complaint, ¶ 1), AVX personnel now acknowledge that AVX's grievance in this case is not that Cabot tied sales of flake powder to non-flake powder. Rather, AVX's sole grievance is that Cabot purportedly used a temporary shortage of tantalum in 2000 to coerce AVX into signing a binding, long-term contract that obligated AVX to purchase *any* tantalum products -- be they flake or non-flake -- in years beyond 2001. *See, e.g.,* Transcript of Deposition of Peter W. Collis, dated December 5, 2007 (the "Collis Depo.," relevant excerpts of which are attached hereto as <u>Exhibit A</u>), at 10-15.[4]

---

[4] Mr. Collis is Vice President of AVX's worldwide tantalum operations. He was designated by AVX, pursuant to Rule 30(b)(6), to testify on AVX's behalf with respect to, *inter alia*, the "products or terms that AVX alleges it was forced to accept on account of 'Cabot's coercive strategies' as referenced in Paragraph 30 of the Complaint" in this action. *See* Collis Depo. at 8-9. When questioned on this topic at his recent deposition, Mr. Collis testified, in part, as follows:

> Q. Which of the products that are listed [in the Supply Agreement] Mr. Collis, are the products that AVX claims in this litigation it did not wish to purchase from Cabot, but was forced to do so?
>
> MR. GOREN: Objection. You may answer.
>
> THE WITNESS: The - the basic premise was we were coerced into a five year agreement which we didn't want to get into.
>
> \*\*\*\*\*\*\*\*\*\*\*
>
> Q. I can try to short circuit some of this Mr. Collis to see if I understand AVX's position. Is it fair to say that it's AVX's position that its

AVX knows full well that it cannot prevail on that coercion claim in this case, however, because AVX previously litigated and lost the *same exact* claim in the Massachusetts state courts. *See* Cabot Corp. v. AVX Corp., 448 Mass. 629, 636, 646 (2007) (discussing and rejecting AVX's claim that Cabot wrongfully "took advantage of its market position in the face of a tantalum shortage which it knew was only temporary to coerce AVX into executing" a binding, long-term supply contract for tantalum products (internal quotations omitted)).

Cabot is preparing and will file, on or before the current March 31, 2008 deadline, a motion for summary judgment in this action. In the meantime, case can and should proceed according to the Court's current Scheduling Order.

---

        complaint in this case is that it was forced by Cabot to sign a contract for years beyond 2001?

        MR. GOREN: Objection. You may answer.

        THE WITNESS: Yes.

        BY MR. DAVIS:

Q.    Is there more to AVX's complaint in this action other than it was forced by Cabot, allegedly, to sign a contract or a binding contract for delivery of products beyond the calendar year 2001?

A.    No.

Ex. A, Collis Depo. at 10, 14-15.

## Conclusion

For the foregoing reasons, Cabot respectfully requests that the Court deny AVX's Motion for Leave Submit a Substitute Expert Report in its entirety.

CABOT CORPORATION

By its attorneys,

*/s/ Brian A. Davis*
Robert S. Frank, Jr. (BBO No. 177240)
 (rfrank@choate.com)
Brian A. Davis (BBO No. 546462)
 (bdavis@choate.com)
Julie C. Rising (BBO No. 666950)
 (jrising@choate.com)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:   February 19, 2008

4280575.1

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on February 19, 2008.

                                                    */s/ Julie C. Rising*