# TAB #20

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>              Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 04-10467-RGS |

## DEFENDANT CABOT CORPORATION'S
## FIRST SET OF INTERROGATORIES TO
## PLAINTIFFS AVX CORPORATION AND AVX LIMITED

Pursuant to Fed. R. Civ. P. 33, defendant Cabot Corporation, ("Cabot"), hereby propounds the following interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") to plaintiffs AVX Corporation and AVX Limited (collectively "AVX"), to be answered separately and fully under oath within thirty (30) days, in accordance with the Definitions and Instructions set forth herein.

### Definitions

For purposes of these Interrogatories, Cabot adopts the "Uniform Definitions in Discovery Requests" contained in Local Rule 26.5 of the United States District Court for the District of Massachusetts. The following additional terms shall have the meanings set forth below:

1.    "You," "your" and "AVX" shall collectively mean plaintiffs AVX Corporation and AVX Limited, their various corporate parents, subsidiaries, affiliates, subdivisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

2.    "Cabot" shall mean defendant Cabot Corporation, its various subsidiaries, affiliates, divisions and departments, (including, without limitation, the Cabot Supermetals division), and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

3.    "And" as well as "or" shall be construed both disjunctively and conjunctively to mean "and/or."

4.    "Any" shall be construed also to mean "all," and "all" shall be construed also to mean "any."

5.    The "Complaint" shall mean the "Complaint and Jury Demand" that AVX filed in this action on or about March 8, 2004.

6.    The "Agreement" shall mean the written Supply Agreement between and among AVX and Cabot, dated as of January 1, 2001, that is attached as Exhibit A to the Complaint.

7.    "$K_2TaF_7$" shall mean unrefined Tantalum ore as referenced, *inter alia*, in Paragraph 9 of the Complaint, and Sections 2-4 and Appendix A to the Agreement.

8.    "Tantalum" or "Tantalum Products" shall mean refined tantalum (chemical symbol "Ta," atomic number 73) in any form, including, but not limited to, tantalum wire, tantalum powder, but excluding $K_2TaF_7$.

9.    "Passive Electronic Components" shall mean passive electronic components and related products of any kind as referenced in Paragraph 7 of the Complaint, including, but not limited to, capacitors.

10.    "AVX's Flake-Based Products" shall mean the Passive Electronic Component products that AVX has produced at any time from January 1, 2000, that have used or incorporated Cabot's flake tantalum powder.

11.    "AVX's Nodular-Based Products" shall mean the Passive Electronic Component products that AVX has produced at any time from January 1, 2000, that have used or incorporated nodular tantalum powder from any source including, but not limited to, Cabot.

12.    "AVX's Niobium-Based Products" shall mean the Passive Electronic Component products that AVX has produced at any time from January 1, 2000, that have used or incorporated niobium or niobium oxide from any source including, but not limited to, Cabot.

### Instructions

1.    Unless otherwise specified, these Interrogatories seek information from January 1, 1996, to the present.

2.    In construing each Interrogatory, the singular form of a word shall be interpreted as plural and the plural as singular as necessary to bring within the scope of the Interrogatory any information that might otherwise be construed to be outside its scope.

3.    Each Interrogatory shall be construed independently and not with reference to any other Interrogatory herein for purposes of limitation, unless an Interrogatory so specifies.

4.    If you contend that any of the information sought by these Interrogatories is protected by the attorney-client privilege, the work-product doctrine, and/or any other claimed

privilege, protection or immunity, pursuant to Fed. Rule Civ. P. 26(b)(5), please describe the information withheld and the alleged ground for the privilege asserted with sufficient particularity to allow Cabot to raise the issue with the Court, if necessary.

5.      Each Interrogatory shall be deemed continuing so as to require prompt supplemental responses in accordance with Fed. R. Civ. P. 26(e) if, between the date hereof and time of hearing or trial, AVX becomes aware of any additional information responsive to any of the Interrogatories.

## Specific Interrogatories

1.      Please describe in as much detail as reasonably possible what AVX contends is the relevant market for flake tantalum powder for purposes of Count I of the Complaint.

2.      Please describe in as much detail as reasonably possible what AVX contends is the relevant market for nodular tantalum powder for purposes of Count I of the Complaint.

3.      Please describe in as much detail as reasonably possible each and every characteristic or property that AVX contends makes flake tantalum powder "unique in the industry" as referenced in Paragraph 14 of the Complaint.

4.      Please identify all of AVX's Flake-Based Products, including in your answer, but not limiting your answer to, the complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such product.

5.      Please identify all of AVX's Nodular-Based Products, including in your answer, but not limiting your answer to, the complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such product.

