# TAB #21

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AVX CORPORATION and AVX LIMITED,
Plaintiffs,

v.

CABOT CORPORATION,
Defendant.

Civil Action No. 04-10467-RGS

**RESPONSES TO CABOT CORPORATION'S FIRST SET OF INTERROGATORIES**

Plaintiffs respond to the Defendant's First Set of Interrogatories as follows.

**General Objections**

1. Plaintiffs object to any definition or instruction that seeks to impose obligations different from, more expansive than, or inconsistent with the applicable rules.

**Responses To Interrogatories**

1. Please describe in as much detail as reasonably possible what AVX contends is the relevant market for flake tantalum powder for purposes of Count I of the Complaint.

Response: Plaintiffs object because the interrogatory seeks to obtain the mental impressions of counsel and attorney work product. Notwithstanding, Plaintiffs state that the response to this Interrogatory will be contained in one or more reports of their experts.

2. Please describe in as much detail as reasonably possible what AVX contends is the relevant market for nodular tantalum powder for purposes of Count I of the Complaint.

Response: Plaintiffs object because the interrogatory seeks to obtain the mental impressions of counsel and attorney work product. Notwithstanding, Plaintiffs state that the response to this Interrogatory will be contained in one or more reports of their experts.

3. Please describe in as much detail as reasonably possible each and every characteristic or property that AVX contends makes flake tantalum powder "unique in the industry" as referenced in Paragraph 14 of the Complaint.

Response: Plaintiffs object because the interrogatory seeks to obtain the mental impressions of counsel and attorney work product. Notwithstanding, Plaintiffs state that, among other things, flake tantalum powder is unique in the industry because of the following unique characteristics: Superior Cv/gm, Cv/cc, surge performance, breakdown voltage, ESR, capacitance and frequency response.

4. Please identify all of AVX's Flake-Based Products, including in your answer, but not limiting your answer to, the complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such product.

Response: Plaintiffs refer Defendant to the documents it is producing in response to Requests Nos. 3, 4 and 5 contained in Response to Cabot Corporations First Request for Production of Documents and Things.

5. Please identify all of AVX's Nodular-Based Products, including in your answer, but not limiting your answer to, the complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such product.

Response: Plaintiffs refer Defendant to the documents it is producing in response to Requests Nos. 3, 4 and 5 contained in Response to Cabot Corporations First Request for Production of Documents and Things.

6. Please identify all of AVX's Niobium-Based Products, including in your answer, but not limiting your answer to, the complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such product.

Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence. By way of further response, Niobium-Based Products did not exist at the time of the inception of the contract.

7. Please identify all Passive Electronic Component products manufactured by persons other than AVX that AVX understands compete with, or have competed with, AVX's Flake-Based Products, including in your answer, but not limiting your answer to, the manufacturer, complete case dimensions, technical specifications, capacitance and rated voltage (Vr) range, ratings and part reference numbers of each such competing product.

Response: Plaintiffs object to this Interrogatory on the ground that the Interrogatory is unduly burdensome and the information requested is irrelevant and unlikely to lead to admissible evidence.

8. Does AVX contend that nodular tantalum powder never can be used as a substitute for flake tantalum powder in the production of Passive Electronic Components?

Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that only certain products, identified in response to Interrogatory No. 4, can be made with flake.

9. If your answer to Interrogatory No. 8, supra, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances under which nodular tantalum powder can be used as a substitute for flake tantalum powder in the production of Passive Electronic Components.

Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that one cannot use nodular where the unique characteristics of flake tantalum powder set forth in response to Interrogatory No. 3 are required..

10. Does AVX contend that Passive Electronic Components manufactured from nodular tantalum powder never can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder?

Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that the components it makes with nodular cannot be substituted for the components it makes with flake.

11. If your answer to Interrogatory No. 10, supra, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances in which Passive Electronic Components manufactured from nodular tantalum powder can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder.

Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence. Notwithstanding, Plaintiffs answer that the nodular tantalum powder cannot be used as a substitute for flake tantalum powder whenever any of the unique characteristics of flake tantalum powder set forth in response to Interrogatory No. 3 are required.

12. Does AVX contend that Passive Electronic Components manufactured from materials other than tantalum powder, including but not limited to niobium or niobium oxide, never can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder?

Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence.

