# Exhibit #2

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>　　　　　Defendant. | CIVIL ACTION NO. 04-10467-RGS |

## NOTICE OF DEPOSITION

TO:　Richard A. Goren, Esq.
　　　BODOFF & ASSOCIATES LLP
　　　225 Friend Street, 7th Floor
　　　Boston, MA 02114-1812

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), defendant Cabot Corporation ("Cabot") will take the deposition upon oral examination of plaintiff AVX Limited ("AVX") on October 29, 2007, commencing at 9:30 a.m. at the offices of Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts, or at such other place that may be mutually agreed upon by counsel in advance. AVX shall designate, prepare and produce one or more knowledgeable officers, directors, or other representatives to testify on its behalf as to the topics set forth in the attached Schedule A.

PLEASE TAKE FURTHER NOTICE that the foregoing deposition may be recorded stenographically, and/or by audio or video technology, such as videotape. The deposition will be taken before a notary public or other person authorized to administer oaths and will continue from day-to-day until completed. You are invited to attend and cross-examine.

CABOT CORPORATION

By its attorneys,

/s/ Robert S. Frank, Jr.
Robert S. Frank, Jr. (BBO No. 177240)
Brian A. Davis (BBO No. 546462)
Julie C. Rising (BBO No. 666950)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:  October 17, 2007

4260783.1

-2-

## CERTIFICATE OF SERVICE

I, Julie C. Rising, hereby certify that on this 17th day of October, 2007, I caused to be served a true and correct copy of the foregoing Notice of Rule 30(b)(6) Deposition on the counsel of record for AVX Corporation and AVX Limited at the address and in the manner indicated below:

| | |
|---|---|
| Joseph S.U. Bodoff, Esq. | [x] U.S. Mail |
| Richard A. Goren, Esq. | [x] Electronic Mail |
| BODOFF & ASSOCIATES | [ ] Overnight Delivery |
| 225 Friend Street, 7th Floor | [ ] Hand Delivery |
| Boston, MA 02114-1812 | |

_____
Julie C. Rising

4260783.1

## Schedule A

### Definitions

For purposes of this Schedule, Cabot adopts the "Uniform Definitions in Discovery Requests" contained in Local Rule 26.5 of the United States District Court for the District of Massachusetts. The following additional terms shall have the meanings set forth below:

1. "AVX" shall mean plaintiff AVX Limited, its various corporate parents, subsidiaries, affiliates, subdivisions and departments (including without limitation AVX Corporation), and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

2. "Cabot" shall mean defendant Cabot Corporation, its various subsidiaries, affiliates, divisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

3. "Deloitte" shall mean Deloitte & Touche LLP and its various subsidiaries, affiliates, divisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

4. "And" as well as "or" shall be construed both disjunctively and conjunctively to mean "and/or."

5. "Any" shall be construed also to mean "all," and "all" shall be construed also to mean "any."

6. The "Complaint" shall mean the "Complaint and Jury Demand" that AVX filed in this action on or about March 8, 2004.

7. The "2001 Supply Agreement" shall mean the written Supply Agreement between and among AVX and Cabot, dated as of January 1, 2001, that is attached as <u>Exhibit C</u> to AVX's Complaint.

8. "KTaF" shall mean any unrefined Tantalum ore $K_2TaF_7$ acquired by AVX from Cabot as referenced, *inter alia*, in Paragraph 9 of the Complaint, and Sections 2-4 of, and Appendix A to, the 2001 Supply Agreement.

9. "Tantalum" or "Tantalum Products" shall mean refined tantalum (chemical symbol "Ta," atomic number 73) in any form, including, but not limited to, tantalum wire, tantalum powder, but excluding KTaF.

### Topics of Examination

The topics on which AVX will be examined are as follows:

1. The negotiation, drafting, terms and implementation of the 2001 Supply Agreement, including but not limited to the factors AVX considered in deciding to enter into the 2001 Supply Agreement.

2. All communications between or among Cabot and AVX concerning the negotiation, drafting, terms or implementation of the 2001 Supply Agreement, including but not limited to the implementation of Section 3 of the 2001 Supply Agreement.

3. All communications between or among AVX personnel concerning the negotiation, drafting, terms or implementation of the 2001 Supply Agreement, including but not limited to the implementation of Section 3 of the 2001 Supply Agreement.

4. All communications between or among AVX and Deloitte concerning the negotiation, drafting, terms or implementation of the 2001 Supply Agreement, including but not limited to any audit of Cabot's compliance with the 2001 Supply Agreement.

5. All aspects of any audit of Cabot's compliance with the terms of the 2001 Supply Agreement, including but not limited to any audit of Cabot's compliance conducted by Deloitte.

