**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AVX CORPORATION and AVX LIMITED, ) ) ) ) Plaintiffs, ) ) v. ) ) CABOT CORPORATION, ) ) Defendant. ) ) | Civil Action No.: 04-10467-RGS |

**OPPOSITION TO MOTION OF CABOT CORPORATION TO STRIKE
AVX'S SUPPLEMENTAL ANSWERS TO INTERROGATORIES**

### I.     Introduction

After having forced AVX Corporation to pay above market prices for tantalum powder and wire by refusing to sell its patented flake tantalum powder unless AVX entered into a long-term take-or-pay contract for both its patented product and other product in which it did not have market power, Cabot now seeks to deny AVX any recovery because, even though Cabot knew the parameters of the damage calculation and had the information upon which the calculation was based, AVX did not provide its actual calculation until after the date of the fact discovery deadline set forth in the scheduling order.  Cabot's motion should be denied for the following reasons:

- AVX has provided truthful answers to the discovery questions actually asked by Cabot.

- Cabot was informed early on about the methodology that AVX intended to use in calculating damages.

{00026684.2}

- The information that AVX in fact used for calculating damages is, and has always been, known to Cabot.

- AVX updated its discovery responses promptly upon having obtained new information.

- Contrary to Cabot's assertion, fact discovery has continued in this case until at least April 3, 2008, when AVX took Cabot's Rule 30(b)(6) deposition, as ordered by Magistrate Bowler in response to AVX's motion for sanctions.

- The supplemental response provided by AVX consists of very detailed information about the damage calculation sufficient to permit Cabot to respond to it at trial without the necessity of it taking further discovery.

- Cabot will not be prejudiced by the updated response, but to the extent it needs to take further discovery of AVX, AVX is willing to bring Peter Collis back for another deposition or to submit to such other additional discovery as may be reasonable.

- AVX would be extremely prejudiced if Cabot's motion is granted.

## II.    Procedural Background

### A.    *Litigation History*

As this Court is aware, the litigation between AVX and Cabot has a long and contentious history. There are two cases currently pending, both arising out of the Supply Agreement entered into between the parties dated January 1, 2001. In the current case, AVX has asserted that Cabot committed a violation of the Sherman Antitrust Act when it used its monopoly in flake tantalum to force AVX into a long-term supply agreement to purchase both flake tantalum, in which it has market power, and other

2

tantalum products, in which it does not. In a case pending in Suffolk Superior Court, AVX has asserted that Cabot breached that Supply Agreement by not giving AVX millions of dollars of credit under a most favored nation provision in that contract. The cases are running on parallel paths and it is likely that both will come to trial this year. As the First Circuit has made clear, both cases are relevant to this Court's inquiry on this most draconian of motions. *Thibeault v. Square D Company*, 960 F.2d 239, 246 (1st Cir. 1992).

It is a fair statement that both this case and the state court case have been fraught with discovery disputes, each party accusing the other of not complying with discovery and each accusing the other of withholding information. Shortly before his retirement in December, Judge van Gestel granted partial summary judgment in favor of AVX on an issue that amounts to more than $20 million of credits that Cabot should have, but did not give, AVX.[1] In anticipation of that decision and long after the close of fact discovery, Cabot raised for the first time four new defenses to AVX's claim, asserting for the first time that it had setoffs equal to or exceeding the amount of damages that would flow from Judge van Gestel's summary judgment decision. When Cabot refused to provide the backup documents to allow AVX to verify Cabot's calculations, AVX filed a motion *in limine* with the Court to exclude the defense that required further discovery. In response, Judge Gants ordered Cabot to submit to further discovery and ordered Cabot to pay for the stenographer and deposition transcript for a new Rule 30(b)(6) deposition.[2]

---

[1] Judge van Gestel found that Cabot wrongfully excluded from its calculation of most favored nation credits a contract with one of AVX's competitors amounting to tens of millions of dollars of sales. *AVX Corporation v. Cabot Corporation*, 23 Mass. L. Rep. 428 (Mass. Super. 2007)

[2] A copy of that decision is attached hereto as Exhibit A.

3

Perhaps not coincidentally, AVX was forced to deal with Cabot's newly disclosed defense and to prepare its motion *in limine* at about the time that the fact discovery deadline in this case occurred.[3]

There have been other discovery disputes in that case and in this case as well. The point is that while Cabot points a finger at AVX in this litigation, it ignores its own failures with regard to discovery in both this case and the companion case. Because the cases are so intertwined, those failures are relevant here.

