**EXHIBIT A PROPOSED REPLY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 04-10467-RGS |
| v. | ) ) | |
| CABOT CORPORATION, | ) ) | *Leave granted June , 2008* |
| Defendant. | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

In its opposition to AVX's Motion for Partial Summary Judgment Cabot ignores the fact that conditioning is evidenced in the Supply Agreement itself and argues there is no admissible evidence that Cabot actually conditioned the sale of Flake Powder on AVX's agreement to purchase Nodular Powder. Cabot Opposition at 15- 16 (Docket Entry 126). Falsely asserting that "a single sentence" of the affidavit of John Chapple (Docket entry 117) is AVX's "sole evidence of Cabot's alleged conditioning," Cabot argues the affidavit of AVX's now retired purchasing manager must be ignored because Mr. Chapple's sworn statements about conditioning therein are "inconsistent with the testimony of the same witness at his deposition." *Id.* at 16, *citing Colantuoni v. Alfred Calgagni & Sons, Inc.,* 44 F. 3d 1, 4-5 (1st Cir 1994).

In reply AVX makes two points. Mr. Chapple's affidavit does not contradict – indeed is perfectly consistent with – his prior deposition testimony in the state court case.

3

Independent of the conditioning evidenced in the contract itself, there is evidence of pre-contract conditioning of the sale of the flake products on the sale of non-flake products and it is undisputed that Cabot would not sell AVX flake for 2001 without a commitment to purchase specified amounts of nodular products at fixed prices for five years.

There is no basis to exclude the Chapple affidavit[1]. There is no clear and unambiguous contradiction between the April 2008 affidavit in this case and the prior sworn testimony in the state court case between these same parties. *Gillen v Fallon Ambulance Serv. Inc.*, 283 F. 3d 11, 26 (1st Cir. 2002) ("A subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment.")

In that state court deposition Mr. Chapple, AVX's long time purchasing manager, was questioned about his dealings with Cabot's Hugh Tyler in the summer and fall of 2000. Cabot's counsel showed Mr. Chapple a series of emails and documents to reference his testimony. Referencing a meeting at Heathrow airport in August 2000 Mr. Chapple was questioned about the progression to an agreement between Cabot and AVX. Mr. Chapple was shown deposition exhibit 47 (AVX 372-374). Mr. Chapple first authenticated the first two pages as his notes of his August 18th Heathrow meeting with Mr. Tyler. *See* Exh. 7, Rising affidavit "Chapple Tr." at 17:17-24, 18:1-7. At the Heathrow meeting, AVX informed Cabot that for 2001 AVX needed certain amounts of flake products, nodular products and some KTaf. *Id*. at 20: 3-10. Mr. Chapple was asked to look at the third page of the exhibit captioned "Cabot phone conversation 1st September 2000" which Mr. Chapple authenticated as a memorandum he had made of "a

---

[1] *Colantuoni v. Alfred Calgagni & Sons, Inc.,* 44 F. 3d 1, 4-5 (1st Cir 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory…").

telephone call with Mr. Tyler, which … took place on September 1, 2000." *Id.* at 21:12-16.  Mr. Chapple testified that during that call Mr. Tyler informed Mr. Chapple and then repeated to Messrs. Chapple, Chilton and Collis that "AVX UK" would not get any powder in 2001 and that neither Biddeford nor AVX UK would get any products in 2002 unless AVX entered into a five year contract.  *Id.* at 22:8-20, 23, 24, 25:1-17.  Mr. Chapple was asked "turning to the third page of Exhibit 47, when next after the Heathrow meeting do you believe you spoke to Mr. Tyler?" *Id*. at 21:6-8. Mr. Chapple testified that he did not "recall exactly, but it must have been *after* this telephone conversation in page 4 [*sic* 3] of 3." *Id*. at 21:6-16 (emphasis added).

Mr. Chapple was not asked any follow-up question as to what products were needed by "AVX UK".  Nor was Mr. Chapple asked any follow up questions about the next time he spoke with Mr. Tyler after the *single* September 1st telephone call memorialized on the third page of the exhibit.

Instead Mr. Chapple was asked questions about an email exchange on or about September 5 or 6, 2000 and then his notes of a September 20th telephone discussion with Mr. Tyler. *Id*. at 26-32.

 Evidence from Cabot's records is consistent with Mr. Chapple's April 2008 affidavit.  Specifically there is a 3:49 pm September 1, 2000 email from Hugh Tyler to four other Cabot managers (CA 32109) reporting on and quoting from three conversations between Chapple and Tyler on September 1st including two *after* the single conversation memorialized in the deposition exhibit.

Tyler reported to Cabot management:

[I] actually made contact with Biddeford first (Gail Lahey, buyer) …
Advised Gail of our plans to hold out 20,000 lbs of powder for Biddeford

5

in 2001. Told her we will sell no powder to Paignton.  Finally reached
Chapple at -10:45 and gave him the plan. … [H]e was {*sic*} insensed. … I
went through the entire scenario: no powder in 2001 (except Biddeford)
…. Chapple … then brought Ernie Chilton into the room for me to recite
the whole thing over again. The comments … [included] "{*sic*} it's
inconceivable that you would treat any customer this way" ….  After that
phone call, he called me back (out of earshot form [Ernie] Chilton), and
asked "Is there anything we can salvage from this? You must find a way to
get me C255 [flake product] and C 275 [flake product]. 'No' is
unacceptable. This will kill us. … I can do without the other powders, but
I have to have flake."  … Still later ….. (*ellipse original*) he called back
and asked for Ken {*sic*} Burns' phone number for Ernie [Chilton who
after getting Tom Odle's number] … called Tom [Odle] at home … [and]
also made a pitch to Tom [Odle] for flake.

*See also* AVX Statement of Material Facts (Docket Entry 116) ("AVX SOF") ¶ 24.

It is undisputed on this summary judgment record that

[o]n more than one occasion in September 2000 Hugh Tyler of Cabot
informed AVX that it would get no flake in 2001 unless it entered into [a]
five year take or pay contract … [and a]t no time … from commencement
of negotiations as to how much and at what prices for both flake and non-
flake products did Cabot ever offer to sell AVX flake for 2001 without
any condition or separately without the commitment to purchase nodular
products.

AVX SOF; Cabot's Responses ¶¶ 24, 28.  Noteworthy is the absence of any counter-

affidavit of Mr. Tyler.

## **CONCLUSION**

AVX's motion for Partial Summary Judgment as to conditioning must be granted.

                                        AVX CORPORATION
                                        and AVX LIMITED

                                        By their attorneys,

                                         */s/ Richard A. Goren*
                                        Joseph S.U. Bodoff (BBO # 549116)
                                        Richard A. Goren (BBO # 203700)
                                        Ryan D. Sullivan (BBO # 660696)
                                        Bodoff & Associates, P.C.

Dated: June  , 2008                                     225 Friend Street
                                                        Boston, MA  02114-1812
                                                        (617) 742-7300


**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on June  , 2008.

                                                        */s/ Richard A. Goren*

7