UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10467-RGS |
| CABOT CORPORATION, | ) ) | **LEAVE TO FILE GRANTED ON MAY 29, 2008** |
| Defendant. | ) ) | |

**DEFENDANT CABOT CORPORATION'S
REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO STRIKE AVX'S FURTHER SUPPLEMENTAL
RESPONSES TO CABOT'S FIRST SET OF INTERROGATORIES**

Defendant Cabot Corporation ("Cabot") respectfully submits this reply memorandum in

support of its Motion to Strike plaintiffs AVX Corporation and AVX Limited's (collectively,

"AVX") Further Supplemental Responses to Cabot's First Set of Interrogatories, filed on

April 23, 2008 (the "Motion to Strike") (Doc. No. 124). The Supplemental Responses at issue --

in which AVX sets forth, for the very first time, over one hundred million dollars in alleged

damages -- were served by AVX on April 14, 2008, more than four months after the court-

ordered deadline for the completion of "all" fact discovery. This Court (per the Honorable

Richard Stearns) has previously rejected AVX's repeated attempts to postpone that deadline and

obtain leave to make a belated disclosure of its alleged damages to Cabot.[1] Those rulings still stand.

Despite having been expressly denied leave to submit its damage calculations after the close of discovery -- which the Court stated "would be highly prejudicial to Cabot" (Tab A, Substitute Motion Order, at 2) -- AVX went ahead and did it anyway by unilaterally serving Cabot with its Supplemental Responses on April 14, 2008. In seeking to justify its conscious violation of this Court's prior directives, AVX inaccurately recasts the facts and makes the same arguments and excuses this Court considered and rejected in denying AVX's previous motions on the subject. Further, AVX does not offer any explanation for not providing at least its preliminary damages calculations sooner. Accordingly, the Court's prior rulings should be affirmed and Cabot's Motion to Strike should be allowed.

## Argument

To avoid the sanction of exclusion of the evidence under Rule 37(c)(1) for its failure to comply with the discovery obligations in Rules 26(a) and 26(e), AVX must show its delay "was substantially justified or was harmless." Fed. R. Civ. P. 37(c)(1). AVX faces a high burden, since courts will uphold use of the sanction even where it precludes an entire cause of action or defense. Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001) (although the exclusion of an expert would prevent plaintiff from making out a case and was "a harsh sanction to be sure," it was "nevertheless within the wide

---

[1] *See* AVX's "Motion to Amend Scheduling Order To Allow For Expert Discovery Consistent With This Court's Order Of November 14, 2007 And To Allow For The Resolution Of Outstanding Discovery Disputes," dated December 7, 2007 (Docket No. 81) ("Motion to Amend") (denied Jan. 17, 2008), AVX's "Motion For Leave To Submit Substitute Expert Report," dated February 8, 2008 (Docket No. 97) ("Motion to Substitute") (denied in Order on Plaintiffs' Motion for Leave to File Substitute Expert Report, dated Feb. 21, 2008 ("Substitute Motion Order"), Doc. No. 104), attached hereto at Tab A), and AVX's "Emergency Motion To Stay Expert Depositions Pending Resolution Of Outstanding Discovery Disputes," dated February 8, 2008 (Docket No. 98) ("Motion to Stay") (denied Feb. 15, 2008).

latitude of" Rule 37(c)(1)).    None of AVX's purported excuses provides "substantial justification" to overrule this Court's prior decisions denying AVX leave to submit its damages calculations after the close of discovery, or the Court's prior conclusion that doing so would be "highly prejudicial" to Cabot.

I.      CABOT'S MOTION TO STRIKE SHOULD BE ALLOWED BECAUSE AVX'S EXCUSES FOR ITS UNTIMELY SUPPLEMENTAL RESPONSES ALREADY HAVE BEEN CONSIDERED AND REJECTED BY THE COURT.

        A.      <u>The Court Previously Considered And Rejected AVX's Multiple Requests That Discovery Deadlines In This Action Be Extended Because Of AVX's Purported Need For Additional Information From Cabot.</u>

AVX first argues it could not have calculated its damages any earlier than it did because it needed the additional discovery ordered by Magistrate Judge Bowler on February 15, 2008 (the "February 15 Order").  AVX Opposition 12-13.  AVX made this same argument in three prior motions seeking to postpone discovery deadlines.  *See* Motion to Amend, Doc. No. 81, Motion to Stay, Doc. No. 98, and Motion to Substitute, Doc. No. 97.  All three motions were denied by the Court.  *See* Electronic Order, dated Jan. 17, 2008, Electronic Order, dated Feb. 15, 2008, and Tab A, Substitute Motion Order.  First, AVX's Motion to Amend sought to extend the discovery schedule purportedly because AVX's expert would "benefit" from the additional discovery AVX sought through its motion for reconsideration of the Court's September 21, 2007 rulings on the parties' motions to compel.  Motion to Amend, at 4 (Doc. No. 81).  The Court rejected AVX's argument and denied that Motion without comment.  *See* Electronic Order, dated Jan. 17, 2008.  AVX subsequently made the exact same argument in its Motion to Stay, which also was denied.  *See* Electronic Order, dated Feb. 15, 2008.

