**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| AVX CORPORATION | ) | |
| and AVX LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 04-10467-RGS |
| | ) | |
| v. | ) | |
| | ) | |
| CABOT CORPORATION, | ) | *Leave to file granted on May 29, 2008* |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

In its opposition to AVX's Motion for Partial Summary Judgment Cabot ignores

the fact that conditioning is evidenced in the Supply Agreement itself and argues there is

no admissible evidence that Cabot actually conditioned the sale of Flake Powder on

AVX's agreement to purchase Nodular Powder.  Cabot Opposition at 15- 16 (Docket

Entry 126).  Falsely asserting that "a single sentence" of the affidavit of John Chapple

(Docket entry 117) is AVX's "sole evidence of Cabot's alleged conditioning," Cabot

argues the affidavit of AVX's now retired purchasing manager must be ignored because

Mr. Chapple's sworn statements about conditioning therein are "inconsistent with the

testimony of the same witness at his deposition."  *Id.* at 16, *citing Colantuoni v. Alfred

Calgagni & Sons, Inc.,* 44 F. 3d 1, 4-5 (1st Cir 1994).

In reply AVX makes two points.  Mr. Chapple's affidavit does not contradict –

indeed is perfectly consistent with – his prior deposition testimony in the state court case.

Independent of the conditioning evidenced in the contract itself, there is evidence of pre-

contract conditioning of the sale of the flake products on the sale of non-flake products

and it is undisputed that Cabot would not sell AVX flake for 2001 without a commitment

to purchase specified amounts of nodular products at fixed prices for five years.

There is no basis to exclude the Chapple affidavit[1].  There is no clear and

unambiguous contradiction between the April 2008 affidavit in this case and the prior

sworn testimony in the state court case between these same parties.  *Gillen v Fallon

Ambulance Serv. Inc.*, 283 F. 3d 11, 26 (1st Cir. 2002) ("A subsequent affidavit that

merely explains, or amplifies upon, opaque testimony given in a previous deposition is

entitled to consideration in opposition to a motion for summary judgment.")

In that state court deposition Mr. Chapple, AVX's long time purchasing manager,

was questioned about his dealings with Cabot's Hugh Tyler in the summer and fall of

2000.  Cabot's counsel showed Mr. Chapple a series of emails and documents to

reference his testimony.  Referencing a meeting at Heathrow airport in August 2000 Mr.

Chapple was questioned about the progression to an agreement between Cabot and AVX.

Mr. Chapple was shown deposition exhibit 47 (AVX 372-374).  Mr. Chapple first

authenticated the first two pages as his notes of his August 18th Heathrow meeting with

Mr. Tyler. *See* Exh. 7, Rising affidavit "Chapple Tr." at 17:17-24, 18:1-7.  At the

Heathrow meeting, AVX informed Cabot that for 2001 AVX needed certain amounts of

flake products, nodular products and some KTaf.  *Id*. at 20: 3-10. Mr. Chapple was asked

to look at the third page of the exhibit captioned "Cabot phone conversation 1st

September 2000" which Mr. Chapple authenticated as a memorandum he had made of "a

telephone call with Mr. Tyler, which … took place on September 1, 2000."  *Id.* at 21:12-

---

[1] *Colantuoni v. Alfred Calgagni & Sons, Inc.,* 44 F. 3d 1, 4-5 (1st Cir 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory…").

16.  Mr. Chapple testified that during that call Mr. Tyler informed Mr. Chapple and then repeated to Messrs. Chapple, Chilton and Collis that "AVX UK" would not get any powder in 2001 and that neither Biddeford nor AVX UK would get any products in 2002 unless AVX entered into a five year contract.  *Id.* at 22:8-20, 23, 24, 25:1-17.  Mr. Chapple was asked "turning to the third page of Exhibit 47, when next after the Heathrow meeting do you believe you spoke to Mr. Tyler?" *Id.* at 21:6-8. Mr. Chapple testified that he did not "recall exactly, but it must have been *after* this telephone conversation in page 4 [*sic* 3] of 3." *Id.* at 21:6-16 (emphasis added).

Mr. Chapple was not asked any follow-up question as to what products were needed by "AVX UK".  Nor was Mr. Chapple asked any follow up questions about the next time he spoke with Mr. Tyler after the *single* September 1st telephone call memorialized on the third page of the exhibit.

Instead Mr. Chapple was asked questions about an email exchange on or about September 5 or 6, 2000 and then his notes of a September 20th telephone discussion with Mr. Tyler. *Id.* at 26-32.

Evidence from Cabot's records is consistent with Mr. Chapple's April 2008 affidavit.  Specifically there is a 3:49 pm September 1, 2000 email from Hugh Tyler to four other Cabot managers (CA 32109) reporting on and quoting from three conversations between Chapple and Tyler on September 1st  including two *after* the single conversation memorialized in the deposition exhibit.

Tyler reported to Cabot management:

[I] actually made contact with Biddeford first (Gail Lahey, buyer) …
Advised Gail of our plans to hold out 20,000 lbs of powder for Biddeford
in 2001. Told her we will sell no powder to Paignton.  Finally reached
Chapple at -10:45 and gave him the plan. … [H]e was {*sic*} insensed. … I

went through the entire scenario: no powder in 2001 (except Biddeford) …. Chapple … then brought Ernie Chilton into the room for me to recite the whole thing over again. The comments … [included] "{*sic*} it's inconceivable that you would treat any customer this way" ….  After that phone call, he called me back (out of earshot form [Ernie] Chilton), and asked "Is there anything we can salvage from this? You must find a way to get me C255 [flake product] and C 275 [flake product]. 'No' is unacceptable. This will kill us. … I can do without the other powders, but I have to have flake." … Still later ….. (*ellipse original*) he called back and asked for Ken {*sic*} Burns' phone number for Ernie [Chilton who after getting Tom Odle's number] … called Tom [Odle] at home … [and] also made a pitch to Tom [Odle] for flake.

*See also* AVX Statement of Material Facts (Docket Entry 116) ("AVX SOF") ¶ 24.

It is undisputed on this summary judgment record that

[o]n more than one occasion in September 2000 Hugh Tyler of Cabot informed AVX that it would get no flake in 2001 unless it entered into [a] five year take or pay contract … [and a]t no time … from commencement of negotiations as to how much and at what prices for both flake and non-flake products did Cabot ever offer to sell AVX flake for 2001 without any condition or separately without the commitment to purchase nodular products.

AVX SOF; Cabot's Responses ¶¶ 24, 28.  Noteworthy is the absence of any counter-

affidavit of Mr. Tyler.

## CONCLUSION

AVX's motion for Partial Summary Judgment as to conditioning must be granted.

AVX CORPORATION
and AVX LIMITED

By their attorneys,

 */s/ Richard A. Goren*
Joseph S.U. Bodoff (BBO # 549116)
Richard A. Goren (BBO # 203700)
Ryan D. Sullivan (BBO # 660696)
Bodoff & Associates, P.C.
225 Friend Street
Boston, MA  02114-1812
(617) 742-7300

Dated: June 2, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on June 2, 2008.

*/s/ Richard A. Goren*