UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AVX CORPORATION
and AVX LIMITED,
　　　　Plaintiffs,


　　　v.　　　　　　　　　　　　　　　　　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　　　　　　04-10467-RGS


CABOT CORPORATION,
　　　　Defendant.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT CABOT CORPORATION'S MOTION TO STRIKE**
**AVX'S FURTHER SUPPLEMENTAL RESPONSES TO CABOT**
**CORPORATION'S FIRST SET OF INTERROGATORIES**
**(DOCKET ENTRY # 124)**

**June 18, 2008**


**BOWLER, U.S.M.J.**

　　　Pending before this court is a motion to strike an untimely supplemental answer to a damages interrogatory served by plaintiffs AVX Corporation and AVX Limited ("AVX") on defendant Cabot Corporation ("Cabot") after the close of fact and expert discovery.  (Docket Entry # 124).  The motion is fully briefed and therefore ripe for review.


　　　　　　　　　　　　　　　BACKGROUND

　　　This action is one of several other actions involving a five year supply agreement under which AVX agreed to purchase certain minimum annual quantities of flake and non-flake tantalum.  With sufficient market power in flake tantalum powder, Cabot

purportedly conditioned AVX's purchase of flake tantalum upon AVX's purchase of non-flake tantalum in violation of section one of the Sherman Act, 15 U.S.C. § 1.  AVX alleges a per se tying case with flake tantalum being the tying product and non-flake nodular tantalum and a material known as KTaf being the tied product[s].  (Docket Entry # 115; Docket Entry # 120, n. 3).  AVX submits that Cabot used its monopoly on flake tantalum to force AVX into the long term supply agreement that required AVX to purchase both flake and non-flake tantalum.

According to the complaint, Cabot is one of four companies in the world that processes tantalum for sale to companies such as AVX.  As alleged in the complaint, the three other companies are H.C. Starck, NEICC and, notably, Showa Cabot ("Showa"), a Japanese company and wholly owned subsidiary of Cabot.[1]  (Docket Entry # 1).

The parties have a long and equally contentious litigation history.  The remains of that history consist of this action and an ongoing state court action in which AVX asserts that Cabot breached the most favored nation provision in the long term supply agreement.  To support its position, AVX attaches a February 2008 opinion in the state court action imposing sanctions on Cabot because of the late presentation of a new theory of loss after the close of discovery.  After reciting

---

[1]  Showa was formally a 50/50 joint venture between Cabot and Showa.

2

conduct on the part of both AVX and Cabot, the associate justice in the state court action reopened discovery to allow AVX an opportunity to explore the right of first refusal provision in the agreement that was implicated by the new theory.

Discovery in this action was hard fought on both sides and involved numerous delays in the discovery schedule. To briefly summarize the background, on December 7, 2005, the parties filed a joint statement setting out proposed deadlines for fact and expert discovery. The joint statement proposed, with certain exceptions, the application of the default deadline for expert disclosure set forth in Rule 26(a)(2)(B), Fed. R. Civ. P. It also set December 31, 2005, as the date for the initial Rule 26(a)(1) disclosures. The court approved the schedule on December 7, 2005, thereby establishing December 31, 2005, as the deadline to provide Rule 26(a) disclosures, including a computation of damages. See Rule 26(a)(1)(A)(iii), Fed. R. Civ. P.

On October 5, 2006, the parties jointly requested an extension of "all deadlines." (Docket Entry # 43). The court allowed the motion the following day thereby extending the deadlines for a period of 120 days. Accordingly, to the extent the order impacted the December 31, 2005 deadline, the new deadline for Rule 26(a) disclosures became May 1, 2006. Meanwhile, Cabot continued to delay responding to interrogatories

and requests for production served by AVX.[2]

On January 30, 2007, Cabot filed a joint motion to extend
various deadlines.  The motion did not address the deadline for
Rule 26(a)(1) initial disclosures thereby leaving the May 1, 2006
deadline in place.  Instead, the motion only "request[ed] that
the Scheduling Order be extended" with respect to expert
disclosures, fact and expert discovery, submission of expert
reports and filing of dispositive motions.  The court allowed the
motion the following day and set out the deadlines on the docket.
As a result, the following deadlines went into effect:  (1)
February 28, 2007, as the deadline for AVX to serve expert
disclosures; (2) March 30, 2007, as the deadline to complete fact
discovery; (3) April 30, 2007, as the deadline for AVX to submit
expert report(s); (4) May 31, 2007, as the deadline for Cabot to
submit expert report(s); (5) July 16, 2007, as the deadline to
complete expert discovery; and (6) August 16, 2007, as the
deadline to file dispositive motions.

