UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVX CORPORATION<br>and AVX LIMITED,<br><br>        Plaintiffs,<br><br>v.<br><br>CABOT CORPORATION,<br><br>        Defendant. | CIVIL ACTION NO. 04-10467-RGS<br><br>**Leave to File Granted<br>on June 24, 2008** |

## DEFENDANT CABOT CORPORATION'S
## REPLY MEMORANDUM IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Defendant Cabot Corporation ("Cabot") respectfully submits this Reply Memorandum in Support of its Motion for Summary Judgment on the Complaint and Jury Demand ("Complaint") of Plaintiffs AVX Corporation and AVX Limited (collectively, "AVX"), filed on March 31, 2008 (the "Motion") (Doc No. 109). Cabot's Reply Memorandum addresses various specific arguments and assertions contained in AVX's Memorandum in Opposition to Cabot's Motion, filed on April 14, 2008 (the "Opposition") (Doc. No. 120). AVX's Opposition ignores or misconstrues relevant precedent, mischaracterizes the facts (including the sworn testimony of its own employees), and relies upon previously undisclosed and inadmissible evidence. For these reasons and others, which are discussed more fully below, Cabot's Motion should be allowed.

**Argument**

I. AVX'S TYING CLAIM FAILS BECAUSE AVX MUST, BUT CANNOT, PROVE THAT CABOT FORCED OR COERCED AVX INTO PURCHASING NODULAR POWDER.

The central premise of AVX's Opposition is that to prevail on its *per se* tying claim against Cabot under federal law, AVX *is not* required to prove that it actually was forced or coerced by Cabot to purchase Cabot's "non-flake" or "nodular" tantalum powder in order to obtain access to Cabot's "flake" powder. *See, e.g.,* Opposition at 3 ("Nowhere in the governing law of this Circuit is there any requirement, or even mention, of 'coercion.' The First Circuit has articulated the binding elements of a *per se* tying case and has made clear that such a concept is not part of a plaintiff's case."). AVX takes the position, instead, that an unlawful tying arrangement is established merely because "the Supply Agreement did, in fact, require AVX to purchase both flake and non-flake products." *Id.* at 8.

AVX is wrong. "[T]o establish that two products are in fact 'tied', a plaintiff must show something more than just that two products were sold together in the same package." Tic-X-Press, Inc. v. Omni Promotions Co., 815 F.2d 1407, 1415 (11th Cir. 1987). Rather, as the First Circuit held in Data General Corp. v. Grumman Systems Support Corp.:

> [p]roof of a tying arrangement generally requires evidence that the supplier's sale of the tying product is conditioned upon the *unwilling purchase* of the tied product from the supplier or an *unwilling promise* not to purchase the tied product from any other supplier. *See, e.g.,* Jefferson Parish, 466 U.S. at 12, 104 S. Ct. at 1558 ("[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product *to force* the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms."); Wells Real Estate, 850 F.2d at 814 ("Tying arrangements involve the use of leverage over the market for one product ... to coerce purchases of a second product ...."). In the absence of an explicit tying agreement, conditioning may be inferred from evidence indicating that the supplier has actually coerced the purchase or non-purchase of another product.

36 F.3d 1147, 1180 (1st Cir. 1994) (emphasis added); *see also* Borschow Hosp. and Med. Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 18 (1st Cir. 1996) ("Coercion is an *essential element* of any tying arrangement, *i.e.*, forcing the purchaser or lessor to take the unwanted tied product along with the tying product.") (internal citations omitted) (emphasis added).

The requirement that the plaintiff prove that it was forced or coerced by the seller into purchasing the allegedly tied product recently was reaffirmed by the Supreme Court in Illinois Tool Works, Inc. v. Independent Ink, Inc., 547 U.S. 28 (2006). It said:

> [o]ur cases have concluded that the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.

*Id.* at 34-35 (*quoting* Jefferson Parish Hospital Dist. No. 2 v. Hyde, 466 U.S. 2 (1984)).

