# TAB 1

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-------------------------------------------------x

AVX CORPORATION and AVX LIMITED,

                Plaintiffs,

    - against -    Civil Action
                  No. 04-10467-RGS

CABOT CORPORATION,

                Defendant.

-------------------------------------------------x
                February 19, 2008
                10:50 a.m.


Videotaped Deposition of DR. STEVEN SCHWARTZ, an expert witness on behalf of the Plaintiffs herein, and held at the offices of Robinson & Cole, 120 Bloomingdale Road, White Plains, New York, before April Pearl Schirm, a Court Reporter and Notary Public of the State of New York.

Dr. Stephen Schwartz                              AVX Corporation and AVX Limited v. Cabot Corporation

```
                                                          Page 2
 1

 2    A P P E A R A N C E S :

 3         BODOFF & ASSOCIATES, LLP
               Attorneys for the Plaintiffs
 4             225 Friend Street
               Seventh Floor
 5             Boston, Massachusetts 02114-1812
           BY:  RICHARD A. GOREN, ESQ.
 6

 7
           CHOATE, HALL & STEWART, LLP
 8             Attorneys for the Defendant
               Two International Place
 9             Boston, Massachusetts 02110
           BY:  BRIAN A. DAVIS, ESQ.
10

11
      ALSO PRESENT:
12         JOE BARRION - VIDEOGRAPHER

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Dr. Stephen Schwartz                                    AVX Corporation and AVX Limited v. Cabot Corporation

Page 49

1               DR. STEVEN SCHWARTZ

2       Q.      Certainly.

3       A.      I'm sorry.  You are back to page 3?

4       Q.      Page 3 of your expert report.

5       A.      Okay.

6       Q.      And looking under your summary of
7   opinions, the first opinion, again, it states
8   that, in part, that Cabot has sold tantalum powder
9   pursuant to a long-term contract under which AVX's
10  ability to purchase patented flake tantalum has
11  been conditioned on purchases of processed
12  tantalum ore, KTaF, capital K, capital T, small A,
13  capital F, or K-salt, and non-patented nodular
14  tantalum.
15              We talked a moment ago about the
16  non-patented nodular tantalum.  Now, where did you
17  come to an understanding that Cabot conditioned
18  AVX's ability to purchase flake powder on AVX's
19  purchases of KTaF?
20      A.      Actually, as of the time that I wrote
21  this report, that was a conclusion based on --
22  largely on conversations with Mr. Collis and a few
23  documents.  Since that point, I've reviewed other
24  documents that lead me to modify that conclusion.
25      Q.      Modify it in what way?

Page 50

1              DR. STEVEN SCHWARTZ

2        A.   Well, I understand there is a legal
3   theory of a per se liability under tying that has
4   been or may be advanced by AVX that would still
5   argue that there has been conditioning.  However,
6   under the rule of reason theory, where there is
7   the explicit coercive element and the explicit
8   conditioning of purchases of flake on purchases of
9   tantalum ore, the subsequent evidence that I have
10  seen no longer supports that conclusion.
11       Q.   Meaning that you have seen evidence
12  since you wrote this report that causes you to
13  believe that Cabot did not condition AVX's
14  purchases of KTaF on -- I'm sorry.  Let me repeat
15  that.
16            You have seen evidence since you wrote
17  your report that causes you to believe that Cabot
18  did not condition AVX's purchases on flake -- of
19  flake on its purchases of KTaF?
20                 MR. GOREN:  I'm going to object.
21       You may answer.
22       A.   I'll say it slightly differently.
23            I have seen evidence that leads me no
24  longer to make the assertion that purchases of
25  flake were conditioned on purchases of KTaF.

Dr. Stephen Schwartz                                    AVX Corporation and AVX Limited v. Cabot Corporation

Page 51

1            DR. STEVEN SCHWARTZ

2       Q.   What evidence was that?

3       A.   There are materials that I have

4   reviewed subsequent to the preparation of this

5   report that discuss in more detail or in great

6   detail, rather, the issue surrounding the

7   purchases of KTaF, the reasons why AVX had to

8   purchase KTaF.

9            There may have been a coercive element

10  to those purchases but not a coercive element that

11  is linked to purchases of flake.  Rather, it has

12  to do with Cabot's inability to supply or

13  unwillingness to supply Showa Cabot with the KTaF

14  that was necessary for Showa to meet the needs of

15  AVX with respect to certain tantalum products.

16      Q.   Is it your understanding as of 2000,

17  2001 when AVX negotiated this supply agreement

18  with Cabot, that AVX, in fact, wished to purchase

19  KTaF from Cabot?

20      A.   My understanding is that Cabot took

21  the position that in order to protect its supply

22  chain, that it would be necessary for it to

23  purchase KTaF.  It did not wish to, in a business

24  sense, but felt that it was compelled to in order

25  to preserve the supply chain.  Although, it was