# Exhibit 1

Case 1:04-cv-10467-RGS     Document 139-3     Filed 06/30/2008     Page 1 of 7

{00027763.1}

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                              SUPERIOR COURT
                                                          CIVIL ACTION
                                                          NO. 05-3816-BLS1

AVX CORPORATION and AVX LIMITED,
                    Plaintiffs

                                                          NOTICE SENT
                                                          2/20/08
                    vs.                                   B.A.D.
                                                          C H S
CABOT CORPORATION,                                        J.S.U.B.
                    Defendant                             R.A.C.
                                                          R.D.S.
                                                          B.ASSOC.    (mm)

### MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION IN LIMINE AND DEFENDANT'S CROSS MOTION FOR SANCTIONS

This case is one of many that has arisen from disputes regarding the interpretation of the Supply Agreement for tantalum products entered into in 2001 between the plaintiff AVX Corporation ("AVX") and the defendant Cabot Corporation ("Cabot"). After the complaint and counterclaim were filed in 2005, the parties understood that there were two major issues to be resolved in this litigation, both revolving around the interpretation of the so-called Most Favored Nation ("MFN") provisions in the Supply Agreement, in which Cabot assured AVX that it would receive the same low prices for tantalum products as Cabot's most favored customers. One issue, already resolved through summary judgment, concerned whether Cabot had wrongfully excluded from the MFN price calculation a contract Cabot had with Vishay Corporation, a competitor of AVX. The second issue, yet to be resolved, concerns whether the MFN price calculation should be based on a "double customer" or a "single customer" approach. For purposes of this motion, this Court need not describe the meaning of these terms. It suffices that in January 2005, Cabot notified AVX that Cabot had erred in applying the MFN provision by using a "single customer" approach, and as a result had undercharged AVX for the tantalum sold under the Supply Agreement. Cabot in its counterclaim seeks reimbursement for the amount

overcharged.

The Supply Agreement limits AVX's entitlement to MFN benefits, however, to sales within Cabot's Base Capacity, which is defined as follows in the Supply Agreement:

> [A]s to tantalum powder the total number of pounds of tantalum powder shipped by [Cabot] in CY 2002 to all parties and ... as to tantalum wire the total pounds of tantalum wire shipped to all parties by [Cabot] in CY 2002 ....

Supply Agreement at § 3. Cabot's obligation to provide AVX with MFN benefits did not apply to "sales of tantalum powder or wire as a result of the expansion of [Cabot's] Base Capacity." Id. Section 2 of the Agreement gives what AVX contends is a right of first refusal to a share of the tantalum powder manufactured by Cabot in excess of Base Capacity. Section 2 provides in pertinent part:

> [I]f [Cabot] increases the actual manufacturing of its Boyertown, PA tantalum powder production facilities to more than its Base Capacity, as defined in Section 3, [Cabot] shall offer to [AVX] first such portion of the capacity for CY 2003, 2004 and 2005 in excess of its tantalum powder Base Capacity as is equal to (i) the total number of pounds of tantalum powder purchased by [AVX] during CY 2002, divided by (ii) the total number of pounds of tantalum powder shipped by [Cabot] from the Boyertown Facility during CY 2002. If [AVX] declines or [Cabot] and [AVX] do not reach an agreement with respect to such capacity within thirty (30) days after [Cabot] gives [AVX] written notice of its capacity expansion, [Cabot] shall be free to enter into negotiations and conclude transactions with third parties ("Third Party Expansion Sales"), provided that the terms of such third party transactions are not more favorable than the last terms offered by [Cabot] and rejected by [AVX].

Id. at § 2.

After discovery closed, during settlement discussions, Cabot informed AVX that there was a third issue to be resolved at trial – whether Cabot undercharged AVX for the amounts of tantalum powder purchased by AVX beyond Base Capacity. In the instant motion, AVX contends that Cabot should be barred from prosecuting this aspect of its counterclaim because it

both failed to air this claim until after discovery had closed and had failed during discovery to provide AVX with the documents and information it would need to investigate this claim. In essence, AVX contends that it was "blind-sided" by this new theory and that it would be fundamentally unfair to permit Cabot to prevail on it.

## DISCUSSION

This Court is not persuaded that AVX was completed "blind-sided" by the possibility that sales beyond Base Capacity would fall outside the MFN pricing rules. AVX plainly explored in discovery whether Cabot had exceeded Base Capacity in any of the years in question – 2003, 2004, and 2005. In AVX's Third Set of Interrogatories, served on September 29, 2006, AVX asked Cabot to identify its Base Capacity, and Cabot answered that its Base Capacity, as defined in the Supply Agreement, was 324,055 pounds of tantalum powder and 42,223 pounds of tantalum wire. In AVX's First Set of Requests for Admissions, served on August 17, 2006, AVX asked Cabot to admit that "[a]t no point during [the years 2003, 2004, and 2005] did Cabot offer to AVX any portion of any capacity in excess of Cabot's tantalum powder Base Capacity as defined in § 3 of the Supply Agreement." Cabot answered that, in each of these years, it did sell to AVX tantulum powder from its Boyertown Facility that was in excess of Base Capacity. Since the Supply Agreement excluded sales beyond Base Capacity from the MFN benefits, AVX should have recognized the possibility that there may be pricing consequence to these sales. Indeed, there is reason to believe that AVX recognized the possibility of such a pricing consequence because it directed Deloitte, Touche, who was conducting an audit of Cabot's sales and shipments on AVX's behalf, to verify the amount of Base Capacity (which depends on 2002 shipments) and Cabot's total amount of sales of tantalum powder and wire in 2003 and 2004.

