**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| AVX CORPORATION and AVX LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10467-RGS |
| CABOT CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

**AFFIDAVIT OF JOSEPH S.U. BODOFF IN SUPPORT OF OBJECTION TO MEMORANDUM AND ORDER ON MOTION TO STRIKE SUPPLEMENTAL ANSWERS TO INTERROGATORIES**

I, Joseph S.U. Bodoff hereby depose and state as follows:

1. I am the principal and sole shareholder of Bodoff & Associates, P.C., which is counsel for the Plaintiffs, AVX Corporation and AVX Limited (hereinafter, "AVX") in the within matter.

2. I submit this affidavit in support of the Objection to Memorandum and Order on Motion to Strike Supplemental Answers to Interrogatories. More specifically, the statements that follow address issues raised by Magistrate Bowler's opinion that suggest that this firm was not acting in good faith and that the actions and omissions of the firm relating to its discovery obligations were not substantially justified. The affidavit will first address some background information about the firm that bears on this matter. It will then address specific issues relating to discovery in this case.

{00027737.2}

*Firm Background and Case Involvement*

3. Bodoff & Associates, P.C. is the successor law firm to Bodoff & Slavitt LLP. The two principals of Bodoff & Slavitt LLP were Evan Slavitt and myself.

4. Prior to forming Bodoff & Slavitt LLP, Mr. Slavitt was a partner at Gadsby Hannah LLP and was chair of that firm's Litigation Department.

5. Mr. Slavitt began representing AVX while at Gadsby Hannah LLP.

6. On July 29, 2002, while a partner at Gadsby Hannah LLP, Mr. Slavitt filed on behalf of AVX a complaint against the Defendant, Cabot Corporation (hereinafter, "Cabot"), among other things, under the Robinson-Patman Act, Chapter 93A of the Massachusetts General Laws. That case was dismissed, shortly after Bodoff & Slavitt LLP was formed, by stipulation of the parties filed with this Court on April 1, 2003.

7. While at Bodoff & Slavitt LLP, Mr. Slavitt was involved in three other lawsuits between AVX and Cabot, each of which was commenced while Mr. Slavitt was at Bodoff & Slavitt LLP, as follows:

   a. Complaint filed by Cabot against AVX on March 18, 2003 with the Suffolk County Superior Court, seeking, among other things, a declaration that the supply agreement between the parties was valid. AVX filed a counterclaim in that case, alleging that Cabot illegally coerced AVX to enter into the supply agreement between the parties. This suit will hereafter be referred to as the "Coercion Litigation."

   b. The within litigation, commenced on March 8, 2004 and alleging that Cabot violated the federal antitrust laws (hereafter, the "Antitrust Litigation").

    c. Complaint filed by AVX against Cabot on September 6, 2005 with the Suffolk Superior Court, alleging that Cabot breached the supply agreement that is the subject of the antitrust action (hereafter, the "Breach of Contract Action").

  8. Bodoff & Slavitt LLP was staffed with two associate attorneys and a paralegal, in addition to Mr. Slavitt and me. Mr. Slavitt was assisted by two associates and a paralegal in the Coercion Litigation, the Antitrust Litigation and the Breach of Contract Action. My involvement in these cases was limited to the occasional review of a brief that Mr. Slavitt had prepared. Other than that limited review, I knew little of what the cases were about.

  9. Effective September 18, 2006, Mr. Slavitt's license to practice law was suspended. While I was aware of some of the developments in the disciplinary proceedings, the suddenness with which the suspension came was a surprise to me and everyone else in the firm. On or about August 19, 2006, Justice Ireland of the Massachusetts Supreme Judicial Court entered an order affirming the decision of the Massachusetts Board of Bar Overseers suspending Mr. Slavitt's license for a period of one year. Justice Ireland ordered the suspension to be effective within 30 days. I had been advised by Mr. Slavitt, based on information from his attorney, that the suspension would be stayed automatically pending review by the full panel of the Massachusetts Supreme Judicial Court. It was not until approximately two weeks before that I learned that the stay was not automatic. At that time, I began preparing the firm for the possibility that it would need to be dissolved an reconstituted in the event that a stay

request was denied, which it was shortly before the suspension was to take effect. As it turned out, the stay was denied.[1]

10. On September 10, 2006, my mother passed away suddenly, the result of which was that I was not in the office during the last week before Mr. Slavitt's suspension took effect. My absence during that week made it difficult for me to get up to speed on the numerous cases that Mr. Slavitt had left behind, including the Coercion Litigation, the Antitrust Litigation and the Breach of Contract Action.

