## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| AVX CORPORATION ) | |
| and AVX LIMITED, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. 04-10467-RGS |
| v. ) | |
| ) | *Leave to file granted on July 17, 2008[1]* |
| ) | |
| CABOT CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF LAW IN SUPPORT OF OBJECTION
## OF AVX CORPORATION AND AVX LIMITED TO
## MEMORANDUM AND ORDER OF MAGISTRATE BOWLER

Because counsel for the Plaintiffs, AVX Corporation and AVX Limited (together, "AVX") misinterpreted this Court's November 7, 2007 resetting the discovery deadline, AVX is now faced with the possibility that it will be prohibited from recovering on its antitrust tying claim, providing a very substantial windfall to Defendant, Cabot Corporation ("Cabot").[2]

In issuing her Memorandum and Order on Cabot's motion to strike AVX's supplemental answers to interrogatories on damages, Magistrate Bowler erred (1) by making certain assumptions as to counsel's conduct that are not true and not supported by any evidence, (2) by finding that AVX had not complied with its Rule 26 obligations on damages, (3) by finding that AVX's conduct was not substantially justified, and (4) by imposing too harsh of a remedy for the alleged violation.

---

[1] With the consent of counsel for Cabot, this brief makes minor corrections to the one attached to the motion.

[2] Cabot will argue that the antitrust claim itself has no merit. That issue is presently before the Court on cross-motions for summary judgment. Of course, should this Court find that Cabot is entitled to summary judgment it would moot this Objection. For the purposes of this Objection, it should be assumed that the case otherwise has merit.

# I.  FACTS[3]

## A.  Background

While this case commenced in 2004, it is for all intents and purposes less than two years old.  The effective period of fact discovery in this matter, marked by 5 discovery motions – 3 filed by AVX and 2 filed by Cabot – covers a period of only 16 months.

As this Court is aware, AVX filed its complaint commencing this case on March 8, 2004.  Two months later – on June 4, 2004 – Cabot filed a motion to dismiss.  On November 29, 2004, this Court granted Cabot's motion to dismiss and AVX took an immediate appeal.  On September 20, 2005, the First Circuit Court of Appeals vacated the order of dismissal and remanded the matter to this Court.  Cabot filed its answer on December 6, 2005 and on March 27, 2006 filed a motion for judgment on the pleadings.  AVX had served Cabot with interrogatories and document requests on January 10, 2006, but the parties agreed to stay all discovery pending a decision on Cabot's motion.  On July 21, 2006, this Court denied Cabot's motion, therefore ending the parties' self-imposed stay.

A detailed history of relevant procedural events in this case is set forth in the Affidavit of Joseph S.U. Bodoff, which is incorporated herein.  Suffice it to say that, by agreement of the parties, Cabot did not respond to AVX's discovery requests until December 20, 2006.  Even then, none of the documents responsive to the document request were produced until March 30, 2007.  Thus began a very contentious discovery battle, where each of the parties has accused the other of withholding information and delaying discovery.

---

[3] This Objection sets forth the prominent facts, mostly in summary form.  Accompanying this Objection are the affidavits of Joseph S.U. Bodoff and Steven Schwartz, PhD, which set forth facts in much more detail.  Those affidavits are incorporated into this Objection.

### B. Related Litigation

As this Court is aware, the litigation between AVX and Cabot has a long and contentious history. There are two cases currently pending, both arising out of the Supply Agreement entered into between the parties dated January 1, 2001. In the current case, AVX has asserted that Cabot committed a violation of the Sherman Antitrust Act when it used its monopoly in flake tantalum to force AVX into a long-term supply agreement to purchase both flake tantalum, in which it has market power, and other tantalum products, in which it does not. In a case pending in Suffolk Superior Court, AVX has asserted that Cabot breached that Supply Agreement by not giving AVX millions of dollars of credit under a most favored nation provision in that contract. The cases are running on parallel paths and it is likely that both will come to trial this year. As the First Circuit has made clear, both cases are relevant to this Court's inquiry on this most draconian of motions. *Thibeault v. Square D Company*, 960 F.2d 239, 246 (1st Cir. 1992).