6.    Please identify all of AVX's Niobium-Based Products, including in your answer, but not limiting your answer to, the complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such product.

7.    Please identify all Passive Electronic Component products manufactured by persons other than AVX that AVX understands compete with, or have competed with, AVX's Flake-Based Products, including in your answer, but not limiting your answer to, the manufacturer, complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such competing product.

8.    Does AVX contend that nodular tantalum powder never can be used as a substitute for flake tantalum powder in the production of Passive Electronic Components?

9.    If your answer to Interrogatory No. 8, *supra*, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances under which nodular tantalum powder can be used as a substitute for flake tantalum powder in the production of Passive Electronic Components.

10.    Does AVX contend that Passive Electronic Components manufactured from nodular tantalum powder never can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder?

11.    If your answer to Interrogatory No. 10, *supra*, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances in which Passive Electronic Components manufactured from nodular tantalum powder can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder.

12.    Does AVX contend that Passive Electronic Components manufactured from materials other than tantalum powder, including but not limited to niobium or niobium oxide, never can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder?

13.    If your answer to Interrogatory No. 12, *supra*, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances in which Passive Electronic Components manufactured from materials other than tantalum powder, including but not limited to niobium or niobium oxide, can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder.

14.    Does AVX contend that it had no desire to purchase any nodular tantalum powder from Cabot during the period from January 1, 2001 through December 31, 2005 at the time that AVX entered into the Agreement?

15.    If your answer to Interrogatory No. 14, *supra*, is anything other than an unqualified affirmative, please identify the specific nodular tantalum powder products that AVX desired to purchase from Cabot during the period from January 1, 2001 through December 31, 2005 at the time that AVX entered into the Agreement, including in your answer, but not limiting your answer to, the quantity(ies) of each type of nodular tantalum powder that AVX desired to purchase from Cabot during the period.

16.    Did AVX intend, as of the time it entered into the Agreement, to have some or all of the $K_2TaF_7$ that it agreed to purchase in the Agreement tolled or converted into Tantalum Products?

17.    If your answer to Interrogatory No. 16, *supra*, is anything other than an unqualified negative, please identify the specific Tantalum Products (*e.g.*, tantalum powder, tantalum wire, *etc.*) and types of Tantalum Products (*e.g.*, flake tantalum powder, nodular tantalum powder, *etc.*) into which AVX intended to have the $K_2TaF_7$ that it agreed to purchase in the Agreement tolled or converted.

18.    Please identify the specific Tantalum Products (*e.g.*, tantalum powder, tantalum wire, *etc.*), types of Tantalum Products (*e.g.*, flake tantalum powder, nodular tantalum powder, *etc.*), and grades of Tantalum Products (by product number or designation) into which AVX actually had the $K_2TaF_7$ that it agreed to purchase in the Agreement tolled or converted, including in your answer, but not limiting your answer to, the quantity(ies) of each type of Tantalum Product produced as a result.

19.    Please state all facts upon which AVX relies in support of the allegation in Paragraph 38 of the Complaint that Cabot "conditioned AVX's purchase of flake powders on its purchase of non-flake powders," including in your answer, but not limiting your answer to, a complete description of the specific manner or means by which Cabot "conditioned AVX's purchase of flake powders on its purchase of non-flake powders."

20.    Please state all of the damages that AVX claims to have sustained as a result of the "actions of Cabot" referenced in Paragraph 41 of the Complaint, including in your answer, but not limiting your answer to, the types or elements of damages sustained by AVX, the amount of damages sustained by AVX, and the precise method by which AVX calculates its damages.

CABOT CORPORATION

By its attorneys,

Robert S. Frank, Jr. (BBO No. 177240)
Brian A. Davis (BBO No. 546462)
Terrence M. Schwab (BBO No. 650793)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: 617-248-5000
Facsimile: 617-248-4000

Date:   December 29, 2006

4154211.1

## CERTIFICATE OF SERVICE

I, Brian A. Davis, hereby certify that on this 29th day of December, 2006, I caused to be served a true and correct copy of the foregoing Cabot Corporation's First Set Of Interrogatories To AVX Corporation and AVX Limited on the counsel of record for AVX Corporation and AVX Limited at the address and in the manner indicated below:


Joseph S.U. Bodoff, Esq.                    [ ] U.S. Mail
Richard A. Goren, Esq.                      [ ] Facsimile
BODOFF & ASSOCIATES                         [ ] Overnight Delivery
225 Friend Street, 7th Floor                [X] Hand Delivery
Boston, MA  02114-1812


                                            _____
                                            Brian A. Davis


4154211.1

4154211.1