13. If your answer to Interrogatory No. 12, supra, is anything other than an unqualified affirmative, please describe in as much detail as reasonably possible the specific conditions or circumstances in which Passive Electronic Components manufactured from materials other than tantalum powder, including but not limited to niobium or niobium oxide, can be used as a substitute for Passive Electronic Components manufactured from flake tantalum powder.

Response: Plaintiffs object to this Interrogatory on the ground that the word "substitute" is vague and the information requested is irrelevant and unlikely to lead to admissible evidence.

14. Does AVX contend that it had no desire to purchase any nodular tantalum powder from Cabot during the period from January 1, 2001 through December 31, 2005 at the time that AVX entered into the Agreement?

Response: No.

15. If your answer to Interrogatory No. 14, supra, is anything other than an unqualified affirmative, please identify the specific nodular tantalum powder products that AVX desired to purchase from Cabot during the period from January 1, 2001 through December 31, 2005 at the time that AVX entered into the Agreement, including in your answer, but not limiting your answer to, the quantity(ies) of each type of nodular tantalum powder that AVX desired to purchase from Cabot during the period.

Response: Plaintiffs object to this Interrogatory on the ground that there is no point of reference as to when the Plaintiffs desired the specified products during the period specified. Notwithstanding, Plaintiffs respond that the amount they desired for 2001 is reflected in the short-term supply agreement for that year.

16. Did AVX intend, as of the time it entered into the Agreement, to have some or all of the $K_2TaF_7$ that it agreed to purchase in the Agreement tolled or converted into Tantalum Products?

Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence.

17. If your answer to Interrogatory No. 16, supra, is anything other than an unqualified negative, please identify the specific Tantalum Products (e.g., tantalum powder, tantalum wire, etc.) and types of Tantalum Products (e.g., flake tantalum powder, nodular tantalum powder, etc.) into which AVX intended to have the $K_2TaF_7$ that it agreed to purchase in the Agreement tolled or converted.

Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence.

18. Please identify the specific Tantalum Products (e.g., tantalum powder, tantalum wire, etc.), types of Tantalum Products (e.g., flake tantalum powder, nodular tantalum powder, etc.), and grades of Tantalum Products (by product number or designation) into which AVX actually had the $K_2TaF_7$ that it agreed to purchase in the Agreement tolled or converted, including in your answer, but not limiting your answer to, the quantity(ies) of each type of Tantalum Product produced as a result.

Response: Plaintiffs object to this Interrogatory on the ground that the information requested is irrelevant and unlikely to lead to admissible evidence.

19. Please state all facts upon which AVX relies in support of the allegation in Paragraph 38 of the Complaint that Cabot "conditioned AVX's purchase of flake powders on its purchase of non-flake powders," including in your answer, but not limiting your answer to, a complete description of the specific manner or means by which Cabot "conditioned AVX's purchase of flake powders on its purchase of non-flake powders."

Response: Cabot refused to sell to AVX unless AVX entered into the 2001 Supply Agreement.

20. Please state all of the damages that AVX claims to have sustained as a result of the "actions of Cabot" referenced in Paragraph 41 of the Complaint, including in your answer, but not limiting your answer to, the types or elements of damages sustained by AVX, the amount of damages sustained by AVX, and the precise method by which AVX calculates its damages.

Response: AVX has not yet calculated its damages.

As to objections:

Joseph S.U. Bodoff (BBO #549116)
Richard A. Goren (BBO #203700)
Bodoff & Associates
225 Friend Street
Boston, MA 02114-1812
(617) 742-7300

Dated: February 28, 2007

**Verification**

I, Kurt Cummings, state under the penalties of perjury that: I am Vice President, Chief Financial Officer, Treasurer and Secretary of AVX Corporation and AVX Limited; I have read the foregoing Responses to Cabot Corporation's First Set of Interrogatories and know the contents thereof; that said responses were prepared with the assistance and advice of counsel; the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, collected and thus far discovered in the course of preparation of these responses; that I reserve the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; that, subject to the limitations set forth herein, these responses are true to the best of my knowledge, information and belief.

Signed under the penalties of perjury on this 28 day of February, 2007.

Kurt Cummings

**CERTIFICATE OF SERVICE**

I hereby certify that on the foregoing date the foregoing was served on counsel of record by hand, courier, or first-class mail.