6. All advice rendered to AVX concerning the negotiation, drafting, terms and implementation of the 2001 Supply Agreement, including but not limited to the implementation of Section 3 of the 2001 Supply Agreement.

7. AVX's expected and actual need for Tantalum powder, in any form, for the years 2001 through and including 2005.

8. The "market for flake powder" referenced in Paragraph 39 of the Complaint, including but limited to the definition, size and scope of such market, and all participants and products in such market.

9. The "market for non-flake powder" referenced in Paragraph 39 of the Complaint, including but limited to the definition, size and scope of such market, and all participants and products in such market.

10. The "coercive strategies" referenced in Paragraph 30 of the Complaint, including but limited to AVX's knowledge or awareness of such strategies.

11. All products or terms that AVX alleges it was forced to accept on account of "Cabot's coercive strategies" as referenced in Paragraph 30 of the Complaint.

12. All ways in which Cabot allegedly "lessened competition" in the market for non-flake powder as referenced in Paragraph 40 of the Complaint.

13. All products made by AVX that use Niobium, KTaF, Nodular Tantalum Powder and/or Flake Tantalum Powder, including but not limited to the technical specifications of those products, the uses of those products, and any potential or actual substitutes for Niobium, KTaF, Nodular Tantalum Powder and/or Flake Tantalum Powder in those products.

14. AVX's marketing and sales of any products made by AVX that use Niobium, KTaF, Nodular Tantalum Powder and/or Flake Tantalum Powder, including but not limited to sales presentations, product comparisons, actual or potential competing products, and customer specifications.

15. The conversion or tolling of any KTaF on AVX's behalf or at AVX's request, including but not limited to the total and per unit cost of the tolling or conversion, the companies used by AVX to convert or toll the KTaF, the ratio between the quantity of KTaF purchased by AVX and the quantity of Tantalum products that resulted from the conversion or tolling, and the specific Tantalum products and types of products into which the KTaF actually was converted or tolled.

16. Any investigation, research, work or communication within AVX relating to the actual or potential replacement or substitution of Cabot's Flake Tantalum Powder in any of AVX's manufacturing processes at any time during the years 2000 through and including 2005.

17. Any damages that AVX claims to have sustained on account of the conduct of Cabot alleged in the Complaint, including but not limited to the complete nature and amount of such damages, and the precise means by which AVX calculated such damages.

4260783.1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION and AVX LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>Defendant. | CIVIL ACTION NO. 04-10467-RGS |

## NOTICE OF DEPOSITION

TO: Richard A. Goren, Esq.
BODOFF & ASSOCIATES LLP
225 Friend Street, 7th Floor
Boston, MA 02114-1812

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), defendant Cabot Corporation ("Cabot") will take the deposition upon oral examination of plaintiff AVX Corporation ("AVX") on October 29, 2007, commencing at 9:30 a.m. at the offices of Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts, or at such other place that may be mutually agreed upon by counsel in advance. AVX shall designate, prepare and produce one or more knowledgeable officers, directors, or other representatives to testify on its behalf as to the topics set forth in the attached Schedule A.

PLEASE TAKE FURTHER NOTICE that the foregoing deposition may be recorded stenographically, and/or by audio or video technology, such as videotape. The deposition will be taken before a notary public or other person authorized to administer oaths and will continue from day-to-day until completed. You are invited to attend and cross-examine.

CABOT CORPORATION

By its attorneys,

*/s/ J.C.R.*

Robert S. Frank, Jr. (BBO No. 177240)
Brian A. Davis (BBO No. 546462)
Julie C. Rising (BBO No. 666950)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:   October 17, 2007

4260783.1

-2-

## CERTIFICATE OF SERVICE

I, Julie C. Rising, hereby certify that on this 17th day of October, 2007, I caused to be served a true and correct copy of the foregoing Notice of Rule 30(b)(6) Deposition on the counsel of record for AVX Corporation and AVX Limited at the address and in the manner indicated below:

Joseph S.U. Bodoff, Esq.       [x] U.S. Mail
Richard A. Goren, Esq.       [x] Electronic Mail
BODOFF & ASSOCIATES       [ ] Overnight Delivery
225 Friend Street, 7th Floor       [ ] Hand Delivery
Boston, MA 02114-1812

_____
Julie C. Rising

4260783.1

-3-

## Schedule A

### Definitions

For purposes of this Schedule, Cabot adopts the "Uniform Definitions in Discovery Requests" contained in Local Rule 26.5 of the United States District Court for the District of Massachusetts. The following additional terms shall have the meanings set forth below:

1.  "AVX" shall mean plaintiff AVX Corporation, its various corporate parents, subsidiaries, affiliates, subdivisions and departments (including without limitation AVX Limited), and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

2.  "Cabot" shall mean defendant Cabot Corporation, its various subsidiaries, affiliates, divisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

3.  "Deloitte" shall mean Deloitte & Touche LLP and its various subsidiaries, affiliates, divisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

4.  "And" as well as "or" shall be construed both disjunctively and conjunctively to mean "and/or."