B.   *The Antitrust Litigation*

In this case, there have been a number of discovery disputes between the parties. They started with Cabot's failure to provide responses to AVX's initial discovery requests until more than a year after they were served and they continue to this day.[4] Without rehashing the complete history, suffice it to say that as a result of one of these discovery disputes, in November 2007 AVX requested that this Court schedule a status conference to discuss scheduling to accommodate the discovery delays that were attendant to the disputes. Rather than schedule the conference this Court *sua sponte* extended the fact discovery deadline. Because AVX's expert report was always due 30 days after the close of fact discovery and because, in counsel's experience experts are given a reasonable opportunity to prepare their reports *after* the close of fact discovery, counsel believed that it would remain that way and that, as a result the extension of the

---

[3] Cabot disclosed its new defenses to AVX at a meeting on October 4, 2007. Following an exchange of emails where Cabot's counsel refused to provide documentation relating to one of its new defenses AVX filed its motion *in limine* on January 10, 2008. To demonstrate further the lengths to which Cabot is willing to go to win these cases, Cabot responded with a motion for sanctions, which was summarily denied by Judge Gants as part of his order requiring Cabot to submit to further discovery. Exhibit A at p. 5.

[4] That Cabot has been willing to go to great lengths to win this case on discovery issues is demonstrated by its complete unwillingness to accept without conditions the substitution of Steven Schwartz as AVX's expert when its designated expert, Lauren Stiroh, needed to deal with certain personal medical problems.

4

fact discovery deadline was intended by this Court as an extension also of the expert discovery deadline. As it turned out, counsel was wrong.[5]

On December 5, 2007, Cabot took the Rule 30(b)(6) deposition of Peter Collis, which included the issue of damages. This deposition was conducted 10 days before the discovery deadline and, as it ultimately turned out, 10 days before the date for the submission of AVX's expert report. At the conclusion of that deposition, counsel for AVX asked counsel for Cabot to confirm his understanding that the deadline for AVX to submit its expert report was also deemed extended by this Court's order. It was the belief of counsel for AVX at that time that Cabot's counsel would agree. The fact that counsel for AVX was wrong in this assessment is borne out both by Cabot's rejection of that understanding and this Court's later decision on the subject. What is important is that when Peter Collis testified on behalf of AVX at the Rule 30(b)(6) deposition, both Mr. Collis and AVX's counsel believed that AVX's expert would be given time to perform the damage calculation. Mr. Collis testified consistently therewith.[6]

---

[5] Cabot states that "for the fifth time in 2007, AVX asked this Court to amend its scheduling order" (Cabot Motion to Strike at 2), suggesting that AVX has been dilatory in its conduct. An examination of the history of this case suggests otherwise. On January 30, 2007 *Cabot* filed a joint motion to amend scheduling order. On May 22, 2007 AVX filed an assented to motion to amend scheduling order. On July 10, 2007 *Cabot* filed another joint motion to amend scheduling order. On August 21, 2007 following the death of Richard A. Goren's mother, AVX filed an unopposed motion to amend scheduling order.

[6] Cabot has made much of the fact that AVX's expert testified that as of the date of his report he "'hadn't been asked' by AVX to render an opinion on AVX's alleged damages." Cabot Motion to strike at 6-7. However, AVX had contemplated that its expert would address the calculation of damages and is something that could have been easily accomplished in the timeframe between Peter Collis's deposition and AVX's incorrectly presumed deadline for its expert to submit his report. It should also be noted that while Dr. Schwartz testified that he had "consulted with counsel on some issues involving damage questions" Cabot asked no follow up questions on that subject.

### III.    The Current Discovery Dispute

Cabot complains by this motion that AVX did not timely update its answers to interrogatories and provided incomplete information at the Rule 30(b)(6) deposition of Peter Collis. AVX will address each of these separately.

#### A.    *The Interrogatories Responses*

In its First Set of Interrogatories, Cabot asked that AVX "state all damages that [it] claims to have sustained as a result of the 'actions of Cabot' referenced in Paragraph 41 of the Complaint, including in your answer, but not limiting your answer to, the types or elements of damages sustained by AVX, the amount of damages sustained by AVX, and the precise method by which AVX calculated its damages." It being early in the case, AVX responded by stating that it had not yet calculated its damages. Two months later – on April 28, 2007 – it expanded its response by providing:

> AVX has been damaged by the excess of the amounts paid under the January 2001 Supply Agreement over the term of that agreement over the fair market prices of those products over the term of that agreement.