Undaunted, AVX then filed its Motion to Substitute, arguing that it should be allowed to submit a new expert report because, *inter alia*, its first report "did not include a discussion of

damages." Motion to Substitute, at 2-3 (Doc. No. 97). AVX conceded that the amount of its damages and methodology of their calculation are a matter for expert testimony at the deposition of its Rule 30(b)(6) representative, Mr. Peter Collis. *See* AVX Opposition at 7-8; *see also* Cabot Motion at 5-6. Mr. Collis claimed he had no knowledge about AVX's damages because they were "being calculated by our expert," and AVX's methodology of calculating its damages was "left [] with [its] expert to come up with." *Id.* Mr. Collis further testified that AVX already had given its expert information relating to damages. Cabot Motion at 6. AVX's expert, Dr. Schwartz, does not address AVX's purported damages in his expert report, and admitted during his deposition that he "hadn't been asked" to render an opinion on AVX's damages. Cabot Motion at 6. Recognizing that an expert opinion on damages was required, AVX filed the Motion to Substitute, seeking to submit a new report from Dr. Schwartz, arguing that his initial report was "incomplete and may contain errors" due, in part, to the fact that it did not "include a discussion of damages." Motion to Substitute at 3.

In its memorandum and order denying AVX's Motion to Substitute, the Court described that Motion as "the latest effort by plaintiffs [AVX] to circumvent the discovery schedule ordered by the court." Tab A, Substitute Motion Order, at 1. The Court further held, despite its recognition that Judge Bowler's February 15 Order had permitted AVX "some further discovery", that allowing AVX to submit a substitute expert report setting forth its alleged damages would be "highly prejudicial" to Cabot. *Id.* at 2.[2] AVX now argues, for the fourth time, that it should be permitted to avoid the Court-ordered discovery deadline and submit belated damages calculations because "some of the information needed to calculate and verify

---

[2] Judge Stearns did allow AVX to submit an addendum to its expert report to address the additional discovery allowed by Magistrate Judge Bowler, but it was specifically limited to "sales and cost information and product specifications from Cabot's former joint venture and current subsidiary in Japan." Tab A, Substitute Motion Order, at 2. In any case, AVX has not submitted any addendum to its expert's report, and so presumably properly understood Judge Stearns' order as preventing AVX from submitting an expert opinion on damages.

market prices and costs" purportedly "had to be obtained from Cabot." AVX Opposition at 9. This Court already has heard and rejected this argument over and over and over. AVX cannot simply ignore the Court's rulings, and accordingly, Cabot's Motion to Strike should be allowed.

        B.      <u>The Court Previously Considered And Rejected AVX's Argument That It Mistakenly Assumed In Late 2007 That The Court, By Implication, Had Extended The October 31, 2007 Discovery Deadline.</u>

AVX's argument that it should be permitted to submit its damage calculations after the official close of discovery on the ground that it mistakenly assumed that all case deadlines automatically had been extended by the Court's order that "all outstanding discovery be completed by December 15, 2007," was also raised and rejected by the Court on at least two prior occasions. *See* Electronic Order dated Nov. 7, 2007 denying AVX's Motion for a Status Conference ("Nov. 7 Order"). It was raised and rejected in AVX's Motion to Amend (*see* Motion to Amend at 2-3), and it was raised and rejected in AVX's Motion to Substitute (*see* Motion to Substitute at 2). *See* Electronic Order, dated Jan. 17, 2008, and Tab A, Substitute Motion Order. Once again, AVX cannot simply ignore the Court's rulings. Accordingly, Cabot's Motion to Strike should be allowed.

II.      CABOT'S MOTION TO STRIKE SHOULD BE ALLOWED BECAUSE AVX DID NOT REQUIRE, AND HAS NOT USED, ANY RECENTLY OBTAINED INFORMATION FROM CABOT TO CALCULATE ITS ALLEGED DAMAGES.