On July 10, 2007, the parties again filed a joint motion to
amend the schedule.  Like the January 30, 2007 request to amend
the schedule, the July 10, 2007 motion did not address or
otherwise effect the deadline for Rule 26(a)(1) initial

---

[2]  AVX served Cabot in January 2006 and Cabot responded in
December 2006.  (Docket Entry # 49, Ex. A & B).  Part of the
delay, however, is attributable to an agreement to delay
responses until the court ruled on a motion for judgment on the
pleadings.  The court issued a ruling in July 2006.

disclosures.  On July 17, 2007, the court allowed the July 10, 2007 motion with the caveat that, "No further extensions will be granted."

An additional extension resulted from the unfortunate death of the mother of plaintiff's counsel.  Cabot did not oppose the motion filed by AVX to extend the deadlines.[3]  On August 21, 2007, the court allowed the motion and, to make certain that the docket accurately reflected the new deadlines, the courtroom clerk set out all of the deadlines on the docket.  All parties therefore had ample notice of the revised deadlines.  The court thus set October 31, 2007, as the deadline for fact discovery; December 15, 2007, as the deadline for AVX to submit expert report(s); January 15, 2008, as the deadline for Cabot to submit expert report(s); March 1, 2008, as the deadline to complete expert discovery; and March 31, 2008, as the deadline to file dispositive motions.

On November 7, 2007, the court extended fact discovery to December 15, 2007.  The court did not otherwise alter the existing schedule.  The foregoing extensions and delays resulted from requests on the part of both AVX and Cabot.

On October 18, 2007, the court allowed AVX's motion to designate a new expert, Steven Schwartz ("Schwartz"), in lieu of a prior expert who, because of medical issues, was unable to

---

[3]  The motion did not address the Rule 26(a)(1) initial disclosures.

travel to view AVX's manufacturing facility in the United Kingdom. Cabot opposed the motion by proposing that AVX be bound to the prior expert's affidavit testimony. The court dismissed the concern as "quibbling over an otherwise meritorious motion." Cabot's failure to designate a Rule 30(b)(6) deponent to address three topics in a deposition notice also resulted in a further deposition and payment of reasonable expenses on the part of Cabot.

On the other hand, AVX's motion for sanctions (Docket Entry # 105) was filed without good faith negotiations to resolve the dispute. On January 17, 2008, the court summarily denied AVX's motion to extend case management deadlines including the deadline to file AVX's expert report. AVX's February 8, 2008 motion (Docket Entry # 97) seeking to avoid the December 15, 2007 deadline for filing expert report[s] was also not well taken. (Docket Entry # 104; "[t]his motion is the latest effort by [AVX] to circumvent the discovery schedule ordered by the court"). The court also denied AVX's February 2, 2008 motion to stay, i.e., extend, the March 1, 2008 deadline for expert depositions. (Docket Entry # 98, Feb. 15, 2008 Order).

The majority of the remaining discovery motions filed by the parties concerned legitimate, non-frivolous contentions. Cabot's earlier dispositive motions (Docket Entry ## 5 & 32) likewise presented reasonable, albeit ultimately unsuccessful, arguments.

On December 5, 2007, Cabot took the Rule 30(b)(6) deposition

6

of Peter Collis ("Collis"), AVX's Rule 30(b)(6) deponent.  One of the designated topics of the Collis deposition was damages.[4] Collis proved unable to articulate the exact method of calculating damages.  He did, however, inform Cabot that monetary damages would consist of a comparison of the market price of material and what AVX paid for material under the agreement. Collis also identified the materials as flake tantalum and nodular tantalum.[5]  According to AVX, at the end of the

---

[4]  The notice reads, in part, as follows:

Any damages that AVX claims to have sustained on account of the conduct alleged in the Complaint, including but not limited to the complete nature and amount of such damages, and the precise means by which AVX calculated such damages.

(Docket Entry # 124, Ex. 2).