The holdings of Data General, Borschow and Illinois Tool Works are clear. It is not enough that an allegedly unlawful contract simply provide for the purchase and sale of multiple products. Where, as here, it is undisputed that the contract does not explicitly condition the buyer's purchases of the allegedly "tied" product to its purchases of the purported "tying" product,[1] federal law requires proof that the seller "actually coerced" or "force[d]" the buyer into purchasing the tied product.[2] Data General, 36 F.3d at 1180; Borschow, 96 F.3d at 17; Illinois Tool Works, 547 U.S. at 34-35.

---

[1] AVX admits in its Opposition that the 2001 Supply Agreement does not explicitly condition AVX's purchases of nodular tantalum powder to its purchases of flake tantalum powder. *See* Opposition at 9 ("The fact that the agreement does not expressly state that AVX needed to purchase nodular if it wanted flake is of no moment.").

[2] AVX tries to get around the clear holdings of Data General, Borschow and Illinois Tool Works in its Opposition by attempting to draw a distinction, for antitrust purposes, between the concept of "conditioning" and the concept of "force" or "coercion." *See* Opposition at 4 ("Under governing law, all AVX must demonstrate is an act of conditioning the purchase of one product on the purchase of another, not whether the plaintiff is coerced into buying the product or whether it wanted the product."). Once again, AVX is incorrect. Evidence of force or coercion is a "proxy for determining whether the seller has conditioned the tying product on acceptance of the tied product." Virtual Maint., Inc. v. Prime Computer, Inc., 957 F.2d 1318, 1324 (6th Cir. 1992), *judgment vacated on other grounds*, 506 U.S. 910 (1992), *remanded to* 995 F.2d 1324 (6th Cir. 1993), *withdrawn and superseded by* 11 F.3d 660, 667 (6th Cir. 1994) ("All other aspects of our holdings in Virtual I are reaffirmed and reinstated."); *see*

In this case, it is undisputed that, rather than being forced or coerced into purchasing Cabot's nodular tantalum powders, it was AVX's number "1" priority in its contract negotiations with Cabot in 2000 to obtain at least "10 to 15 [metric] tons" of nodular powder from Cabot. Defendant Cabot Corporation's Statement of Material Facts In Support of its Motion for Summary Judgment, dated March 31, 2008 ("SOF"), ¶ 15. Indeed, AVX actually sought to purchase *more*, not less, nodular powder from Cabot than Cabot was able to sell. *Id.*, ¶ 18. These facts are established not only by the sworn testimony of AVX's own witnesses, but also by the terms of the 2001 Supply Agreement, which provide, in part, that AVX would purchase an *additional* 5,000 pounds of "nodular" powder from Cabot in 2001, over and above its minimum purchase commitments, on an "[a]s [a]vailable" basis. *See* SOF, ¶ 19.

In contrast, AVX cites in its Opposition only two items of "evidence" that allegedly support the proposition that Cabot "use[d] its monopoly in flake tantalum to force [AVX] to

---

*also* Anderson Foreign Motors, Inc. v. New England Toyota Distributors, Inc., 475 F. Supp. 973, 988 (D. Mass. 1979) (coercion can have relevance "to determining whether a tie-in exists, that is, whether the seller has conditioned the sale of one product on the purchase of another."). Without such evidence, there can be no finding of unlawful "conditioning." As the First Circuit stated in Data General:

> whether the conditioning is explicit or implicit, we will not consider the anti-competitive effects of a tie to be unreasonable *per se* unless there is evidence that the supplier of the tying product has actually used its market power to impose the condition.

36 F.3d at 1180.

AVX also makes the further erroneous argument that, notwithstanding the holdings of Data General, Borschow and Illinois Tool Works, this court forever relieved AVX of the duty to prove that "it was coerced into buying product that it did not want in order to establish a *per se* illegal tying case" when the court denied Cabot's prior Motion for Judgment on the Pleadings in July 2006. *See* Opposition at 1, 4. The court did nothing of the sort. Rather, in denying Cabot's Motion for Judgment on the Pleadings, the court stated that it:

> agrees with AVX's substantive point that Judge van Gestel's contractual ruling [in *Cabot/AVX I*] – that no unlawful acts or threats by Cabot rendered AVX's execution of the 2001 Supply Agreement involuntary – is not identical to the issue of "forced choice" raised by AVX's federal antitrust tying claim.