While AVX from this information could have anticipated the possibility that Cabot would claim that it undercharged AVX for sales beyond Base Capacity, it is also true that Cabot did not articulate this theory of loss until after discovery had closed. Cabot argues that it did not become aware that it had undercharged sales beyond Base Capacity until its expert had commenced his analysis, which did not happen until discovery had been completed, and that it notified AVX's counsel of this new theory of loss even before its expert report had been completed. The issue, then, for this Court is whether AVX will suffer such unfair prejudice from the belated addition of this new theory of loss that fairness dictates that it be precluded.

This Court acknowledges that the manner in which Cabot belatedly raised this theory of loss has caused prejudice to AVX. In Cabot's Answers to AVX's Second Set of Interrogatories, dated July 14, 2006, Cabot refused to provide detailed information regarding shipments of tantalum for 2002, contending that such information was irrelevant, when such information was necessary for AVX to verify Cabot's assertion as to Base Capacity, which depends on shipment totals in 2002. Cabot has only recently provided that detailed information. However, while Cabot erred in initially denying this information, it is not too late for AVX to verify it. Deloitte Touche had access to shipment information during its audit, and expert discovery is still months away from being concluded.

The more consequential prejudice is that, by Cabot not raising this claim during discovery, AVX had no reason to seek discovery regarding its interpretation of the so-called right of first refusal in Section 2 of the Supply Agreement, and to explore the consequences of Cabot's alleged failure to grant AVX that right. This Court does not pretend to know precisely what additional discovery AVX would justly contend it needed, but it does recognize that AVX should

be entitled to have that discovery even though the fact discovery deadline has passed.

While acknowledging that AVX will be prejudiced to some degree if Cabot is permitted to prosecute this new theory of loss, this Court does not find that Cabot delayed giving notice of this theory in bad faith, for the purpose of denying AVX the opportunity for discovery. Nor does this Court find that the risk of prejudice to AVX outweighs the prejudice that Cabot would suffer if this theory of loss, which may involve millions of dollars in undercharges, were to be barred by the allowance of this motion. Therefore, AVX's motion *in limine* to bar this theory of loss is denied.

There, however, will be a price to Cabot for having articulated this theory of loss so belatedly. First, Cabot forthwith shall make available to AVX all the data it will need to verify the Base Capacity declared by Cabot, and to verify whether Base Capacity was exceeded in any of the years 2003-2005.[1] Second, AVX may re-open limited discovery regarding the right of first refusal, and may re-call Cabot's Rule 30(b)(6) designee to question him or her as to the meaning and operation of that provision. Cabot shall bear the costs of retaining the court reporter for that renewed deposition and for the costs of AVX's transcript. That deposition shall be conducted no later than April 30, 2008.

Since AVX had a good faith basis to bring this motion, Cabot's motion for sanctions is denied.

### ORDER

For the reasons detailed above, this Court **ORDERS** that:

---

[1] Since Base Capacity is measured by shipments in 2002, not sales, this will require disclosure of shipment data; it need not require the disclosure of sales data for 2002.

1. AVX's motion *in limine* to bar Cabot from prosecuting this new theory of loss is **DENIED**.

2. Cabot forthwith shall make available to AVX all the data it will need to verify the Base Capacity declared by Cabot, and to verify whether Base Capacity was exceeded in any of the years 2003-2005.

3. AVX may re-open limited discovery regarding the right of first refusal, and may re-call Cabot's Rule 30(b)(6) designee to question him or her as to the meaning and operation of that provision. Cabot shall bear the costs of retaining the court reporter for that renewed deposition and for the costs of AVX's transcript. That deposition shall be conducted no later than April 30, 2008.

4. AVX's and Cabot's expert disclosure shall be served no later than 30 days after the Deloitte Touche deposition or Cabot's Rule 30(b)(6) deposition, whichever comes later. Each expert shall serve an expert rebuttal, critiquing the other expert's report, no later than 30 days after the expert disclosure.

5. Once the expert rebuttals are served, counsel shall notify the Session Clerk so that a litigation control conference may be promptly conducted to establish a schedule leading to the trial of this action.

6. Cabot's motion for sanctions is **DENIED**.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　Ralph D. Gants
　　　　　　　　　　　　　　　　　　　　　　　　　Justice of the Superior Court

DATE: February 20, 2008