11. Within three weeks of Mr. Slavitt's departure, Tish L. Berard, who was the senior associate in the office working on the AVX litigation and the one with the most familiarity with the case, left the firm. Within seven weeks after Mr. Slavitt's departure, all of the firm's employees except for Ryan Sullivan, had left the firm. Mr. Sullivan at that time was a junior associate with only three years of experience and had limited knowledge of Mr. Slavitt's cases.

12. On November 20, 2006, Richard Goren joined the firm to assist with the AVX litigation and other litigation matters. That brought the number of attorneys at the firm to three, where it remains today.

13. On January 3, 2007, I argued before the Massachusetts Supreme Judicial Court an appeal taken by AVX in the Coercion Litigation. On March 28, 2007, the Supreme Judicial Court affirmed the decision of the Superior Court granting Cabot's motion for summary judgment. That decision brought to an end that litigation, leaving the Antitrust Litigation and the Breach of Contract Action.

---

[1] Six months after the suspension went into effect, the Supreme Judicial Court reversed the decision of the Board of Bar Overseers and reduced the suspension to two months, finding that Mr. Slavitt's only ethical violation was that he recommended a candidate to be admitted to the Massachusetts bar without disclosing negative information about him.

{00027737.2}

14. The Antitrust Litigation and the Breach of Contract Action have run on parallel paths, with the two pieces of litigation roughly alternating in the level of activity and the amount of time each side has spent on it. Stated differently, where at times there may appear to have been little or no activity in the Antitrust Litigation, there likely was significant activity in the Breach of Contract Action, and vice versa.

### *The Beginnings of the Involvement of Bodoff & Associates, P.C. In This Case*

15. Prior to Mr. Slavitt's departure, this case had already been dismissed by this Court and had gone up on appeal to the First Circuit Court of Appeals. The First Circuit vacated the order of dismissal and remanded the case to this Court. In addition, Cabot had filed a motion for judgment on the pleadings, which was denied by this Court on July 21, 2007.

16. In addition, on January 6, 2006, Mr. Slavitt served on Cabot's counsel AVX's initial disclosures and on January 10, 2006 he served its first set of interrogatories and first request for production of documents. By agreement of the parties, Cabot's obligation to respond to that discovery was stayed pending this Court's decision on Cabot's motion for judgment on the pleadings.

17. While the agreement provided that these discovery responses would be due within 30 days after this Court rendered its decision – i.e., August 25, 2006 – Cabot did not serve its responses until the end of December of 2006 and, even then, the actual documents were not received until much later. Thus began a series of discovery battles between counsel that led to the need for the parties jointly, or AVX with or without the consent of Cabot, to seek a number of extensions of the scheduling order.

*The Discovery Extensions*

18.     On December 7, 2005, the parties filed a proposed scheduling order, which was approved by the Court that same day. The schedule called for fact discovery to be completed by August 31, 2006, for AVX's expert report to be served by October 1, 2006 and for Cabot's expert report to be served by November 1, 2006.

19.     The first discovery extension request was filed with the Court on October 5, 2006 and sought a 120-day extension of the discovery due both to the fact that Mr. Slavitt had departed and, while not explicitly stated in the motion, because Cabot still had not responded to the discovery requests served in January 2006, the responses being due by agreement of the parties in August 2007.[2] By this first extension, which was approved by the Court on October 6, 2006, all fact discovery was to be completed by December 28, 2006, AVX was to serve its expert report by January 29, 2007 and Cabot was to submit its expert report by March 1, 2007.