It is a fair statement that both this case and the state court case have been fraught with discovery disputes, each party accusing the other of not complying with discovery and each accusing the other of withholding information. Shortly before his retirement in December, Judge van Gestel granted partial summary judgment in favor of AVX on an issue that amounts to more than $20 million of credits that Cabot should have, but did not give, AVX.[4] In anticipation of that decision and long after the close of fact discovery, Cabot raised for the first time four new defenses to AVX's claim, asserting for the first

---

[4] Judge van Gestel found that Cabot wrongfully excluded from its calculation of most favored nation credits a contract with one of AVX's competitors amounting to tens of millions of dollars of sales. *AVX Corporation v. Cabot Corporation*, 23 Mass. L. Rep. 428 (Mass. Super. 2007)

time that it had setoffs equal to or exceeding the amount of damages that would flow

from Judge van Gestel's summary judgment decision.  When Cabot refused to provide

the backup documents to allow AVX to verify Cabot's calculations, AVX filed a motion

*in limine* with the Court to exclude the defense that required further discovery.  In

response, Judge Gants ordered Cabot to submit to further discovery and ordered Cabot to

pay for the stenographer and deposition transcript for a new Rule 30(b)(6) deposition.[5]

Perhaps not coincidentally, AVX was forced to deal with Cabot's newly disclosed

defense and to prepare its motion *in limine* at about the time that the fact discovery

deadline in this case occurred.[6]

There have been other discovery disputes in that case and in this case as well.

The point is that while Cabot points a finger at AVX in this litigation, it ignores its own

failures with regard to discovery in both this case and the companion case.  Because the

cases are so intertwined, those failures are relevant here.

### C. *Events Leading Up to Cabot's Motion to Strike*

#### 1.  Discovery Responses

On January 6, 2006, AVX served its Rule 26 disclosures, which, as to damages,

stated that AVX had not yet calculated its damages.  Cabot also submitted an

interrogatory requesting that AVX disclose its methodology and computation of

damages, to which AVX also again responded that it had not yet calculated its damages.

---

[5] A copy of that decision is attached hereto as Exhibit 1.

[6] Cabot disclosed its new defenses to AVX at a meeting on October 4, 2007.  Following an exchange of emails where Cabot's counsel refused to provide documentation relating to one of its new defenses AVX filed its motion *in limine* on January 10, 2008.  To demonstrate further the lengths to which Cabot is willing to go to win these cases, Cabot responded with a motion for sanctions, which was summarily denied by Judge Gants as part of his order requiring Cabot to submit to further discovery. Exhibit 1 at p. 5.

Both statements were true then and remained true throughout 2007.  The reason why

AVX had not calculated its damages is because it intended to rely on its expert to perform

that calculation and expected that the disclosure of the calculation would be made in the

expert report.  Nevertheless, in response to Cabot's motion to compel discovery

responses, AVX stated as to the damage interrogatory "AVX has been damaged by the

excess of the amounts paid under the January 2001 Supply Agreement over the term of

that agreement over the fair market prices of those products over the term of that

agreement**.** AVX intends to prove its damages at trial."  With that response, Cabot did not

pursue the issue further.

2.   Damages Omitted from Expert Report

As it turns out, AVX did not include the damage calculation in its expert report.

This is a result of two different events – the change in expert witnesses resulting from

medical treatment of Dr. Lauren Stiroh and counsel's misinterpretation of this Court's

November 7th order that extended the discovery deadline to December 15, 2007.

It is clear from documents of record in this case that by February 20, 2007 Dr.

Lauren Stiroh, AVX's then expert, would be calculating damages.  As her February 20,

2007 Affidavit in Support of Motion to Compel Discovery states:

> To assess the market(s), Cabot's market power, ***and damages***, if any, I and
> my associates need to examine data …
> I understand that damages in this case, if any, may be calculated by taking
> the excess of prices paid by AVX from January 2001 through year-end
> 2005 for flake and non-flake tantalum over the fair market value of those
> products at the time of each sale.  ***My opinion on the fair market value of***
> ***the relevant products*** would be greatly informed by …

Affidavit, ¶¶ 4, 5 (emphasis added).  While Dr. Stiroh states that she will be assessing

damages and that she will be giving an "opinion on the fair market value for the relevant

products," no such discussion appears in Dr. Schwartz's report. Nor does the report even contain the phrase "fair market value."