5.  "Any" shall be construed also to mean "all," and "all" shall be construed also to mean "any."

6.  The "Complaint" shall mean the "Complaint and Jury Demand" that AVX filed in this action on or about March 8, 2004.

7.  The "2001 Supply Agreement" shall mean the written Supply Agreement between and among AVX and Cabot, dated as of January 1, 2001, that is attached as <u>Exhibit C</u> to AVX's Complaint.

8.  "KTaF" shall mean any unrefined Tantalum ore $K_2TaF_7$ acquired by AVX from Cabot as referenced, *inter alia*, in Paragraph 9 of the Complaint, and Sections 2-4 of, and Appendix A to, the 2001 Supply Agreement.

9.  "Tantalum" or "Tantalum Products" shall mean refined tantalum (chemical symbol "Ta," atomic number 73) in any form, including, but not limited to, tantalum wire, tantalum powder, but excluding KTaF.

### Topics of Examination

The topics on which AVX will be examined are as follows:

1.  The negotiation, drafting, terms and implementation of the 2001 Supply Agreement, including but not limited to the factors AVX considered in deciding to enter into the 2001 Supply Agreement.

2.  All communications between or among Cabot and AVX concerning the negotiation, drafting, terms or implementation of the 2001 Supply Agreement, including but not limited to the implementation of Section 3 of the 2001 Supply Agreement.

3.  All communications between or among AVX personnel concerning the negotiation, drafting, terms or implementation of the 2001 Supply Agreement, including but not limited to the implementation of Section 3 of the 2001 Supply Agreement.

4.  All communications between or among AVX and Deloitte concerning the negotiation, drafting, terms or implementation of the 2001 Supply Agreement, including but not limited to any audit of Cabot's compliance with the 2001 Supply Agreement.

5. All aspects of any audit of Cabot's compliance with the terms of the 2001 Supply Agreement, including but not limited to any audit of Cabot's compliance conducted by Deloitte.

6. All advice rendered to AVX concerning the negotiation, drafting, terms and implementation of the 2001 Supply Agreement, including but not limited to the implementation of Section 3 of the 2001 Supply Agreement.

7. AVX's expected and actual need for Tantalum powder, in any form, for the years 2001 through and including 2005.

8. The "market for flake powder" referenced in Paragraph 39 of the Complaint, including but limited to the definition, size and scope of such market, and all participants and products in such market.

9. The "market for non-flake powder" referenced in Paragraph 39 of the Complaint, including but limited to the definition, size and scope of such market, and all participants and products in such market.

10. The "coercive strategies" referenced in Paragraph 30 of the Complaint, including but limited to AVX's knowledge or awareness of such strategies.

11. All products or terms that AVX alleges it was forced to accept on account of "Cabot's coercive strategies" as referenced in Paragraph 30 of the Complaint.

12. All ways in which Cabot allegedly "lessened competition" in the market for non-flake powder as referenced in Paragraph 40 of the Complaint.

13. All products made by AVX that use Niobium, KTaF, Nodular Tantalum Powder and/or Flake Tantalum Powder, including but not limited to the technical specifications of those products, the uses of those products, and any potential or actual substitutes for Niobium, KTaF, Nodular Tantalum Powder and/or Flake Tantalum Powder in those products.

14. AVX's marketing and sales of any products made by AVX that use Niobium, KTaF, Nodular Tantalum Powder and/or Flake Tantalum Powder, including but not limited to sales presentations, product comparisons, actual or potential competing products, and customer specifications.

15. The conversion or tolling of any KTaF on AVX's behalf or at AVX's request, including but not limited to the total and per unit cost of the tolling or conversion, the companies used by AVX to convert or toll the KTaF, the ratio between the quantity of KTaF purchased by AVX and the quantity of Tantalum products that resulted from the conversion or tolling, and the specific Tantalum products and types of products into which the KTaF actually was converted or tolled.

16. Any investigation, research, work or communication within AVX relating to the actual or potential replacement or substitution of Cabot's Flake Tantalum Powder in any of AVX's manufacturing processes at any time during the years 2000 through and including 2005.

17. Any damages that AVX claims to have sustained on account of the conduct of Cabot alleged in the Complaint, including but not limited to the complete nature and amount of such damages, and the precise means by which AVX calculated such damages.

4261738v1