AVX's Opposition to Cabot's Motion to compel Discovery at 9-10.[7]  AVX's position could not be clearer. There are two elements to AVX's damage calculation – the amounts that AVX paid to Cabot under the contract and the fair market value of the product that it would have purchased in the absence of the Supply Agreement bought. That response was true when it was made a year ago and it is true now. The only thing

---

[7] It should be noted that while in April 2007 Cabot moved to compel further answers to the damages interrogatory, Cabot did not raise or press the point in either the May or September 2007 hearings on the parties' respective dueling discovery motions. Cabot has therefore waived its motion to compel further answers to its damages interrogatory.

6

that has changed is that AVX has provided the numbers that it has recently calculated to go with the damage formula.

### B.     *The Rule 30(b)(6) Deposition*

Peter Collis was designated by AVX to testify on seven of seventeen topics specified by Cabot in its Rule 30(b)(6) deposition notice. One of those topics was damages. More specifically, Cabot's topic description read:

> Any damages that AVX claims to have sustained on account of the conduct alleged in the Complaint, including but not limited to the complete nature and amount of such damages, and the precise means by which AVX calculated such damages.

Yet, when it came time for the deposition, Cabot's questions were much more limited. Its counsel asked only four questions on the issue of damages:

1. *What damages has AVX sustained as a result of the conduct of Cabot that is alleged in the Complaint in this matter?* Mr. Collis answered truthfully that the damages were "being calculated by our expert." In fact, at that time, AVX either had or was in the process of sending the damage information to its expert. As stated previously, at the moment of that testimony, both AVX and its counsel believed that the expert report was not due until one month after the close of fact discovery – *i.e.,* January 14. 2008.

2. *Has AVX sustained damages?* Mr. Collis answered truthfully "yes." That answer has not changed.

3. *Do you have any understanding right now of the monetary value of those damages?* Mr. Collis answered truthfully and completely that AVX has "monitored the market price of material and compared that with what we ended up paying in the contract when we used material as against what the market price

7

was at the time, and passed that to our expert." He also testified that AVX's monitoring included the nodular products AVX was purchasing from the three other major suppliers. Those answers also have not changed.

4. *How would you go about calculating AVX's damages in this matter?* Mr. Collis again truthfully responded that "we've left that with our expert to come up with that calculation."

Of note is the fact that, given the opportunity, counsel for Cabot chose not to ask Mr. Collis any questions directed to the underlying facts upon which the damage calculation would be based. Keeping in mind that Mr. Collis had just testified that elements of the damage claim were "market price" and "what we ended up paying in the contract when we used material," notably absent are the following inquiries:

- What were the market prices that AVX deemed relevant?
- What information was turned over to AVX's expert?

Of course, Cabot already knew how much it was charging under the contract and, as it also monitors market prices of products that compete with its own products, knew, or should have known, what those prices were.

In short, Cabot is not really complaining that it did not have an opportunity to obtain this information. Instead, it is either trying to make up for the fact that it never asked the appropriate questions at Peter Collis's deposition or, through its continued gamesmanship in this case, feigning irremediable prejudice in order to get an unfair advantage.[8]

---

[8] Nor is it complaining that AVX, rather than submit supplemental answers to interrogatories, left the response for deposition testimony.

Moreover, as discussed in the next section, even then the damages could not have been accurately calculated since some of the information needed to calculate and verify market prices and costs incurred under the Supply Agreement had to be obtained from Cabot and Cabot was refusing to provide it. It was only after Magistrate Bowler's February 15, 2008 order requiring Cabot to provide the information and to submit to a Rule 30(b)(6) deposition that AVX was able to complete the calculation. The deposition occurred on April 3, 2008. AVX submitted its supplemental answers to interrogatories 11 days later – on April 14, 2008.

### C.     *The Supplemental Answers to Interrogatories*

With the entry by this Court of its order denying AVX's request to submit the expert report 30 days after the close of fact discovery, AVX began calculating its damages. Even then, however, it did not have the ability to calculate its damages because Cabot continued to wrongfully withhold information requested by AVX in discovery. This information related to, among other things, both the market pricing of alternative products and the charges by Cabot and its affiliate, Showa Cabot to AVX, both of which were contained in records of Showa Cabot.[9]

On March 31, 2008 and at its April 3, 2008 Rule 30(b)(6) deposition, Cabot produced for the first time records of sales to third parties of the products AVX would have purchased but for the Supply Contract's five year take or pay obligations. With the production of some of the information on March 31st and the Rule 30(b)(6) deposition on

---

[9] This data is relevant since but for the Supply Agreement AVX would not have purchased any KTaF from Cabot and would have purchased comparable finished products at lower prices from other suppliers including Showa Cabot. Affidavit of John Chapple, Docket entry 117, ¶ 26.