        A.      <u>AVX Had Information Sufficient To Calculate Its Alleged Damages Prior To The Close Of Discovery.</u>

AVX's thrice-rejected argument that it required additional discovery from Cabot in order to calculate its damages also fails on the merits. AVX Opposition 12-13. AVX had most, if not all, of the information necessary to calculate its damages well in advance of the December 16, 2007 deadline for service of the report of its expert, Dr. Steven Schwartz. In June 2007, Cabot provided AVX with a computer database containing detailed information concerning all of

Cabot's sales to Boyertown, Pennsylvania facility customers between 1996 and 2006, for the products that Cabot also sold to AVX. Prior to that time, AVX had conducted no less than three audits to evaluate Cabot's calculations of the MFN credits AVX was to receive under the 2001 Supply Agreement.[3] AVX does not deny it had this information from Cabot prior to the close of discovery, but provides no explanation why such information was insufficient for AVX to calculate its damages, and no explanation why it utterly failed to produce even a preliminary damage analysis in accordance with the prior deadlines established by this Court. *See, e.g.,* Yeti by Molly LTD v. Deckers Outdoor Corporation, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (Affirming exclusion of defendant's expert's testimony after rejecting defendant's claim it needed to wait for plaintiff's modified expert report before disclosing its own, finding a preliminary report could have been issued and then supplemented). Accordingly, Cabot's Motion to Strike should be allowed.

B.    AVX Did Not Actually Use The Additional Discovery It Obtained From Cabot To Calculate Its Alleged Damages.

AVX overstates the impact of this Court's February 15, 2008 discovery order in arguing that it the additional information that it obtained as a result was crucial to the calculation of its alleged damages. AVX Opposition at 9-10, 12. In that Order, the Court directed Cabot to produce documents sufficient to show sales data of Showa Cabot (n/k/a Cabot Supermetals KK), between January 1, 1996 through January 1, 2001. *See* February 15, 2008 Order (Doc. No. 100), and Doc. No. 93-5. Though not required under the Court's February 15, 2008 Order, Cabot also provided AVX with documents showing a summary of Showa's sales for 2001-2003 at the deposition of Cabot's final Rule 30(b)(6) witness on April 3, 2008. *See* Deposition of Marlin

---

[3] AVX, once again, mischaracterizes the record when it states that AVX obtained a ruling in the parties' state court litigation worth over "$20 million of credits that Cabot should have, but did not give, AVX." AVX Opposition at 3. To the contrary, no determination has been made in that action regarding what, in any, additional MFN credits owed to AVX.

Spotts, dated April 3, 2008, Exh. 9 (attached hereto at Tab B). Even a cursory review of AVX's

damages submission shows that little, if any, of this data actually is included in AVX's purported

damages calculations. Because AVX did not actually rely upon the discovery taken after

February 15, 2008 to calculate its damages, Cabot's Motion to Strike should be allowed.

III.    CABOT'S MOTION TO STRIKE SHOULD BE ALLOWED BECAUSE CABOT HAS
        BEEN PREJUDICED BY AVX'S FAILURE TO DISCLOSE ITS ALLEGED
        DAMAGES PRIOR TO THE CLOSE OF DISCOVERY.

Cabot has already been harmed by AVX's unexcused delay in disclosing its alleged

damages in multiple ways, including, but not limited to: (a) Cabot's economic expert, Prof.

Joseph Kalt, was denied the opportunity to analyze AVX's damage claims in his report and prior

to his deposition; (b) Cabot has been denied the opportunity to assess and challenge the validity

of AVX's damage claims in its pending Motion for Summary Judgment; and (c) AVX has used

its delay in an attempt to conform its damage theories and calculations to the facts and theories

presented in Cabot's Motion for Summary Judgment.

The harm to Cabot only would increase if AVX's belated service of its Supplemental

Responses is sanctioned because it would compel Cabot to engage in substantial additional

discovery that could have (and should have) been accomplished during the fact and expert

discovery periods. Proper analysis of AVX's damages would require new written discovery,

new depositions of fact and expert witnesses already deposed, the expansion and revision of

Cabot's expert's report, and potentially a new round of summary judgment briefing. AVX also

has disclosed documents for the first time in support of its damages claim that might have

informed the opinions of Cabot's expert not only on damages, but also on AVX's tying claim.

The harm to Cabot in being unable to review and analyze this information prior to the filing of its

present Motion for Summary Judgment is irreparable, and cannot be addressed by additional discovery at this time.

## Conclusion

Despite having been expressly denied leave of Court to submit its damage calculations after the close of discovery -- which the Court stated "would be highly prejudicial to Cabot" -- AVX went ahead and did it anyway by unilaterally serving Cabot with its Supplemental Responses. In seeking to justify its conscious violation of this Court's prior directives, AVX inaccurately recasts the facts and makes the same arguments and excuses this Court considered and rejected in denying AVX's previous motions on the subject. Further, AVX does not offer any explanation for not providing at least its preliminary damages calculations sooner. Accordingly, the Court's prior rulings should be affirmed and Cabot's Motion to Strike should be allowed in its entirety.

CABOT CORPORATION

By its attorneys,


*/s/ Brian A. Davis*
Robert S. Frank, Jr. (BBO No. 177240)
    (rfrank@choate.com)
Brian A. Davis (BBO No. 546462)
    (bad@choate.com)
Julie C. Rising (BBO No. 666950)
    (jrising@choate.com)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000


Date:  May 29, 2008

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on May 29, 2008.


                                      */s/ Julie C. Rising*

4335316v1
4335370v1