[5]  The colloquy was as follows:

Q.  What damages has AVX sustained as a result of the conduct of Cabot that is alleged in the Complaint in this matter?
A.  That is being calculated by our outside expert.
Q.  Has AVX sustained damages?
A.  Yes.
Q.  Do you have any understanding right now of the monetary value of those damages?
A.  We have monitored the market price of material and compared that with what we ended up paying in the contract when we used the material as against what the market price was at the time, and passed that to our expert.
Q.  How would you go about calculating AVX's damages in this matter?
A.  How would I go about calculating . . . . Basically, we've left that with our expert to come up with that calculation . . . ..
Q.  A moment ago, you said that AVX monitored market price for materials.
A.  Yes.
Q.  And compared those against what AVX paid to Cabot under the 2001 supply agreement; was that accurate?
A.  That is accurate.

deposition AVX's counsel asked Cabot's counsel to confirm that the court's extension of fact discovery to December 15, 2007, also extended the deadline for submission of expert reports. Cabot rejected the understanding, according to AVX.

AVX submitted an expert report by Schwartz on December 15, 2007. The report, however, did not contain a calculation of AVX's damages. Cabot served its expert report on January 15, 2008, noting that AVX had not provided an expert analysis of damages.

On February 8, 2008, AVX filed a motion seeking leave to file a substitute expert report. AVX pointed out that the December 15, 2007 report was incomplete because it did not include a discussion of damages. The court denied the motion given the untimeliness of a substitute report but allowed AVX to file an addendum limited to issues raised by the additional discovery allowed by this court on February 15, 2008.

Cabot deposed Schwartz on February 19, 2008. He testified that he had consulted with AVX's counsel "on some issues involving damages questions" but had not been asked to issue an opinion. (Docket Entry # 124, Ex. 4). AVX likewise acknowledges

---

Q.  What materials?
A.  For all the materials.  For flake, because we could tell from the MFN agreement that Cabot was selling flake at lower prices, which we assumed was then the market price, outside of the contract.  For nodular that we were buying from Starck or Showa Cabot or Ninxia . . . .

(Docket Entry # 124, Ex. 3).

that "Schwartz is not offering any opinions in this case as to the amounts of damages suffered by AVX in this case." (Docket Entry # 121, ¶ 42).

The deadline for expert discovery expired on March 1, 2008. Cabot filed a timely motion for summary judgment. On April 14, 2008, AVX filed an opposition to Cabot's LR. 56.1 statement that included the supplemental response to the damages interrogatory.

The supplemental response (Docket Entry # 121, Ex. 2) bifurcates damages into KTaf damages and nodular damages. With respect to the former, AVX states that, "But for the Supply Contract, AVX would not have purchased KTaf from Cabot." (Docket Entry # 121, Ex. 2). "Instead, AVX would have purchased finished nodular products from other suppliers at prices less than the combined cost of the purchase price of KTaf and the tolling charges incurred for that KTaf." (Docket Entry # 121, Ex. 2). With respect to nodular damages, AVX explains that "but for the Supply Contract AVX could have purchased the same amounts of nodular products as purchased under the Supply Contract but at lower prices." (Docket Entry # 121, Ex. 2). The supplemental response also calculates damages under a twofold analysis using the "best available alternative" and a "lower priced alternative pricing." (Docket Entry # 121, Ex. 2).

Cabot propounded the first set of interrogatories containing the damages interrogatory to AVX in December 2006. The interrogatory asked AVX to "state all of the damages that AVX

9

claims to have sustained as a result of" Cabot's misconduct "including . . . but not limiting your answer to, the types or elements of damages sustained by AVX, the amount of damages sustained by AVX, and the precise method by which AVX calculates its damages." (Docket Entry # 124, Ex. 1). AVX answered the damages interrogatory in February 2007 with the response that it "has not yet calculated its damages." (Docket Entry # 124, Ex. 1). In April 2007, Cabot moved to compel more substantive responses to a number of the interrogatories including the damages interrogatory. In opposition to the motion to compel and without formally supplementing the damages interrogatory, AVX explained the general framework for calculating damages as the difference between what AVX paid under the agreement and the fair market price of the products.[6]

---

[6]  The opposition reads as follows:

AVX stands by its response that it has not yet calculated its damages. It is premature for AVX to assert "all" of its damages. *AVX has been damaged by the excess of the amounts paid under the January 2001 Supply Agreement over the term of that agreement over the fair market prices of those products over the term of that agreement*. AVX intends to prove its damages at trial. These calculations cannot be made at this preliminary stage of this litigation. AVX is mindful of its obligations under FRCP 26(e) regarding supplementation of answers to interrogatories.

(Docket Entry # 59) (emphasis added). The foregoing framework is similar to that depicted by Collis at the December 5, 2007 deposition.