Memorandum and Order, dated July 21, 2006 (Docket No. 41), at 3 (citations omitted). Thus, as expressly recognized by the court, AVX still must prove that it was the victim of a "forced choice" in order to prevail on the tying claim asserted in this action. *See, e.g.,* Illinois Tool Works, 547 U.S. at 34-35. AVX's inability to do so is fatal to its case.

purchase over a five-year period non-flake products that it was otherwise not prepare [sic] to commit to purchasing." Opposition at 11-13. Neither, however, is sufficient to sustain AVX's burden of proof.

The first is an excerpt from the Rule 30(b)(6) deposition testimony of Mr. Peter Collis, the General Manager of AVX's Tantalum Division, in which Mr. Collis simply identified the non-flake tantalum powders that AVX *claims* it did not wish to purchase *under a multi-year agreement*. Opposition at 12. Mr. Collis' testimony says and proves nothing, however, with respect to whether AVX was *forced* to purchase those products by Cabot as a condition of purchasing other products. *Id.*

The second is a single statement in an Affidavit of John Chapple, AVX's retired purchasing/materials manager, to the effect that "[i]n the summer of 2000 Hugh Tyler informed me that Cabot would not provide any product to AVX in 2001 unless AVX entered into a five year take or pay agreement to purchase minimum quantities of both flake and nodular products at fixed prices" – also fails to support AVX's contention that Cabot's sales of those products were conditioned on one another. To the extent that it does, it is directly contrary to Mr. Chapple's prior sworn deposition testimony in this action and, therefore, inadmissible. *Compare* Affidavit of John Chapple, dated April 8, 2008 (Doc. No. 117), ¶ 22, *to* Deposition of John Chapple, dated August 4, 2006 at 14-33 (relevant excerpts of which are appended to the Affidavit of Julie C. Rising, dated May 9, 2008 ("Rising Aff. II") at Ex. 7) (Doc. No. 128); *see* Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

Simply put, AVX has presented no competent evidence that Cabot forcibly tied, or even had any need to forcibly tie, sales of its flake and nodular powders together. Accordingly, Cabot's Motion should be allowed.

II. **AVX'S TYING CLAIM FAILS BECAUSE AVX'S CORPORATE DESIGNEES HAVE ADMITTED UNDER OATH THAT CABOT'S ALLEGED "CONDITIONING" WAS LIMITED TO ITS INSISTENCE IN 2000 THAT, IF AVX WISHED TO CONTINUE PURCHASING *ANY* TANTALUM PRODUCTS FROM CABOT IN THE FUTURE, AVX HAD TO SIGN A BINDING, MULTI-YEAR SUPPLY CONTRACT EXTENDING BEYOND 2001.**

AVX's designated witnesses under Fed. R. Civ. P. 30(b)(6), Mr. Peter Collis and Mr. Kurt Cummings, testified under oath that AVX's actual claim in this case is not that Cabot tied AVX's purchases of flake tantalum powder to its purchases of nodular tantalum powder, but rather that Cabot coerced AVX into purchasing *any tantalum powders* in years beyond 2001 in contravention of the parties' pre-existing letters of intent. SOF, ¶¶ 30-31, 34. That Rule 30(b)(6) testimony is fatal to AVX's tying claim because Cabot's purported conditioning of AVX's purchases of flake and nodular tantalum products in the year 2001 on AVX's commitment to purchase *more* flake and *more* nodular tantalum products in the years 2002-2005 does not and cannot satisfy the legal prerequisite that the "tying and the tied products" must be "two distinct products." Data General, 36 F.3d at 1178 ("Section 1 of the Sherman Act prohibits a seller from 'tying' the sale of *one product* to the purchase of a *second product* if the seller thereby avoids competition on the merits of the 'tied' product."). AVX does not dispute this legal argument (with which AVX's economic expert, Dr. Steven Schwartz, agrees) anywhere in its Opposition. SOF, ¶ 35.