20.     The second discovery extension request was filed with the Court on January 30, 2007 and resulted largely from the fact that Cabot's counsel had requested, and I agreed to an extension until December 20, 2007 for Cabot to submit its responses. The responses were, in fact, served on December 20, 2007 but no documents responsive to the document request were served until March 30, 2007 and even then not all of the documents were produced. This second extension called for fact discovery to be completed by March 30, 2007, for AVX to submit its expert report by April 30, 2007 and for Cabot to submit its expert report by May 31, 2007.

---

[2] The references to Cabot's responses or lack thereof to discovery are not intended to have the Court re-visit these issues. They are presented here for the Court to understand the context in which I and my firm took certain actions.

21.     In the meantime, Cabot had not served any discovery requests of its own. Those came on December 20, 2006 – nine days after it responded to AVX's discovery requests and more than four months after this Court denied Cabot's motion for judgment on the pleadings – in the form of interrogatories and document requests. On February 28, 2007, AVX served its responses.

22.     On March 1, 2007, we filed on behalf of AVX a motion to compel discovery, having failed to resolve our differences with Cabot over a series of four discovery conferences.[3] On April 13, 2007, Cabot filed a motion to compel discovery. A hearing on the discovery motions was scheduled for May 25, 2007 and on that date AVX, with the consent of Cabot,[4] filed a joint motion to amend the scheduling order so that fact discovery would be completed by July 31, 2007, AVX's expert report would be submitted by September 15, 2007[5] and Cabot's expert report would be submitted by October 15, 2007.

23.     This Court did not act on the May 25th motion to amend the scheduling order because the parties reported that they would submit a new motion to amend. On July 10, 2007, the parties filed a joint motion to amend the scheduling order, which provided for fact discovery to be concluded by September 30, 2007, for AVX to serve its expert report by November 15, 2007 and for Cabot to submit its expert report by

---

[3] After having cooperated with Cabot's counsel to give them additional time to respond to discovery requests – four months after they were due – it was frustrating, to say the least to find that Cabot's discovery responses were incomplete and it did not produce a single record responsive to the document requests.

[4] While denominated an assented-to motion, it is clear that Cabot also needed an extension to complete its discovery.

[5] Previous scheduling orders provided for AVX's expert report to be served 30 days after the close of fact discovery. It is my recollection that this scheduling order provided for 45 days because of the Labor Day holiday and vacation schedules.

December 15, 2007. On July 17, 2007, this Court granted the motion, stating that "[n]o further extensions will be granted."

24. Due to the death of Richard Goren's mother, this Court, on August 21, 2007, entered an order granting AVX's motion to extend the discovery deadline further, which resulted in the fact discovery deadline being extended to October 31, 2007, the deadline for AVX to serve its expert report to until December 15, 2007 and the deadline for Cabot to submit its report to January 15, 2008.

25. It is my understanding that at the May 25, 2007 hearing, Magistrate Bowler requested that the parties try to work out a number of discovery issues. As it turns out, the parties were not able to resolve all of the issues, which resulted in Richard Goren writing a letter to Magistrate Bowler dated September 12, 2007 requesting a heating on September 21, 2007. At that hearing, she ordered both parties to produce discovery, which the parties worked on through the end of October.

### *Counsel's Misunderstanding Regarding the Final Discovery Deadlines*

26. With the final fact discovery deadline rapidly approaching, counsel was presented with a number of issues that made the ability for it to be able to complete fact discovery timely very difficult, if not impossible. AVX's expert, Lauren Stiroh, developed medical problems, requiring her to withdraw from the case. Cabot objected to the withdrawal, requiring AVX to file a motion to substitute Steven Schwartz as its expert, which the Court granted on October 18, 2007 – only 13 days prior to the expiration of the fact discovery deadline. It also became clear that Rule 30(b)(6) depositions of representatives of both AVX and Cabot would not be able to be taken any

time before the end of November, which pushed up against the deadline for AVX to submit its expert report.

27. Mindful that this Court had already stated that no further extensions would be granted and that it had subsequently granted an extension based on Richard Goren's mother's passing, and knowing that the fact discovery deadline had already passed without either party taking Rule 30(b)(6) depositions, Richard Goren discussed with Cabot's counsel how to deal with this issue and on October 31, 2007 suggested that the parties jointly request a status conference with the Court to explain the delays. Cabot's counsel refused and on November 2, 2007 we filed a motion for a status conference, to which Cabot filed a formal opposition. Rather than schedule the status conference, this Court, on November 7, 2007, entered an order stating that "outstanding discovery must be completed by December 15, 2007."