    3.  Rule 30(b)(6) Deposition on Damages

Cabot apparently was content to deal with the damage issue at the Rule 30(b)(6) depositions. Peter Collis was designated by AVX to testify on seven of seventeen topics specified by Cabot in its Rule 30(b)(6) deposition notice. One of those topics was damages. More specifically, Cabot's topic description read:

> Any damages that AVX claims to have sustained on account of the conduct alleged in the Complaint, including but not limited to the complete nature and amount of such damages, and the precise means by which AVX calculated such damages.

Yet, when it came time for the deposition, Cabot's questions were much more limited. Its counsel asked only four questions on the issue of damages:

1. *What damages has AVX sustained as a result of the conduct of Cabot that is alleged in the Complaint in this matter?* Mr. Collis answered truthfully that the damages were "being calculated by our expert." In fact, at that time, AVX either had or was in the process of sending the damage information to its expert. As stated previously, at the moment of that testimony, both AVX and its counsel believed that the expert report was not due until 45 days after the close of fact discovery – *i.e.,* January 29. 2008.[7]

2. *Has AVX sustained damages?* Mr. Collis answered truthfully "yes." That answer has not changed.

---

[7] AVX has previously asserted that it believed that the report would be due 30 days after the conclusion of fact discovery. That statement was incorrect. It was always counsel's belief that the expert report deadline was extended by the same one-month period as the fact discovery deadline, which in the most recent scheduling order was set at a date that was 45 days after the close of fact discovery. For the purposes of this dispute, however, all that is important is that AVX's counsel believed that the expert report would not be due until several weeks later.

3. _Do you have any understanding right now of the monetary value of those_
   _damages?_  Mr. Collis answered truthfully and completely that AVX has
   "monitored the market price of material and compared that with what we ended
   up paying in the contract when we used material as against what the market price
   was at the time, and passed that to our expert."  He also testified that AVX's
   monitoring included the nodular products AVX was purchasing from the three
   other major suppliers.  Those answers also have not changed.

4. _How would you go about calculating AVX's damages in this matter?_  Mr. Collis
   again truthfully responded that "we've left that with our expert to come up with
   that calculation."

Of note is the fact that, given the opportunity, counsel for Cabot chose not to ask
Mr. Collis any questions directed to the underlying facts upon which the damage
calculation would be based.  Keeping in mind that Mr. Collis had just testified that
elements of the damage claim were "market price" and "what we ended up paying in the
contract when we used material," notably absent are the following inquiries:

- What were the market prices that AVX deemed relevant?

- What information was turned over to AVX's expert?

4. <u>AVX's Attempts to Remedy the Problem</u>

Having learned on December 5, 2007 that Cabot's counsel disagreed with AVX's
interpretation of this Court's November 7th order and that Cabot's counsel would not
agree to extend the deadline for AVX to submit its expert report, AVX filed on December
7, 2007 a motion to amend the scheduling order to allow AVX until January 15, 2008 to
submit its expert report.  On January 17, 2008, this Court entered an order denying that

motion and on February 8, 2008 AVX filed a motion to submit a substitute expert report, which would contain a damage calculation. That motion was denied on February 21, 2008.

With the denial of both the motion to amend the scheduling order and the motion for leave to submit a substitute expert report, AVX set about to calculate the damages internally. On April 14, 2008, having now for the first time calculated its damages, AVX served its supplemental response to Cabot's damage interrogatories.

In order to avoid any prejudice to Cabot, AVX offered to bring Peter Collis back for a second deposition. Cabot rejected the offer and instead filed its motion to strike the supplemental answers to interrogatories.

### D. *Magistrate Bowler's Ruling*

Magistrate Bowler ruled that AVX's supplemental interrogatories should be stricken except to the extent that they rely on "recently produced information on March 31 and April 3, 2008." In coming to that conclusion, she held that AVX had ample time to calculate its damages and that it violated Rule 26 by failing to disclose the calculation during the discovery period. She further concluded that AVX's failure to disclose its damage calculation earlier was not substantially justified and that the delayed disclosure was not harmless.

As to substantial justification, Magistrate Bowler rejected AVX's excuse that the damages were not disclosed earlier because of the confusion regarding the deadline for its expert report. In explaining her reasoning, she cited to footnote eight. That footnote cites to footnote 3 to this Court's order denying AVX's motion for leave to submit a substitute expert report, quoting:

As noted by the court, the December 15, 2007 submission of the expert
report "is at odds with [AVX's] purported belief that the filing deadline
had been extended.