9

April 3rd, AVX was now prepared to make its calculation. Only eleven days later it supplemented its interrogatory response.

## IV. Argument

### A. The First Circuit Standard

In deciding whether to exclude evidence from trial, the Court must look at the *totality* of the circumstances. This means not only the conduct of AVX, but the conduct of Cabot as well. As the First Circuit stated in *Johnson v. H. K. Webster*, 755 F.2d 1 (1st Cir. 1985):

> As these cases demonstrate, the emphasis in evaluating the decision to admit testimony over a Rule 26(e) objection entails ***careful balancing***. Trial and appellate courts should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the defendant to formulate a response. . . . It is noteworthy that, in those cases in which testimony was held properly excluded, the courts have found some ***evasion or concealment***, intentional or not, on the part of the litigant offering the evidence.
>
> Closely linked to the issue of surprise and prejudice – its converse side – is the question of whether the party objecting to the evidence might have been able to confront the evidence with a minimum of disruption to the trial. Courts have often found it significant whether the objecting party sought a continuance to prepare to rebut the testimony. The Advisory Committee Note to Rule 26(e) expressly states that one possible sanction for a party's failure to provide supplemental responses is the granting of a continuance; here, Webster asked the trial judge for the far more drastic remedy of excluding the testimony in issue. ***Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess so they may attempt to counter the opponent's testimony.***

*Id.* at 22-23 (citations omitted) (emphasis added). Seven years later, in *Thibeault v. Square D Company*, *supra*, the First Circuit expounded further on this standard:

> This circuit has recommended a straightforward approach to ensure that the spirit of open discovery embodied in Rule 26 is not undermined either by evasion or by dilatory tactics. In reviewing a contention that answers were not properly supplemented within the strictures of Rule 26(e), a court "should look to the conduct of the trial, the importance of the evidence to

10

its proponent, and the ability of the [opposing party] to formulate a response." Johnson, 775 F.2d at 8. To this we might add that the reason for the proponent's failure to update his discovery seasonably, as Rule 26(e)(1) requires, should also be carefully examined.

*   *   *

In considering sanctions for lapses in the course of pretrial discovery, a district court should consider all the circumstances surrounding the alleged violation. See Link v. Wabash R.R., 370 U.S. 626, 635, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962). The totality of the circumstances can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy.

960 F.2d at 244, 246.

### B.  *The Totality of the Circumstances Does Not Justify Exclusion*

Applying the First Circuit totality-of-the-circumstances test, the evidence of damages should not be excluded.

#### 1. *AVX has accurately responded to Cabot's discovery requests.*

Cabot does not appear to seriously contend that AVX had secretly calculated its damages but hid that calculation from Cabot. It cannot contest that by April 2007 AVX had provided it with the parameters of its damage calculation. It so admits in its motion to strike. Instead, it appears to argue that despite Rule 26(e)'s requirement that discovery responses should be updated "in a timely manner … if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing," AVX had an obligation to do that sooner.

#### 2. *The failure to update the damage response earlier was not the result of evasion or concealment.*

While Cabot would like to convince this Court otherwise, all of the evidence in this case demonstrates that there are two reasons why AVX could not provide its updated

11

response to the damages interrogatory at an earlier date. First, Cabot cannot deny the fact that the delay was attributed in part to the confusion relating to the deadline for submitting its expert report. But, even then, AVX would not have been able to submit a complete damage calculation. More importantly, Cabot had not yet provided AVX with all of the information it needed to calculate those damages. It took an order from Magistrate Bowler to get Cabot to cough up most, but not all, of the information. And, when the court-ordered discovery on that final issue was concluded AVX submitted its supplemental response within 11 days.[10]