DISCUSSION

Cabot argues that the supplemental response to the damages interrogatory is untimely.  It accurately points out that AVX did not supplement the damages interrogatory before the deadlines for fact and expert discovery and submission of expert report[s].[7] The deadline for dispositive motions also passed before AVX submitted the supplemental response on April 14, 2008, as part of AVX's opposition to Cabot's summary judgment motion.

AVX asserts that Cabot has known about the methodology for calculating damages since the April 2007 response to the motion to compel.  Collis also confirmed this methodology at the December 5, 2007 deposition.  The disclosed methodology consists of the price AVX paid for the material[s] under the agreement and the fair market value of the material[s] that AVX would have purchased in the absence of the agreement.  Rule 26(a)(1)(A)(iii) requires a computation of damages and the damages interrogatory required an amount of damages.  AVX, however, did not calculate damages using the disclosed methodology or a similar methodology until April 14, 2008, when it filed the supplemental answer to the damages interrogatory as part of the opposition to Cabot's summary judgment motion.  In addition to performing the calculations, the supplemental answer sets out the aforementioned

---

[7]  Moreover, Collis testified that AVX's expert would calculate the damages whereas Schwartz stated that he had not been asked to calculate damages.  Schwartz's December 2007 report does not contain a discussion of damages.

11

methodology in far greater detail.

AVX explains that it did not supplement the damages interrogatory at an earlier date because it was confused about the deadline for submitting an expert report[8] and because Cabot had not provided all of the information necessary to perform the calculations. As explained by AVX, it was not until a March 31, 2008 supplemental production and an April 3, 2008 Rule 30(b)(6) deposition that Cabot provided certain records and information required to perform a complete calculation of AVX's damages. The information at issue concerns sales data of Showa from January 1, 1996 through January 1, 2001 (Docket Entry # 100, p. 4; Docket Entry # 93, Ex. B, ¶¶ 1-3) as well as additional sales documents of Showa for the 2001 to 2003 time period.

In seeking to invoke the sanction of striking the supplemental interrogatory answer and precluding AVX from relying on any facts in the interrogatory, Cabot relies on AVX's failure to comply with Rule 26(a) and Rule 26(e), Fed. R. Civ. P. ("Rule 26"), and the provisions of Rule 37(c)(1), Fed. R. Civ. P. ("Rule 37"). Accordingly, this court turns to these rules.

The deadline for the Rule 26(a)(1)(A) disclosures expired no later than 120 days after December 31, 2005. Rule 26(a)(1)(A)(iii) provides that "a party must, without awaiting a

---

[8] As noted by the court, the December 15, 2007 submission of the expert report "is at odds with [AVX's] purported belief that the filing deadline had been extended." (Docket Entry # 104).

discovery request, provide to other parties . . . a computation
of each category of damages claimed by the disclosing party."
See Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2nd Cir.
2006) ("Rule 26(a) requires a party to provide a computation of
any category of damages voluntarily, i.e., 'without awaiting a
discovery request'");  Morrison Knudsen Corporation v. Fireman's
Fund Insurance Co., 175 F.3d 1221, 1229 (10th Cir. 1999) (a
"party must automatically disclose 'a computation of any category
of damages claimed' and must produce for inspection all materials
on which it bases its computation"); Clayman v. Starwood Hotels &
Resorts Worldwide, 343 F.Supp.2d 1037, 1047 (D.Kan. 2004) (under
Rule 26(a)(1), a party must "disclose its computation of damages
without waiting for a discovery request").  "[B]ased on the
information then reasonably available to it," a party must make
the initial disclosures irrespective of whether "another party
has not made its disclosures."  Rule 26(a)(1)(E), Fed. R. Civ. P.

     Rule 26(e) imposes a duty to supplement a Rule 26(a) initial
disclosure or a response to an interrogatory "in a timely manner
if the party learns that in some material respect the disclosure
or response is incomplete or incorrect."  Rule 26(e), Fed. R.
Civ. P.  Simply put, a party must "supplement or correct its
disclosure upon learning that it is materially incomplete or
incorrect." Morrison Knudsen, 175 F.3d at 1229 n. 2 (discussing
duty to disclose damages calculation).  Likewise, "a party must
'supplement its answers to interrogatories if the party learns

that the response is in some material respect incomplete or
incorrect and the other party is unaware of the new or corrective
information.'" Colon-Millin v. Sears Roebuck De Puerto Rico,
Inc., 455 F.3d 30, 37 (1st Cir. 2006).