AVX takes another approach. Rather than explain the sworn testimony of its Rule 30(b)(6) witnesses, AVX seeks to skirt around that testimony by asserting that Cabot simply failed to ask the right questions about Cabot's alleged "conditioning" at the depositions of

AVX's witnesses and, therefore, failed to elicit the true basis for AVX's tying claim. *See* Opposition at 10-11.

AVX's argument is wholly disingenuous. Cabot noticed and took the depositions of AVX's Rule 30(b)(6) witnesses with respect to, *inter alia*, the "products or terms that AVX alleges it was forced to accept on account of 'Cabot's coercive strategies' as referenced in Paragraph 30 of [its] Complaint," which AVX expressly references in its Complaint as the *precise conduct* on which its tying claim is based. *See* Complaint, ¶ 38 ("When Cabot engaged in the conduct set forth in ¶¶ 23-32, above, Cabot conditioned AVX's purchase of flake powders on its purchase of non-flake powders."). AVX's Rule 30(b)(6) witnesses consistently testified that AVX's *only* complaint in this action is that AVX allegedly "was forced by Cabot … to sign a contract or a binding contract for delivery of products beyond the calendar year 2001." SOF, ¶¶ 31, 34. They cited no other acts of alleged tying or conditioning, even when specifically asked to do so.[3] AVX remains bound by its allegations in this case, and by the testimony of its employees in their capacity as AVX's corporate designees under Rule 30(b)(6). *See, e.g.,* Schott Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (quotation marks omitted); Berwind Prop. Group Inc. v. Envtl. Mgmt. Group, Inc., 233 F.R.D. 62, 65 (D. Mass. 2005) (a corporate designee under Rule 30(b)(6) "speaks for (and binds) the corporation"). Accordingly, Cabot's Motion should be allowed.

---

[3] When asked in his capacity as AVX's Rule 30(b)(6) designee whether "there [is] more to AVX's complaint in this case" beyond AVX's claim that it allegedly was "forced by Cabot … to sign a contract or a binding contract for delivery of products beyond the calendar year 2001," Mr. Collis stated, without qualification, "No." SOF, ¶ 31.

III.  AVX'S TYING CLAIM FAILS BECAUSE THAT CLAIM, AS ARTICULATED BY AVX'S CORPORATE DESIGNEES, ALREADY WAS FULLY LITIGATED AND DECIDED IN *CABOT/AVX I*.

Cabot asserts in its Motion that AVX's actual claim in this case, as recently articulated by AVX's corporate designees under Rule 30(b)(6) (*i.e.*, that AVX was wrongfully coerced by Cabot into signing a binding, multi-year contract for the purchase of tantalum products for years extending beyond the parties' pre-existing letters of intent), is barred on *res judicata* grounds by the final judgment entered in the prior state court action titled Cabot Corp. v. AVX Corp., 448 Mass. 629 (2007) ("*Cabot/AVX I*"), in which AVX made, and lost, the same exact claim.  The only defense that AVX raises to this argument in its Opposition is that, "[w]hile claims of common law coercion are barred, this Court has already held that coercion in the sense of antitrust tying is not" when it decided Cabot's prior Motion for Judgment on the Pleadings. Opposition at 13.  That decision by the court, however, pre-dated AVX's recent disclosure that its purported "tying" claim against Cabot is based solely on Cabot's insistence during negotiations in 2000 on a multi-year commitment from AVX for all of the tantalum products that AVX wished to purchase, which is the *exact same* conduct that formed the basis for AVX's economic coercion claim in *Cabot/AVX I*.

Massachusetts law plainly holds that the doctrine of *res judicata* or claim preclusion "prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies." McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006) (*quoting* Bagley v. Moxley, 407 Mass. 633, 636 (1990)).  This is true "even though a party is prepared in [the] second action to present different evidence or legal theories to support his claim or seeks different remedies." Charlette v. Charlette Bros. Foundry, Inc., 59 Mass. App. Ct. 34, 44 (2003).  Because AVX's tying claim against Cabot in this case, as now

articulated, is the "same claim that was the subject of an earlier action between the same parties or their privies" in *Cabot/AVX I*, it is barred. McDonough, 452 F.3d at 16. Accordingly, Cabot's Motion should be allowed.