28. I read the Court's order as extending the fact discovery deadline – previously set at October 31, 2007 – to December 15, 2007. I also believed (although as it turns out, incorrectly) that this Court had also intended to extend the other deadlines in the case. I held this belief for the following reasons:

   a. The deadline for AVX to submit its expert report was always set at a date that was 30 to 45 days after the close of fact discovery. Likewise, Cabot's expert report was always set at a date that was 30 days after the deadline for AVX to submit its expert report.

   b. It would be impossible for AVX's expert to submit a meaningful report not subject to amendment with the fact discovery deadline being co-terminus with his report.[6]

   c. To view the order any other way would have meant that AVX's expert report would be due the very day that fact discovery closed while Cabot's expert would have 30 days after the close of fact discovery to submit his report. I did not believe that the Court intended that Cabot's expert would have such an advantage.

  29. Believing that the deadline to serve the expert report was intended to be extended by this Court's November 7th order, we informed our expert of that fact.

  30. So confident was I that the Court had, in fact, intended to extend the deadline for the expert report that I asked Richard Goren to confirm the fact with counsel for Cabot and to suggest to Cabot's counsel that we file a joint pleading with the Court to confirm it.

  31. Cabot's counsel took the Rule 30(b)(6) deposition of Peter Collis on December 5, 2007. Among other things, Mr. Collis testified at that deposition that he had not calculated the damages suffered by AVX because he was relying on the expert to do so. After the deposition, Mr. Goren asked Cabot's counsel to confirm his understanding that the expert report deadlines had also been extended. To Mr. Goren's surprise and mine, Cabot's counsel disagreed.

  32. On December 6, 2007, Mr. Goren informed Geeta Koolwal, an associate of Steven Schwartz, AVX's expert, that their report might, in fact, have to be filed by

---

[6] As it turned out, the last deposition was taken on Wednesday, December 13, 2007 – only three business days before AVX's expert submitted his report.

December 15, 2007, but that we would file a motion with the Court to extend the deadline.

33. On December 7, 2007, we filed on behalf of AVX to amend the scheduling order relating solely to expert discovery, citing our belief that the Court had not intended that the deadline for AVX to submit its expert report would be the same date as the deadline for fact discovery.[7] With the possibility that the Court would agree with Cabot's counsel's position on the deadline for submitting its expert report, we worked with the expert to make sure that a report was filed by December 17, 2007 (the fact discovery deadline of December 15, 2007 falling on a Saturday).

34. We received the first draft of the expert report at approximately 4:00 p.m. on Thursday, December 13, 2007 – only two business days before the report was due. We worked with the expert the following day, over the weekend and most of Monday, September 17, 2007 to get the report finalized. We received the final report at approximately 6:00 p.m. on September 17th, which we forwarded that evening to Cabot's counsel.

35. As we were reviewing a near-final draft of the report on the morning of September 17th, I noticed that the report did not include a discussion of damages. It was my understanding that such a report was within the scope of the work to be performed by AVX's expert. At that time, it was too late to change the report.

36. That we did not consider this to be a final report was made known to counsel for Cabot in the email I sent him transmitting the report. In that email, a copy of which is attached hereto as Exhibit A, I stated:

---

[7] The motion also cited the fact that there were ongoing discovery disputes that we believed should best be resolved before the expert reports were submitted.

{00027737.2}

> Attached is a Preliminary Report of our expert. Because this Report is being submitted in advance of the close of discovery, we reserved the right to submit a revised Report that may supplement and/or amend this Report.

In addition, the report itself stated:

> My work in this matter is continuing, and I understand that additional materials and discovery may be forthcoming after the submission of this report. Accordingly, I anticipate receiving additional information that I will consider in the course of my analysis and I reserve the right to supplement these opinions, if warranted, based on my review of additional relevant information.