She also concluded that "[t]he late disclosure after the close of discovery leaves Cabot

without the means to explore and challenge the basis of the recent calculations."

## II.  DISCUSSION

### A.  *Magistrate Bowler's Ruling is Based On False Assumptions*

Magistrate Bowler's decision appears to be based on two critical assumptions,

both of which are untrue.  The first, based on this Court's footnote in its order denying

AVX the ability to submit a substitute expert report, is that AVX did not, in fact, believe

that the expert report was due a month after the close of fact discovery.  The second is

based on statements in her opinion that suggest that AVX never intended to submit the

damage calculation through expert testimony.[8]

1.  <u>The Submission of the Expert Report On December 17, 2007 Was Not An
Acknowledgment That It Was Due Then.</u>

In its order denying AVX's motion for leave to submit a substitute expert report,

this Court, in its footnote 3, stated:

Plaintiffs' statement that they filed Dr. Schwartz's report in an "abundance
of caution" is at odds with their purported belief that the filing deadline
had been extended.  The "abundantly cautious" approach would have been
to file a motion with the court seeking a clarification of the scheduling
order (which had been amended at their request).

That order, of course, was interlocutory and not yet subject to appeal.  Be that as it may,

while the Court may have believed that counsel should have sought clarification earlier, it

---

[8] Magistrate Bowler notes in her opinion that "[AVX's expert, Steven Schwartz] testified that he had
consulted with AVX's counsel 'on some issues involving damages questions' but had not been asked to
issue an opinion."  Opinion, p. 8.  She further stated that "AVX likewise acknowledges that 'Schwartz is
not offering any opinions in this case as to the amounts of damages suffered by AVX in this case.'"
Opinion, pp. 8-9.  While she does not state in her opinion how these observations affected her decision, it
cannot be assumed that it did not have any effect.

is wrong to conclude that counsel did not in good faith believe that the order extending the fact discovery deadline did not also extend the deadline for submitting the expert report.

There are a number of reasons for counsel's belief, all as set forth in the affidavit of Joseph S.U. Bodoff. First, AVX's expert report was always due 30 to 45 days after the close of fact discovery. Second, with fact discovery still ongoing, it would be difficult, if not impossible for AVX's expert to be able to submit a report on the date that fact discovery closed. Third, to require AVX to submit its expert report on the date that fact discovery closed while at the same time permitting Cabot to submit its report 30 days later would put Cabot at an unfair advantage. In fact, counsel was so sure that that was the case that at the conclusion of the Rule 30(b)(6) deposition of Peter Collis, he merely sought to confirm from Cabot's counsel that that was also his understanding. The point is that while it now appears that counsel was wrong in that conclusion, up until he sought to confirm that understanding with Cabot's counsel there was no particular reason to believe that any action needed to be taken.

That counsel believed that the expert report was not due until at least a month later is confirmed by AVX's expert, Steven Schwartz in an affidavit being filed contemporaneously herewith. In that affidavit, he states:

> 7. On or about November 8, 2007, Richard Goren, who is one of the attorneys for the Plaintiffs, informed my associate, Geeta Koolwal that the Court entered an order extending the fact discovery deadline until December 15, 2007. He also told Ms. Koolwal that while the order did not specifically address the deadline for me to submit my expert report he believed that the Court intended that that be the case.

> 8. On or about December 6, 2007, Mr. Goren informed me that he had spoken to counsel for the Defendant, who advised him that the Defendant disagreed with his interpretation of the Court's order extending

10

> the discovery deadline and, that Plaintiffs would be filing a motion with
> the Court to extend the deadline.  My associates at NERA and I had not
> begun working on preparation of our report until after our conversation
> with Mr. Goren.

In other words, while the wisdom of waiting to file the motion may be questioned, there

was an honest and sincere belief that the expert report would not be due on the very date

that fact discovery closed.

>     2.    AVX Always Intended That Its Expert Would Perform the Damage
>           Calculations.

Statements in Magistrate Bowler's opinion suggest that she does not believe that

AVX actually intended to have its expert calculate damages.  She states:

> [AVX's expert, Steven Schwartz] testified that he had consulted with
> AVX's counsel "on some issues involving damages questions" but had not
> been asked to issue an opinion.  …  AVX likewise acknowledges that
> "Schwartz is not offering any opinions in this case as to the amounts of
> damages suffered by AVX in this case."