### 3. *Any prejudice to Cabot is of its own doing.*

In support of its motion, Cabot cites to cases where disclosures were made very close to trial with no opportunity for the moving party to counteract the effects of a late disclosure. *E.g.*, *Woltersdorf v. Desrochers*, 2006 U.S. Dist. LEXIS 5733 (D. Me. February 14, 2006) (disclosure less than six weeks before trial); *Net 2 Press, Inc. v. 58 Dix Avenue Corp.*, 266 F. Supp. 2d 146 (D. Me. 2006) (supplementation on the eve of trial and lacking extraordinary circumstances not allowed); *Thibeault v. Square D Co., supra* (disclosure four days before trial); *Eisenstadt v. Allen*, 1997 U.S. App. LEXIS 9587, *51-52 (9th Cir. Apr. 28, 1997) (unpub. Table decision) (supplemental disclosure properly stricken where statements disclosed were derived exclusively from documents produced earlier in discovery and no explanation as to reason for delay was offered).[11]

---

[10] Cases like *Woltersdorf*, cited by Cabot, are inapposite. Unlike lost wages, the damage calculation in this case requires the assessment of a massive amount of data broken down into meaningful summaries to be presented to the jury. And, Cabot has been provided all source documents in accordance with Rule 1006.

[11] Even when disclosures are made close to trial the evidence is not necessarily excluded. In *Stich v. United States*, 730 F.2d 115 (3d Cir. 198), *cert. denied*, 409 U.S. 917 (1984), for example, the Third Circuit affirmed the decision of the District Court that refused to exclude evidence disclosed for the first time only a week before trial.

Here, however, fact discovery has barely closed[12] and the case has not been set for trial. Indeed, as things stand right now, with argument on Cabot's motion for summary judgment scheduled for June 25th,[13] there is plenty of time for Cabot to take further discovery if it so chooses. Indeed, Cabot has *not* requested that it be able to take further discovery nor has it even made an informal request for AVX to provide it with more information.[14]

Nor can Cabot claim that it is prejudiced because AVX submitted the supplemental answer after Cabot filed its summary judgment motion. First, the Rule 30(b)(6) deposition of Cabot's final witness ordered by Magistrate Bowler did not even occur until several days after Cabot filed its summary judgment motion and a scant four days after Cabot's March 31st initial supplemental production. Both the March 31st and the April 3rd discovery events, as explained above, provided materials utilized by AVX in the April 11th supplemental response. Moreover, Cabot cannot seriously claim that it is prejudiced in the summary judgment motion itself because AVX has now submitted its supplemental response. The portion of that motion relating to damages (covered in a mere three pages in its 20-page brief) merely argued that AVX did not have any damage evidence. Now that AVX has submitted it, the most prejudice that Cabot can argue is its disappointment in not being able to win the summary judgment motion on that point.

---

[12] While the fact discovery deadline was December 15, 2007, the court-ordered Rule 30(b)(6) deposition of Cabot's witness did not occur until April 3, 2008.

[13] AVX has also filed a motion for partial summary judgment. Pursuant to a motion filed by Cabot and not opposed by AVX, Cabot has until May 9th to file its response. The Court has not yet scheduled a hearing on AVX's motion.

[14] This is in stark contrast to the motion *in limine* filed by AVX in the state court litigation, where AVX requested of Cabot that it provide documents relating to its newly announced defenses and Cabot flatly refused to do so.

Still, the failure of Cabot to seek further discovery, whether formally or informally, is striking. It underscores the gamesmanship in which it is willing to engage to avoid a trial on the merits in this case.

The equitable remedy that Cabot seeks by this motion should be denied because Cabot has not itself acted in an equitable manner. The First Circuit made this clear in *Jackson v. H.K. Webster*, *supra* at 23, emphasizing that "Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess so they may attempt to counter the opponent's testimony."

### 4. *The balance of the harms favors AVX.*

The balance of the harms clearly favors AVX. If Cabot wins this motion the case ends and it avoids $100 million or more of damages on a technicality. If it loses, there is still plenty of time for it to prepare for trial. In this regard, if AVX has not already made it clear, it is prepared to submit to further discovery from Cabot on the damages issue, including bringing Peter Collis back for another deposition to supplement or clarify AVX's theory and calculation of damages.

### V.     Conclusion

For the foregoing reasons, Cabot's motion to strike should be denied.

>AVX CORPORATION
>and AVX LIMITED
>
>By their attorneys,
>
> */s/ Joseph S.U. Bodoff*
>Joseph S.U. Bodoff (BBO # 549116)
>Richard A. Goren (BBO # 203700)
>Ryan D. Sullivan (BBO # 660696)
>Bodoff & Associates, P.C.
>225 Friend Street
>Boston, MA  02114-1812
>(617) 742-7300

Dated: May 7, 2008