The required Rule 26(e) supplementation "should be made at
appropriate intervals *during the discovery period*." Rule 26(e),
Advisory Committee Note, 1993 Amendments (emphasis added); see
Goeken v. Wal-Mart Stores, Inc., 2002 WL 1334855 at * 5 (D.Kan.
May 16, 2002) ("[p]arties have a duty to supplement their initial
disclosures and discovery responses at appropriate intervals
during the discovery period"). Furthermore, the duty to
supplement is a continuing duty and a "party may not free itself
of the burden to fully comply" by placing "a heretofore
unrecognized duty of repeated requests for information on its
adversary."[9] Arthur v. Atkinson Freight Lines Corporation, 164
F.R.D. 19, 20 (S.D.N.Y. 1995) (discussing duty to supplement
under Rule 26(e)); 6 James Wm. Moore Moore's Federal Practice §
26.131[3] (2008). That said, the duty to supplement only applies
"if the additional or corrective information has not otherwise
been made known to the other parties during the discovery
process." Rule 26(e)(1)(A), Fed. R. Civ. P.

It is true that AVX provided Cabot with a general framework
for the calculation of damages in the April 2007 opposition to

---

[9] Accordingly, AVX's waiver argument (Docket Entry # 125,
n. 7) is misplaced.

the motion to compel as well as during the Collis deposition.
(Docket Entry # 59).  The opposition and the deposition
testimony, however, did not contain a computation of damages as
required under Rule 26(a)(1)(A)(iii).  In fact, AVX did not
disclose a Rule 26(a) computation of damages until April 14,
2008.

As previously noted, Rule 26(e) requires AVX to supplement
an initial disclosure under Rule 26(a) "in a timely manner if
[AVX] learns" that the disclosure is incomplete or incorrect.
Supplementing the computation of damages or providing the
calculation for the first time after the close of fact and expert
discovery and after Cabot's expert noted the deficiency is not
timely.  The only exception consists of the calculations that
rely or depend upon information produced on March 31, 2008,
and/or at the April 3, 2008 deposition.  The reason for the
latter exception is because a party is "not expected to provide a
calculation of damages which . . . depends on information in the
possession of another party."  Rule 26(a), Advisory Committee
Notes, 1993 Amendments.  With respect to the information sought
by AVX and produced on March 31, 2008, and at the April 3, 2008
Rule 30(b)(6) deposition, therefore, there is no violation of
Rule 26(a)(1)(A)(iii) or Rule 26(e).

The supplemental answer to the damages interrogatory was
also untimely except for the amount of damages based upon the
recently produced information.  Propounded in December 2006, the

15

interrogatory asked for a statement of "the amount of claimed damages" and the "precise method" of calculation.  AVX answered the interrogatory in February 2007 by stating that it had not yet calculated its damages.  (Docket Entry # 124, Ex. 1).  At a minimum, plaintiffs learned that the damages interrogatory was "incomplete or incorrect," Rule 26(e), Fed. R. Civ. P., in April 2007 when Cabot moved to compel AVX to respond "fully and substantively to Cabot's interrogatory concerning AVX's alleged damages."  (Docket Entry # 57, p. 15).  Indeed, AVX acknowledged at the time an awareness of "its obligations under FRCP 26(e) regarding supplementation of answers to interrogatories." (Docket Entry # 59).

The deadlines for fact and expert discovery expired prior to the time AVX submitted the supplemental answer to the damages interrogatory thereby leaving Cabot without an opportunity to explore the basis for the calculations or to accurately gauge the monetary exposure it faced in this action and, as a result, the amount it needed to expend to defend against the accusations.  On January 15, 2008, Cabot's expert report pointed out the absence of an expert analysis relating to damages.  The requested amount of damages in the interrogatory was not "otherwise . . . made known," Fed. R. Civ. P. 26(e), to Cabot until the April 14, 2008 filing.  Accordingly, with one exception, the supplemental damages interrogatory answer produced on April 14, 2008, in conjunction with the filing of AVX's opposition to Cabot's

summary judgment motion was not made "in a timely manner" within the meaning of Rule 26(e).