IV.   AVX'S PURPORTED TYING CLAIM WITH RESPECT TO KTAF FAILS BECAUSE NO SUCH CLAIM IS ALLEGED IN AVX'S COMPLAINT AND AVX'S OWN EXPERT ALREADY HAS ADMITTED THAT THE AVAILABLE EVIDENCE DOES NOT SUPPORT SUCH A CLAIM.

AVX makes a belated attempt to include semi-refined tantalum ore or "KTaF" as a product that Cabot purportedly tied to the sale of its flake tantalum powder. *See* Opposition at 4 n.3. This argument is a classic red herring. There is no allegation anywhere in AVX's Complaint that Cabot ever tied AVX's purchases of KTaF to anything. To the contrary, AVX's Complaint specifically alleges only that Cabot "conditioned AVX's purchases of flake powders on its purchase of non-flake *powders*," which, by definition, do not include raw materials such as KTaF. *See, e.g.,* Complaint, ¶ 38 (emphasis added). AVX cannot inject new claims into the case in an effort to avoid summary judgment. *See, e.g.,* Barber v. Verizon New England Inc., 2006 WL 3524465 at *7 (D.R.I. Dec. 6, 2006) ("Parties may not raise new claims in response to a motion for summary judgment."); Opals on Ice Lingerie v. Bodylines, Inc., 2002 WL 718850 at *4 (E.D.N.Y. Mar. 5, 2002) ("[C]ourts have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (quotation marks omitted).

Furthermore, AVX's economic expert, Dr. Steven Schwartz, acknowledged at his deposition in February 2008 that the evidence produced in this action causes him "no longer to make the assertion that [AVX's] purchases of flake were conditioned on [its] purchases of KTaF." Deposition of Dr. Steven Schwartz, dated February 19, 2008, p. 50 (true excerpts of

which are appended to this Reply at Tab 1). Thus, AVX also lacks sufficient evidence to support a tying claim with respect to KTaF. Accordingly, Cabot's Motion should be allowed.

V.  **AVX'S TYING CLAIM FAILS BECAUSE AVX'S PURPORTED EVIDENCE OF ITS ALLEGED DAMAGES IS UNTIMELY AND SHOULD BE DISREGARDED.**

Lastly, AVX attempts to avoid summary judgment on its tying claim due to its complete failure to offer evidence of any "injury in [its] business or property by reason of anything forbidden in the antitrust laws" by citing to its Further Supplemental Responses to Cabot's various discovery requests (the "Supplemental Responses"), which AVX served on April 14, 2008 (*i.e.*, more than four months after the close of discovery, and the same day on which AVX submitted its Opposition to Cabot's present Motion for Summary Judgment). *See* Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 815 (1st Cir. 1988). Cabot since has filed a Motion to Strike AVX's Supplemental Responses (Docket No. 124), the grounds for which will not be repeated here. It is sufficient for purposes of this Reply Memorandum to observe that AVX's Supplemental Responses are untimely, were filed in contravention of this court's prior directives, and should be disregarded on summary judgment. *See, e.g.,* Net 2 Press, Inc. v. 58 Dix Avenue Corp., 266 F. Supp. 2d 146, 161 (D. Me. 2003) ("While supplementation of interrogatory answers may be allowed under some circumstances, it should not be allowed after the filing of dispositive motions and on the eve of trial in the absence of extraordinary circumstances…").

## Conclusion

For the foregoing reasons, and for the reasons set forth in its original motion papers, Cabot respectfully requests that its Motion for Summary Judgment on AVX's Complaint in this action be granted in its entirety.

        CABOT CORPORATION

        By its attorneys,

        */s/ Brian A. Davis*
        Robert S. Frank, Jr. (BBO No. 177240)
            (rfrank@choate.com)
        Brian A. Davis (BBO No. 546462)
            (bad@choate.com)
        Julie C. Rising (BBO No. 666950)
            (jrising@choate.com)
        CHOATE, HALL & STEWART, LLP
        Two International Place
        Boston, Massachusetts 02110
        Tele: (617) 248-5000

Date:   June 24, 2008

4339387.1

-12-

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on June 24, 2008.

                                            */s/ Julie C. Rising*

4345449v1