### *The Expert Was Supposed to Perform the Damage Analysis*

37.    Contrary to statements in Magistrate Bowler's decision, it was our intention that the expert, not AVX, would perform the analysis and calculation of damages in this case. While Steven Schwartz has testified that as of December 17, 2007 he had not been asked to do a damage calculation, a review of the file demonstrates that at least Lauren Stiroh, his predecessor, as well as Geeta Koolwal, a person assisting Drs. Stiroh and Schwartz with the report, had.

38.    While we are not able to pinpoint the exact date that Dr. Stiroh became aware that she was to perform a damage analysis, it is clear that by February 20, 2007 she knew that that was part of her assignment. In an affidavit in support of AVX's motion to compel discovery, a copy of which is attached hereto as Exhibit B, she states:

> To assess the market(s), Cabot's market power, ***and damages***, if any, I and my associates need to examine data …

> I understand that damages in this case, if any, may be calculated by taking the excess of prices paid by AVX from January 2001 through year-end 2005 for flake and non-flake tantalum over the fair market value of those products at the time of each sale. ***My opinion on the fair market value of the relevant products*** would be greatly informed by …

Affidavit, ¶¶ 4, 5 (emphasis added).

39. I have also verified in our email system that on August 21, 2007, Richard Goren sent an email to Geeta Koolwal asking,

> How are you coming with your list of materials that Lauren needs or wants and does not yet have to testify about separate markets for nodular and flake, Cabot's market power in flake, Cabot's impact on commerce with respect to nodular, and damages calculated by the excess of what was paid over the market value of the two products over the term of the supply contract?

A copy of that email is attached hereto as Exhibit C.[8]

40. Because of the rush to get the expert report filed by December 17, 2007, we did not notice that the damage calculation was not included in the report until it was too late. Because, as it turns out, Dr. Schwartz did not realize that we wanted him to do that analysis, it was impossible to put any meaningful mention of damages in the report at that late hour.

### *Attempt to Submit Substitute Expert Report*

41. On January 17, 2007, this Court entered an order denying the motion to extend the deadline for the expert report. No reason for the denial was stated.

42. On February 8, 2008, we filed with the Court a motion for leave to submit a substitute expert report to, among other things, allow AVX's expert to include a discussion of damages. The motion stated:

> While AVX's expert was able to put together a report in time to submit to Cabot's counsel, the report is incomplete and may contain errors. Among other things, while the report contains an extensive analysis of antitrust liability issues the analysis is incomplete ***and the report does not include a discussion of damages***.

---

[8] Note that because of a bug in our email program, the emails sometimes reflect the name of the client in the "To" field rather than the name of the recipient. While the email appears to state that it was sent to AVX, the body of the email makes it clear that it was sent to Geeta Koolwal.

{00027737.2}

Motion, ¶ 7 (emphasis added). This Court denied the motion by order dated February 21, 2008.

### *Calculation of Damages by AVX*

43. Because we had expected that the expert, not AVX, would perform the damage calculation, AVX did not undertake to calculate damages until after this Court entered its order denying the motion for leave to substitute an expert report.

44. Because AVX had not calculated damages, it disclosed to Cabot only what it knew at the time, which is that the damages are calculated by the amount that the contract price exceeds the fair market value of the products that AVX purchased from AVX under the supply agreement. This method of calculating damages was set forth in response to Cabot's motion to compel discovery. With that response, Cabot did not pursue its motion to compel on that issues.

45. AVX's methodology for calculating damages was also confirmed by Dr. Stiroh in her February 20, 2007 affidavit (attached as Exhibit A) and in the Rule 30(b)(6) deposition testimony of Peter Collis.

46. With this Court's denial of the motion for leave to substitute the expert report to include damages, the decision was made to supply that testimony through AVX personnel. Within __ weeks of this Court's ruling, AVX submitted its supplemental answers to interrogatories, which disclosed in detail AVX's damage calculations.

47. AVX has offered to Cabot to produce Peter Collis to testify at a second deposition on the damages issue but Cabot has refused that offer.

                                               */s/ Joseph S.,U. Bodoff*
                                               Joseph S.U. Bodoff