Opinion, pp. 8-9.

As to the second sentence, the statement is true but, when viewed in its context, it

has no bearing on this case.  The statement that "Schwartz is not offering any opinions in

this case as to the amounts of damages suffered by AVX in this case" was made in

response to Cabot's statement of material facts in support of its summary judgment

motion.  By that time, this Court had denied AVX's motion to extend the deadline to

submit the expert report, filed on December 7, 2007, and denied AVX's motion for leave

to submit a substitute expert report.  In other words, while AVX would have liked to have

its expert calculate damages, by that point the legal reality was that it would not be

allowed to do that.

As to the first sentence, it is in fact true that Steven Schwartz testified as

indicated.  It is not true, however, that counsel did not ask Lauren Stiroh, who was Dr.

11

Schwartz's predecessor expert witness, to do so.[9]  The facts supporting this contention
are contained on page 5 of this brief, but because of the importance of this issue are worth
repeating here.  In her February 20, 2007 affidavit, she states:

> To assess the market(s), Cabot's market power, ***and damages***, if any, I and
> my associates need to examine data …

> I understand that damages in this case, if any, may be calculated by taking
> the excess of prices paid by AVX from January 2001 through year-end
> 2005 for flake and non-flake tantalum over the fair market value of those
> products at the time of each sale.  ***My opinion on the fair market value of
> the relevant products*** would be greatly informed by …

Affidavit, ¶¶ 4, 5 (emphasis added).  While Dr. Stiroh states that she will be assessing
damages and that she will be giving an opinion on the fair market value of the relevant
products," no such discussion appears in Dr. Schwartz's report.  Nor does the report even
contain the phrase "fair market value."[10]

    Counsel has not been able to pin down exactly why Dr. Schwartz stated that he
was not aware that he was supposed to perform a damage analysis, but it appears that, at
a minimum, through no fault of AVX's counsel, the message may not have been passed
on to him from Dr. Stiroh.

    The point is that neither Dr. Schwartz's testimony nor AVX's statement in
response to Cabot's motion for summary judgment should be read as to mean that AVX
did not intend to have its expert calculate damages.  To the contrary, the affidavit of
Lauren Stiroh itself confirms the fact that it did.

---

[9] Both Dr. Stiroh and Dr. Schwartz work at National Economic Research Associates, Inc. ("NERA").
When Dr. Stiroh withdrew from the case, counsel was relying on her to educate Dr. Schwartz on the case.

[10] The report ahs been designated as highly confidential but will be produced if the Court requests it.

### B. AVX Did Not Violate Rule 26

While in hindsight it may now appear that because AVX is submitting its damage testimony without an expert it has violated Rule 26's directive that it update its discovery responses. Indeed, the entire thrust of Magistrate Bowler's decision appears to be that AVX purposely delayed calculating its damages in order to ambush Cabot. That is simply not true. To the contrary, while AVX might have performed some sort of damage calculation, it believed that the better approach was to leave that calculation to its expert, who had substantial experience in calculating damages in the antitrust context.

With the denial of AVX's requests to extend the time to submit its expert report and this Court's subsequent denial of its request to substitute an expert report, AVX embarked on the process of calculating damages for the first time. It submitted that calculation as soon as it was able after the Court's ruling on the motion to substitute the expert report.

Even so, AVX did disclose what it then knew. For example, in response to Cabot's motion to compel discovery responses, AVX stated that, while it had not yet calculated damages, it expected that the damage calculation would be based on the difference between the price paid under the contract and the fair market value of the same product. With that response, Cabot did not press its objection, which gave AVX's counsel the impression that that response satisfied its objection. Dr. Stiroh also stated in her affidavit that "damages in this case, if any, may be calculated by taking the excess of prices paid by AVX from January 2001 through year-end 2005 for flake and non-flake tantalum over the fair market value of those products at the time of each sale."