The exception arises from the information AVX obtained only recently from Cabot.  Because AVX did not have the information until March 31 and April 3, 2008, it could not provide an amount of damages based on this information until that time. Accordingly, with respect to calculations in the supplemental damages interrogatory that rely on the previously undisclosed information produced by Cabot on March 31, 2008, and/or during the April 3, 2008 Rule 30(b)(6) deposition, AVX supplemented the answer to the damages interrogatory "in a timely manner" two weeks later on April 14, 2008.[10]

Rule 37(c)(1), Fed. R. Civ. P. ("Rule 37(c)(1)"), enforces the disclosures required under Rule 26(a).  Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004); Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo, 248 F.3d 29, 33 (1st Cir. 2001) (Rule 37(c)(2) sanction "is a self-executing sanction for failure to make a disclosure required by Rule 26(a)").  It also enforces the duty to supplement prior answers to interrogatories under Rule 26(e).  See Zoltek Corporation v. U.S., 71 Fed.Cl. 160, 167 (Fed.Cl. 2006); Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) (prior to 1993 "adoption of Rule 37(c)(1), no rule

---

[10]  In the alternative, as discussed infra, there is substantial justification for the April 14, 2008 disclosure insofar as the calculations involve or depend upon the information produced or disclosed on March 31 and April 3, 2008.

17

specifically provided sanctions for the failure to supplement
discovery").

A party who breaches the duty to disclose a computation of
damages under Rule 26(a)(1)(A)(iii) and/or the duty to supplement
an interrogatory answer "may not use any undisclosed material as
evidence unless it proves that its failure to disclose was
harmless or substantially justified."[11] Morrison Knudsen, 175
F.3d at 1229 n. 2 (citing Rule 37(c)(1) in the context of a delay
in disclosing calculation of damages); accord Ortiz-Lopez, 248
F.3d at 33 ("[w]hat the district court must find under Rule 37(c)
is that the offending parties were not 'substantially justified'
in failing to disclose information required by Rule 26(a) or Rule
26(e) and that the failure to disclose was not harmless").  AVX
bears the burden of showing either a substantial justification or
that the delayed disclosure was harmless.  Wilson v. Bradlees of
New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001) ("the party
facing sanctions for belated disclosure" has the obligation "to
show that its failure to comply with the Rule was either
justified or harmless and therefore deserving of some lesser
sanction").

"A substantial justification is one that 'could satisfy a

---

[11] In pertinent part, Rule 37(c)(1) provides that, "If a
party fails to provide information . . . required by Rule 26(a)
or (e), the party is not allowed to use that information . . . at
a trial unless the failure was substantially justified or is
harmless."  Rule 37(c)(1), Fed. R. Civ. P.

reasonable person.'" <u>Pan American Grain Mfg. Co., Inc. v. Puerto Rico Ports Authority</u>, 295 F.3d 108, 117 (1st Cir. 2002) (interpreting prior, similar version of Rule 37). Substantially justified "does not mean 'justified to a high degree,' but only 'justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person.'" <u>Sheppard v. River Valley Fitness One, L.P.</u>, 428 F.3d 1, 12 (1st Cir. 2005).

AVX posits two excuses. The first excuse concerns the confusion regarding the date for the submission of expert reports. As previously indicated, the excuse is not well taken.[12] The second and more convincing explanation is because Cabot did not produce the information relative to certain sales data and pricing contained in Showa's records until March and April 2008. The inability of AVX to obtain the information produced on March 31, 2008, and at the April 3, 2008 deposition rises to the level of substantial justification for the failure to answer the damages interrogatory as well as to provide a supplemental Rule 26(a)(1)(A)(iii) calculation *as to this information*. It does not, however, provide substantial justification for AVX to avoid a calculation of damages based upon the information it had prior to the March 31, 2008 production and prior to the close of discovery.

Nor was the failure to provide a calculation of damages

---

[12]    See footnote eight.

based upon the information AVX had prior to the close of discovery harmless.  The late disclosure after the close of discovery leaves Cabot without the means to explore and challenge the basis of the recent calculations.  Both fact and expert discovery are closed thereby leaving Cabot in the prejudicial position of having to defend against the calculations without having the opportunity to explore and challenge the basis for the calculations.  Moreover, the Advisory Committee Notes to the 1993 Amendments to Rule 37(c) "suggest a fairly limited concept of 'harmless.'"  Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006) (discussing harmlessness "as a fairly limited concept").  The circumstances in the case at bar do not fall within the scope of that limited concept.  In short, AVX could have responded in a timely manner to the damages interrogatory and could have made a computation of damages as required under Rule 26(a)(1)(A) prior to the close of discovery with the information AVX had at that time.