It was not until Peter Collis's Rule 30(b)(6) deposition and the failure to include a discussion of damages in the expert report that the failure to disclose became an issue. But, even at Peter Collis's deposition, given the opportunity to inquire about the components of the damage calculation, as AVX believed it to be, Cabot did not pursue those questions. More specifically, Cabot's counsel inquired and Mr. Collis responded as follows:

Q. What damages has AVX sustained as a result of the conduct of Cabot that is alleged in the Complaint in this matter?

A. That is being calculated by our outside expert.

Q. Has AVX sustained damages?

A. Yes.

Q. Do you have any understanding right now of the monetary value of those damages?

A. We have monitored the market price of material and compared that with what we ended up paying in the contract when we used the material as against what the market price was at the time, and passed that to our expert.

\*        \*        \*

Q. A moment ago, you said that AVX monitored market price for materials.

A. Yes.

Q. And compared those against what AVX paid to Cabot under the 2001 supply agreement; was that accurate?
A. That is accurate.

Q. What materials?

A. For all materials. For flake, because we could tell from the MFN agreement that Cabot was selling flake at lower prices, which we assumed was then the market price, outside of the contract. For nodular that we were buying from Starck or Showa Cabot or Ninxia that we were doing as part of the tolling agreement …

14

Q.  Are there any other elements to AVX's damages that you are aware of, as you sit here today?

A.  The biggest damage that has happened is the impact that it's had on the total tantalum market, which has been greatly reduced in the electronics industry.  Because of the inability of the main suppliers in the market, AVX, KEMET and Vishay, to bring capacitor prices down, our customers moved away to alternative products …

\*        \*        \*

Q.  Do you know whether AVX is seeking damages for harm done to the tantalum capacitor industry?

A.  We're waiting for the inputs from our external expert.

Two things are noteworthy from this colloquy.  In addition to the fact that Mr. Collis confirms that at that point he believed the damages were going to be calculated by the expert, he also introduces an element of damage – the reduction in buyer demand based on artificially high prices – that is outside of his capabilities and would require expert testimony.[11]  The noteworthy point is that, given the opportunity to ask Mr. Collis about the information he had about the market prices for tantalum, counsel for Cabot did not do so.  With that basic information, Cabot could have made its own calculations, since it already knew how much it had charged AVX under the contract.  But, given the opportunity to do so, Cabot's counsel did not ask the question.

Legal research has disclosed no cases that require there to be disclosure of a damage calculation where, in fact, the plaintiff's expert includes that calculation in his report.  Stated differently, there are no cases that hold that an expert report on damages should be excluded where the plaintiff has not previously disclosed its damages under Rule 26 or in response to interrogatories.  Indeed, to require the plaintiff to guess at damages when it is relying on its expert to make the calculation is of little, if any, value

---

[11] With the inability to now have the expert perform a damage analysis this element of damage will not be able to be pursued.

to the litigation, for any such "calculation" could be easily disavowed when the expert

disclosed his.  As the court stated in *Pine Ridge Recycling, Inc. v. Butts County*, 889 F.

Supp. 1526 (M.D. Ga. 1995):

> It appears to the court that two sources for dispute potentially exist: one is
> the amount of damages actually claimed, and the second concerns the
> method of computation used to arrive at that figure.  At this point,
> disputing the amount of damages actually claimed is analogous to arguing
> over the birth weight of a baby 3 months into the pregnancy.  Arguments
> over the method of computation are similarly premature since the method
> will necessitate expert testimony, which is not due until later this year.

*Id.* at 1527.

In this case, but for counsel's misunderstanding of the deadline for submission of

the expert report, together with Dr. Schwartz's misunderstanding that he was supposed to

perform a damage calculation, the report would have been submitted timely with a

damage calculation included.  AVX should not be penalized because of these events.

### C.  The First Circuit Standard

In deciding whether to exclude evidence, the court should consider "a multiplicity

of pertinent factors, including the history of the litigation, the proponent's need for the

challenged evidence, the justification (if any) for the late disclosure, and the opponent's

ability to overcome its adverse effects."  *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir.

2003), *citing, v. Thibeault v. Square D Company,* 960 F.2d 239, 246 (1st Cir. 1992);

*Johnson v. H. K. Webster*, 755 F.2d 1 (1st Cir. 1985).