Having found a violation of Rule 26(a)(1)(A) and Rule 26(e) relative to the information AVX had prior to the close of discovery, this court turns to the issue of what sanction to impose.  Notably, the 1993 amendments to Rule 37(c)(1) "'gave teeth to a significantly broadened duty' to comply with case management orders."  Primus v. U.S., 389 F.3d 231, 234 (1st Cir. 2004).  Likewise, the 1993 "changes to Rule 26(e) substantially expanded the duty to supplement."  Klonoski v. Mahlab, 156 F.3d

255, 268 (1st Cir. 1998). As explained repeatedly by the First Circuit, "the required sanction in the ordinary case is mandatory preclusion." Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) (discussing failure to disclose letters written by the plaintiff's wife to her sister); see also Pena-Crespo v. Commonwealth of Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005) ("'exclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)'"); Poulis-Minott v. Smith, 388 F.3d at 358 ("'[t]he required sanction in the ordinary case is mandatory preclusion'" of the expert testimony); Continental Coal, Inc. v. Cunningham, 2008 WL 1943954 at * 5 (D.Kan. April 28, 2008) (noting in the context of an untimely disclosure of damages that, "Unless a party shows that failure to comply with Rule 26(a) or 26(e)(1) . . . was substantially justified or harmless, the Court must exclude the undisclosed evidence at trial").

"In addition to or in lieu of [the preclusion] sanction," however, "the court . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) therefore tempers the mandate of exclusion by allowing "courts to excuse failures to disclose to some degree." Klonoski v. Mahlab, 156 F.3d at 269 (citing Rule 37(c)(1)'s language allowing another sanction "in lieu of" preclusion); see also Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este and Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006) (noting that "preclusion

is not strictly a mechanical exercise").

The broad range of sanctions available under Rule 37(c) allows a court "to best match the degree of non-compliance with the purpose of Rule 26's mandatory disclosure requirements." Ortiz-Lopez, 248 F.3d at 34. Pertinent factors to consider in assessing the appropriate sanction include "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects." Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003) (setting out these factors as a means to review the sanction imposed by the lower court). "Surprise and prejudice" are also "important integers" in the calculation. Id. In examining the range of sanctions, this court carefully balances "fairness to the parties with the need to manage crowded dockets." Id.

The history of this litigation does not weigh in AVX's favor. AVX filed the motion for sanctions (Docket Entry # 105) "without good faith negotiations towards resolving it." (Docket Entry # 105, March 21, 2008 Order). AVX's February 8, 2008 motion (Docket Entry # 97) was also not well taken. (Docket Entry # 104; "[t]his motion is the latest effort by [AVX] to circumvent the discovery schedule ordered by the court"). Moreover, the history of this litigation includes multiple extensions to complete discovery. See Primus v. U.S., 389 F.3d at 235 (noting, in the context of reviewing lower court's

22

imposition of Rule 37 sanctions, "that plaintiff had been granted multiple extensions to complete her discovery and expert designations").  Although AVX cooperated with discovery to a degree, Cabot legitimately sought to compel deficient disclosures in April 2007.

On the other hand, the delays in procuring another expert and amending the schedule in August 2007 were unavoidable. Considering the conduct in this case and having reviewed the proffered February 20, 2008 opinion in the state court action, see Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992) (conduct by attorney in previous cases relevant to deciding "whether to accept the attorney's explanation of why he failed to comply with Rule 26(e) in [the] current case"), this factor weighs against AVX.

AVX undoubtedly needs the challenged evidence.  To state the obvious, AVX needs the belated calculations to recover monetary relief.  This factor therefore undeniably favors AVX.  See Santiago-Diaz, 456 F.3d at 277 ("the plaintiff's need for expert testimony cuts in her favor").

Allowing supplementation after the filing of dispositive motions in this 2004 case, however, places Cabot in the difficult position of having to defend against the calculations and the amount of damages without being able to challenge and explore the calculations and the amount during fact and expert discovery. Although the option exists to reopen discovery and allow another

23

deposition of Collis, as suggested by AVX, the fact remains that Cabot expended time and expense briefing the summary judgment motion and a hearing is set for June 25, 2008.  See Primus v. U.S., 389 F.3d at 236 ("we cannot fault the court for considering the time and expense involved in the government's having prepared a dispositive motion").  Proffering the untimely calculations after the close of discovery also hampered Cabot's ability to judge its monetary exposure and marshal resources accordingly.  See Santiago-Diaz, 456 F.3d at 277 ("the plaintiff's foot-dragging in announcing her expert . . . deprived the defendants of the opportunity to depose him, . . . pursue countering evidence, or generally prepare their defenses").