According to *Johnson*:

> As these cases demonstrate, the emphasis in evaluating the decision to
> admit testimony over a Rule 26(e) objection entails ***careful balancing***.
> Trial and appellate courts should look to the conduct of the trial, the
> importance of the evidence to its proponent, and the ability of the
> defendant to formulate a response. . . .  It is noteworthy that, in those
> cases in which testimony was held properly excluded, the courts have

found some *evasion or concealment*, intentional or not, on the part of the litigant offering the evidence.

Closely linked to the issue of surprise and prejudice – its converse side – is the question of whether the party objecting to the evidence might have been able to confront the evidence with a minimum of disruption to the trial. Courts have often found it significant whether the objecting party sought a continuance to prepare to rebut the testimony. The Advisory Committee Note to Rule 26(e) expressly states that one possible sanction for a party's failure to provide supplemental responses is the granting of a continuance; here, Webster asked the trial judge for the far more drastic remedy of excluding the testimony in issue. *Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess so they may attempt to counter the opponent's testimony.*

*Id*. at 22-23 (citations omitted) (emphasis added). Seven years later, in *Thibeault v.*

*Square D Company*, *supra*, the First Circuit expounded further on this standard:

This circuit has recommended a straightforward approach to ensure that the spirit of open discovery embodied in Rule 26 is not undermined either by evasion or by dilatory tactics. In reviewing a contention that answers were not properly supplemented within the strictures of Rule 26(e), a court "should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the [opposing party] to formulate a response." Johnson, 775 F.2d at 8. To this we might add that the reason for the proponent's failure to update his discovery seasonably, as Rule 26(e)(1) requires, should also be carefully examined.

*        *        *

In considering sanctions for lapses in the course of pretrial discovery, a district court should consider all the circumstances surrounding the alleged violation. See Link v. Wabash R.R., 370 U.S. 626, 635, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962). The totality of the circumstances can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy.

960 F.2d at 244, 246.

### D. AVX's Conduct Was Substantially Justified

Central to the error in Magistrate Bowler's decision is her belief that AVX knew

that its expert report would be due by December 17, 2007. She states in her footnote 8

that "the December 15, 2007 submission of the expert report 'is at odds with [AVX's] purported belief that the filing deadline had been extended."  The sworn affidavits of Joseph S.U. Bodoff and Steven Schwartz state otherwise.  Moreover, counsel has explained why he believed that was true, among which is the fact that the report was always due after fact discovery was concluded and that Cabot would have an unfair advantage by being permitted to submit a report 30 days after discovery while at the same time requiring AVX to submit its report on the very date that fact discovery was to close.[12]

It is submitted that counsel's belief that the expert report would not be due until at least 30 days after fact discovery closed, which in turn left it with insufficient time to ensure that its expert had covered all of the issues asked of him is sufficient justification.

### E.  *Magistrate Bowler's Analysis of the Litigation History Is Flawed.*

In her opinion, Magistrate Bowler finds that "[t]he history of this litigation does not weigh in AVX's favor."  Opinion, p. 22.  To support her position, she cites to two events that occurred *after* AVX filed its report.  One of the instances she cites is AVX's motion to submit a substitute expert report on February 8, 2008.  Translated, what she is saying is that AVX should be faulted for trying to get itself out of the very jam that it is in right now.  Surely, that cannot be a result that would be sanctioned by the First Circuit. She also points to the multiple extensions to complete discovery, without at all

---

[12] AVX continues to disagree with this Court's rulings with regard to the motion to extend and the motion to substitute expert reports.  Nothing contained herein shall be deemed to be a waiver of those claims to the extent that those issues become relevant in an appeal.

recognizing that most of those requests were caused by Cabot's delays in producing

discovery or considering whether the extensions were justified.[13]

### F.  Any Harm to Cabot Can Be Remedied

While AVX recognizes the importance of the damage evidence to the case, Cabot

need not be prejudiced thereby.[14]  AVX has offered and continues to offer to bring Peter

Collis back for a deposition to provide detailed testimony on damages.  The Court

currently has under consideration cross-motions for summary judgment and the case has

not yet been scheduled for trial.  Indeed, if Cabot had taken AVX up on its offer made

two months ago Cabot would have already completed that discovery without any delay

whatsoever in the case.  To this end, the First Circuit's admonition in *Johnson v. H. K.*

*Webster*, *supra* at 23, is most appropriate:

> Courts have looked with disfavor upon parties who claim surprise and
> prejudice but who do not ask for a recess so they may attempt to counter
> the opponent's testimony.