Reopening discovery to reduce the prejudice to AVX would also further delay this 2004 case and alter the schedule for the summary judgment hearing.  See Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197-198 (1st Cir. 2006) (the "multiplicity of pertinent factors" includes an "assessment of what the late disclosure portends for the court's docket").  Although the absence of a trial date bodes in AVX's favor, fairness to Cabot militates against allowing AVX to proffer undisclosed information that Cabot repeatedly requested during discovery as a means to avoid summary judgment.  See Net 2 Press, Inc. v. 58 Dix Avenue Corporation, 266 F.Supp.2d 146, 161 (D.Me. 2003) ("[w]hile supplementation of interrogatory answers may be allowed under some circumstances, it should not be allowed after the filing of

dispositive motions and on the eve of trial" and "[i]t makes no sense . . . to allow the plaintiff to avoid summary judgment by placing the necessary information in an affidavit submitted in opposition to the defendants' motion for summary judgment").[13] Moreover, the surprise engendered by the supplemental response disclosed in response to the summary judgment argument on damages cannot be overlooked.

AVX's reliance on case law prior to the 1993 amendments and, in particular, the passage in Johnson v. H.K. Webster, 775 F.2d 1, 22-23 (1st Cir. 1985), emphasizing the need for "evasion or concealment" to impose the sanction of excluding evidence, is misplaced. The First Circuit in Klonski cautioned against relying on pre-1993 case law and cited Webster as an example. Klonoski v. Mahlab, 156 F.3d at 269 n. 5.[14]

_____

[13]  While this court recognizes that disclosure on the eve of trial is more prejudicial than a disclosure in this case where there is no trial date, the conduct in this case involves a damages interrogatory served in December 2006 and a substantive and detailed answer produced for the first time 16 months later after the close of discovery and in opposition to a summary judgment motion.

[14]  The complete passage in Klonski explains that the new Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." Klonoski v. Mahlab, 156 F.3d at 269.  The footnote following this statement cautions against relying on caselaw predating 1993 and cites the passage in the Webster case relied upon by AVX:

For this reason, pre-1993 cases analyzing the sanction issue under the pre-amendment rubric retain only limited authority in this post-amendment era.  See, e.g., . . . Johnson v.

Finally, except for the recently produced information, AVX had ample time prior to the close of discovery in this four year old case to calculate its damages and provide an amount based upon a precise method, as required by the December 2006 interrogatory.  See generally Thibeault v. Square D Company, 960 F.2d 239, 247 (1st Cir. 1992) ("[w]hen supplementation finally occurred, the interrogatories were almost two and one-half years old, the case was fast approaching its third birthday, and the accident was nearing its sixth anniversary").  Thus, the only legitimate justification for the late disclosure results from the recently produced information on March 31 and April 3, 2008.  See Macaulay v. Anas, 321 F.3d at 51 (in answering question of what sanction to impose, court may consider inter alia "the justification (if any) for the late disclosure").  With respect to the information AVX did not obtain until the March 31, 2008 production and the April 3, 2008 deposition, therefore, AVX may use that information as a basis to calculate damages.  Thus, consistent with the ruling made by the district judge (Docket Entry # 104), this court will strike the supplemental answer except for the portion that relies on information recently produced by Cabot.  See, e.g., Sheek v. Asia Badger, Inc., 235

---

H.K. Webster, Inc., 775 F.2d 1, 8 (1st Cir. 1985) (requiring a "balancing" of competing interests and requiring "some evasion or concealment, intentional or not, on the part of the litigant offering the evidence").

Klonoski v. Mahlab, 156 F.3d at 269 n. 5.

F.3d 687, 694 (1st Cir. 2000) (upholding sanction striking "only those portions of [the expert's] testimony based on" the undisclosed information); accord Ortiz-Lopez, 248 F.3d at 35 (paraphrasing Sheek in parenthetical); MicroStrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1357 (Fed.Cir. 2005) (upholding exclusion of evidence of non-expert damages because proponent failed to respond to damages interrogatory during discovery).

### CONCLUSION

For the foregoing reasons, the motion to strike (Docket Entry # 124) is **ALLOWED** in part and **DENIED** in part.  The supplemental damages interrogatory in its present form is stricken.  To the extent consistent with the above discussion, AVX may file a motion for leave to file, see LR. 7.1(b)(3), a revised answer to the damages interrogatory based only on the information recently obtained from Cabot in March and April 2008.


    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

27