While the *Johnson* case involved a situation where the plaintiff failed to designate

a witness as an expert until the week before the trial, the First Circuit's preference

is not to require the exclusion of testimony where it can be avoided.

---

[13] The first extension came about partly as a result of Evan Slavitt's suspension from practicing law and
from Cabot's failure at that time to respond to AVX's discovery served in January 2006 and required by
agreement of the parties to be served two months before the extension motion was filed.  The second
extension request came when, upon Cabot's request, AVX agreed to give it until December 20, 2006 to
serve its discovery responses.  The third request came when AVX and Cabot filed motions to compel
discovery and the hearing on that motion was held after the fact discovery deadline.  The Court did not act
on this motion because the parties reported that they would submit a substitute motion.  Another motion to
extend was filed when Richard Goren's mother passed away.  The final extension was ordered not through
a motion to extend but upon AVX's filing of a motion for a status conference.  It is that extension that has
triggered the events that has resulted in this current dispute.

[14] AVX also notes that the amount of damages should not come as a surprise to Cabot.  AVX has disclosed
all along that its damages are based on the difference between what AVX paid Cabot (something Cabot
knows) and the fair market value of tantalum (something that Cabot tracks).

### G.  *The Remedy Chosen by Magistrate Bowler Is Excessive*

Even if Magistrate Bowler was correct in her conclusion that AVX was to be

sanctioned for its conduct vis-à-vis the supplemental interrogatory response, in choosing

to exclude the evidence presented therein – and thereby exclude all evidence supporting a

quantification of AVX's damages – she chose an overly oppressive sanction.  In the face

of similar and even more offensive noncompliance, courts have chosen lesser sanctions.

*Clayman v. Starwood Hotels & Resorts Worldwide, et al.,* 343 F. Supp. 2d 1037 (D. Kan.

2004) (Rather than grant a defendant's motion for summary judgment on the basis that

plaintiff failed to produce any evidence of its damages or statement as to how such were

calculated pursuant to Rule 26(a)(1)(A)(iii), the Court elected to allow plaintiff's fifteen

days to provide defendant with a computation); *Hewlett-Packard Company v. Factory*

*Mutual Insurance Company*, 2006 U.S. Dist. LEXIS 44365 (S.D. N.Y. 2006) (In

consideration of defendant's motion to strike supplemental interrogatory response which

had, for the first time after repeated instructions to do so by the Court, introduced a

computation of a theory of damages not previously presented by the plaintiff.  "The Court

[ ] recognized that [plaintiff] was planning to rely on expert testimony to establish the

amount of its claimed damages, and understood [plaintiff's] reluctance to offer Rule

26(a) disclosures on damages when its computation would necessarily be the subject of

expert disclosures … the Court … requir[ed Plaintiff] to produce, within 30 days, a report

from its damages expert(s), even though fact discovery was not yet complete."); *Olson v.*

*Bade¸* 2001 U.S. App. LEXIS 7275 (9th Cir. 2001) (Unpublished) (Circuit Court found

that Bankruptcy Court abused its discretion in excluding evidence of plaintiff's damages

where plaintiff believed in good faith that the party's disclosures and production in a

prior state court action were sufficient to relieve his obligations under Rule 26(a), Circuit

Court remanded with instruction to allow plaintiff's to comply with Rule 26 and submit

an acceptable expert report).

### III. CONCLUSION

The harm to AVX in excluding its damage evidence would be devastating. The

harm to Cabot to allow the damage evidence to be presented subject to AVX producing

Peter Collis for another deposition is minimal. As noted at the beginning of this brief,

when after over two years of litigation Cabot raised for the first time a new defense,

Judge Gants in the Suffolk Superior Court ordered Cabot to submit to additional

discovery rather than to exclude the evidence. While this Court certainly is not bound by

that decision, it is submitted that such a result is appropriate in this case.

Respectfully submitted,

AVX CORPORATION
and AVX LIMITED

By their attorneys,


 */s/ Joseph S.U. Bodoff*
Joseph S.U. Bodoff (BBO # 549116)
Richard A. Goren (BBO # 203700)
Ryan D. Sullivan (BBO # 660696)
Bodoff & Associates, P.C.
225 Friend Street
Boston, MA  02114-1812
(617) 742-7300

Dated: July 17, 2008